UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____
                                            )
BERT VLADIMIR, Individually And On Behalf   )
Of All Others Similarly Situated,           )
                                            )   07 CV 6414 (SHS) (AJP)
                  Plaintiff,                )
                                            )   CLASS ACTION
           v.                               )
                                            )   ECF CASE
BIOENVISION, INC., CHRISTOPHER B. WOOD,     )
and JAMES S. SCIBETTA,                      )
                                            )
                  Defendants.               )
_____ )


**MEMORANDUM OF LAW IN SUPPORT OF
MOTION OF DONALD JOHNSON FOR APPOINTMENT AS
LEAD PLAINTIFF  AND APPROVAL OF SELECTION OF LEAD COUNSEL**

## I.  INTRODUCTION

Presently pending in this district is a securities fraud class action (the "Action") brought against Bioenvision, Inc. ("Bioenvision" or the "Company") and certain of its officers and directors pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5.

Movant Donald Johnson ("Johnson" or "Movant"), sold 9,300 shares of Bioenvision common stock between May 1, 2007 and May 28, 2007, inclusive (the "Proposed Class Period") and suffered estimated losses[1] of $21,483 as a result of Movant's transactions in Bioenvision's publicly traded securities during the Proposed Class Period.  Movant respectfully submits this Memorandum of Law in support of its motion for: (i) appointment as Lead Plaintiff, pursuant to Section 21D of the Exchange Act, as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. §78u-4, in the Action on behalf of sellers of Bioenvision's publicly traded securities; and (ii) approval of Movant's selection of Lead Counsel.

## II.  PROCEDURAL BACKGROUND

On or about July 13, 2007, plaintiff in the <u>Vladimir</u> action, Case No. 07-cv-6416, filed a complaint on behalf of a proposed class consisting of all persons who sold Bioenvision securities between May 1, 2007 and May 28, 2007, inclusive.  Pursuant to 15 U.S.C. § 78u-4(a) (3) (A) (i), on July 13, 2007, notice of pendency of the action was published over a widely-available,

---

[1] The losses suffered by the Movant are not the same as its legally compensable damages, measurement of which is often a complex legal question which cannot be determined at this stage of the litigation.  The approximate losses can, however, be determined from the certifications required under Section 21D and, based upon information concerning the current market for the Company's common stock.  See Declaration of Jason D'Agnenica ("D'Agnenica Decl."), September 11, 2007, Exhibit C.

1

national business-oriented wire service, Prime Newswire, advising members of the proposed class of their right to move the Court to serve as lead plaintiff no later than 60 days from the date of publication of the Notice, i.e., by September 11, 2007. See D'Agnenica Decl., Ex. A. This motion is filed within the 60-day period following publication of the July 13, 2007 notice given by plaintiff therein.

### III.  SUMMARY OF THE ACTION

Defendant Bioenvision, Inc. ("BIVN") is a Delaware corporation engaged in the biopharmaceutical business primarily focused on the acquisition, development and marketing of compounds and technologies for the treatment of cancer, autoimmune disease and infection. ¶ 6.[2] Together with another company, Genzyme Corp. ("Genzyme"), Bioenvision co-developed its flagship drug Clofarabine in Europe, where the Bioenvision markets the drug for the treatment of pediatric leukemia under the brand name Evoltra. ¶ 15. The drug is marketed by Genzyme in the United States for the same purpose. ¶ 15. Throughout the Class Period, the defendants continually assured investors that the Company's primary focus was the expansion of the market for Clofarabine. ¶ 15. The Company's stock is, and was at all relevant times, listed and actively traded on the Nasdaq National Market under the ticker "BIVN."

On April 2, 2007, the Company announced that it had priced its registered securities offering of 8 million shares of common stock at a price of $3.75 per share. ¶ 17. The Company did not indicate that it was considering a sale and/or merger with Genzyme. ¶ 17. On May 23, 2007, as news of the BIVN – Genzyme transaction began to leak into the market, the artificial suppression of BIVN's stock price moderated and the stock price rose from a close of $4.22 per

---

[2]  References taking the form "¶__" refer to the complaint filed in Vladimir.v. Bioenvision, Civ. No. 07 CV 6416 (S.D.N.Y. July 13, 2007).

share on May 22, 2007 to close at $5.63 per share on May 29, 2007 as the market absorbed the announcement that BIVN had agreed to a merger agreement with Genzyme. ¶ 22.

