UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

BERT VLADIMIR, Individually and on Behalf of      :
All Others Similarly Situated,

                                         :

                 Plaintiff,      :      07 Civ. 6416 (SHS) (AJP)

          -against-      :      **OPINION AND ORDER**

                                         :

BIOENVISION, INC., CHRISTOPHER B. WOOD
& JAMES S. SCIBETTA,      :

               Defendants.      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

        Plaintiff Bert Vladimir and class member Gary Thesling ("the Thesling movants")

moved pursuant to the Private Securities Litigation Reform Act (the "PSLRA"), 15 U.S.C. § 78u-4,

for (a) appointment as co-lead plaintiffs of a class of sellers of the securities of Bioenvision, Inc.

("BIVN"), (b) approval of their selection of Squitieri & Fearon, LLP ("Squitieri") as lead counsel for

the class, and (c) appointment of Squitieri as lead counsel. (Dkt. No. 11: Thesling Notice of Mot.)

The parties have consented to my decision of the motions pursuant to 28 U.S.C. § 636(c). (Dkt. No.

35.) For the reasons set forth below, the Thesling movant's motion is GRANTED. (See also Dkt.

No. 42: 11/2/07 Peck Order.)[1]/ The similar motion (Dkt. No. 14) filed by Stull, Stull & Brody to

appoint class member Donald Johnson as lead plaintiff is DENIED.

---

[1]/       The Court granted the motion in an Order dated November 2, 2007, with explanatory
         Opinion to follow. This is that Opinion.

## FACTS

### Prior History

Vladimir, a pre-existing Squitieri client, contacted the Squitieri firm concerning BIVN. (Dkt. No. 23: 9/25/07 Squitieri Aff. ¶ 3.)  Vladimir filed suit on July 13, 2007 under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5 on behalf of himself and all others who sold BIVN securities from May 1, 2007 through May 28, 2007 inclusively (the "class period").  (See Dkt. No. 1: Compl. ¶¶ 2, 9-14.)[2]  Defendant BIVN is a Delaware corporation with its corporate headquarters in New York City.  (Compl. ¶ 6.)  During the proposed class period, BIVN was a "biopharmaceutical company primarily focused upon the acquisition, development and marketing of compunds and technologies for the treatment of cancer, autoimmune disease and infection."  (Compl. ¶ 6.)

The complaint alleges:

> On May 29, 2007, BIVN announced that it had entered into a definitive agreement and plan of merger with Genzyme, whereby Genzyme [would] commence a tender offer to acquire all of BIVN's outstanding shares of common stock . . . .  BIVN and defendants had known that such a transaction had been planned and negotiated for at least a month before it was announced.  Thus, defendants were under a duty to correct the statements made prior to May 1, 2007, described [in the complaint] which were still alive and influencing the price of BIVN stock in the market and were under a duty to make all their statements and announcements on and after May 1, 2007 truthful, complete and accurate and to ensure that all statements contained all material facts necessary in order to make statements not materially misleading. Defendants intentionally failed to update or correct previous statements regarding the Company's business plans and "primary focus" and continually misrepresented the fact that "its primary focus" was no longer the development and marketing of cancer

---

[2]    Pursuant to the Court's prior Order approving Vladimir and Thesling as lead plaintiffs, they filed an amended complaint on November 27, 2007.  (Dkt. No. 48.)  This Opinion refers to the original complaint.

3

treatments but, instead the primary focus of BIVN and the individual defendants was to find a merger partner and to consummate a takeover of BIVN. . . . [Those] material omissions and misrepresentations had the effect of artificially deflating the price of BIVN's securities . . . [which] resulted in plaintiff and other members of the Class selling BIVN securities at prices significantly below the actual value of those securities.

(Compl. ¶¶ 23-26.)  Specifically, the complaint asserts claims for:  (1) violation of Exchange Act Section 10(b) and Rule 10b-5 against all defendants (Compl. ¶¶ 29-35); and (2) violation of Exchange Act Section 20(a) against the individual defendants (Compl. ¶¶ 36-38).

Vladimir certified that he sold a total of 1,000 shares during the class period, and that he was willing to serve as lead plaintiff.  (Dkt. No. 12: 9/11/07 Squitieri Aff. Ex. C: 7/13/07 Vladimir Certification; Dkt. No. 8: 7/26/07 Vladimir Rev. Cert.)  Squitieri calculated Vladimir's losses as $2,330.[3/]  (9/11/07 Squitieri Aff. Ex. E: Table of Losses.)

Also on July 13, 2007, Vladimir, through his counsel Squitieri, caused the requisite PSLRA notice of the action to be published on PrimeNewswire.  (Dkt. No. 12: 9/11/07 Squitieri Aff. Ex. B: PSLRA Notice.)  Thesling contacted Squitieri and "agreed to join this action and serve as a representative of the class and to stand for appointment as a proposed lead plaintiff together with Vladimir, but alone if necessary."  (9/25/07 Squitieri Aff. ¶ 4.)

On September 11, 2007, the Thesling movants filed their lead plaintiff motion, pursuant to the requirements set forth in the PSLRA, seeking:  (1) appointment of the Thesling movants as co-lead plaintiffs, (2) approval of the Thesling movants' selection of Squitieri as lead

---

[3/]    Squitieri calculated Vladimir's and Thesling's losses by multiplying the number of shares sold during the class period by a post class 90-day mean trading price of $5.63 per share and subtracting the actual price realized by sale of the shares.  (Dkt. No. 13: 9/11/07 Squitieri Aff. Ex. E: Table of Losses, n.1.)

4

counsel for the class, and (3) appointment of Squitieri as lead counsel. (Dkt. No. 11: Thesling Notice of Mot.; see also Dkt. Nos. 12-13.) Thesling certified that he sold a total of 46,300 shares during the class period (24,300 of which traded through his 401K account), and that he was willing to serve as lead plaintiff. (9/11/07 Squitieri Aff. Ex. D: 7/19/07 Thesling Cert.; 9/25/07 Squitieri Aff. Ex. A: 9/21/07 Thesling Cert.; Dkt. No. 41: 10/15/07 Thesling Rev. Cert.) Squitieri calculated Thesling's losses as $97,625. (9/11/07 Squitieri Aff. Ex. E: Table of Losses.)

On July 17, 2007, Stull, Stull & Brody ("Stull") published their own notice of Vladimir's action, listing the Stull firm as a contact. (See Dkt. No. 29: 10/2/07 Squitieri Aff. Ex. B: Stull Notice; see also Stull website, http://www.secfraud.com/filedcases/bioenvision.html.) On September 11, 2007, Stull submitted a motion on Johnson's behalf seeking: (1) appointment of Johnson as lead plaintiff, (2) approval of Johnson's selection of Stull as lead counsel for the class, and (3) appointment of Stull as lead counsel. (Dkt. No. 14: Johnson Notice of Mot.; see also Dkt. Nos. 15-16.) Johnson certified that he sold a total of 9,300 shares during the class period and that he was willing to serve as lead plaintiff. (Dkt. No. 16: 9/11/07 D'Agnenica Aff. Ex. B: Johnson Cert.) Stull calculated Johnson's losses as $21,483.[4] (9/11/07 D'Agnenica Aff. Ex. C: Johnson Transaction Rpt.)

