**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

BERT VLADIMIR, Individually and On Behalf
Of All Other Similarly Situated,

                Plaintiff,

    v.

BIOENVISION, INC., CHRISTOPHER B.
WOOD, JOSEPH P. COOPER, STEVEN A.
ELMS, MICHAEL G. KAUFFMAN, ANDREW
SCHIFF, JAMES S. SCIBETTA, and PERSEUS-
SOROS BIOPHARMACEUTICAL FUND, LP,

                Defendants.

Civil Action No. 07-CIV-6416

---

### MEMORANDUM OF LAW IN SUPPORT OF THE BIOENVISION DEFENDANTS' MOTION TO DISMISS THE PLAINTIFFS' SUPPLEMENTAL AMENDED CLASS ACTION COMPLAINT

John D. Donovan, Jr.
Christopher G. Green
Amy D. Roy
ROPES & GRAY LLP
One International Place
Boston, Massachusetts  02110-2624
(617) 951 7000

Lee S. Gayer
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, New York  10036-8784
(212) 596-9000

*Attorneys for Defendants Bioenvision, Inc.*
*Christopher B. Wood, Joseph P. Cooper,*
*Steven A. Elms, Michael G. Kauffman,*
*Andrew Schiff, and James S. Scibetta*

# TABLE OF CONTENTS

FACTUAL ALLEGATIONS ................................................................................................3

ARGUMENT ...................................................................................................................7

I.    THE COMPLAINT DOES NOT STATE A COGNIZABLE CLAIM UNDER
      SECTION 10(b) AND RULE 10b-5 ...............................................................................8

      A.    Defendants Did Not Have An Affirmative Duty To Disclose "Discussions" or
            "Ongoing Negotiations" About a Possible Merger With Genzyme .........................9

      B.    A Duty To Disclose Merger Discussions Was Not Triggered By Statements
            About Bioenvision's General Operations and Results ..........................................12

      C.    The Amended Complaint Fails To Meet The Heightened Standard For Scienter
            Established In *Tellabs* ...............................................................................................14

            1.    The Allegations Of "Motives to Defraud" Do Not Give Rise To A Cogent
                  And Compelling Inference Of Scienter .........................................................15

            2.    Plaintiffs Do Not Allege Specific Facts To Support Their Conclusory Claim
                  That Defendants Engaged in Conscious Misbehavior or Recklessness .........18

      D.    Plaintiffs Fail to Plead Materially Misleading Statements With The Requisite
            Particularity ...............................................................................................................20

II.   THE SECTION 20(a) CLAIMS FAIL BECAUSE THERE IS NEITHER A PRIMARY
      VIOLATION NOR CULPABLE PARTICIPATION .....................................................23

CONCLUSION ..............................................................................................................24

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Acito v. IMCERA Group, Inc.*, 47 F.3d 47 (2d Cir. 1995) ............................................................16

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) ...........................14, 23, 24

*Basic v. Levinson*, 485 U.S. 224 (1988) ................................................................................9, 12

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ..............................................................7

*Bogulavsky v. Kaplan*,159 F.3d 715 (2d Cir. 1998) ....................................................................23

*Castillo v. Dean Witter Discover & Co.*, No. 97-1272, 1998 WL 342050 (S.D.N.Y. Jun. 25, 1998) ..........................................................................................................................19

*Conley v. Gibson*, 355 U.S. 41 (1957) .........................................................................................7

*Endovasc Ltd., Inc. v. J.P. Turner & Co.*, No. 02-7313, 2004 WL 634171 (S.D.N.Y. Mar. 30, 2004) ..........................................................................................................................21

*Ferber v. Travelers Corp.*, 785 F. Supp. 1101 (D. Conn. 1991) ..................................................17

*Fisher v. SpecTran Corp.*, No. 99-12359, 2001 WL 34644311 (D. Mass. May 31, 2001)...........13

*Flamm v. Eberstadt*, 814 F.2d 1169 (7th Cir. 1987)...................................................................11

*Glazer v. Formica Corp.*, 964 F.2d 149 (2d Cir. 1992) .................................................................9

*Havenick v. Network Express, Inc.*, 981 F. Supp. 480 (E.D. Mich. 1997) ...................................21

*In re Alcatel Sec. Litig.*, 382 F. Supp. 2d 513 (S.D.N.Y. 2005) ..................................................22

*In re Canandaigua Sec. Litig.*, 944 F. Supp. 1202 (S.D.N.Y. 1996)............................................20

*In re Columbia Sec. Litig.*, 747 F. Supp. 237 (S.D.N.Y. 1990)....................................................11

*In re Deutsche Telekom AG Secs. Litig.*, No. 00-9475, 2002 WL 244597 (S.D.N.Y. Feb. 20, 2002)........................................................................................................................24

*In re Health Mgmt., Inc. Sec. Litig.*, No. 97-1865, 1998 WL 283286 (S.D.N.Y. Jun. 1, 1998)................................................................................................................................16

*In re MCI Worldcom, Inc. Sec. Litig.*, 93 F. Supp. 2d 276 (E.D.N.Y. 2000) .........................10, 11

*In re Morgan Stanley and Van Kampen Mutual Fund Sec. Litig.*, No. 03-8208, 2006 WL
1008138 (S.D.N.Y. Apr. 18, 2006)..................................................................................19

*In re Time Warner Sec. Litig.*, 9 F.3d 259 (2d Cir. 1993).....................................................8, 9, 11

*Jacobs v. Ramirez*, 400 F.3d 105 (2d Cir. 2005) ............................................................................7

*Kalnit v. Eichler*, 264 F.3d 131 (2d Cir. 2001) ....................................................................18, 19

*Lawton v. Nyman*, 327 F.3d 30 (1st Cir. 2003)............................................................................11

*Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005).........................................................8

*Phillips v. LCI Intern., Inc.*, 190 F.3d 609 (4th Cir. 1999) ..........................................................16

*Reiss v. Pan American World Airways, Inc.*, 711 F.2d 11 (2d Cir. 1983) ...............................11, 13

*Roeder v. Alpha Indus., Inc.*, 814 F.2d 22 (1st Cir. 1987) ..............................................................9

*Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004) ...................................................................20, 23

*San Leandro Emergency Med. Group v. Philip Morris Cos.*, 75 F.3d 801 (2d Cir. 1996)............16

*Schlanger v. Four-Phase Systems, Inc.*, 582 F. Supp. 128 (S.D.N.Y. 1990)................................13

