UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BERT VLADIMIR, Individually and On
Behalf of All Others Similarly Situated,

Plaintiff,

v.

BIOENVISION INC., CHRISTOPHER B.
WOOD, JOSEPH P. COOPER, STEVEN
A. ELMS, MICHAEL G. KAUFFMAN,
ANDREW SCHIFF, JAMES S.
SCIBETTA, and PERSEUS-SOROS
BIOPHARMACEUTICAL FUND, LP,

Defendants.

Index No. 07-CIV-6416

Judge Sidney H. Stein

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

Dated: January 30, 2008

PAUL, WEISS RIFKIND, WHARTON & GARRISON LLP

Richard A. Rosen
1285 Avenue of the Americas
New York, NY 10019-6064

*Counsel for Defendant Perseus-Soros
Biopharmaceutical Fund, LP*

# TABLE OF CONTENTS

**Page(s)**

Preliminary Statement ................................................................................................. 1

Statement of Facts ...................................................................................................... 3

The Outstanding Perseus-Soros Schedule 13D Disclosure ............................... 3

Genzyme's Negotiations to Acquire Bioenvision .............................................. 3

The Role of Perseus-Soros ........................................................................................ 4

Genzyme and Bionenvision Negotiate and Engage in a Due Diligence Process ............... 5

Bioenvision and Genzyme Agree to the Merger ................................................. 6

Argument ...................................................................................................................... 6

I. THE COMPLAINT DOES NOT PLEAD THE "SECRET AGREEMENT"
   WITH THE PARTICULARITY REQUIRED BY THE PSLRA ........................... 6

II. THE FUND'S 13D FILING DID NOT VIOLATE § 10(b) OF THE
    SECURITIES EXCHANGE ACT OR RULE 10b-5 ........................................... 10

    A.    The Fund Had No Duty to File an Amended Schedule 13D Prior
   to a Definitive Deal ........................................................................................ 11

    B.    Plaintiffs Concede that No Duty to Disclose Arose Any Earlier
   than April 11, the First Day of the Class Period ...................................... 13

    C.    Plaintiffs Have Failed Adequately to Allege Scienter .............................. 14

        1.    The Complaint Does not Allege Facts That Raise an
      Inference of Scienter ............................................................................. 14

        2.    Perseus-Soros Had No Motive to Withhold Information in
      Violation of § 10(b) ............................................................................... 16

III. Plaintiffs Have Not Adequately Alleged Control Person Liability of Perseus-
     Soros .............................................................................................................. 17

    A.    Plaintiffs Must Plead Culpable Participation as an Element of a
   Control Person Violation ............................................................................. 18

    B.    Plaintiffs Have Failed to Plead Perseus-Soros' Culpable
   Participation .................................................................................................... 18

Conclusion ................................................................................................................... 19

## TABLE OF AUTHORITIES

Page(s)

CASES

*ATSI Comms., Inc.* v. *Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)..............................................................................................16, 18

*Azurite Corp. Ltd.* v. *Amster & Co.*,
    52 F.3d 15 (2d Cir. 1995)..............................................................................................11, 12

*Bogulavsky* v. *Kaplan*,
    159 F.3d 715 (2d Cir. 1998)..........................................................................................17, 18

*Castillo* v. *Dean Witter Discover & Co.*,
    No. 97 Civ. 1272 (RPP), 1998 WL 342050 (S.D.N.Y. June 25, 1998) ...................................15

*Cortec Indus., Inc.* v. *Sum Holdings L.P.*,
    949 F.2d 42 (2d Cir. 1991)...................................................................................................3

*Dresner* v. *Utility.com, Inc.*,
    371 F. Supp. 2d 476 (S.D.N.Y. 2005)....................................................................................8

*Druskin* v. *Answerthink, Inc.*,
    299 F. Supp. 2d 1307 (S.D. Fla. 2004) .................................................................................8

*Duncan* v. *Pencer*,
    No. 94 Civ. 0321 (LAP), 1996 WL 19043 (S.D.N.Y. Jan. 18, 1996)....................................17

*Electronic Specialty Co.* v. *International Controls Corp.*,
    409 F.2d 937 (2d Cir. 1969)...............................................................................................11

*Feasby* v. *Industri-Matematik Intern. Corp.*,
    No. 99 CIV 8761 (HB), 2000 WL 977673 (S.D.N.Y. July 17, 2000) .....................................8

*GAF Corp.* v. *Milstein*,
    453 F.2d 709 (2d Cir. 1971)...............................................................................................11

*Geiger* v. *Solomon-Page Group, Ltd.*,
    933 F. Supp. 1180 (S.D.N.Y. 1996)....................................................................................15

*Glickman* v. *Alexander & Alexander Serves., Inc.*,
    No. 93 Civ. 7594 (LAP), 1996 WL 88570 (S.D.N.Y. Feb. 29, 1996)....................................17

*Hallwood Realty Partners, L.P.* v. *Gotham Partners, L.P.*,
    286 F.3d 613 (2d Cir. 2002)...............................................................................................10

*Harrison* v. *Rubenstein*,
    No. 02 Civ. 9356 (DAB), 2007 WL 582955 (S.D.N.Y. Feb. 26, 2007) ...................................18

*Higginbotham* v. *Baxter Int'l, Inc.*,
    495 F.3d 753 (7th Cir. 2007) .......................................................................................10