On May 29, 2007, the Company announced that it had entered into a definitive agreement and plan of merger with Genzyme, whereby Genzyme will commence a tender offer to acquire all of BIVN's outstanding shares of common stock for $5.60 per share in cash in a transaction valued at approximately $345 million. ¶ 23. By the time of the announcement, BIVN's directors had unanimously approved the merger and entered into agreements supporting it and recommended to BIVN shareholders that they tender their shares in the tender offer. ¶ 24. On the first trading day following the announcement of the merger, the price of BIVN stock rose sharply in response to the news of the merger on unusually high volume. ¶ 23. On May 30, 2007, the price of BIVN stock continued to climb to a high of $5.88 per share as investors absorbed the previously undisclosed news. ¶ 23.

By the time that defendants announced the agreement and plan of merger, BIVN and defendants had known that such a transaction had been planned and negotiated for at least a month before it was announced. ¶ 25. Thus, defendants were under a duty to correct the statements made prior to May 1, 2007 which were still alive and influencing the price of BIVN stock in the market and were under a duty to make all their statements and announcements on and after May 1, 2007 truthful, complete and accurate and to ensure that ll statements contained all material facts necessary in order to make statements not materially misleading. ¶ 25. Defendants intentionally failed to update or correct previous statements regarding the Company's business plans and primary focus and continually misrepresented the fact that its primary focus was no longer the development and marketing of cancer treatments but, instead,

3

the primary focus of BIVN and the individual defendants was to find a merger partner and to consummate a takeover of BIVN. ¶ 25.

During the Class Period, defendants' material omissions and misrepresentations had the effect of artificially deflating the price of BIVN's securities and/or maintaining the price of BIVN's securities at levels at which those securities would not have traded had the truth concerning the Company been disclosed to investors. This conduct resulted in plaintiff and other members of the Class selling BIVN securities at prices significantly below the actual value of those securities. ¶ 26. Plaintiff the other members of the Class either would not have sold BIVN securities or would not have sold such securities at the prices that prevailed during the Class Period had defendants disclosed the material information about the Company's plan to engage in a transaction with Genzyme. ¶ 27.

## IV. ARGUMENT

### A. The Proposed Lead Plaintiff Should Be Appointed Lead Plaintiff

#### 1. The Procedure Required By The PSLRA

The PSLRA has established a procedure that governs the appointment of a lead plaintiff in "each action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1) and (a)(3)(B)(i).

First, the plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4 (a) (3) (A) (i). Notice of pendency of the action was published over Prime Newswire on July 13, 2007. See D'Agnenica Decl., Ex. A. Within 60 days after publication of the notice, any person or group of persons who are members of the

proposed class may apply to the Court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. § 78u-4 (a) (3) (A) and (B).

Second, the PSLRA provides that within 90 days after publication of the notice the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the Court determines to be most capable of adequately representing the interests of class members. 15 U.S.C. § 78u-4 (a) (3) (B). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that - -
>
> (aa)   has either filed the complaint or made a motion in response to a notice . . .
>
> (bb)   in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)   otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4 (a) (3) (B) (iii). See generally Greebel v. FTP Software, 939 F. Supp. 57, 64 (D. Mass. 1996).

### 2. The Proposed Lead Plaintiff Satisfies The "Lead Plaintiff" Requirements of the PSLRA

The time period in which class members may move to be appointed lead plaintiff herein under 15 U.S.C. § 78u-4 (a) (3) (A) and (B) expires on September 11, 2007. Pursuant to the provisions of the PSLRA and within the requisite time frame after publication of the required notice (published on July 13, 2007), Donald Johnson herein timely moves this Court to be appointed Lead Plaintiff on behalf of all members of the proposed class.

The Proposed Lead Plaintiff has duly signed and filed a certification stating that Movant has reviewed the complaint filed in the action and is willing to serve as the representative party on behalf of the Class.  See D'Agnenica Decl., Exh. B.  In addition, the Proposed Lead Plaintiff has selected and retained experienced and competent counsel to represent Movant and the class. See D'Agnenica Decl., Exh. D.

Accordingly, Movant has satisfied the individual requirements of 15 U.S.C. § 78u-4 (a) (3) (B) and is entitled to have its application for appointment as Lead Plaintiff and approval of selection of counsel, as set forth herein, considered and approved by the Court.

### 3. The Proposed Lead Plaintiff Has A Significant Financial Interest In The Relief Sought By The Class

According to 15 U.S.C. § 21(a) (3) (B) (iii), the court shall appoint as lead plaintiff the class member or members who represent the largest financial interest in the relief sought by the action.  During the Class Period, as evidenced by, among other things, the accompanying signed certification, Movant sold 9,300 shares of the Company's common stock during the Class Period and suffered estimated losses of $21,483 as a result of defendants' misconduct.  See D'Agnenica Decl., Ex. C.  As a result, Movant herein has a significant financial interest in this case.