---

[4]     Stull calculated Johnson's losses by multiplying the number of shares sold during the class period by a post class 90-day mean trading price of $5.64 per share and subtracting the actual price realized by sale of the shares. (Dkt. No. 15: 9/11/07 D'Agnenica Aff. Ex. C: Johnson Transaction Rpt., explanatory notes.)

5

## ANALYSIS

Motions for appointment of lead plaintiff and approval of lead counsel are governed

by the PSLRA, which applies to "each private action arising under the [Securities Exchange Act] that

is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  15 U.S.C.

§ 78u-4(a)(1).

The PSLRA provides that:

> [T]he court shall consider any motion made by a purported class member in response
> to the notice, including any motion by a class member who is not individually named
> as a plaintiff in the complaint or complaints, and shall appoint as lead plaintiff the
> member or members of the purported plaintiff class that the court determines to be
> most capable of adequately representing the interests of class members (hereafter in
> this paragraph referred to as the "most adequate plaintiff") in accordance with this
> subparagraph.

15 U.S.C. § 78u-4(a)(3)(B)(i).  The PSLRA provides a rebuttable presumption in favor of the class

member with the "largest financial interest."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).[5/]  The PSLRA

---

[5/]      The PSLRA provides that:

> [T]he court shall adopt a [rebuttable] presumption that the most adequate plaintiff
> in any private action arising under this chapter is the person or group of persons
> that –
>
> (aa)    has either filed the complaint or made a motion in response to a
>           notice under subparagraph (A)(i);
>
> (bb)    in the determination of the court, has the largest financial interest in
>           the relief sought by the class; and
>
> (cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules
>           of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

6

further provides that: "The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v).

"Prior to the enactment of the PSLRA, lead plaintiff status in securities class actions was generally determined by which party first filed suit. This rule invariably resulted in a 'race to the courthouse' in an effort by counsel to gain lead plaintiff status for their client." In re Bausch & Lomb Inc. Sec. Litig., 244 F.R.D. 169, 171 (W.D.N.Y. 2007); see also, e.g., In re Olsten Corp. Sec. Litig., 3 F. Supp. 2d 286, 294 (E.D.N.Y. 1998). "Recognizing that the selection of the lead representative party should rest on considerations other than speed, Congress enacted the PSLRA in order to 'increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel.'" In re Bausch & Lomb Inc. Sec. Litig., 244 F.R.D. at 171 (quoting legislative history).[6] Congress decided that the PSLRA's objectives are best achieved when lead plaintiffs are institutional investors or others with large holdings at stake whose interests will be most strongly aligned with those of the class members. See, e.g., Bhojwani v. Pistiolis, 06 Civ. 13761, 2007 WL 2197836 at *6 (S.D.N.Y. June 26, 2007); Vanamringe v. Royal Group Tech. Ltd., 237 F.R.D. at 57; Weiss v. Friedman, Billings, Ramsey Group, Inc., 2006 WL

_____

[6]    Accord, e.g., Vanamringe v. Royal Group Tech. Ltd., 237 F.R.D. 55, 57 (S.D.N.Y. 2006); Gesenhues v. Checchi, 05 Civ. 10653, 2006 WL 1169673 at *2 (S.D.N.Y. May 3, 2006); Weiss v. Friedman, Billings, Ramsey Group, Inc., 05 Civ. 4617, 2006 WL 197036 at *2 (S.D.N.Y. Jan. 25, 2006); Ferrari v. Impath, Inc., 03 Civ. 5667, 2004 WL 1637053 at *3 (S.D.N.Y. July 20, 2004); In re Initial Pub. Offering Sec. Litig., 214 F.R.D. 117, 123 (S.D.N.Y. 2002); In re Oxford Health Plans, Inc. Sec. Litig., 182 F.R.D. 42, 43-44 (S.D.N.Y.1998); In re Olsten Corp. Sec. Litig., 3 F. Supp. 2d at 294; In re Donnkenny Inc. Sec. Litig., 171 F.R.D. 156, 157-58 (S.D.N.Y. 1997).

7

197036 at *2; <u>Bassin</u> v. <u>deCODE Genetics, Inc.</u>, 230 F.R.D. 313, 315-16 (S.D.N.Y. 2005); <u>Sofran</u>

v. <u>LaBranche & Co.</u>, 220 F.R.D. 398, 403 (S.D.N.Y. 2004); <u>In re Oxford Health Plans, Inc. Sec.</u>

<u>Litig.</u>, 182 F.R.D. at 46.

## I.    THE NOTICE AND TIMELY MOTION REQUIREMENTS ARE SATISFIED

Under the PSLRA, the plaintiff who files the initial action must, within twenty days

of filing the complaint, publish a notice in a "widely circulated national business-oriented publication

or wire service," informing class members of the pendency of the action and their right to file a

motion for appointment as lead plaintiff. 15 U.S.C. §78u-4(a)(3)(A)(i).  Squitieri, on behalf of

Vladimir, caused notice to be published on PrimeNewswire on July 13, 2007, the same day they filed

the complaint.  (<u>See</u> pages 2-3 above.)  PrimeNewswire has previously been held to be an acceptable

national business-oriented wire service that constitutes a suitable vehicle for meeting the PSLRA

notice requirement.  <u>See, e.g.</u>, <u>Jolly Roger Offshore Fund LTD</u> v. <u>BKF Capital Group, Inc.</u>, 07 Civ.

3923, 2007 WL 2363610 at *2 (S.D.N.Y. Aug. 16, 2007) ("<u>PrimeNewswire</u> is a suitable vehicle for

meeting the statutory requirement that notice be published.").  No challenges to the adequacy of the

July 13, 2007 notice were raised by Stull or defendants.  The PSLRA's notice requirement is

satisfied.

Within sixty days "after the date on which the notice is published, any member of the

purported class may move the court to serve as lead plaintiff of the purported class." 15 U.S.C.

§ 78u-4(a)(3)(A)(i)(II).  The Thesling movants and Johnson timely moved on September 11, 2007.

(<u>See</u> pages 3-4 above.)