*SEC v. Collins & Aikman Corp.*, No. 07-2419, 2007 WL 4480025 (S.D.N.Y. Dec. 21,
2007) .........................................................................................................................................14

*SEC v. First Jersey Secs., Inc.*, 101 F.3d 1450 (2d Cir. 1996) .....................................................23

*SEC v. Texas Gulf Sulphur*, 401 F.2d 833 (2d Cir. 1968)...............................................................9

*Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124 (2d Cir. 1994) ......................................... passim

*Staffin v. Greenberg*, 672 F.2d 1196 (3d Cir. 1982).....................................................................10

*Suez Equity Investors, L.P. v. Toronto Dominion Bank*, 250 F.3d 87 (2d Cir. 2001)...................24

*Tellabs v. Makor Issues Rights, Inc.*, 127 S. Ct. 2499 (2007)............................................. passim

## FEDERAL STATUTES

Fed. R. Civ. P. 9(b) ...................................................................................................8, 20, 21, 23

Fed. R. Civ. P. 12(b)(6)..................................................................................................................7

15 U.S.C.A. § 78t(a) ........................................................................................................23

15 U.S.C. § 78u-4(b)(2) ...................................................................................................24

**Preliminary Statement**

This is a putative securities class action.  The two co-lead plaintiffs sue on behalf of an ostensible class of sellers of shares of Bioenvision, Inc.  They claim that they were duped into prematurely disposing of their investment at a deflated price because they were fraudulently kept in the dark about "discussions" that led to a deal for Bioenvision to be acquired by Genzyme Corporation.  The pleading contends that the omission to disclose "ongoing negotiations" between the merger parties induced class members to sell, depriving them of the premium price that Genzyme ultimately paid.  The Amended Complaint asserts both that Bioenvision had an affirmative obligation to disclose pending "discussions" before the talks ripened into a deal, and that Bioenvision's periodic disclosures of its ongoing business performance were rendered misleading by the same omission.

Those twin theories are each untenable.  The Supreme Court has made it clear:  There is no duty to disclose "discussions" about a possible deal where a company has elected to remain silent.  To the contrary, silence about pending negotiations is both permissible and in investors' interest.  Premature disclosure of acquisition talks – which might never mature into a merger – could distort the bargaining process.  Until there is a "fact" warranting publication – an actual agreement to sell at a stipulated price – there is nothing to say that might not impair investor interests.  The law accordingly does not command disclosure.

Statements about general business operations and results likewise do not trigger an obligation to reveal pending parleys.  As a matter of law -- indeed, from the very text of Rule 10b-5 -- an omitted fact must be disclosed only if the information is "necessary" so that other "statements made" are rendered "not misleading."  But to *mis*lead means to lead in the *wrong* direction.  Statements about sales, prospects and performance do not lead in *any* direction about

organic transactions. Since Bioenvision's required periodic reports about its business did not *lead* shareholders to think that the Company would *either* be acquired *or* remain independent, the nondisclosure of negotiations could not have *mis*led them into thinking a deal was improbable. The plaintiffs' theory founders on its inability to graft any hint about a fundamental transaction onto Bioenvision's customary quarterly disclosures.

Apart from the pleading's inability to shoehorn its claim of fraudulent omission of "ongoing discussions" into a cognizable disclosure obligation, the Amended Complaint also suffers from the absence of a "cogent" and "compelling" theory of *scienter* that is "at least as compelling" as an inference of innocent nondisclosure. Here, the obvious inference is that Bioenvision kept its conversations with Genzyme concealed so that it would not queer the deal. Indeed, as the Amended Complaint recites, a possible transaction with Genzyme had already fallen through twice. Premature disclosure might make Genzyme balk, could increase the market price to irrational levels above what Genzyme was willing to pay, and threaten to shrink any acquisition premium. In short, confidentiality was essential to bargaining. The plaintiffs posit the countervailing idea that Bioenvision, its largest shareholder, and management kept news of the negotiations secret either to expedite a transaction, or to secure executives' jobs until closing so that change-of-control benefits would vest. But those notions are not inferences of *fraud.* They are perfectly consistent with the suggestion that management's motive for secrecy was the business imperative of getting a deal done; they do not begin to hint at purposeful deflation of the market price so that some investors would lose out on a premium. Of course, the plaintiffs' notions are also flatly at war with common sense. Bioenvision, its shareholders and management all stood to benefit from a *higher* market price and a *higher* purchase price from

Genzyme.  In the circumstances, the "inference" that the defendants set upon a course to *deflate* the stock price is neither "strong," "compelling," nor "cogent."  It is flatly implausible.

 As set forth below, the Amended Complaint should be dismissed with prejudice in its entirety.

## FACTUAL ALLEGATIONS

### A.    *Background*

Prior to its acquisition by Genzyme Corporation ("Genzyme") in October, 2007, Bioenvision, Inc. ("Bioenvision" or the "Company") was a small biopharmaceutical company that developed compounds and technologies for the treatment of cancer, autoimmune disease and infection.  (Amended Compl. at ¶ 25.)  Its "flagship product" was clofarabine, a drug developed for treatment of pediatric leukemia, among other indications.  *Id*.  Bioenvision and Genzyme co-developed this drug since December 2004 pursuant to the terms of a Co-Development Agreement under which Genzyme held the rights to manufacture and market the drug in the United States and Canada;  Bioenvision retained those rights in Europe and other parts of the world.  (Amended Compl. at ¶ 25; *see* Bioenvision, Inc., Definitive Proxy Statement (Schedule 14A), at 15–16 (Sept. 17, 2007)).

### B.    *Prior Failed Discussions Between Genzyme And Bioenvision*

Between 2005 and 2006, Genyzme and Bioenvision met "from time to time" to discuss licensing opportunities for clofarabine as well as "to explore the possibility that Genzyme would acquire Bioenvision outright."  (Amended Compl. at ¶ 26.)  The first discussions about potential licensing opportunities for clofarabine took place as early as June 2004.  *See, e.g.,* Bioenvision, Inc., Definitive Proxy Statement (Schedule 14A), at 17 (Sept. 17, 2007).  In June 2004, Genzyme verbally proposed to Bioenvision that it grant Genzyme the worldwide rights to clofarabine in

exchange for royalty and milestone payments. *Id.* This potential arrangement fell through when Bioenvision's Board of Directors determined that Genzyme's offer was too low. *Id.*

Genzyme first approached Bioenvision about acquiring the Company in the summer of 2005. Throughout the fall of 2005, the parties met numerous times to discuss due diligence and entered into a confidentiality agreement. *Id.* Like the previous licensing discussions, this potential merger also failed — this time, when Genzyme pulled out of merger discussions. *Id.* The filings made in connection with Genzyme's ultimate tender offer reveal that at the conclusion of the due diligence process in December 2005, Genzyme determined that the stock price had risen too high to make an attractive offer. *See* Amended Compl. at ¶ 26; *see also* Genzyme Corp., Offer to Purchase for Cash, at 18 (Jun. 4, 2007).