*In re Canandaigua Secs. Litig.*,
    944 F. Supp. 1202 (S.D.N.Y. 1996)...............................................................................15

*In re Carter-Wallace, Inc. Secs. Litig.*,
    220 F.3d 36 (2d Cir. 2000)............................................................................................14

*In re Deutsche Telekom AG Secs. Litig.*,
    No. 00 Civ. 9475 (SHS), 2002 WL 244597 (S.D.N.Y. Feb. 20, 2002) ......................18

*In re Global Crossing, Ltd. Secs. Litig.*,
    322 F. Supp. 2d 319 (S.D.N.Y. 2004)...........................................................................18

*In re Global Crossing, Ltd. Secs. Litig.*,
    No. 02 Civ. 910 (GEL), 2005 WL 2990646 (S.D.N.Y. Nov. 7, 2005) ......................19

*In re Morgan Stanley & Van Kampen Mut. Fund Secs. Litig.*,
    No. 03 Civ. 8208 (RO), 2006 WL 1008138 (S.D.N.Y. Apr. 18, 2006)......................15

*In re Polaroid Corp. Secs. Litig.*,
    465 F. Supp. 2d 232 (S.D.N.Y. 2006)...........................................................................16

*In re Sierra Wireless, Inc. Secs. Litig.*,
    482 F. Supp. 2d 365 (S.D.N.Y. 2007)....................................................................3, 7, 10

*In re Veeco Instruments, Inc. Secs. Litig.*,
    235 F.R.D. 220 (S.D.N.Y. 2006) ..................................................................................10

*Kalnit* v. *Eichler*,
    264 F.3d 131 (2d Cir. 2001).........................................................................................14

*Lapin* v. *Goldman Sachs Group, Inc.*,
    506 F. Supp. 2d 221 (S.D.N.Y. 2006)...........................................................................18

*Lou* v. *Belzberg*,
    728 F. Supp. 1010 (S.D.N.Y. 1990)..............................................................................11

*Mishkin* v. *Ageloff*,
    No. 97 Civ. 2690 (LAP), 1998 WL 651065 (S.D.N.Y. Sept. 23, 1998)......................18

*Novak* v. *Kasaks*,
    216 F.3d 300 (2d Cir. 2000).........................................................................................10

*Pantry Pride, Inc.* v. *Rooney,*
  598 F. Supp. 891 (S.D.N.Y. 1984) ...................................................................14

*Raybestos-Manhattan, Inc.* v. *Hi-Shear Indus., Inc.,*
  503 F. Supp. 1122 (E.D.N.Y. 1980) ..............................................................12

*SEC* v. *Amster & Co.,*
  762 F. Supp. 604 (S.D.N.Y. 1991) ............................................................11, 12

*SEC* v. *McNulty,*
  No. 94 CIV. 7114 (MBM), 1996 WL 422259 (S.D.N.Y. July 29, 1996) ...............14

*Suez Equity Investors, L.P.* v. *Toronto-Dominion Bank,*
  250 F.3d 87 (2d Cir. 2001)............................................................................18

*Susquehanna Corp.* v. *Pan Am. Sulphur Co.,*
  423 F.2d 1075 (3d Cir. 1970)........................................................................12

*Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.,*
  127 S. Ct. 2499 (U.S. 2007)....................................................................14, 15

*Todd Shipyards Corp.* v. *Madison Fund, Inc.,*
  547 F. Supp. 1383 (S.D.N.Y. 1982)..........................................................12, 13

*Transcon Lines* v. *A.G. Becker, Inc.,*
  470 F. Supp. 356 (S.D.N.Y. 1979) ................................................................12

*U.S. ex rel. Doe* v. *Dow Chemical Co.,*
  343 F.3d 325 (5th Cir. 2003) ..........................................................................8

## STATUTES

15 U.S.C.A. § 78j(b) ......................................................................................6

15 U.S.C.A. § 78t(a) ....................................................................................17

15 U.S.C.A. § 78u-4(b) ..................................................................................7

## OTHER AUTHORITIES

17 C.F.R. § 240.10b-5....................................................................................6

Fed. R. Civ. P. 9(b) ...............................................................................1, 8, 10

Fed. R. Civ. P. 12(b)(6)...............................................................................1, 3

Defendant Perseus-Soros Biopharmaceutical Fund, LP ("Perseus-Soros") respectfully submits this memorandum of law in support of its motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

## Preliminary Statement

Plaintiffs' claims against Perseus-Soros are premised on its alleged failure to disclose a preliminary discussion in January 2007 about a potential transaction between Bioenvision, Inc. ("Bioenvision") and Genzyme Corporation ("Genzyme"). Although the complaint characterizes the communication between Perseus-Soros and Genzyme as a "secret agreement," and contends that Perseus-Soros should have amended its outstanding filing under Schedule 13D to disclose it, the complaint utterly fails to allege even the most elementary factual information about this supposed "secret agreement," such as its basic financial terms, with the particularity required by Fed. R. Civ. P. 9(b) and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). What is more, the complaint does not even purport to be based on either plaintiff's personal knowledge or information supplied by a confidential witness alleged to be in a position to know the true facts. Instead, the complaint simply quotes a snippet from a lawsuit filed by a discharged former employee of Bioenvision, who himself claims no knowledge of the "secret agreement", and who merely alleges that he, in turn, heard about it from an unidentified source. (*See* pp. 6 – 10, *infra*.)