### 4. The Proposed Lead Plaintiff Otherwise Satisfies Rule 23

According to 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the

>representative parties will fairly and adequately protect the
>interests of the class.

Of the four prerequisites to class certification, only two - - typicality and adequacy - - directly address the personal characteristics of the class representative.  Consequently, in deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification.  Lax v. First Merchants, 1997 U.S. Dist. LEXIS 11866 at *20; Fischler v. Amsouth Bancorporation, 1997 U.S. Dist. LEXIS 2875 at *7-8 (M.D. Fla. Feb. 6, 1997).

The Proposed Lead Plaintiff satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying appointment as lead plaintiff.  Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of those of the class.  Typicality exists if claims "arise[] from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  See In re Drexel Burnham Lambert Group, Inc., 960 F. 2d 285, 291 (2d Cir. 1992), cert. dismissed sub nom., 506 U.S. 1088 (1993).  However, the claims of the class representative need not be identical to the claims of the class to satisfy typicality.  Instead, the courts have recognized that:

>[T]he typicality requirement may be satisfied even if there are
>factual dissimilarities or variations between the claims of the
>named plaintiffs and those of other class members, including
>distinctions in the qualifications of the class members.

Bishop v. New York City Dept. Of Housing Preservation and Development, 141 F.R.D. 229, 238 (2d Cir. 1992).  See also Avagliano v. Sumitomo Shoji America, Inc., 103 F.R.D 562, 582 (S.D.N.Y. 1984).

The Proposed Lead Plaintiff seeks to represent a class of sellers of the Company's publicly traded securities who have identical, non-competing and non-conflicting interests. The Proposed Lead Plaintiff satisfies the typicality requirement, since it: (i) sold the Company's common stock; (ii) at market prices allegedly artificially deflated as a result of defendants' violations of the federal securities laws; and (iii) suffered damages thereby. Thus, typicality is satisfied since the claims asserted by the Proposed Lead Plaintiff arise "from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory." Walsh v. Northrop Grumman Corp., 162 F.R.D. 440, 445 (E.D.N.Y. 1995).

Under Rule 23(a)(4) the representative party must also "fairly and adequately protect the interests of the class." The standard for adequacy of representation under Rule 23(a)(4) is met by: (1) the absence of potential conflict between the named plaintiff and the class members, and (2) the class representative's choice of counsel who is qualified, experienced and able to vigorously conduct the proposed litigation. Garfinkel v. Memory Metals, Inc., 695 F. Supp. 1397, 1405 (D. Conn. 1988).

Here, the Proposed Lead Plaintiff is an adequate representative of the class. As evidenced by the injury suffered by Movant, who sold the Company's common stock at prices allegedly artificially deflated by defendants' violations of the federal securities laws, the interests of the Proposed Lead Plaintiff are clearly aligned with the class members, and there is no evidence of antagonism between Movant's interests and those of the other members of the class. In addition, as demonstrated below, Movant's proposed Lead Counsel are highly qualified, experienced and able to conduct this complex litigation in the highest professional manner.

Thus, Movant prima facie satisfies the commonality, typicality and adequacy requirements of Rule 23.

### B. The Court Should Approve Movant's Choice of Counsel

Pursuant to 15 U.S.C. § 78u-4 (a) (3) (B) (v), proposed lead plaintiff shall, subject to Court approval, select and retain counsel to represent the class lead plaintiff seeks to represent. In that regard, Movant has selected the law firm of Stull, Stull & Brody to serve as Lead Counsel. Stull, Stull & Brody is a firm with extensive experience in successfully prosecuting shareholder and securities class actions and has frequently appeared in major actions in this and other courts. See D'Agnenica Decl., Exh. D.

### V. CONCLUSION

For all the foregoing reasons, Movant respectfully requests that the Court: (i) appoint the Proposed Lead Plaintiff as lead plaintiff in the related actions; and (ii) approve Movant's selection of lead counsel as set forth herein.

Dated: September 11, 2007

Respectfully submitted,

**STULL, STULL & BRODY**

/s/ Jason D'Agnenica
By: _____
Jules Brody (JB-9151)
Aaron L. Brody (AB-5850)
Jason D'Agnenica (JD-9340)
6 East 45th Street
New York, NY 10017
Tel: (212) 687-7230

**Attorneys for Movant**