8

## II.    THE THESLING MOVANTS ARE PRESUMED TO BE THE MOST ADEQUATE PLAINTIFFS

The PSLRA provides that within ninety days after publication of the notice, the Court shall consider any motion made by a class member and "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of class members."  See 15 U.S.C. § 78u-4(a)(3)(B)(i). In determining the "most adequate plaintiff," the PSLRA establishes a rebuttable presumption by providing:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that –
>
> (aa) has either filed the complaint or made a motion in response to a notice . . . ;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).[2/]  The presumption may be rebutted "only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff – (aa) will not fairly

---

[2/]    See, e.g., Metro Servs. Inc. v. Wiggins, 158 F.3d 162, 164 (2d Cir. 1998); In re Bausch & Lomb Inc. Sec. Litig., 244 F.R.D. 169, 172 (W.D.N.Y. 2007); Bhojwani v. Pistiolis, 06 Civ. 13761, 2007 WL 2197836 at *4 (S.D.N.Y. June 26, 2007); Strougo v. Brantley Capital Corp., 243 F.R.D. 100, 104 (S.D.N.Y. 2007); Kaplan v. Gelfond, 240 F.R.D. 88, 92 (S.D.N.Y. 2007); Glauser v. EVCI Career Colls. Holding Corp., 236 F.R.D. 184, 187 (S.D.N.Y. 2006); In re Smith Barney Transfer Agent Litig., 05 Civ. 7583, 2006 WL 991003 at *2 (S.D.N.Y. Apr. 17, 2006); Weiss v. Friedman, Billings, Ramsey Group, Inc., 05 Civ. 4617, 2006 WL 197036 at *3 (S.D.N.Y. Jan. 25, 2006); Constance Sczesny Trust v. KPMG LLP, 223 F.R.D. 319, 323 (S.D.N.Y. 2004); Ferrari v. Impath, Inc., 03 Civ. 5667, 2004 WL 1637053 at *3-4 (S.D.N.Y. July 20, 2004); Weinberg v. Atlas Air Worldwide Holdings, Inc., 216 F.R.D. 248, 252 (S.D.N.Y. 2003); In re Olsten Corp. Sec. Litig., 3 F. Supp. 2d 286, 294 (E.D.N.Y. 1998).

and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).[8/]

A.     **Thesling Has the Largest Financial Interest**

The PSLRA does not define the term "largest financial interest" nor provide a method for determining which plaintiff has the largest financial interest in the relief sought by the class. Courts in the Second Circuit have developed a four-factor test focusing on:  (1) the total number of shares purchased (or sold) during the class period; (2) the number of net shares purchased (or sold) during the class period (i.e., the difference between the number of shares purchased (or sold) and the number of shares sold (or purchased)); (3) the total net funds expended during the class period (i.e., the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and (4) the approximate loss suffered during the class period.  See, e.g., In re Bausch & Lomb Inc. Sec. Litig., 244 F.R.D. 169, 172 (W.D.N.Y. 2007); Bhojwani v. Pistiolis, 06 Civ. 13761, 2007 WL 2197836 at *6 (S.D.N.Y. June 26, 2007); Strougo v. Brantley Capital Corp., 243 F.R.D. 100, 104 (S.D.N.Y. 2007); In re Comverse Tech., Inc. Sec. Litig., No. 06

---

[8/]      See, e.g., Metro Servs. Inc. v. Wiggins, 158 F.3d at 164; In re Bausch & Lomb Inc. Sec. Litig., 244 F.R.D. at 172; Kaplan v. Gelfond, 240 F.R.D. at 92; Glauser v. EVCI Career Colls. Holding Corp., 236 F.R.D. at 187; In re Smith Barney Transfer Agent Litig., 2006 WL 991003 at *2; Weiss v. Friedman, Billings, Ramsey Group, Inc., 2006 WL 197036 at *3; Constance Sczesny Trust v. KPMG LLP, 223 F.R.D. at 323; Ferrari v. Impath, Inc., 2004 WL 1637053 at *4; In re Olsten Corp. Sec. Litig., 3 F. Supp. 2d at 294-95.

CV 1825, 2007 WL 680779 at *3 (E.D.N.Y. Mar. 2, 2007); Kaplan v. Gelfond, 240 F.R.D. 88, 93 (S.D.N.Y. 2007).[9]

Most courts have found the fourth factor, the approximate loss suffered during the class period, to be the most important factor in determining who should be the lead plaintiff.  See, e.g., Bhojwani v. Pistiolis, 2007 WL 2197836 at *6; Strougo v. Brantley Capital Corp., 243 F.R.D. at 104; In re Comverse Tech., Inc. Sec. Litig., 2007 WL 680779 at *3 ("Most courts consider the fourth factor, the approximate loss a plaintiff suffered during the class period, to be most influential in identifying the plaintiff with the largest financial interest."); Kaplan v. Gelfond, 240 F.R.D. at 93; Weiss v. Friedman, Billings, Ramsey Group, Inc., 2006 WL 197036 at *3 ("The amount of financial loss is the most significant of [the 4-factor test] elements.").[10]

---

[9]    See also, e.g., Vanamringe v. Royal Group Tech. Ltd., 237 F.R.D. 55, 57 (S.D.N.Y. 2006); Glauser v. EVCI Career Colls. Holding Corp., 236 F.R.D. 184, 187 (S.D.N.Y. 2006); Gesenhues v. Checchi, 05 Civ. 10653, 2006 WL 1169673 at *2 (S.D.N.Y. May 3, 2006); Weiss v. Friedman, Billings, Ramsey Group, Inc., 05 Civ. 4617, 2006 WL 197036 at *3 (S.D.N.Y. Jan. 25, 2006); In re eSpeed, Inc. Sec. Litig., 232 F.R.D. 95, 100 (S.D.N.Y. 2005); Montoya v. Mamma.com Inc., 05 Civ. 2313, 2005 WL 1278097 at *1 (S.D.N.Y. May 31, 2005); Constance Sczesny Trust v. KPMG LLP, 223 F.R.D. 319, 323 (S.D.N.Y. 2004); Ferrari v. Impath, Inc., 03 Civ. 5667, 2004 WL 1637053 at *4 (S.D.N.Y. July 20, 2004); Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., 229 F.R.D. 395, 404 (S.D.N.Y. 2004); In re Initial Pub. Offering Sec. Litig., 214 F.R.D. 117, 121 (S.D.N.Y. 2002); In re Olsten Corp. Sec. Litig., 3 F. Supp. 2d 286, 295 (E.D.N.Y.1998).

[10]    See also, e.g., Takara Trust v. Molex Inc., 229 F.R.D. 577, 579 (N.D. Ill. 2005) (In determining the largest financial interest, "most courts simply determine which potential lead plaintiff has suffered the greatest total losses."); In re Bally Total Fitness Sec. Litig., No. 04C3530, 2005 WL 627960 at *4 (N.D. Ill. Mar. 15, 2005) ("[S]ome of the lead plaintiff candidates who are in the middle of the pack in terms of losses . . . contend that we should also examine factors such as the number of shares purchased, the number of net shares purchased, and the total net funds expended by the plaintiff during the class period . . . . It (continued...)