### C.   *Renewed Discussions Between Genzyme And Bioenvision*

Genzyme and Bioenvision resurrected merger discussions in early 2007. According to the Amended Complaint, in January, 2007, Genzyme and certain Bioenvision directors appointed by Bioenvision's largest shareholder, Perseus-Soros Biopharmaceutical Fund, L.P ("Perseus-Soros"),[1] "secretly agreed" to pursue a merger. (Amended Compl. at ¶ 28.)[2]

The Amended Complaint goes on to allege that merger discussions became "more involved" in March 2007. (Amended Compl. at ¶ 34.) On March 15, defendant Wood sent an e-mail to Bank of America (the investment adviser engaged by Genzyme) requesting a formal bid from Genzyme. *Id.* On April 11, 2007, Genzyme sent an initial indication of interest of $5.25

---

[1]     Defendant Perseus-Soros is submitting a separate motion to dismiss which address issues specific to Perseus-Soros.

[2]     As discussed below in this Memorandum, *see* Section I.D., this purported "factual" allegation amounts to triple hearsay, the ultimate source of which is unnamed, unidentified, and for which there is no indicia of reliability. Such an allegation cannot be the basis for a securities fraud claim under *Tellabs*.

per share to Bioenvision's Board and requested that due diligence begin. (Amended Compl. at ¶ 41.) Discussions between the parties and their financial and legal representatives continued throughout April. On April 24, 2007, the parties entered into a renewed confidentiality agreement. On April 30, 2007, Bioenvision provided due diligence materials to Genzyme. (Amended Compl. at ¶¶ 44–47.) In mid-May, Genzyme reiterated its offer of $5.25 per share. After further discussions, Genzyme raised the offer to $5.60 on May 25, 2007, and the parties agreed to proceed with the acquisition of Bioenvision for $5.60 per share of common stock. (Amended Compl. at ¶ 64.)

On May 28, Bioenvision's Board approved the final Merger Agreement. (Amended Compl. at ¶ 64.) The parties executed the Merger Agreement on May 29, 2007, and publicly announced the transaction on that day. Pursuant to the agreement, Genzyme immediately commenced a tender offer for shares of Bioenvision, offering to pay $5.60 per share; after the tender offer expired and Genzyme bought tendered shares, Bioenvision shareholders voted to adopt the Merger Agreement completing the transaction on October 22, 2007. *See, e.g.,* Press Release of Genzyme Corporation and Bioenvision, Inc., (Oct. 22, 2007).

### D.   *The Allegedly Misleading Statements*

The Amended Complaint sets forth block quotations from five different press releases, two SEC filings, and one presentation, all issued by Bioenvision between February 8, 2007 and May 9, 2007. The Amended Complaint then asserts that all of them contain "materially false and misleading" statements. (Amended Compl. at ¶¶ 30–59.) These various public statements made disclosures concerning Bioenvision generally, its business operations, its financial results, its progress in developing its products, and the risks it faced "in light of [its] limited operating history." (Amended Compl. at ¶ 59.) None of these statements contains any speculation or

denials about a merger with Genzyme or any other bidder. Nevertheless, the Amended Complaint asserts that the omission of any disclosures concerning merger discussions with Genzyme rendered all of these general operational disclosures "materially false and misleading." (Amended Compl. at ¶ 38.)

### E. *The Allegations of Scienter*

The Amended Complaint alleges that Bioenvision and the named individual defendants ("Individual Defendants"), all directors of Bioenvision, were allegedly "motivated to defraud" Bioenvision shareholders by intentionally refraining from disclosing the merger negotiations because they: (i) wanted to ensure that the merger would be consummated (Amended Compl. at ¶ 83); and (ii) wanted to obtain liquidity in their Bioenvision holdings (Amended Compl. at ¶ 81.) In addition, according to the Amended Complaint, defendants Wood and Scibetta wanted to keep their positions through the time of the merger in order to be eligible for a change-of-control bonus. (Amended Compl. at ¶ 84.)

### F. *Loss Causation and Damages*

The Amended Complaint alleges that defendants' false and misleading statements caused Bioenvision's shares to trade at artificially-deflated levels throughout the six-week class period. (Amended Compl. at ¶ 85.) According to the Amended Complaint, shares of Bioenvision "promptly went up" when Bioenvision announced the merger on May 29, 2007. (Amended Compl. at ¶ 86.) The Amended Complaint speculates that plaintiffs "would not have sold Bioenvision securities at the market prices that prevailed during the Class Period . . . if at all, had defendants . . . disclosed information about the Company's business and plan." (Amended Compl. at ¶ 94.)

### G.   *The Counts in the Amended Complaint*

The Amended Complaint purports to be brought on behalf of Bioenvision investors who sold their shares during the six-week period from April 11, 2007 to May 28, 2007 (the "Class Period"). (Amended Compl. at ¶ 18.) Count I of the Amended Complaint alleges that all defendants except Perseus-Soros violated Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 by failing to disclose the merger negotiations. (Amended Compl. at ¶ 96.) Count II of the Amended Complaint alleges that Perseus-Soros violated Section 10(b) of the Exchange Act and Rule 10b-5 on account of its failure to file an amendment to its December 21, 2004 Schedule 13D, all as part of an alleged "scheme to conceal" ongoing discussions held between Genzyme and Bioenvision. (Amended Compl. ¶¶ 98–100.) Count III alleges that both Perseus-Soros and the Individual Defendants violated Section 20(a) of the Exchange Act as "the controlling persons of Bioenvision." (Amended Compl. at ¶¶ 108–110.)