Second, Perseus-Soros had no duty to amend its Schedule 13D to disclose its preliminary January 2007 discussion with Genzyme about a possible transaction. The complaint itself makes clear that, for months after the January discussion, Genzyme did not commit itself to pursuing a transaction, but rather conducted intensive due diligence,

culminating in its providing the Bioenvision board with a preliminary indication of price as late as April 11. Significantly—and in flat contradiction to its assertion that Perseus-Soros had a disclosure obligation that arose in January—the complaint specifically alleges that the class period in this case does not even begin until April 11, the date on which, as plaintiffs put it, "Genzyme makes a firm all cash offer". (Cmplt., section heading preceding ¶ 41.) By alleging a class period commencing on April 11, 2007, when a possible price is first mentioned, plaintiffs appear to *concede* that there was no duty to disclose any discussions in January. (*See* pp. 11 – 14, *infra*.)

Third, even if this Court were to conclude, despite strong case law to the contrary, that on the facts of this case a duty to disclose the January discussion did arise, the existing law did not clearly impose that obligation. Because the scope and nature of the disclosure duty was not well established, any failure by Perseus-Soros to amend its Schedule 13D has not been alleged to have been the product of the requisite intent to defraud, a critical element of a claim under § 10(b) of the Securities Exchange Act. Moreover, plaintiffs fail to allege a coherent motive for any alleged violation by Perseus-Soros; to the contrary, the motive posited by the complaint is entirely irrational. (*See* pp. 14 – 17, *infra*.)

Fourth, plaintiffs' control person claim falls short, as well. This Court requires plaintiffs to plead culpable participation in the alleged violation. Plaintiffs do not do so. (*See* pp. 17 – 19, *infra*.)

Accordingly, Perseus-Soros respectfully requests that the plaintiffs' claims against it be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).[1]

---

[1]    Perseus-Soros incorporates and adopts herein in their entirety the arguments set forth in the brief submitted by Bioenvision and the director defendants in support of their motion to dismiss.

### Statement of Facts

### The Outstanding  Perseus-Soros Schedule 13D Disclosure

On May 20, 2002, Perseus-Soros filed a Schedule 13D with the Securities and Exchange Commission ("SEC") disclosing that it was a beneficial holder of more than 5% of the stock of the company.  (Schedule 13D, May 20, 2002.)[2]  In that schedule, Perseus-Soros disclosed that it "may formulate other purposes, plans or proposals regarding the Company or any of its securities to the extent deemed advisable in light of general investment and trading policies, market conditions, or other factors."  (Schedule 13D, May 20, 2002, at 18.)  It also stated that, at that time, it had no "plans or proposals which relate to or would result in" major changes to the company.  (*Id.*, at 18-19.) Perseus-Soros amended its Schedule 13D on December 23, 2004, but made no changes to either Items 4 or 6 of its May 20, 2002 Schedule.  (Schedule 13D, December 23, 2004, at 11, 13.)[3]  As of January 2007, Perseus-Soros held approximately 20% of the shares of common stock of Bioenvision.  (Cmplt. ¶ 9.)

### Genzyme's Negotiations to Acquire Bioenvision

This lawsuit arises out of the transaction by which Genzyme acquired Bioenvision.  As the complaint itself makes clear, the two companies have a long-

---

[2]    The May 20, 2002 Schedule 13D is annexed to the accompanying declaration of Richard A. Rosen as Exhibit A.  The Court is free to consider this and other SEC filings on this motion to dismiss without converting this motion to a Rule 56 motion.  *See Cortec Indus., Inc.* v. *Sum Holdings L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) ("when a district court decides a motion to dismiss a complaint alleging securities fraud, it may review and consider public disclosure documents required by law to be and which actually have been filed with the SEC"); *see also In re Sierra Wireless, Inc. Secs. Litig.*, 482 F. Supp. 2d 365, 372 (S.D.N.Y. 2007) (Stein, J.) ("it is appropriate for the Court to consider 'any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference, as well as public disclosure documents required by law to be, and that have been, filed with the SEC'") (quoting *Rothman* v. *Gregor*, 220 F.3d 81, 88 (2d Cir. 2000)).

[3]    Rosen Decl. at Ex. B.

standing and complex commercial relationship, and various efforts had been made over the course of 2005-2006 to explore a combination of the two companies; (*See, e.g.,* ¶¶ 26-27.)    However, those efforts proved unavailing until late May 2007, when the Bioenvision board voted to approve the terms of a merger of the two companies, after which, as part of the agreed-upon transaction, Genzyme launched a tender offer at $5.60. (Cmplt. ¶ 66).

As the complaint also makes clear, the decision to approve a transaction with Genzyme was made by the board of Bioenvision, and no transaction was possible until that occurred.  (¶ 68.)

**The Role of Perseus-Soros**

The complaint alleges that, in early 2007, Genzyme contacted Dennis Purcell, a senior managing director of Aisling Capital, an investment manager for Perseus-Soros, about Genzyme's possible interest in acquiring Bioenvision.  (Cmplt. ¶ 28.)   The complaint alleges (consistent with Bioenvision's own SEC filings), that in response Mr. Purcell advised "that it *may be* an appropriate time to discuss an acquisition of the Company and that Genzyme should take the matter up directly with the Company." (*Id.*, *emphasis supplied*)   Notwithstanding its allegation that Mr. Purcell had deferred to the Bioenvision board, the complaint then makes the facially contradictory allegation that an unidentified person has told David Luci, a former Bioenvision executive who is suing the company for wrongful discharge, that

> "beginning in January 2007, Genzyme and Perseus-Soros secretly agreed upon a course of action pursuant to which Genzyme would make a tender offer  to acquire all of the outstanding Bioenvision stock owned by Perseus-Soros and the public shareholders . . . and then merge Bioenvision into a wholly owned subsidiary of Genzyme." (*Id.*, quoting *Luci* Verified Cmplt. ¶ 18.)