To determine a class member's approximate losses in the context of securities class actions, courts employ two accounting methods:  First-In-First-Out ("FIFO") and Last-In-First-Out ("LIFO").  See, e.g., In re Comverse Tech., Inc. Sec. Litig., 2007 WL 680779 at *7 n.10; Bhojwani v. Pistiolis, 2007 WL 2197836 at *7; Kaplan v. Gelfond, 240 F.R.D. at 94 & n.7; In re eSpeed, Inc. Sec. Litig., 232 F.R.D. at 100.  Under FIFO, stocks which were acquired first are assumed to be sold first for loss calculation purposes.  Bhojwani v. Pistiolis, 2007 WL 2197836 at *7; In re Comverse Tech., Inc. Sec. Litig., 2007 WL 680779 at *7 n.10; Kaplan v. Gelfond, 240 F.R.D. at 94 n.7; In re AOL Time Warner, Inc., 02 Civ. 5575, 2006 WL 903236 at *17-18 (S.D.N.Y. Apr. 6, 2006).  Under LIFO, stocks which were acquired most recently are assumed to be sold first.  Bhojwani v. Pistiolis, 2007 WL 2197836 at *7; In re Comverse Tech., Inc. Sec. Litig., 2007 WL 680779 at *7 n.10; Kaplan v. Gelfond, 240 F.R.D. at 94 n.7; In re AOL Time Warner, Inc., 2006 WL 903236 at *17-18; In re eSpeed, Inc. Sec. Litig., 232 F.R.D. at 102.

Many courts favor the LIFO method to calculate the financial stake of movants for lead plaintiff status in securities class actions.  Unlike FIFO, LIFO offsets gains accrued to the plaintiffs due to the inflation of stock prices during the class period.  See, e.g., Kaplan v. Gelfond, 240 F.R.D. at 94 n.7; In re eSpeed, Inc. Sec. Litig., 232 F.R.D. at 101 (discussing cases).  In addition,

---

10/     (...continued)
        is not self-evident, though, what weight these factors should be given in relation to the amount of loss, or even why we should consider them at all . . . . We believe that the best yardstick by which to judge 'largest financial interest' is the amount of loss, period.  The inquiry need not and should not be complicated by also considering the number of shares or the net expenditures involved because those statistics do not advance the ball.").

LIFO excludes "in-and-out" transactions during the class period.[11/] While FIFO may overstate actual losses suffered by stockholders, LIFO takes into account gains and can disregard losses that are not causally related to the misstatement claims.  See, e.g., Bhojwani v. Pistiolis, 2007 WL 2197836 at *7; In re Comverse Tech., Inc. Sec. Litig., 2007 WL 680779 at *4-5 & n.6; Kaplan v. Gelfond, 240 F.R.D. at 94 n.7; In re Doral Fin. Corp. Sec. Litig., 414 F. Supp. 2d 398, 403 n.7 (S.D.N.Y. 2006) (noting that FIFO "has fallen out of favor in this District, given its tendency to overstate the losses of institutional investors and to understate gains made from stock sold during the class period"); In re Pfizer Inc. Sec. Litig., 233 F.R.D. 334, 338 n.3 (S.D.N.Y. 2005) (same); In re eSpeed, Inc. Sec. Litig., 232 F.R.D. at 100-01 (discussing cases and adopting LIFO method).

Here, under either LIFO or FIFO, Thesling has the largest losses.  Using the movants' calculations, Thesling shows the largest losses, $97,625, even without aggregating Vladimir's losses of $2,330.  (See pages 3-4 above.)  Thesling's own losses are more than four times greater than Johnson's losses of $21,483.  (See page 4 above.)  The Court also conducted its own mathematical analysis, and although the parties did not provide enough information to precisely determine losses under LIFO, the Court made assumptions most beneficial to Johnson and determined that Thesling's losses are still 40% greater than Johnson's, a difference which is not negligible.  See, e.g., Weiss v. Friedman, Billings, Ramsey Group, Inc., 2006 WL 197036 at *3 (holding that the $121,231

---

[11/]     "In-and-out" transactions are purchases and sales of shares that occur during the class period. See, e.g.,  In re Comverse Tech., Inc. Sec. Litig., 2007 WL 680779 at *3; Montoya v. Mamma.com Inc., 2005 WL 1278097 at *2; In re McKesson HBOC, Inc. Sec. Litig., 97 F. Supp. 2d 993, 998 (N.D. Cal.1999) (declining to count losses by "in-and-out" traders in determining the plaintiff with the greatest financial interest in the litigation).

13

difference in losses between $917,235 and $796,004 was "not 'negligible'").[12]  Indeed, Johnson does not dispute that Thesling has the largest financial interest, but merely stated that Johnson also has a "significant financial interest."  (Dkt. No. 14: Johnson Br. at 6.)

This Court finds that Thesling is the movant with the largest financial interest in the relief sought by the class.

### B.    Thesling Satisfies the Relevant Preliminary Requirements of Rule 23

Once the court "'identifies the plaintiff with the largest stake in the litigation, further inquiry must focus on that plaintiff alone and be limited to determining whether he satisfies the other statutory requirements.'"  Sofran v. LaBranche & Co., 220 F.R.D. 398, 402 (S.D.N.Y. 2004) (quoting In re Cavanaugh, 306 F.3d 726, 732 (9th Cir. 2002) (observing that the district court's belief that "another plaintiff may be 'more typical' or 'more adequate' is of no consequence.  So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job.")); see also, e.g., In re AOL Time Warner, Inc. Sec. & "ERISA" Litig., No. MDL 1500, 2003 WL 102806 at *2 (S.D.N.Y. Jan. 10, 2003).

---

[12]    But cf. In re Doral Fin. Corp. Sec. Litig., 414 F. Supp. 2d at 403 (reviewing probable margins of error due to the use of at least five different class periods in loss calculations and concluding that damages of $1.9 and $2.3 million were "roughly equal"); In re Pfizer Inc. Sec. Litig., 233 F.R.D. at 338 (holding that "[g]iven the probable margin of error involved in the damage estimates" due to a party's inaccuracies in its calculations, $22.4 million and $22.8 million were "roughly equal damages").