### ARGUMENT

The standard of judicial review of motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) is not as familiar as it once was. Dismissal of a complaint is no longer appropriate only where the plaintiffs can prove "no set of facts" in support of their claims that would entitle them to relief. *See Conley v. Gibson,* 355 U.S. 41, 45 (1957)*; Jacobs v. Ramirez*, 400 F.3d 105, 106 (2d Cir. 2005). The Supreme Court "retired" the "no set of facts" rubric of *Conley* in favor of a more rigorous review that requires a plaintiff to nudge his claims over the line from merely "conceivable" to truly "plausible." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1960 (2007). The plaintiffs' claims here do not meet the critical test of plausibility.

I.       **The Complaint Does Not State A Cognizable Claim Under Section 10(b) And Rule 10b-5**

To state a claim under Section 10(b) of the Exchange Act and Rule 10b-5, plaintiffs must allege with particularity that the defendants "(1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiff relied; and (5) that plaintiff's reliance was the proximate cause of their injury." *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 172 (2d Cir. 2005). A failure to disclose material information is actionable only when the defendant had an affirmative duty to disclose those facts. *See In re Time Warner Sec. Litig*., 9 F.3d 259, 267 (2d Cir. 1993).

Plaintiffs' Rule 10b-5 claim is defective for multiple, independently dispositive reasons. First, the Amended Complaint fails as a threshold matter because the defendants did not have a duty to disclose Bioenvision's ongoing merger discussions with Genzyme. There can be no liability for an omission absent a duty to disclose. Second, the Amended Complaint does not come close to meeting the heightened pleading standard for scienter recently established by the Supreme Court in *Tellabs*. The pleading does not advance a theory of scienter that is sufficiently "cogent" or "compelling" to meet the statutory condition that the inference be "strong." And it certainly does not suggest an inference of scienter that is "at least as compelling" as the obvious alternative inference for the nondisclosure the plaintiffs assert is actionable. Finally, the Amended Complaint fails to meet the particularity requirements of Rule 9(b) and the PSLRA because it does not identify specific statements that were misleading and explain *how* or *why* the statements were misleading.

**A.    Defendants Did Not Have An Affirmative Duty To Disclose "Discussions" or "Ongoing Negotiations" About a Possible Merger With Genzyme**

The Amended Complaint is predicated on the theory that the defendants had a positive duty to disclose merger discussions with Genzyme *before* a deal was struck.  The pleading repeats the theme over and again.  *See, e.g.,* Amended Complaint at ¶¶ 32, 39, 42, 53, 56, and 59. But as a matter of law, the claim is empty.  The United States Supreme Court and the Second Circuit have both unequivocally held that issuers have no duty to disclose ongoing merger negotiations, but instead may elect to remain silent.  *See Basic v. Levinson*, 485 U.S. 224, 239 n. 17 (1988) ("Silence, absent a duty to disclose, is not misleading under 10b-5.");  *In re Time Warner Sec. Litig.*, 9 F.3d at 267 ("[A] corporation is not required to disclose a fact merely because a reasonable investor would very much like to know that fact."); *Glazer v. Formica Corp.*, 964 F.2d 149, 156–57 (2d Cir. 1992) (affirming there can be no liability under Rule 10b-5 unless there is an affirmative duty to disclose).  Indeed, the defendants' research has disclosed no case in which a court has imposed a duty to disclose ongoing merger negotiations where the issuer remained silent concerning the subject of merger discussions or mergers generally.

The legal reasons underlying these conclusions are sound.  Section 10(b) of the Exchange Act and Rule 10b-5 are not mandatory disclosure edicts.  As antifraud measures, they authorize liability only where a disclosure obligation springs from some other source.  The law has identified three such roots:  (1) when the SEC's periodic and other rules require a specific disclosure, *see, e.g.*, *Glazer*, 964 F.2d at 157 (2d Cir. 1992) (citing *Roeder v. Alpha Indus., Inc.*, 814 F.2d 22, 27 (1st Cir. 1987)); (2) when trading in securities -- the familiar "disclose or abstain" rule, *see, e.g., SEC v. Texas Gulf Sulphur*, 401 F.2d 833, 848 (2d Cir. 1968); and (3) when disclosure is "necessary" to make "statements made . . . not misleading" under Rule 10b-5(b).  *See, e.g., Roeder*, 814 F.2d at 27 (no affirmative disclosure duty absent implication of

other source); *Glazer*, 964 F.2d at 157 (same).  Here none of those triggers is implicated.  There is nothing in the SEC's rules that requires disclosure of ongoing merger discussions.  The regulations mandate disclosure of definitive agreements for fundamental transactions.  *See, e.g.*, Current Report (Form 8-K), Item 1.01 and Instruction 1.  But nothing in them obliges registrants either to publicize merger conversations or to predict their outcome.  Likewise, and self-evidently, the "disclose or abstain" rule has no bearing here.  The pleading says nothing about any defendant trading Bioenvision stock.  The pleading merely alleges that Perseus-Soros exercised warrants.  (Amended Compl. at ¶ 51.)  So far as the Amended Complaint reveals, all defendants were "abstaining" from trading and thus had no duty to "disclose."  Finally, as described in greater detail below, the Amended Complaint does not point to a statement about a possible transaction that was rendered misleading by the omission to say talks existed.  Having said nothing about the possibility of an acquisition, the failure to disclose ongoing discussions couldn't mislead shareholders into thinking a transaction was *either* improbable *or* inevitable. *See In re MCI Worldcom, Inc. Sec. Litig.*, 93 F. Supp. 2d 276, 280 (E.D.N.Y. 2000) ("Had MCI replied 'no comment' to questions about the merger, and said nothing more, the complaint would not state a cause of action for securities fraud.").

The absence of a rule compelling disclosure of merger talks whenever they exist has practical as well as legal roots.  Requiring public companies to disclose ongoing merger and other strategic discussions at early stages could induce multiple adverse effects on investors.  Such premature disclosures could thwart the initiation of merger negotiations in the first place; they could distort the bargaining process by affecting market price and the perceptions of both buyer and seller; and they could thus impair or altogether undermine management's ability to conduct negotiations under terms most favorable to shareholders.  *See Staffin v. Greenberg*, 672

F.2d 1196, 1206 (3d Cir. 1982), *rev'd on other grounds*, 485 U.S. 224 (1988) (disclosure of preliminary merger negotiations may cause breakdown of negotiations and consequent loss to shareholders of valuable merger premiums); *see also Lawton v. Nyman*, 327 F.3d 30, 40 (1st Cir. 2003) ("premature disclosure could itself do more harm than good in a publicly traded market, because it could lead to inflation of the stock price which might prevent the sale or merger") (citing *Flamm v. Eberstadt*, 814 F.2d 1169, 1176 (7th Cir. 1987)). The Second Circuit has rejected rules compelling disclosure when disclosure would adversely affect the negotiations themselves for precisely those reasons.[3] *See Reiss v. Pan American World Airways, Inc.*, 711 F.2d 11, 14 (2d Cir. 1983) (stating that investors are not well served by a rule compelling disclosure when disclosure would adversely affect negotiations).