The complaint provides no additional information about the terms of this purported "secret agreement." It is not alleged that any price was discussed, nor any other material terms, nor is it alleged that Perseus-Soros committed to tender its shares at any particular price. Nor is it alleged that Genzyme committed itself to undertake a transaction at any particular time.

**Genzyme and Bioenvision Negotiate and Engage in a Due Diligence Process**

The complaint's factual allegations make clear that, over the course of the first months of 2007, the two companies were engaged in a due diligence and negotiation process that was by its very nature uncertain and that might (or might not) result in a transaction. Thus, the complaint alleges that:

- Genzyme's financial advisors sought "key information" about Bioenvision on March 7 (¶ 33);

- thereafter the two companies became "more deeply involved in discussions and negotiations" (¶ 34);

- Bioenvision's chairman asked Genzyme to submit a bid specifying a price for the proposed acquisition on March 15 (clearly reflecting the fact that no price had been discussed as of that time) (¶ 34a);

- Genzyme did not send an "indication of interest" concerning price until April 11, and then simultaneously insisted on additional due diligence (¶ 41);

- the Bioenvision board discussed the Genzyme proposal in mid-April and made additional due diligence materials available at the end of that month (¶¶ 44-46); and

- the Bioenvision board established a committee to work on the negotiation on May 1 (¶ 48).

The complaint further alleges that Genzyme's board approved the proposed merger agreement on May 24. Also on that day, however, Bioenvision announced an amendment to a research license and asked Genzyme to consider paying a higher price. (Cmplt. ¶ 63.) Genzyme increased its offer to $5.60 per share on May 25. (Cmplt. ¶ 64.)

**Bioenvision and Genzyme Agree to the Merger**

The Bioenvision board voted to approve the merger agreement on May 28, 2007. (Cmplt. ¶ 64.) The agreement was signed and announced on May 29. (Cmplt. ¶¶ 64-65.) As part of the proposed transaction, Perseus-Soros entered into its first agreement respecting the merger—a voting agreement with Genzyme to support the merger and an agreement to tender its shares of common stock to Genzyme as part of the tender offer. (Cmplt. ¶ 68.) The Fund promptly filed an amended Schedule 13D to this effect on May 30, 2007. (Schedule 13D, May 30, 2007.)[4]

## Argument

### I.

### THE COMPLAINT DOES NOT PLEAD THE "SECRET AGREEMENT" WITH THE PARTICULARITY REQUIRED BY THE PSLRA

In Count II of the complaint (Cmplt. ¶¶ 97 – 106), plaintiffs allege that Perseus-Soros violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5. The entire

---

[4] Rosen Decl. at Ex. C.

substance of this Count is that Perseus-Soros purportedly was required—but failed—to amend its December 23, 2004 Schedule 13D to reveal its involvement in discussions—which the complaint labels a "secret agreement"—in which Genzyme was exploring whether to acquire Bioenvision. (Cmplt. ¶¶ 98 – 100.) In particular, the complaint alleges that Perseus-Soros was required to disclose the substance of the January 2007 interchange between Mr. Collins of Bioenvision and Mr. Purcell on behalf of Perseus-Soros.

The factual allegations supporting this count are set forth in one conclusory sentence of Paragraph 28 of the complaint, in which plaintiffs allege that a discharged former officer of Bioenvision has alleged in his wrongful termination lawsuit against Bioenvision that he learned from an undisclosed anonymous source that "'Genzyme and Perseus-Soros secretly agreed upon a course of action pursuant to which Genzyme would make a tender offer to acquire all of the outstanding Bioenvision stock owned by Perseus-Soros and the public shareholders . . . .'" (Cmplt. ¶ 28, quoting *Luci* Verified Cmplt. ¶ 18.) These allegations do not satisfy the heightened pleading requirements applicable to plaintiffs' Rule 10b-5 claim against Perseus-Soros.

In order to state a claim for securities fraud, the PSLRA requires plaintiff to plead with particularity, among other things, the facts allegedly misstated or omitted. 15 U.S.C.A. § 78u-4(b) (requiring, in cases of misstatements or omissions, that "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed"); *see In re Sierra Wireless, Inc. Secs. Litig.*, 482 F.

Supp. 2d 365, 372 (S.D.N.Y. 2007) (Stein, J.) (plaintiff must plead with particularity sufficient facts to support a reasonable belief that the alleged misrepresentations or omissions are misleading); *Dresner* v. *Utility.com, Inc.*, 371 F. Supp. 2d 476, 489-90 (S.D.N.Y. 2005) (Stein, J.) (quoting statute)**.**   Here, the irremediable flaw in the complaint is its failure to plead with specificity that Perseus-Soros and Genzyme reached an agreement in January 2007 that had to be disclosed in Perseus-Soros' Schedule 13D.