14

Rule 23(a) of the Federal Rules of Civil Procedure provides for class certification where the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). However, at the lead plaintiff appointment stage, "[t]he moving plaintiff must make only a preliminary showing that the adequacy and typicality requirements under Rule 23 have been met." Weinberg v. Atlas Air Worldwide Holdings, Inc., 216 F.R.D. 248, 252 (S.D.N.Y. 2003) (citing, e.g., In re Crayfish Co. Sec. Litig., 00 Civ. 6766, 2002 WL 1268013 at *4 (S.D.N.Y. June 6, 2002)); see, e.g., In re Bausch & Lomb Inc. Sec. Litig., 244 F.R.D. 169, 174 (W.D.N.Y. 2007); Bhojwani v. Pistiolis, 06 Civ. 13761, 2007 WL 2197836 at *7 (S.D.N.Y. June 26, 2007); Strougo v. Brantley Capital Corp., 243 F.R.D. 100, 105 (S.D.N.Y. 2007); Kaplan v. Gelfond, 240 F.R.D. 88, 94 (S.D.N.Y. 2007).[13/] "In fact, a 'wide ranging analysis under Rule 23 is not appropriate [at this initial stage of the litigation] and should be left for consideration of a motion for class certification.'"

---

[13/]     See also, e.g., Glauser v. EVCI Career Colls. Holding Corp., 236 F.R.D. 184, 188 (S.D.N.Y. 2006); Vanamringe v. Royal Group Tech. Ltd., 237 F.R.D. 55, 58 (S.D.N.Y. 2006); Gesenhues v. Checchi, 05 Civ. 10653, 2006 WL 1169673 at *3 (S.D.N.Y. May 3, 2006); In re Smith Barney Transfer Agent Litig., 05 Civ. 7583, 2006 WL 991003 at *3 (S.D.N.Y. Apr. 17, 2006); Weiss v. Friedman, Billings, Ramsey Group, Inc., 05 Civ. 4617, 2006 WL 197036 at *4 (S.D.N.Y. Jan. 25, 2006); In re eSpeed, Inc. Sec. Litig., 232 F.R.D. 95, 102 (S.D.N.Y. 2005); Constance Sczesny Trust v. KPMG LLP, 223 F.R.D. 319, 324 (S.D.N.Y. 2004); Ferrari v. Impath, Inc., 03 Civ. 5667, 2004 WL 1637053 at *4 (S.D.N.Y. July 20, 2004); Weltz v. Lee, 199 F.R.D. 129, 133 (S.D.N.Y. 2001).

Weinberg v. Atlas Air Worldwide Holdings, Inc., 216 F.R.D. at 252 (brackets in original); accord, e.g., Ferrari v. Impath, Inc., 2004 WL 1637053 at *4.[14]

### i. Typicality

Typicality exists "'where the claims arise from the same conduct from which the other class members' claims and injuries arise.'" In re Initial Pub. Offering Sec. Litig., 214 F.R.D. 117, 121 (S.D.N.Y. 2002); see, e.g., In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 291 (2d Cir. 1992), cert. denied, 506 U.S. 1088, 133 S. Ct. 1070 (1993); In re Bausch & Lomb Inc. Sec. Litig., 244 F.R.D. 169, 174 (W.D.N.Y. 2007); Bhojwani v. Pistiolis, 06 Civ. 13761, 2007 WL 2197836 at *7 (S.D.N.Y. June 26, 2007); Strougo v. Brantley Capital Corp., 243 F.R.D. 100, 105 (S.D.N.Y. 2007); Kaplan v. Gelfond, 240 F.R.D. 88, 94 (S.D.N.Y. 2007).[15] "[T]he Lead Plaintiff's claims do not have to be identical to the other class members' claims." Weinberg v. Atlas Air Worldwide

---

[14]    Any preliminary findings of typicality and adequacy for purposes of appointing a lead plaintiff do not preclude any party from contesting the ultimate class certification in the future. See, e.g., Martingano v. Am. Int'l Group, Inc., No. 06 CV 1625 & 06 CV 2014, 2006 WL 1912724 at *4 (E.D.N.Y. July 11, 2006); Ferrari v. Impath, Inc., 2004 WL 1637053 at *4 ("Any preliminary class certification findings of adequacy and typicality made at this time, do not preclude any party from contesting the ultimate class certification."); Weltz v. Lee, 199 F.R.D. at 133-34 ("[B]ecause [the PSLRA] only requires preliminary class certification findings, the Court does not preclude any party from contesting the ultimate class certification on the basis of the determinations made in the [lead plaintiff] petition."); Koppel v. 4987 Corp., 96 Civ. 7570 & 97 Civ. 1754, 1999 WL 608783 at *8 (S.D.N.Y. Aug. 11, 1999) ("[S]uch a finding does not prejudice defendants' capacity to contest plaintiff's adequacy on a motion for class certification."), aff'd, 39 Fed. Appx. 633 (2d Cir. 2002).

[15]    See also, e.g., Glauser v. EVCI Career Colls. Holding Corp., 236 F.R.D. 184, 188-89 (S.D.N.Y. 2006); Weiss v. Friedman, Billings, Ramsey Group, Inc., 05 Civ. 4617, 2006 WL 197036 at *4 (S.D.N.Y. Jan. 25, 2006); Ferrari v. Impath, Inc., 03 Civ. 5667, 2004 WL 1637053 at *5 (S.D.N.Y. July 20, 2004); Fed. R. Civ. P. 23(a)(3).

Holdings, Inc., 216 F.R.D. 248, 253 (S.D.N.Y. 2003); see, e.g., In re Bausch & Lomb Inc. Sec. Litig.,

244 F.R.D. at 174; In re Smith Barney Transfer Agent Litig., 05 Civ. 7583, 2006 WL 991003 at *3

(S.D.N.Y. Apr. 17, 2006); Constance Sczesny Trust v. KPMG LLP, 223 F.R.D. 319, 324 (S.D.N.Y.

2004); Ferrari v. Impath, Inc., 2004 WL 1637053 at *5; In re Prudential Sec. Inc. Ltd. P'ships Litig.,

163 F.R.D. 200, 208 (S.D.N.Y. 1995) (Pollack, D.J.) ("The typicality requirement of Rule 23(a)(3)

is liberally construed; and 'typical' does not mean 'identical.' . . . The possibility of factual distinctions

between the claims of the named plaintiffs and those of other class members does not destroy

typicality, as similarity of legal theory may control even in the face of differences of fact.").

        The Thesling movants seek to represent a class of sellers of BIVN securities in a class

action against BIVN and the individual defendants.  The Thesling movants: (1) sold BIVN securities

during the class period; (2) at prices allegedly artificially deflated by defendants' allegedly materially

false and misleading statements and/or omissions; and (3) allegedly suffered damages when the truth

was disclosed to the market.  (See pages 2-3 above.)  The Thesling movants' claims arise from the

same alleged BIVN misrepresentations as other class members' claims.  The Thesling movants have

satisfied the typicality requirement of Rule 23(a)(3) at the lead plaintiff appointment stage of the

litigation.