To be sure, public companies that *elect* to speak publicly about mergers or acquisitions must speak truthfully and completely. Having chosen to speak, issuers may not then make materially false or misleading statements. *See In re Time Warner*, 9 F.3d at 268 ("Having publicly hyped strategic alliances, Time Warner may have come under a duty to disclose facts that would place the statements concerning strategic alliances in a materially different light); *see also In re Columbia Sec. Litig.*, 747 F. Supp. 237, 243 (S.D.N.Y. 1990) (plaintiff sufficiently pled that defendants' affirmative denial of merger negotiations was materially misleading due to defendants' extensive ongoing merger negotiations); *see also In re MCI*, 93 F. Supp. 2d at 280 (duty to disclose arose only once the company spoke about and affirmatively denied its merger

---

[3]      Bioenvision's judgment to refrain from disclosing the preliminary merger discussions with Genzyme was particularly reasonable and prudent in these circumstances. As referenced in the Amended Complaint, Genzyme and Bioenvision had engaged in merger discussions before, only to have them fail. (Amended Compl. at ¶ 26.) SEC filings made in connection with Genzyme's June 4, 2007 tender offer reveal that at the conclusion of an earlier due diligence process in December 2005, Genzyme determined that the stock price had risen too high to make an attractive offer. *See* Genzyme Corp., Offer to Purchase for Cash, at 18 (Jun. 4, 2007). To disclose the initial discussions and jeopardize the potential merger would have potentially *undermined* shareholder interests, not the opposite as the Amended Complaint asserts.

intentions). This rule, too, only stands to reason. While public companies may remain silent concerning merger discussions and other strategic options, thereby leaving the market to its own speculation, a company may not mislead the market by commenting on merger discussions.

Indeed this is precisely what the Supreme Court said in *Basic v. Levinson*, 485 U.S. 224, 239 n. 17 (1988). In *Basic*, the Supreme Court addressed the materiality of merger negotiations, and held that materiality must be assessed by balancing the magnitude of the transaction and the probability of its consummation. *Id*. at 238. But *Basic* also confirmed that whether merger discussions are material or not, they must only be disclosed if there is a duty to do so. *Id*. at 239 n. 17. The Supreme Court's analysis of that issue confirmed that there was no independent affirmative duty to disclose and that silence is permissible. *Id*. ("Silence, absent a duty to disclose, is not misleading under Rule 10b-5."). This means that having said nothing about merger discussions, the defendants' continued silence was authorized.

Here, there is no allegation -- nor could there be -- that the defendants made any affirmative misstatements concerning the existence or non-existence of merger discussions (or anything else about mergers for that matter). There is no allegation that the defendants denied the existence of merger negotiations, or denied any interest in pursuing a possible merger. In short, because the law recognizes the defendants' right to refrain from making preliminary disclosures that could impair the merger negotiations and shareholder value, and does not impose an affirmative obligation to speak, the Amended Complaint does not state a cause of action.

## B.    A Duty To Disclose Merger Discussions Was Not Triggered By Statements About Bioenvision's Operations and Results

The Amended Complaint strains to locate a statement about mergers in Bioenvision's SEC filings and press releases preceding the merger announcement. The only statements recited

in the Amended Complaint are multi-page block quotations that contain the most generic information about Bioenvision's normal business operations. For example, the plaintiffs claim that Bioenvision's statements that the Company "remain[ed] focus[ed] on continuing to execute on our global development and commercialization strategy for Evoltra in the months ahead," and that the Company's "primary focus is the acquisition, development and marketing of compounds and technologies for the treatment of cancer" were materially misleading. (Amended Compl. at ¶¶ 30, 50.) These statements were self-evidently not about mergers or merger discussions. These are the most general and high-level statements a company could conceivably make about its business and operations. *See Schlanger v. Four-Phase Systems, Inc.*, 582 F. Supp. 128, 133 (S.D.N.Y. 1990) (no duty to disclose merger negotiations in the context of an otherwise truthful statement) (citing *Reiss*, 711 F.2d at 14); *see also Fisher v. SpecTran Corp.*, No. 99-12359, 2001 WL 34644311, *3–4 (D. Mass. May 31, 2001) (applying the Second and Third Circuits' duty to disclose tests, the court found no duty to update financial projections announced at a time when defendants were hoping for a merger because the statements themselves did not address defendants' prospects for a merger). Because a statement about the Company's "primary focus" does not lead an investor to believe anything about the prospect for an acquisition – either that it was possible, impossible, probable or predestined – the omission to disclose "ongoing discussions" could not conceivably *mis*lead an investor in the *wrong* direction about a fundamental transaction. Statements that did not raise the *subject* of mergers therefore do not impose a duty to disclose all material information concerning merger discussions.

The Amended Complaint nonetheless makes the sweeping allegation that defendants' disclosures relating to the Company's normal business operations gave rise to a duty to disclose "*all material information regarding Bioenvision's business, or capital structure or independence*

*being considered by the Company.*"  (Amended Comp. at ¶¶ 32, 39, 50, 53.) (emphasis supplied).

That is simply incorrect as a matter of law.

> ### C.     The Amended Complaint Fails To Meet The Heightened Standard For Scienter Established In *Tellabs*

Independent of the fact that the defendants did not have a duty to disclose the merger

discussions, the Amended Complaint does not even come close to meeting the heightened

standard for scienter established by the Supreme Court's ruling in *Tellabs*.  *See Tellabs v. Makor*

*Issues Rights, Inc.*, 127 S. Ct. 2499, 2510 (2007).  A securities fraud complaint must, "with

respect to each act or omission . . . , state with particularity facts giving rise to a *strong inference*

that the defendant acted with the required state of mind."  *Id.* at 2516 (emphasis supplied)*; see*

*also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007)*.*  Under *Tellabs*,

an inference is considered "strong" only if it is "more than merely 'reasonable' or 'permissible' -

- it must be cogent and compelling."  *Tellabs*, 127 S. Ct. at 2510.  Recognizing that this standard

"'unequivocally raise[d] the bar for pleading scienter,'" the Supreme Court held that a securities

fraud complaint will survive only where the inference of scienter raised by the plaintiff is "*at*

*least* as compelling as any opposing inference one *could* draw from the facts alleged." *Id*.