      The terms of the alleged "agreement" are nowhere identified.   The complaint does not allege that Genzyme agreed to commence a tender offer at any particular price, nor is it alleged that Perseus-Soros agreed that it would tender its shares to Genzyme irrespective of price.   Although the complaint alleges elsewhere that Perseus-Soros wanted to sell its holdings in Bioenvision "quickly" (¶ 83), the "agreement" is not alleged to have set a date by which any transaction would be announced or consummated.

      Plaintiffs do not even allege *when* Genzyme and Perseus-Soros actually reached an agreement.   Rather, their allegation is that Perseus-Soros and Genzyme agreed on a "course of action" pursuant to which Genzyme would pursue a transaction "*beginning in January 2007*" (Cmplt. ¶ 28 (emphasis supplied).   It is unclear what plaintiffs mean by "beginning in January," but this allegation plainly lacks the particularity required by Rule 9(b) and the PSLRA as it is insufficient to establish that Perseus-Soros had a duty to disclose or when that duty arose[5].

---

[5]    *See Feasby* v. *Industri-Matematik Intern. Corp.*, No. 99 CIV. 8761 (HB), 2000 WL 977673, at *5 (S.D.N.Y. July 17, 2000) (rejecting fraud pleading for insufficient particularity because "[t]here is nothing to suggest that . . . the alleged undisclosed adverse conditions even existed at the time the various statements were made"); *U.S. ex rel. Doe* v. *Dow Chemical Co.*, 343 F.3d 325, 329 (5th Cir. 2003) (rejecting fraud allegations for failing to specify exact times that fraudulent representations were made or to "explicitly state that any alleged false representations were made during" the stated time period); *Druskin* v. *Answerthink, Inc.*, 299 F. Supp. 2d 1307, 1333 (S.D. Fla. 2004) (plaintiffs

In fact, numerous other allegations of the complaint are completely *inconsistent* with the conclusory assertion that Perseus-Soros and Genzyme reached a binding agreement in January that had to be disclosed. Thus, the complaint makes clear that Genzyme had to conduct substantial due diligence, with the aid of its financial advisors, and obtain access to non public information about Bioenvision, before deciding to pursue a transaction at all. (¶¶ 33, 34(a), 41.) The complaint also makes clear that Genzyme first advised Bioenvision of a price that it would be willing to pay in mid-April, many months *after* the alleged "secret agreement". (¶ 41.)

The complaint continually refers to "discussions and negotiations" (¶¶ 32, 34); alleges that "*potential*" changes in Bioenvision's business, capital structure or independence *being considered* by the company (¶ 32); refers to an "anticipated offer" (¶ 34b); further alleges that defendants "were considering a sale and/or merger" (¶ 38); and that Genzyme's first "indication of interest" did not come until mid-April (¶ 41). Thus, although the complaint *characterizes* the January communication as a "secret agreement", the facts alleged do not support and instead belie that claim. Not until May 29, 2007, after those extensive negotiations, did Perseus-Soros enter into an actual voting agreement with Genzyme, which was immediately disclosed. (Cmplt. ¶ 68.)

In assessing whether the "secret agreement" has been pleaded with the requisite specificity for purposes of the PSLRA, it is also worth stressing that plaintiffs do not purport to have actual knowledge of such an agreement. Instead, the complaint simply quotes one sentence in a complaint (the "*Luci* complaint") filed by an ex-Bioenvision officer who *himself* does not claim such knowledge. The *Luci* complaint

---

did not plead fraud with particularity in omitted "specific facts which, if true, establish that any revenue was uncollectible at the time it was booked").

alleges that some unidentified person informed him of the facts, but neither the *Luci*
complaint nor the complaint before this Court provides any information whatsoever about
the identity of this source, nor does it plead any facts from which the court could find that
this source was in a position to know the true facts. This anonymous source does not
satisfy the particularity requirements of Rule 9(b) and the PSLRA. *See Novak* v. *Kasaks*,
216 F.3d 300, 313-14 (2d Cir. 2000) (while confidential sources may be used, they must
be "described in the complaint with sufficient particularity to support the probability that
a person in the position occupied by the source would possess the information alleged");
*Sierra Wireless*, 482 F. Supp. 2d at 376 (quoting *Novak*); *In re Veeco Instruments, Inc.*
*Secs. Litig.*, 235 F.R.D. 220, 229 (S.D.N.Y. 2006) (same); *see also Higginbotham* v.
*Baxter Int'l, Inc.*, 495 F.3d 753, 757 (7th Cir. 2007) ("It is hard to see how information
from anonymous sources could be deemed "compelling" . . . . Perhaps these confidential
sources have axes to grind. Perhaps they are lying. Perhaps they don't even exist.").

   Plaintiffs' vague, conclusory and contradictory allegations do not meet the
requirements of the PSLRA that the facts constituting the fraudulent statement or
omission be pleaded with particularity. Accordingly, the Court should dismiss plaintiffs'
claims against Perseus-Soros.

## II.

### THE FUND'S 13D FILING DID NOT VIOLATE § 10(b) OF THE SECURITIES EXCHANGE ACT OR RULE 10b-5

   Although there is no private right of action under § 13(d) of the Exchange
Act[6], a plaintiff can point to a violation of § 13(d) as the predicate for a 10b-5 claim, if all
of the elements of a securities fraud claim have been properly pleaded. *GAF Corp.* v.

---

[6]   *Hallwood Realty Partners, L.P.* v. *Gotham Partners, L.P.*, 286 F.3d 613, 619 (2d Cir. 2002).