        **ii. <u>Adequacy</u>**

        Under Rule 23(a)(4), the representative party must also "fairly and adequately protect

the interests of the class."  In order to satisfy the adequacy requirement of Rule 23(a), a court must

examine:

> (1) whether the proposed class counsel is qualified, experienced, and generally able to conduct the litigation; (2) whether the proposed lead plaintiff has interests that are antagonistic to other class members; and (3) whether the proposed lead plaintiff and the class possess sufficient interest to pursue vigorous prosecution of their claims.

Constance Sczesny Trust v. KPMG LLP, 223 F.R.D. 319, 324 (S.D.N.Y. 2004) (citations & quotations omitted).[16/]

　　　　　First, the Thesling movants stated in their certifications that they are willing to assume the responsibilities of lead plaintiff and class representation. (Dkt. No. 8: 7/26/07 Vladimir Rev. Cert. ¶ 3; Dkt. No. 41: 10/15/07 Thesling Rev. Cert. ¶ 3.) A review of the Squitieri firm's résumé indicates that the named partners "collectively have over 25 years of class action experience" and that the firm has experience in this specific type of securities litigation. (See Dkt. No. 12: 9/11/07 Squitieri Aff. Ex. F: Squitieri firm Résumé.) The Court finds that the Thesling movants "possess sufficient interest to pursue vigorous prosecution of their claims" and that the Squitieri firm is sufficiently "qualified, experienced, and generally able to conduct the litigation." Constance Sczesny Trust v. KPMG LLP, 223 F.R.D. at 324.

---

[16/]　　　See, e.g., In re Bausch & Lomb Inc. Sec. Litig., 244 F.R.D. 169, 175 (W.D.N.Y. 2007); Bhojwani v. Pistiolis, 06 Civ. 13761, 2007 WL 2197836 at *7 (S.D.N.Y. June 26, 2007); Strougo v. Brantley Capital Corp., 243 F.R.D. 100, 105 (S.D.N.Y. 2007); Kaplan v. Gelfond, 240 F.R.D. 88, 94 (S.D.N.Y. 2007); Vanamringe v. Royal Group Tech. Ltd., 237 F.R.D. 55, 58 (S.D.N.Y. 2006); Gesenhues v. Checci, 05 Civ. 10653, 2006 WL 1169673 at *3 (S.D.N.Y. May 3, 2006); Weiss v. Friedman, Billings, Ramsey Group, Inc., 05 Civ. 4617, 2006 WL 197036 at *4 (S.D.N.Y. Jan. 25, 2006); Constance Sczesny Trust v. KPMG LLP, 223 F.R.D. at 324; Ferrari v. Impath, Inc., 03 Civ. 5667, 2004 WL 1637053 at *5 (S.D.N.Y. July 20, 2004); Fitzgerald v. Citigroup, Inc., 03 Civ. 4305, 2004 WL 613107 at *4 (S.D.N.Y. Mar. 26, 2004); In re AOL Time Warner, Inc. Sec. & "ERISA" Litig., No. MDL 1500, 2003 WL 102806 at *2 (S.D.N.Y. Jan. 10, 2003); Fed. R. Civ. P. 23(a)(4).

18

Johnson, however, contends that Thesling has interests that are antagonistic to other class members because he submitted multiple defective certifications, and thus should be disqualified as lead plaintiff.  Specifically, Johnson asserted that

> Thesling's initial certification:  (i) expressly states that Thesling is unwilling to serve as a lead plaintiff unless he is able to reach an agreement with his counsel that provides him with an acceptable amount of compensation; (ii) expressly indicates that Thesling is unwilling to certify that he "will not accept any payment for serving as a representative party on behalf of a class beyond the plaintiff's pro rata share of any recovery . . ."; (iii) directly contravenes the willingness and adequacy requirements of the PSLRA and Rule 23; (iv) precludes the applicability of adequacy as to Thesling; (v) subjects Thesling to unique defenses and issues that risk becoming a focus of the litigation, especially in connection with a class certification motion; and (vi) represents an improper and illegal payment arrangement.  Thus, the representations contained in Thesling's initial certification in violation of the requirements of the PSLRA provide ample evidence that Thesling cannot, or will not, fairly and adequately protect the interests of the class, and also demonstrate that Thesling is more interested, or at least equally interested, in securing compensation for himself than in undertaking to represent the interests of absent class members without compensation.

(Dkt. No. 27: 10/2/07 Johnson Reply. Br. at 2-3.)[17]

In response, Thesling filed an amended certification deleting the language "'as long as acceptable compensation has been agreed to,'" and submitted an affidavit stating that he was "assur[ing] the Court that [his] participation [in this action] is not conditioned on any agreement for reimbursement of any types of expenses or lost wages[, and that] no such agreement and nothing of the kind has ever been stated in any form of retainer or engagement letter from [his] attorneys to

---

[17]    Thesling's initial Certification stated that:  "I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary (as long as acceptable compensation has been agreed to)."  (9/11/07 Squitieri Aff. Ex. D, emphasis added.)

19

[him] nor ha[s he] suggested the inclusion of any such agreement in any engagement letter." (Dkt. No. 29: 10/2/07 Squitieri Aff. ¶¶ 3-5 & Ex. A: Thesling Aff. ¶¶ 2-5, 9; see also Dkt. No. 23: 9/25/07 Squitieri Aff. Ex. A: 9/25/07 Thesling Rev. Cert. ¶ 3; Dkt. Nos. 36 & 41: 10/5/07 & 10/15/07 Thesling Rev. Certs. ¶ 3.) Squitieri also assured the Court that Thesling "is not in any position to collude with the defendants against the interests of the class in order to obtain some personal compensation – any award to Thesling must be approved by the Court and must be pursuant to the PSLRA. . . . Thesling has withdrawn the original certificate to make perfectly clear that it was never his intention to obtain something not authorize[d] by the PSLRA." (Dkt. No. 28: 10/2/07 Thesling Reply Br. at 2; see also 10/2/07 Squitieri Aff. ¶¶ 3-5; 9/25/07 Squitieri Aff. ¶¶ 4, 7.)

Johnson responded that Thesling's revised certification, dated October 5, 2007 and filed October 9, 2007, "was not properly sworn under penalty of perjury and is, therefore, defective" because (1) the certification referenced a statute incorrectly[18] and (2) "the statute requires that the certification include an indication that it was '[E]xecuted on . . .' a particular date, [but] Mr. Thesling's 'certification' contains only an indication that the form of certification was, at some point, dated October 5, 2007 ('Dated: October 5, 2007')." (Dkt. No. 38: 10/10/07 Johnson Surreply Br. at 1-2; see also 10/5/07 Thesling Rev. Cert. at 2.) Johnson concluded that "the repeated and continuous defects contained in the 'certifications' submitted by the Vladimir/Thesling Group pursuant to [the

---

[18] The certification referred to 18 U.S.C. § 1746 whereas the correct reference would be to Title 28. (See 10/5/07 Thesling Rev. Cert. at 2.)