(emphasis added).  The Supreme Court noted that omissions and ambiguities -- as alleged here --

weigh against inferring scienter.  *Id*. at 2511.

Thus, to satisfy the scienter requirement following the Supreme Court's ruling in *Tellabs*,

the Amended Complaint must allege facts that give rise to a cogent and compelling inference

that the defendants either (i) were "motivated to commit fraud" or (ii) engaged in "conscious

misbehavior or recklessness." *ATSI Commc'ns*, 493 F.3d at 99; *SEC v. Collins & Aikman Corp.*,

No. 07-2419, 2007 WL 4480025 (S.D.N.Y. Dec. 21, 2007).

Here, the obvious inference to be drawn from the allegations is that Bioenvision kept the discussions with Genzyme confidential in order to maximize the likelihood of reaching an agreement that would benefit all of Bioenvision's shareholders. As the Amended Complaint acknowledges, prior discussions with Genzyme had failed, and premature disclosures might again cause Genzyme to withdraw. (Amended Compl. at ¶ 26.) Premature disclosure could prompt speculation in the market that would cause any merger price to rise above what Genzyme was willing to pay. Confidentiality thus protected shareholders' interests in consummating a transaction at the highest premium attainable.

Against this obvious inference of innocent nondisclosure, the Amended Complaint posits the theories that Bioenvision and the Individual Defendants kept the negotiations confidential either to expedite a transaction or to secure their jobs until closing in order to trigger change-of-control benefits.[4] (Amended Compl. at ¶ 84.) The Amended Complaint advances the alternative theory of scienter that, even if the defendants were not motivated to commit fraud, they were reckless. (Amended Compl. at ¶¶ 78, 82.) As discussed below, neither theory complies with the stringent standard established in *Tellabs*.

### 1.    The Allegations Of "Motives to Defraud" Do Not Give Rise To A Cogent And Compelling Inference Of Scienter

In order to establish that the defendants had a motive to commit securities fraud, the Amended Complaint must allege that the defendants would realize improper personal benefits from the alleged false statements and omissions. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1130 (2d Cir. 1994). It is well-established that motives possessed by virtually all corporate insiders, including the desire to maintain executive positions and compensation are not

---

[4]    The Amended Complaint also posits the theory that Perseus-Soros was motivated to defraud Bioenvision shareholders in order to obtain liquidity in its Bioenvision holdings. Perseus-Soros is addressing the defects in that theory in its memorandum in support of its motion to dismiss.

considered improper personal benefits and therefore do not give rise to the requisite "strong inference" of scienter. *See id*. at 1130 (holding that mere assertion that executives aim to prolong their positions they hold does not support inference of scienter); *see also Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 54 (2d Cir. 1995) (holding that desire to maintain high stock price, even if the alleged purpose is to increase executive compensation, is not a sufficient "personal benefit" to meet the motive requirement).

The Amended Complaint imputes to the defendants only two purported "motives to defraud," neither of which are actionable and give rise to a compelling inference of scienter.

First, the Amended Complaint alleges that defendants sought to purposefully deflate the price of Bioenvision securities "in order to ensure that Genzyme could quickly acquire Bioenvision for cash." (Amended Compl. at ¶ 83.) To begin with, this allegation imputes no personal concrete benefit to the defendants. The merger inured equally to the benefit of all Bioenvision shareholders. But moreover, it is well-established that the desire to complete a transaction is common to every corporate merger and is not sufficient to establish scienter. *See In re Health Mgmt., Inc. Sec. Litig.*, No. 97-1865, 1998 WL 283286, at *6 n. 4 (S.D.N.Y. Jun. 1, 1998) (holding that a defendant's "desire to consummate [a] corporate transaction does not constitute a motive for securities fraud.") (citing *San Leandro Emergency Med. Group v. Philip Morris Cos*., 75 F.3d 801, 814 (2d Cir. 1996)); *see also Phillips v. LCI Intern., Inc.*, 190 F.3d 609, 621–23 (4th Cir. 1999) (in merger context, plaintiff's allegations that director sought to depress the stock price to assure the success of a merger did not constitute an adequate motive). In this regard, the case law recognizes the obvious: the desire to complete a transaction is a motive that is, by definition, common to all mergers and acquisitions. As a result, one cannot

state a claim for securities fraud on that allegation, particularly in circumstances like these where there is no personal benefit alleged.

Second, plaintiffs allege that defendants Wood and Scibetta were motivated to conceal or misrepresent information regarding the merger in order "to keep their positions through the time of the merger in order to be eligible for [the] change of control bonus." (Amended Compl. at ¶ 84.)  This claim likewise fails because a desire to maintain employment is a proper business motive possessed by virtually all corporate executives.  *See Shields*, 25 F.3d at 1130 (desire to maintain executive positions and compensation is not considered a concrete personal benefit and therefore does not give rise to a strong inference of scienter).  If motive could be pled by alleging the defendant's desire for continued employment, "the required showing of motive and opportunity would be no realistic check on aspersions of fraud, and mere misguided optimism would become actionable under securities laws."  *Id.*; *see also Ferber v. Travelers Corp.*, 785 F. Supp. 1101, 1107 (D. Conn. 1991) ("Incentive compensation can hardly be the basis on which an allegation of fraud is predicated.  On a practical level, were the opposite true, the executives of virtually every corporation in the United States could be subject to fraud allegations.").

Moreover, the consummation of *any* deal with Genzyme would trigger executive benefits, so the vesting of benefits would not give Wood and Scibetta any incentive to secure a deal with a deflated price. This is especially so given that such a deflated deal would *undervalue* their *own* interests in Bioenvision.  Nor would the vesting of benefits give Wood and Scibetta any incentive to keep shareholders in the dark about merger discussions.  Their benefits would vest no matter what the price, and no matter what shareholders knew about the status of negotiations.