*Milstein,* 453 F.2d 709, 720 n.22 (2d Cir. 1971) ("persons subject to section 13(d) may

confer or communicate with shareholders . . . . If there is a purchase or sale of securities,

section 10(b) will apply."); *Lou* v. *Belzberg,* 728 F. Supp. 1010, 1022-23 (S.D.N.Y.

1990) (applying § 10(b) to an alleged misstatement in a Schedule 13D and finding that

plaintiffs had neither pleaded nor satisfied elements of a claim). Of course, plaintiffs in

such a case must first demonstrate a § 13(d) violation to establish liability under § 10(b)

or Rule 10b-5. *SEC* v. *Amster & Co.*, 762 F. Supp. 604, 614 (S.D.N.Y. 1991) ("if there is

no violation of the particular disclosure requirements of § 13(d), there can be neither in

logic nor in law a violation of the general disclosure provisions of § 10(b)"). Here,

Plaintiffs cannot plead a § 13(d) violation.

A.    **The Fund Had No Duty to File an Amended
      Schedule 13D Prior to a Definitive Deal**

    The touchstone of a § 10(b) claim premised on a § 13(d) violation is the

existence of a duty to disclose. *Azurite Corp. Ltd.* v. *Amster & Co.*, 52 F.3d 15, 18 (2d

Cir. 1995). Here, Perseus-Soros had no duty to amend its 13D Schedule to disclose its

January 2007 discussion with Genzyme and thus it violated neither § 13(d) nor § 10(b).

    The law is clear that beneficial securities holders like Perseus-Soros are

under no duty to disclose under § 13(d) where future plans remain speculative. Indeed,

the Second Circuit has long cautioned that premature disclosures could actually be

harmful to the market and run counter to the purpose of § 13(d). *Electronic Specialty Co.*

v. *International Controls Corp.*, 409 F.2d 937, 948 (2d Cir. 1969) (Friendly, J.) ("It

would be as serious an infringement of these regulations to overstate the definiteness of

the plans as to understate them."); *SEC* v. *Amster & Co.*, 762 F. Supp. at 614 ("the

reporting of desires not yet transformed into purpose or intent could mislead investors in

manners contrary to the statute's purpose"); *see also Susquehanna Corp.* v. *Pan Am. Sulphur Co.*, 423 F.2d 1075, 1085-86 (3d Cir. 1970) ("the offeror . . . is not required to make predictions of future behavior, however tentatively phrased, which may cause the offeree or the public investor to rely on them unjustifiably").

Here, plaintiffs' own allegations establish that, in January 2007, Perseus-Soros had nothing concrete to disclose. Bioenvision's discussions with Genzyme did not result in an actual deal until May 2007, and then only after a protracted process of due diligence, in which a proposed purchase price—subsequently increased—was mentioned for the first time on April 11. Whether Genzyme would make a tender offer, at what price and terms, and whether Perseus-Soros would tender into any such offer was entirely speculative until the Bioenvision board approved the specific proposal before it.

As Bioenvision's brief makes clear, the securities laws do not require disclosure of preliminary discussions: "[U]nless a course of action is decided upon or intended, it need not be disclosed as a plan or proposal under Item 4." *Azurite*, 52 F.3d at 18; *see also SEC* v. *Amster*, 762 F. Supp. at 611 (rejecting "a duty falling upon these defendants to report concerning a proxy contest before deciding to wage one" as "stand[ing] upon fragile underpinnings"); *Todd Shipyards Corp.* v. *Madison Fund, Inc.*, 547 F. Supp. 1383, 1388-89 (S.D.N.Y. 1982) ("preliminary and tentative" discussions are not an agreement that must be disclosed under Item 6); *Transcon Lines* v. *A.G. Becker, Inc.*, 470 F. Supp. 356, 376 (S.D.N.Y. 1979) (defendants need only disclose "firm plans to acquire control of Transcon or to make major changes in its management, business, or corporate structure.") *Raybestos-Manhattan, Inc.* v. *Hi-Shear Indus., Inc.*, 503 F. Supp.

1122, 1130 (E.D.N.Y. 1980) ("Defendant . . . cannot disclose its voting decision if it does not yet know what the decision will be.").

**B.    Plaintiffs Concede that No Duty to  Disclose Arose Any
       Earlier than April 11, the First Day of the Class Period**

Plaintiffs effectively *admit* that Perseus-Soros had no disclosure obligation as to the alleged amorphous discussions in January 2007.  They assert claims based upon alleged misrepresentations and omissions during a class period commencing on April 11, 2007 (Cmplt. ¶¶ 18, 98-99), *not* January 2007.  If plaintiffs had a good faith legal basis to allege an *agreement* in January 2007 for Genzyme to make an offer to acquire Bioenvision, they would have alleged a class period commencing in January.

Perseus-Soros' outstanding Schedule 13D disclosure stated that it "may formulate other purposes, plans or proposals regarding the Company or any of its securities to the extent deemed advisable in light of general investment and trading policies, market conditions, or other factors," though, at the time, it had no "plans or proposals which relate to or would result in" major changes to the Company (Schedule 13D, May 20, 2002, at pp. 18-19).  This disclosure was in fact perfectly accurate and did not need to be amended or updated until May 2007, when a specific agreement was reached. Such language fully satisfies § 13(d).