20

PSLRA] provide additional evidence that Mr. Thesling is not an adequate class representative." (10/10/07 Johnson Surreply Br. at 2-3.)

In response to this Court's order,[19] Thesling filed a final revised certification correcting the reference to 28 U.S.C. § 1746. (See Dkt. No. 41: 10/15/07 Thesling Rev. Cert. at 2.) This final revised certification still said "Dated" as opposed to "Executed on." (Id.)

The Court believes that the reference to "18 U.S.C." instead of "28 U.S.C." was simply a typographical error (albeit one that should have been caught by counsel). The Court also accepts Thesling's and Squitieri's affidavits that the original phrase regarding compensation was merely sloppy drafting and that no hidden meanings were intended nor implied. The Court notes that defendants filed a statement of non-opposition stating that "[d]efendants do not intend, at this juncture of the case, to challenge Mr. Thesling's adequacy based on the statements made in, and then removed from, his certification." (Dkt. No. 37: Defs. Statement of Non-Opposition at 1.)

In addition, the Court finds that the "dated" language does not cause the certification to be defective. See, e.g., In re Smith Barney Transfer Agent Litig., 05 Civ. 7583, 2006 WL 991003

---

[19]     The order stated:

> Mr. Thesling is to submit a final certification, to correct the typographical and other errors pointed out in Mr. Johnson's surreply papers. The Court notes that while "typos" are a fact of life, Thesling's counsel at the least should be thoroughly embarrassed at the number of times it has had to file a corrected Thesling certification. This is the last one the Court will accept – get it 100% right. The final certification is to be filed by October 15, 2007.

(Dkt. No. 40: 10/11/07 Peck Order.)

at *5 (S.D.N.Y. Apr. 17, 2006) (holding that the proposed lead plaintiff's "certification complied with the PSLRA's requirements," even though "the certification indicates that [the representative] signed in December 2005," "a more precise date [was not] needed, and th[e] Court sees no reason to invalidate the certification on such grounds.").  Indeed, some courts have concluded that "it is unsettled whether a candidate for lead plaintiff who has not filed a complaint is even required to submit such a certificate."  Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. LaBranche & Co., 229 F.R.D. 395, 407 (S.D.N.Y. 2004) (citing cases).[20]

Moreover, the Court has discretion in the lead plaintiff appointment process and can decide to use or ignore the alleged technical (as opposed to substantive) inadequacy of a certificate as a determinative factor.  See, e.g., Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v.

_____

[20]    See also, e.g., Bhojwani v. Pistiolis, 2007 WL 2197836 at *8 ("[S]ince 'it is unsettled whether a candidate for lead plaintiff who has not filed a complaint is even required to submit [ ] a certificate,' at this stage of the litigation, the adequacy of the certificate should not be the determinative factor in selecting the lead plaintiff."); Aronson v. McKesson HBOC, Inc., 79 F. Supp. 2d 1146, 1155 (N.D. Cal. 1999) (concluding that only those filing a complaint need complete a certification, since "[i]t seems strained to recast the words 'filed with the complaint' to mean 'filed with the complaint or motion.' . . . [W]hile it might better effect Congress's overall goals of litigation reform to require a certification to be filed with the motion, the legislative history indicates that Congress knew that it was limiting the certification requirement to those who file complaints."); Blaich v. Employee Solutions, Inc., No. 97 Civ. 545, 1997 WL 842417 at *2 (D. Ariz. Nov. 21, 1997) (lead plaintiff candidate who did not file a complaint was not required to file a certification under the PSLRA); Greebel v. FTP Software, Inc., 939 F. Supp. 57, 61 (D. Mass. 1996) ("In light of the detailed revision of procedures under the PSLRA, this omission [to require that a certification be filed with a motion to be appointed lead plaintiff] does not appear to be an oversight.  Moreover, limiting the certification requirement to parties filing complaints is consistent with the Congressional purpose underlying the PSLRA. . . . to slow the race to the courthouse by so-called professional plaintiffs.").

22

LaBranche & Co., 229 F.R.D. at 407 ("In light of . . . the court's acknowledged discretion in conducting the [lead plaintiff] appointment process, the existence or adequacy of any certificates submitted here will not be considered a determinative factor at this stage, whatever the import of a certificate's adequacy may be at a later portion of the proceedings.") (fn. omitted).   Even if the Thesling certificate was defective because it used "dated" instead of "executed" (and the Court finds that it was not defective), "the Court could arguably waive [a certificate] requirement or any inadequacies in the certificates themselves.  Although the procedures contemplated by the PSLRA are well defined, district courts have not followed them invariably, especially when doing so would fail the court's ultimate obligation to appoint as lead plaintiff the member or members of the purported plaintiff class who are most capable of representing the interests of the class members." Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. LaBranche & Co., 229 F.R.D. at 407 (internal quotations omitted).

Accordingly, the Court finds no evidence that Thesling has any conflicts of interest, such as the existence of a unique defense or indications of collusion, which would render his interests antagonistic to that of other class members.  The Court holds that the Thesling movants have satisfied Rule 23(a)'s adequacy requirement.

**C.     The Presumption in the Thesling Movants Favor Is Not Adequately Rebutted**

In the final step of the lead plaintiff appointment process, any competing movants and any other members of the purported class are given the opportunity to rebut the presumption that the movant is the most adequate lead plaintiff.  "[T]his presumption may be rebutted only upon proof

by a member of the purported plaintiff class that the presumptively most adequate plaintiff . . . will not fairly and adequately protect the interests of the class; or . . . is subject to unique defenses that render such plaintiff incapable of adequately representing the class." Metro Servs. Inc. v. Wiggins, 158 F.3d 162, 164 (2d Cir. 1998); see 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); see also cases cited at page 9 n.8 above.  Based upon the analysis discussed above, the Court finds that Johnson has not set forth information sufficient to meet his burden to show that Thesling will not fairly and adequately protect the interests of the class, nor has Johnson adequately shown that Thesling is subject to any unique defenses.  See, e.g., Strougo v. Brantley Capital Corp., 243 F.R.D. 100, 105 (S.D.N.Y. 2007) ("Speculation and conjecture from one interested party is not enough to prove a nefarious collaboration."); Constance Sczesny Trust v. KPMG LLP, 223 F.R.D. 319, 324-25 (S.D.N.Y. 2004) ("[C]onclusory assertions of inadequacy are, however, insufficient to rebut the statutory presumption under the PSLRA without specific support in evidence of the existence of an actual or potential conflict of interest or a defense to which [the potential lead plaintiff] would be uniquely subject."); Sofran v. LaBranche & Co., 220 F.R.D. 398, 403-04 (S.D.N.Y. 2004) (emphasizing that the PSLRA requires proof of inadequacy and not mere speculation.).  Accordingly, the Court holds that Johnson has failed to adequately rebut the statutory presumption in favor of the Thesling movants acting as co-lead plaintiffs.