These allegations of motive do not give rise to *any* inference of fraudulent intent, let alone one that is "at least as compelling" as other "plausible nonculpable explanations." *Tellabs*, 127 S. Ct. at 2510. The only cogent and compelling inference that can be drawn from the facts alleged is that the defendants refrained from disclosing the uncertain and ongoing merger discussions in order to preserve a merger opportunity that stood to maximize shareholder value and benefit all Bioenvision shareholders.

> ### 2.     Plaintiffs Do Not Allege Specific Facts To Support Their Conclusory Claim That Defendants Engaged in Conscious Misbehavior or Recklessness

Where plaintiffs have failed to plead scienter by showing that defendants possessed the motive and opportunity to defraud, the Amended Complaint can only survive dismissal if it alleges facts giving rise to a strong inference of "conscious misbehavior or recklessness." *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001). The strength of the circumstantial allegations, however, must be correspondingly greater where motive has not been sufficiently shown. *Id.* In the securities fraud context, recklessness is not "merely enhanced negligence," but is "highly unreasonable [conduct] . . . which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Id.* (citations and quotations omitted). Although the Amended Complaint makes the conclusory allegation that defendants "knew and/or recklessly disregarded" the allegedly false and misleading nature of statements issued to the public, and that they "knew or recklessly disregarded" that such statements would be issued to the public (Amended Compl. at ¶¶ 78, 82), this alternative theory of scienter is not adequately pled for two independently dispositive reasons.

First, the Amended Complaint fails to identify specific statements from which information was recklessly and misleadingly omitted. *See Kalnit*, 264 F.3d at 144. In *Kalnit*, the Second Circuit distinguished between cases involving affirmative misstatements and a failure to disclose merger negotiations, holding there was no strong inference of recklessness where plaintiff's claim was based on nondisclosure, and where, as here, the facts did not indicate a clear duty to disclose. *Id.* To the extent the Amended Complaint alleges that the highly general statements concerning Bioenvision's intention to continue with its normal business operations were somehow reckless, this allegation does not hold because nothing about the ongoing merger discussions with Genzyme rendered those statements false in any way. Unlike the cases in which courts have found scienter based on recklessness, defendants' knowledge of facts or information in this case in no way contradicted or refuted the public statements they made. Plaintiffs fail to reference a single document or conversation that contradicts any of Bioenvision's public statements that concerned normal business operations unrelated to mergers or acquisitions.

Second, courts have held that where there is not a clear and well-established duty to disclose certain information, defendants cannot be held to be "reckless" for refraining from disclosing that information. *See In re Morgan Stanley and Van Kampen Mutual Fund Sec. Litig.*, No. 08-8208, 2006 WL 1008138, at *11 (S.D.N.Y. Apr. 18, 2006) (reasoning that since defendants complied with the SEC's disclosure requirements, and "could [have] reasonably believe[d] that the law did not require disclosure of the allocation of differential broker compensation or sale contests," plaintiff failed to demonstrate the required intent or recklessness to establish scienter); *Castillo v. Dean Witter Discover & Co.*, No. 97-1272, 1998 WL 342050, at *11 (S.D.N.Y. Jun. 25, 1998) (holding defendants could not have acted with scienter in failing to

disclose certain information where the duty to disclose such information was not well-established); *In re Canandaigua Sec. Litig*., 944 F. Supp. 1202, 1213 (S.D.N.Y. 1996) (rejecting plaintiff's scienter allegations where the complaint failed to show that defendants knew they had a duty to disclose).  In this case, far from a clear and well-established duty to disclose the merger discussions, the defendants had a well-established right to remain silent concerning ongoing merger discussions, and in this case, did so for the *benefit* of shareholders.  As a result, their decision to exercise that right and to refrain from disclosing the merger discussions cannot be held to be "reckless."

Furthermore, this District Court has required that a plaintiff allege facts showing that defendants *knew* they had a duty to disclose in order to establish recklessness.  *See In re Canandaigua*, 944 F. Supp. at 1213 (rejecting plaintiff's scienter allegations because "plaintiff . . . alleged neither any statement that is false or misleading, affirmatively or through omission, nor any facts that suggest defendants knew they had a duty to disclose).  The Amended Complaint fails to allege specific facts suggesting that the defendants had any *actual knowledge* that they had a duty to disclose the merger discussions.

For these reasons, the alternative theory of scienter is not adequately pled.

### D.  Plaintiffs Fail to Plead Materially Misleading Statements With The Requisite Particularity

Under Rule 9(b) and the PSLRA, a plaintiff may not lift multi-page block quotations from an issuer's SEC filings and then leave the defendants and the Court to hunt through the cut-and-pasted sections to identify the plaintiff's theory as to what statements may somehow be misleading and *why* they are so.  *See Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (plaintiff must "specify each statement alleged to have been misleading" *and* set forth "reasons

why the statement is misleading."). But here, that is precisely what the plaintiffs have done. The plaintiffs have simply cut-and-pasted a list of lengthy block quotations from seven press releases and reports issued by Bioenvision between February 8, 2007 and May 9, 2007, and then made the conclusory allegation that the block quotes were misleading. *See* Amended Compl. at ¶¶ 30, 37, 49, 52, 54, 55, 57–59. In one instance, for example, the block quote goes on for seven pages (and one portion of the block quote is inadvertently pasted twice). *See* Amended Compl. at ¶ 37. This is not sufficient. *See Endovasc Ltd., Inc. v. J.P. Turner & Co.*, No. 02-7313, 2004 WL 634171, at *6 (S.D.N.Y. Mar. 30, 2004) (dismissing a plaintiff's complaint where the plaintiff "provided a laundry list of alleged false statements," but supported the alleged misstatements "only by sweeping, conclusory allegations that lack[ed] particularity as to how the statements were untrue"). *Id*. at *9. As the court in *Havenick v. Network Express, Inc*. explained:

> "[N]owhere in the Complaint do Plaintiffs specify each statement that is allegedly false nor do they give a particular reason why a particular statement is false. Rather, they have simply complied [sic] a long list of block quotes, many of which contain statements that cannot seriously be regarded as false or misleading, and they line these statements up against a conclusory list of omissions and pronounce that fraud exists. Any notion of particularity and an underlying reason in light of the PSLRA certainly demands more than this."