Decisions in this district have approved such disclosures as an appropriate means of balancing the need for disclosure and the danger of prematurity where, as here, plans remained uncertain. *Pantry Pride, Inc.* v. *Rooney*, 598 F. Supp. 891, 901 (S.D.N.Y. 1984) ("defendants have made ample disclosures by admitting the 'possibilities' of plaintiff's future scenarios . . . . to require defendants to 'confirm' what are only speculative options would be as egregious as pretending that they did not exist"); *Todd*

*Shipyards*, 547 F. Supp. at 1387 ("Schedule 13D was not intended for a recount of history, the evaluation of the investment process, its negotiation and discussions.").

## C.   Plaintiffs Have Failed Adequately to Allege Scienter

Plaintiffs have failed to plead facts sufficient to raise a strong inference of scienter, which is required to impose liability under § 10(b).[7]  *See Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2507-08 (U.S. 2007).  First, even if this Court now finds that Perseus-Soros ought to have disclosed the potential Genzyme transaction earlier than it did, at some time *before* the deal was approved by the Bioenvision board, the disclosure obligation in these circumstances was not so obvious that it can be said that Perseus-Soros consciously or intentionally violated an established legal obligation. Second, the motive for concealment alleged by the complaint is irrational on its face. Accordingly, the complaint fails to plead scienter.

### 1.   The Complaint Does not Allege Facts
### That Raise an Inference of Scienter

A plaintiff may raise a strong inference of scienter by "alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Kalnit* v. *Eichler*, 264 F.3d 131, 138 (2d Cir. 2001) (quotation marks omitted).  At a minimum, a plaintiff must allege facts showing that the defendants engaged in "conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care . . . ." *In re Carter-Wallace, Inc. Secs. Litig.*, 220 F.3d 36, 39 (2d Cir. 2000) (quotation marks omitted).  However, "[t]o determine whether the plaintiff has alleged facts that give rise to the requisite 'strong inference' of scienter, a

---

[7]   Scienter is not required for a direct claim for a violation of § 13(d).  *SEC* v. *McNulty*, No. 94 CIV. 7114 (MBM), 1996 WL 422259, at *7 (S.D.N.Y. July 29, 1996).  Plaintiffs do not, however, assert a claim under § 13(d), nor can they, as there is no private right of action under that section.  *See* n. 5, *supra*.

court must consider plausible nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." *Tellabs*, 127 S. Ct. at 2510.

Given the rejection by many courts of plaintiffs' theory that there is a duty to disclose preliminary merger negotiations (*see supra* at 12 – 13), no inference can be drawn from the facts as alleged that Perseus-Soros knew it had to disclose (or was reckless in failing to disclose) the Genzyme deal prior to the time it did so. *See In re Morgan Stanley & Van Kampen Mut. Fund Secs. Litig.*, No. 03 Civ. 8208 (RO), 2006 WL 1008138, at *11 (S.D.N.Y. Apr. 18, 2006) (finding lack of scienter because "defendants could reasonably believe that the law did not require disclosure"); *In re Canandaigua Secs. Litig.*, 944 F. Supp. 1202, 1213 (S.D.N.Y. 1996) ("Scienter in 10b-5 actions is more than simple conscious nondisclosure."); *Geiger* v. *Solomon-Page Group, Ltd.*, 933 F. Supp. 1180, 1191 (S.D.N.Y. 1996) ("It cannot be conscious misbehavior or recklessness for a defendant to fail to disclose in a prospectus information that is neither material nor required to be disclosed under applicable SEC regulations.").

There is certainly no basis on which to find highly unreasonable conduct that is an extreme departure from the standards of ordinary care. *See Castillo* v. *Dean Witter Discover & Co.*, No. 97 Civ. 1272 (RPP), 1998 WL 342050, at *11 (S.D.N.Y. June 25, 1998) ("Without an established duty to disclose, the facts as alleged do not 'constitute strong circumstantial evidence of conscious misbehavior or recklessness.") (internal quotation marks omitted). As the Supreme Court instructs: "A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 127 S. Ct. at 2510. Because Perseus-Soros did not violate any clear, well-

established disclosure duties, and there are, at minimum, well-reasoned legal authorities indicating that there is no duty to disclose under the circumstances, no cogent or compelling inference of scienter may be drawn.

### 2. Perseus-Soros Had No Motive to Withhold Information in Violation of § 10(b)

Plaintiffs have also failed to establish scienter by "showing that the defendants had both motive and opportunity to commit the fraud." *ATSI Comms., Inc.* v. *Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).    The motive plaintiffs ascribe to Perseus-Soros—to "deflate the price of Bioenvision securities in order to . . . ensure that Genzyme could quickly acquire Bioenvision for cash" (Cmplt. ¶ 83)—makes no sense.

Although the complaint repeatedly suggests that defendants' non-disclosure served to *deflate* the price of Bioenvision stock, the complaint pleads no facts suggesting that defendants took any steps to cause the price of Bioenvision to *decline* between January and May, nor are any facts alleged indicating that defendants anticipated or hoped for such a decline.    Thus, the complaint alleges no link of any kind between any conduct of defendants and the decline in the stock price of Bioenvision.

Nor does the complaint suggest any plausible motive why Perseus-Soros would *want* to see the price of Bioenvision shares go *down;* because Perseus-Soros stood to be one of the biggest beneficiaries of a tender offer, it would be entirely *against* its interests to see the stock price drop.