**D.    Thesling and Vladimir May Proceed Together As Co-Lead Plaintiffs**

The Court's analysis above has focused on Thesling.  Thesling (and Thesling's counsel) seek to also have Vladimir appointed as co-lead plaintiff.  This is not a situation where

aggregation is sought to create the largest loss; Thesling alone clearly is the movant with the largest loss, by far. Vladimir, however, brought the initial suit and is represented by the same law firm (the Squitieri firm) as is Thesling. Moreover, Johnson has not suggested that Vladimir should not be named co-lead plaintiff with Thesling. Johnson ignores Vladimir. The entire thrust of Johnson's briefs has been the attack on Thesling based on Thesling's certifications. According to Judge Scheindlin, the "majority view" "hold[s] that unrelated investors may aggregate under certain circumstances." In re eSpeed, Inc. Sec. Litig., 232 F.R.D. 95, 99 (S.D.N.Y. 2005) (citing cases). Noting that the PSLRA "was designed to favor institutional investors," Judge Scheindlin held:

> I conclude, therefore, that a group of unrelated investors should not be considered as lead plaintiff when that group would displace the institutional investor preferred by the PSLRA. But where aggregation would not displace an institutional investor as presumptive lead plaintiff based on the amount of losses sustained, a small group of unrelated investors may serve as lead plaintiff, assuming they meet the other necessary requirements.

In re eSpeed, Inc. Sec. Litig., 232 F.R.D. at 100.[21]

---

[21] See, e.g., In re Host Am. Corp. Sec. Litig., 236 F.R.D. 102, 106 & n.5 (D. Conn. 2006) ("The majority of courts considering the issue have taken an intermediate position, allowing a group of unrelated investors to serve as lead plaintiffs when it would be most beneficial to the class under the circumstances of a given case, but selecting only a few lead plaintiffs from within a larger group proposed by counsel." "The Securities and Exchange Commission ('SEC') takes the position that a group of no more than three to five investors should be appointed as lead plaintiffs, to ensure that the plaintiffs are able to maintain control of the litigation."); In re Star Gas Sec. Litig., No. 04 CV 1766, 2005 WL 818617 at *5 & n.2 (D. Conn. Apr. 8, 2005) (same); Weltz v. Lee, 199 F.R.D. 129, 132-33 (S.D.N.Y. 2001) (After reviewing cases and the PSLRA, "th[e] Court finds that the aggregation of more than one plaintiff for the purpose of moving for appointment of Lead Plaintiff is not facially invalid."). Moreover, the PSLRA itself clearly allows the appointment of multiple plaintiffs to manage the litigation. See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) (stating that a court must
(continued...)

25

Accordingly, the Court appoints Vladimir to be co-lead plaintiff along with Thesling.

## III.    SQUITIERI & FEARON IS APPOINTED LEAD COUNSEL

The lead plaintiff is empowered under the PSLRA to select and retain counsel to represent the class members, subject to the approval of the court. See 15 U.S.C. § 78u-4(a)(3)(B)(v). "'Giving the Lead Plaintiff primary control for the selection of counsel was a critical part of Congress' effort to transfer control of securities class actions from lawyers to investors.'" Fitzgerald v. Citigroup Inc., 03 Civ. 4305, 2004 WL 613107 at *4 (S.D.N.Y. Mar. 26, 2004); accord, e.g., Linn v. Allied Irish Banks, PLC, 02 Civ. 1738 & 02 Civ. 3168, 2004 WL 2813133 at *6 (S.D.N.Y. Dec. 8, 2004); Ferrari v. Impath, Inc., 03 Civ. 5667, 2004 WL 1637053 at *7 (S.D.N.Y. July 20, 2004); Schulman v. Lumenis, Ltd., 02 Civ. 1989, 2003 WL 21415287 at *6 (S.D.N.Y. June 18, 2003); In re Initial Public Offering Sec. Litig., 214 F.R.D. 117, 123 (S.D.N.Y. 2002); Skwortz v. Crayfish Co., 00 Civ. 6766, 2001 WL 1160745 at *7 (S.D.N.Y. Sept. 28, 2001). "[T]he court should generally employ a deferential standard in reviewing the lead plaintiff's choices." In re Cendent Corp. Litig., 264 F.3d 201, 274 (3d Cir. 2001), cert. denied, 535 U.S. 929, 122 S. Ct. 1300 (2002); accord, e.g., In re Smith Barney Transfer Agent Litig., 05 Civ. 7583, 2006 WL 991003 at *6 (S.D.N.Y. Apr. 17, 2007); In re Host Am. Corp. Sec. Litig., 236 F.R.D. 102, 105 (D. Conn. 2006); In re Star Gas Sec. Litig., No. 04 CV 1766, 2005 WL 818617 at *4 (D. Conn. Apr. 8, 2005). Although Thesling's

---

21/    (...continued)
appoint the "person or group of persons" that meets the PSLRA's rebuttable presumption's requirements); see also, e.g., In re Am. Bank Note Holographics, Inc. Sec. Litig., 93 F. Supp. 2d 424, 436 (S.D.N.Y. 2000) ("The nomination of a group of investors as co-lead plaintiffs is specifically contemplated by the PSLRA."); In re Milestone Scientific Sec. Litig ., 183 F.R.D. 404, 417 (D.N.J. 1998) ("The PSLRA expressly provides a 'group of plaintiffs' may be deemed most adequate plaintiffs.").

certifications may have been sloppily drafted by counsel, after review of the Squitieri firm résumé and cases in which the Squitieri firm has been appointed lead counsel, the Court finds no compelling reason to believe that Squitieri & Fearon, the Thesling movant's selection to serve as lead counsel, do not possesses the requisite experience to represent the interests of the class members. (See Dkt. No. 12: 9/11/07 Squitieri Aff. Ex. F: Squitieri & Fearon Résumé.) Accordingly, the Court approves the Thesling movant's selection of Squitieri & Fearon as lead counsel and appoints Squitieri & Fearon to serve as lead class counsel in this action.

## CONCLUSION

For the reasons stated above, the motion (Dkt. No. 11) to appoint the Thesling movants as co-lead plaintiffs and to approve Squitieri & Fearon as lead counsel is GRANTED. The motion (Dkt. No. 14) to appoint Johnson as lead plaintiff is DENIED.

SO ORDERED.

Dated:  New York, New York
     December 21, 2007

                  **Andrew J. Peck**
                  United States Magistrate Judge

Copies to:  Olimpio Lee Squitieri, Esq.
      Robert I. Harwood, Esq.
      Jason D'Agnenica, Esq.
      Christopher G. Green, Esq.
      Lee S. Gayer, Esq.
      Richard A. Rosen, Esq.
      Judge Sidney H. Stein