981 F. Supp. 480, 526 (E.D. Mich. 1997). Plaintiffs' allegations of misleading statements represent exactly the type of generalized pleading that Rule 9(b) and the PSLRA were intended to prevent.[5]  *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1129 (2d Cir. 1994). This

---

[5]       Among the more egregious examples of the lack of requisite particularity in the Amended Complaint is the allegation of a "secret agreement" between Genzyme and Perseus-Soros in January 2007 (Amended Compl. at ¶ 28), which pre-dates the alleged Class Period by months and is therefore not legally relevant to the claim of liability and damages alleged in the Amended Complaint. Moreover, the allegation is based solely on an unnamed source referenced in a separate complaint relating to an entirely unrelated employment dispute, and that separate complaint was recently held by the New York Supreme Court to fall short of even basic notice pleading standards. *See* Transcript of Oral Argument at 9–10, Luci v. Bioenvision, Inc. et al., No. 111478-07 (N.Y.S.2d Dec. 19, 2007). This supposed "fact" contained within that defective complaint is not attributed to *any* source, much less a reliable

Court in *In re Alcatel Securities Litigation* might just as well have been describing the Amended

Complaint in this case when it stated:

> "Although Plaintiff's . . . Amended Complaint is long, it states very little with particularity.  Plaintiff list various statements[,] often setting forth lengthy quotations from various releases[,] . . . then follow each with a similar (in most cases identical) laundry list of "specific" reasons why the statements are allegedly false. . . . Plaintiff neglect to make it clear what portion of each quotation constitutes a false representation, or which statements link up with which issues in the laundry list, placing the burden on the Court to sort out the alleged misrepresentations and then match them with the corresponding adverse facts.  This method is deficient under the pleading standards."

382 F. Supp. 2d 513, 534 (S.D.N.Y. 2005).

As discussed above, *see* Section I.A., in only two instances does the Amended Complaint

even attempt to identify a specific statement within a recited block quotation that is allegedly

false or misleading, including Bioenvision's statements:

- In the February 8, 2007 Press Release that "We remain focused on continuing to execute on our global development and commercialization strategy in Evoltra in the months ahead."  (Amended Compl. at ¶ 30.)
- In the May 1, 2007 Press Release that "Bioenvision's primary focus is the acquisition, development and marketing of compounds and technologies for the treatment of cancer."  (Amended Compl. at ¶ 49.)

The Amended Complaint, however, does not allege *how* or *why* either of these statements is

false, or why it misleads about the possibility of merger discussions.  As discussed above (*see*

Section I.A.), there is nothing about either of the two statements cited above that has anything to

do with mergers or merger discussions, and as a result, neither statement would lead an investor

to think a possible merger was inevitable or improbable.  Any ongoing merger discussions were

wholly independent of -- and did not even bear on -- the fact that Bioenvision's business was in

---

one.  Furthermore, there is no allegation whatsoever about the particular terms of any so-called "agreement," and the allegation thus fails on its face to give rise to any duty of disclosure.

the "acquisition, development and marketing of compounds and technologies for the treatment of cancer."

This Amended Complaint, which contains only non-particularized multi-page block quotations, does not come close to meeting the particularity requirements of Rule 9(b) and the PSLRA, and must therefore be dismissed.

## II.    The Section 20(a) Claims Fail Because The Underlying Section 10(b) Claim Fails And There Are No Allegations of Culpable Participation

To state a claim under Section 20(a) of the Exchange Act, plaintiffs must show: (1) that Bioenvision committed an underlying violation; (2) that the defendants controlled Bioenvision; and (3) "that [each defendant] was in some meaningful sense a culpable participant in the primary violation." *Bogulavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998) (quoting *SEC v. First Jersey, Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996)); *see also* 15 U.S.C.A. § 78t(a). The Amended Complaint fails to state a Section 20(a) claim for two independently dispositive reasons:

First, and as discussed above at length, there are insufficient allegations of an underlying violation. It is axiomatic that where a plaintiff "fails to allege any primary violation . . . it cannot establish control person liability." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99, 108 (2d Cir. 2007); *see also Rombach v. Chang*, 355 F.3d 164, 177–78 (2d Cir. 2004) ("Each of these [§ 20(a)] claims is necessarily predicated on a primary violation of securities law. Because we have already determined that the district court properly dismissed the primary securities claims against the Individual Defendants, these secondary claims must also be dismissed."); *First Jersey Secs.* 101 F.3d at 1472 ("In order to establish a prima facie case of controlling-person liability, a plaintiff must show a primary violation by the controlled person . . . ."); *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1132 (2d Cir. 1994) (holding that "because we find that

the primary violation asserted by [the plaintiff] is not adequately pleaded . . . we also find no error in the district court's dismissal of the claims of secondary liability under § 20 of the 1934 act . . . .").  Because plaintiffs' claim of a primary Section 10(b) violation fails for the reasons provided above, the Section 20(a) claims necessarily fail.

Second, the Amended Complaint does not allege culpable participation as to each Individual Defendant.  The Second Circuit has made clear that culpable participation is an element of a control person claim under Section 20(a).  *See, e.g., ATSI Commc'ns,* 493 F.3d at 108; *Suez Equity Investors, L.P. v. Toronto Dominion Bank*, 250 F.3d 87, 101 (2d Cir. 2001); *Bogulavsky*, 159 F.3d at 720.  This Court has held that culpable participation must be pled for *each individual* defendant, and that facts must be alleged with "sufficient particularity that a strong inference is raised that the section 20(a) control person knew or should have known that the controlled person was engaging in fraudulent conduct."  *In re Deutsche Telekom AG Secs. Litig*., No. 00-9475, 2002 WL 244597, at *6 (S.D.N.Y. Feb 20, 2002) (Stein, J.) (quoting 15 U.S.C. § 78u-4(b)(2)).  The Amended Complaint alleges no such facts as to each Individual Defendant, and the claims must therefore fail.

## CONCLUSION

For the reasons provided above, the Amended Complaint should be dismissed with prejudice.

Dated: January 30, 2008
New York, New York

ROPES & GRAY LLP

By:   /s/ John D. Donovan, Jr.
John D. Donovan, Jr.
Christopher G. Green
Amy D. Roy
One International Place
Boston, MA 02210-2624
john.donovan@ropesgray.com
Telephone: (617) 951-7000
Facsimile: (617) 235-0023

Lee S. Gayer
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone (212) 596-9000

*Attorneys for Defendants Bioenvision, Inc.,
Christopher B. Wood, Joseph P. Cooper,
Steven A. Elms, Michael G. Kauffman,
Andrew Schiff, and James S. Scibetta*