Plaintiffs can therefore allege no coherent explanation of why Perseus-Soros had the motive or opportunity to violate § 10(b).    Where plaintiffs can only allege an irrational motive, they cannot adequately show scienter.    *See In re Polaroid Corp. Secs. Litig.*, 465 F. Supp. 2d 232, 246 (S.D.N.Y. 2006) (Stein, J.) (the alleged motive

must provide "'concrete benefits that could be realized by one or more of the false statements' identified in the complaint") (quoting *Shields* v. *Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1130 (2d Cir. 1994)); *Glickman* v. *Alexander & Alexander Serves., Inc.*, No. 93 Civ. 7594 (LAP), 1996 WL 88570, at *12 (S.D.N.Y. Feb. 29, 1996) (interpreting motive as "requiring some coherent nexus between the alleged fraudulent conduct and its alleged purpose"); *Duncan* v. *Pencer*, No. 94 Civ. 0321 (LAP), 1996 WL 19043, at *10 (S.D.N.Y. Jan. 18, 1996) (finding that collecting professional fees did not provide sufficient motive for accountant to knowingly permit fraud because "[s]uch action . . . would be economically irrational").

### III.

### Plaintiffs Have Not Adequately Alleged
### Control Person Liability of Perseus-Soros

Plaintiffs allege in the alternative that Perseus-Soros is a "control person" vicariously liable for the securities law violations of Bioenvision and/or its directors. This claim too is untenable.

To establish *prima facie* liability under § 20(a) of the Securities Exchange Act, Plaintiffs must show: (1) that Bioenvision committed an underlying violation; (2) that Perseus-Soros controlled Bioenvision; and (3) "'that the [Fund] was in some meaningful sense a culpable participant' in the primary violation." *Bogulavsky* v. *Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998) (quoting *SEC* v. *First Jersey Sec., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996)); *see also* 15 U.S.C.A. § 78t(a).

We incorporate and adopt herein the arguments set forth in the brief submitted by Bioenvision, which establishes that the company and its directors did not

engage in a primary violation. As we now show, moreover, Plaintiffs do not and cannot plead culpable participation in any such violation.

**A.    Plaintiffs Must Plead Culpable Participation
as an Element of a Control Person Violation**

The Second Circuit has repeatedly held that culpable participation is an element of a control person claim under § 20(a). *See, e.g., ATSI Comms., Inc.* v. *Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007); *Suez Equity Investors, L.P.* v. *Toronto-Dominion Bank*, 250 F.3d 87, 101 (2d Cir. 2001); *Bogulavsky*, 159 F.3d at 720. As this Court has instructed:

> Culpable participation must be pled to allege control person liability pursuant to section 20(a) as a consequence of the pleading requirements of the PSLRA that require that where money damages are recoverable "on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."

*In re Deutsche Telekom AG Secs. Litig.*, No. 00 Civ. 9475 (SHS), 2002 WL 244597, at *6 (S.D.N.Y. Feb. 20, 2002) (Stein, J.) (quoting 15 U.S.C. § 78u-4(b)(2)).[8]

**B.    Plaintiffs Have Failed to Plead Perseus-Soros' Culpable Participation**

Plaintiffs may meet their pleading burden only "where facts are pled with sufficient particularity that a strong inference is raised that the section 20(a) control person knew or should have known that the controlled person was engaging in fraudulent conduct." *Deutsche Telekom*, 2002 WL 244597, at *7. Plaintiffs plead no facts suggesting such participation. The mere fact that Perseus-Soros was a significant

---

[8]    *Accord In re Adelphia Comms. Corp. Secs. & Deriv. Litig.*, No. 03 MD 1529 (LMM), 2007 WL 2615928, at *10 (S.D.N.Y. Sept. 10, 2007) (McKenna, J.); *Harrison* v. *Rubenstein*, No. 02 Civ. 9356 (DAB), 2007 WL 582955, at *19 (S.D.N.Y. Feb. 26, 2007) (Batts, J.); *Lapin* v. *Goldman Sachs Group, Inc.*, 506 F. Supp. 2d 221, 246 (S.D.N.Y. 2006) (Karas, J.); *In re Global Crossing, Ltd. Secs. Litig.*, 322 F. Supp. 2d 319, 349 (S.D.N.Y. 2004) (Lynch, J.); *Mishkin* v. *Ageloff*, No. 97 Civ. 2690 (LAP), 1998 WL 651065, at *25 (S.D.N.Y. Sept. 23, 1998) (Preska, J.).

shareholder and had designees on the Bioenvision board is *not* sufficient to plead culpable participation. In the Global Crossing class action, involving allegations that the board of directors participated in and knew about fraudulent financial reporting, Judge Lynch held that, even though CIBC was a 25% shareholder and had five designees on the board, the knowledge of the misconduct required for an allegation of culpable participation could not be inferred simply from the number of board seats or the magnitude of its equity holdings. *In re Global Crossing, Ltd. Secs. Litig.*, No. 02 Civ. 910 (GEL), 2005 WL 2990646, at *9 (S.D.N.Y. Nov. 7, 2005). The same is true here.

## Conclusion

For the foregoing reasons, Perseus-Soros respectfully requests that the Court dismiss Plaintiffs' claims against it with prejudice.

Dated: January 30, 2008

PAUL, WEISS RIFKIND, WHARTON &
GARRISON LLP

By:   /s/ Richard A. Rosen

Richard A. Rosen
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000
rrosen@paulweiss.com

*Counsel for Defendant Perseus-Soros*
*Biopharmaceutical Fund, LP*