# EXHIBIT A

# BIOENVISION INC

345 PARK AVENUE
41ST FLOOR
NEW YORK, NY 10154
212-750-6700

## SC 13D

**SCHEDULE 13D**
**Filed on 05/20/2002**
File Number 005-78274



UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549

SCHEDULE 13D

Under the Securities Exchange Act of 1934
(AMENDMENT NO. ____)

BIOENVISION, INC.
(Name of Issuer)

COMMON STOCK, PAR VALUE $.001 PER SHARE
(Title of Class of Securities)

09059N100
(CUSIP Number)

KEITH TARLETON
PERSEUS-SOROS BIOPHARMACEUTICAL FUND, L.P.
888 SEVENTH AVENUE, 29TH FLOOR
NEW YORK, NY 10106
TEL. NO.: (212) 651-6400
(Name, Address and Telephone Number of
Person Authorized to Receive Notices
and Communications)

with a copy to

BRUCE A. GUTENPLAN, ESQ.
PAUL, WEISS, RIFKIND, WHARTON & GARRISON
1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064

MAY 8, 2001
(Date of Event which Requires Filing of
this Statement)

If the filing person has previously filed a statement on Schedule 13G to report the acquisition which is the subject to this Schedule 13D, and is filing this schedule because of Rule 13d-1(b)(3) or (4), check the following box [_].

*The remainder of this cover page shall be filled out for a reporting person's initial filing on this form with respect to the subject class of securities, and for any subsequent amendment containing information which would alter disclosures provided in a prior cover page.

The information required on the remainder of this cover page shall not be deemed to be "filed" for the purposes of Section 18 of the Securities Exchange Act of 1934 ("Act") or otherwise subject to the liabilities of that section of the Act but shall be subject to all other provisions of the Act (however, see the Notes.)

SCHEDULE 13D

---

```
1     NAME OF REPORTING PERSON

      Perseus-Soros BioPharmaceutical Fund, L.P.
```
---
```
2     CHECK THE APPROPRIATE BOX IF A MEMBER OF A GROUP*
      (a)    [_]
      (b)    [X]
```
---
```
3     SEC USE ONLY


```
---
```
4     SOURCE OF FUNDS*

      OO
```
---
```
5     CHECK BOX IF DISCLOSURE OF LEGAL PROCEEDINGS IS REQUIRED PURSUANT TO
      ITEMS 2(D) OR 2(E)
                                                                    [_]
```
---
```
6     CITIZENSHIP OR PLACE OR ORGANIZATION

      Delaware
```
---
```
                            7     SOLE VOTING POWER
                                  9,000,000 (1)
         NUMBER OF
          SHARES           8     SHARED VOTING POWER
        BENEFICIALLY              0
         OWNED BY
           EACH            9     SOLE DISPOSITIVE POWER
        REPORTING               9,000,000 (1)
          PERSON
           WITH           10     SHARED DISPOSITIVE POWER
                                  0
```
---
```
11    AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH REPORTING PERSON

      9,000,000 (1)
```
---
```
12    CHECK BOX IF THE AGGREGATE AMOUNT IN ROW (11) EXCLUDES CERTAIN SHARES*
                                                                    [_]
```
---
```
13    PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (11)

      35.0% (1)
```
---
```
14    TYPE OF REPORTING PERSON*

      PN
```
---

* SEE INSTRUCTIONS BEFORE FILLING OUT

------------------------

```
1     Assuming full conversion of the Series A Convertible Participating
      Preferred Stock and including Warrant to purchase an aggregate of 3,000,000
      shares of Common Stock. See Item 5 herein.
```

SCHEDULE 13D

```
--------------------------------------------------------------------------
1       NAME OF REPORTING PERSON

        Perseus-Soros Partners, LLC
--------------------------------------------------------------------------
2       CHECK THE APPROPRIATE BOX IF A MEMBER OF A GROUP*
        (a)     [_]
        (b)     [X]
--------------------------------------------------------------------------
3       SEC USE ONLY


--------------------------------------------------------------------------
4       SOURCE OF FUNDS*

        Not Applicable
--------------------------------------------------------------------------
5       CHECK BOX IF DISCLOSURE OF LEGAL PROCEEDINGS IS REQUIRED PURSUANT TO
        ITEMS 2(D) OR 2(E)
                                                                  [_]
--------------------------------------------------------------------------
6       CITIZENSHIP OR PLACE OR ORGANIZATION

        Delaware
--------------------------------------------------------------------------
                        7       SOLE VOTING POWER
                                9,000,000 (1)
        NUMBER OF
          SHARES        8       SHARED VOTING POWER
       BENEFICIALLY             0
        OWNED BY
          EACH          9       SOLE DISPOSITIVE POWER
        REPORTING               9,000,000 (1)
         PERSON
          WITH          10      SHARED DISPOSITIVE POWER
                                0
--------------------------------------------------------------------------
11      AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH REPORTING PERSON

        9,000,000 (1)
--------------------------------------------------------------------------
12      CHECK BOX IF THE AGGREGATE AMOUNT IN ROW (11) EXCLUDES CERTAIN SHARES*
                                                                  [_]
--------------------------------------------------------------------------
13      PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (11)

        35.0% (1)
--------------------------------------------------------------------------
14      TYPE OF REPORTING PERSON*

        OO
--------------------------------------------------------------------------
                    * SEE INSTRUCTIONS BEFORE FILLING OUT

-------------------------
1    Assuming full conversion of the Series A Convertible Participating
     Preferred Stock and including Warrant to purchase an aggregate of 3,000,000
     shares of Common Stock. See Item 5 herein.
```

```
CUSIP NO. 98241108                                          PAGE 4 OF 23
```

```
                              SCHEDULE 13D
-------------------------------------------------------------------------
1        NAME OF REPORTING PERSON

         Perseus BioTech Fund Partners, LLC
-------------------------------------------------------------------------
2        CHECK THE APPROPRIATE BOX IF A MEMBER OF A GROUP*
         (a)     [_]
         (b)     [X]
-------------------------------------------------------------------------
3        SEC USE ONLY


-------------------------------------------------------------------------
4        SOURCE OF FUNDS*

         Not Applicable
-------------------------------------------------------------------------
5        CHECK BOX IF DISCLOSURE OF LEGAL PROCEEDINGS IS REQUIRED PURSUANT TO
         ITEMS 2(D) OR 2(E)
                                                                    [_]
-------------------------------------------------------------------------
6        CITIZENSHIP OR PLACE OR ORGANIZATION

         Delaware
-------------------------------------------------------------------------
                         7       SOLE VOTING POWER
                                 0
         NUMBER OF
           SHARES        8       SHARED VOTING POWER
        BENEFICIALLY             9,000,000 (1)
          OWNED BY
            EACH         9       SOLE DISPOSITIVE POWER
         REPORTING              0
           PERSON
            WITH         10      SHARED DISPOSITIVE POWER
                                 9,000,000 (1)
-------------------------------------------------------------------------
11       AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH REPORTING PERSON

         9,000,000 (1)
-------------------------------------------------------------------------
12       CHECK BOX IF THE AGGREGATE AMOUNT IN ROW (11) EXCLUDES CERTAIN SHARES*

                                                                    [_]
-------------------------------------------------------------------------
13       PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (11)

         35.0%
-------------------------------------------------------------------------
14       TYPE OF REPORTING PERSON*

         OO
-------------------------------------------------------------------------
                    * SEE INSTRUCTIONS BEFORE FILLING OUT

-----------------------
1    Assuming full conversion of the Series A Convertible Participating
     Preferred Stock and including Warrant to purchase an aggregate of 3,000,000
     shares of Common Stock. See Item 5 herein.
```

SCHEDULE 13D

---

1    NAME OF REPORTING PERSON

     SFM Participation, L.P.

---

2    CHECK THE APPROPRIATE BOX IF A MEMBER OF A GROUP*
     (a)    [_]
     (b)    [X]

---

3    SEC USE ONLY


---

4    SOURCE OF FUNDS*

     Not Applicable

---

5    CHECK BOX IF DISCLOSURE OF LEGAL PROCEEDINGS IS REQUIRED PURSUANT TO
     ITEMS 2(D) OR 2(E)
                                                              [_]

---

6    CITIZENSHIP OR PLACE OR ORGANIZATION

     Delaware

---

|                        | 7   | SOLE VOTING POWER<br>0                 |
|------------------------|-----|---------------------------------------|
| NUMBER OF<br>SHARES<br>BENEFICIALLY<br>OWNED BY | 8   | SHARED VOTING POWER<br>9,000,000 (1)  |
| EACH<br>REPORTING<br>PERSON | 9   | SOLE DISPOSITIVE POWER<br>0           |
| WITH                   | 10  | SHARED DISPOSITIVE POWER<br>9,000,000 (1) |

---

11   AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH REPORTING PERSON

     9,000,000 (1)

---

12   CHECK BOX IF THE AGGREGATE AMOUNT IN ROW (11) EXCLUDES CERTAIN SHARES*
                                                              [_]

---

13   PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (11)

     35.0%

---

14   TYPE OF REPORTING PERSON*

     PN

---

                      * SEE INSTRUCTIONS BEFORE FILLING OUT

---

1    Assuming full conversion of the Series A Convertible Participating
     Preferred Stock and including Warrant to purchase an aggregate of 3,000,000
     shares of Common Stock. See Item 5 herein.

SCHEDULE 13D
--------------------------------------------------------------------------
1       NAME OF REPORTING PERSON

        SFM AH, Inc.
--------------------------------------------------------------------------
2       CHECK THE APPROPRIATE BOX IF A MEMBER OF A GROUP*
        (a)     [_]
        (b)     [X]
--------------------------------------------------------------------------
3       SEC USE ONLY


--------------------------------------------------------------------------
4       SOURCE OF FUNDS*

        Not Applicable
--------------------------------------------------------------------------
5       CHECK BOX IF DISCLOSURE OF LEGAL PROCEEDINGS IS REQUIRED PURSUANT TO
        ITEMS 2(D) OR 2(E)
                                                                    [_]
--------------------------------------------------------------------------
6       CITIZENSHIP OR PLACE OR ORGANIZATION

        Delaware
--------------------------------------------------------------------------
                            7       SOLE VOTING POWER
                                    0
        NUMBER OF
          SHARES            8       SHARED VOTING POWER
        BENEFICIALLY                9,000,000 (1)
         OWNED BY
           EACH             9       SOLE DISPOSITIVE POWER
        REPORTING                   0
          PERSON
           WITH            10       SHARED DISPOSITIVE POWER
                                    9,000,000 (1)
--------------------------------------------------------------------------
11      AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH REPORTING PERSON

        9,000,000 (1)
--------------------------------------------------------------------------
12      CHECK BOX IF THE AGGREGATE AMOUNT IN ROW (11) EXCLUDES CERTAIN SHARES*
                                                                    [_]
--------------------------------------------------------------------------
13      PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (11)

        35.0%
--------------------------------------------------------------------------
14      TYPE OF REPORTING PERSON*

        CO
--------------------------------------------------------------------------
                    * SEE INSTRUCTIONS BEFORE FILLING OUT

------------------------
1   Assuming full conversion of the Series A Convertible Participating
    Preferred Stock and including Warrant to purchase an aggregate of 3,000,000
    shares of Common Stock. See Item 5 herein.

```
                                SCHEDULE 13D
--------------------------------------------------------------------------
1       NAME OF REPORTING PERSON

        Frank H. Pearl (in the capacity described herein)
--------------------------------------------------------------------------
2       CHECK THE APPROPRIATE BOX IF A MEMBER OF A GROUP*
        (a)    [_]
        (b)    [X]
--------------------------------------------------------------------------
3       SEC USE ONLY


--------------------------------------------------------------------------
4       SOURCE OF FUNDS*

        Not Applicable
--------------------------------------------------------------------------
5       CHECK BOX IF DISCLOSURE OF LEGAL PROCEEDINGS IS REQUIRED PURSUANT TO
        ITEMS 2(D) OR 2(E)
                                                                   [_]
--------------------------------------------------------------------------
6       CITIZENSHIP OR PLACE OR ORGANIZATION

        Delaware
--------------------------------------------------------------------------
                            7       SOLE VOTING POWER
                                    0
        NUMBER OF
          SHARES            8       SHARED VOTING POWER
        BENEFICIALLY                9,000,000 (1)
        OWNED BY
          EACH              9       SOLE DISPOSITIVE POWER
        REPORTING                   0
          PERSON
          WITH             10       SHARED DISPOSITIVE POWER
                                    9,000,000 (1)
--------------------------------------------------------------------------
11      AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH REPORTING PERSON

        9,000,000 (1)
--------------------------------------------------------------------------
12      CHECK BOX IF THE AGGREGATE AMOUNT IN ROW (11) EXCLUDES CERTAIN SHARES*
                                                                   [_]
--------------------------------------------------------------------------
13      PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (11)

        35.0%
--------------------------------------------------------------------------
14      TYPE OF REPORTING PERSON*

        IN
--------------------------------------------------------------------------
                    * SEE INSTRUCTIONS BEFORE FILLING OUT

------------------------
1    Assuming full conversion of the Series A Convertible Participating
     Preferred Stock and including Warrant to purchase an aggregate of 3,000,000
     shares of Common Stock. See Item 5 herein.
```

```
CUSIP NO. 98241108                                         PAGE 8 OF 23
                              SCHEDULE 13D
--------------------------------------------------------------------------
1      NAME OF REPORTING PERSON

       George Soros (in the capacity described herein)
--------------------------------------------------------------------------
2      CHECK THE APPROPRIATE BOX IF A MEMBER OF A GROUP*
            (a)     [_]
            (b)     [X]
--------------------------------------------------------------------------
3      SEC USE ONLY


--------------------------------------------------------------------------
4      SOURCE OF FUNDS*

       Not Applicable
--------------------------------------------------------------------------
5      CHECK BOX IF DISCLOSURE OF LEGAL PROCEEDINGS IS REQUIRED PURSUANT TO
       ITEMS 2(D) OR 2(E)
                                                               [_]
--------------------------------------------------------------------------
6      CITIZENSHIP OR PLACE OR ORGANIZATION

       United States
--------------------------------------------------------------------------
                         7      SOLE VOTING POWER
                                0
        NUMBER OF
          SHARES         8      SHARED VOTING POWER
       BENEFICIALLY             9,000,000 (1)
         OWNED BY
          EACH           9      SOLE DISPOSITIVE POWER
        REPORTING              0
          PERSON
          WITH           10     SHARED DISPOSITIVE POWER
                                9,000,000 (1)
--------------------------------------------------------------------------
11     AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH REPORTING PERSON

       9,000,000 (1)
--------------------------------------------------------------------------
12     CHECK BOX IF THE AGGREGATE AMOUNT IN ROW (11) EXCLUDES CERTAIN SHARES*
                                                               [_]
--------------------------------------------------------------------------
13     PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (11)

       35.0%
--------------------------------------------------------------------------
14     TYPE OF REPORTING PERSON*

       IA
--------------------------------------------------------------------------
                   * SEE INSTRUCTIONS BEFORE FILLING OUT

------------------------
1    Assuming full conversion of the Series A Convertible Participating
     Preferred Stock and including Warrant to purchase an aggregate of 3,000,000
     shares of Common Stock. See Item 5 herein.
```

SCHEDULE 13D

---

| 1 | NAME OF REPORTING PERSON<br><br>Soros Fund Management LLC |
|---|---|

---

| 2 | CHECK THE APPROPRIATE BOX IF A MEMBER OF A GROUP*<br>(a)    [_]<br>(b)    [X] |
|---|---|

---

| 3 | SEC USE ONLY |
|---|---|

---

| 4 | SOURCE OF FUNDS*<br><br>Not Applicable |
|---|---|

---

| 5 | CHECK BOX IF DISCLOSURE OF LEGAL PROCEEDINGS IS REQUIRED PURSUANT TO ITEMS 2(D) OR 2(E)                                                          [_] |
|---|---|

---

| 6 | CITIZENSHIP OR PLACE OR ORGANIZATION<br><br>Delaware |
|---|---|

---

|  |  | 7 | SOLE VOTING POWER<br>0 |
|---|---|---|---|
| NUMBER OF SHARES BENEFICIALLY OWNED BY EACH REPORTING PERSON WITH | | 8 | SHARED VOTING POWER<br>9,000,000 (1) |
| | | 9 | SOLE DISPOSITIVE POWER<br>0 |
| | | 10 | SHARED DISPOSITIVE POWER<br>9,000,000 (1) |

---

| 11 | AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH REPORTING PERSON<br><br>9,000,000 (1) |
|---|---|

---

| 12 | CHECK BOX IF THE AGGREGATE AMOUNT IN ROW (11) EXCLUDES CERTAIN SHARES*                                                          [_] |
|---|---|

---

| 13 | PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (11)<br><br>35.0% |
|---|---|

---

| 14 | TYPE OF REPORTING PERSON*<br><br>OO; IA |
|---|---|

---

* SEE INSTRUCTIONS BEFORE FILLING OUT

------------------------

1    Assuming full conversion of the Series A Convertible Participating
     Preferred Stock and including Warrant to purchase an aggregate of 3,000,000
     shares of Common Stock. See Item 5 herein.

SCHEDULE 13D

```
--------------------------------------------------------------------------
1       NAME OF REPORTING PERSON

        Perseus EC, LLC
--------------------------------------------------------------------------
2       CHECK THE APPROPRIATE BOX IF A MEMBER OF A GROUP*
        (a)     [_]
        (b)     [X]
--------------------------------------------------------------------------
3       SEC USE ONLY


--------------------------------------------------------------------------
4       SOURCE OF FUNDS*

        Not Applicable
--------------------------------------------------------------------------
5       CHECK BOX IF DISCLOSURE OF LEGAL PROCEEDINGS IS REQUIRED PURSUANT TO
        ITEMS 2(D) OR 2(E)
                                                                   [_]
--------------------------------------------------------------------------
6       CITIZENSHIP OR PLACE OR ORGANIZATION

        Delaware
--------------------------------------------------------------------------
                            7       SOLE VOTING POWER
                                    0
         NUMBER OF
           SHARES          8        SHARED VOTING POWER
        BENEFICIALLY                9,000,000 (1)
          OWNED BY
            EACH           9        SOLE DISPOSITIVE POWER
         REPORTING                  0
           PERSON
            WITH           10       SHARED DISPOSITIVE POWER
                                    9,000,000 (1)
--------------------------------------------------------------------------
11      AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH REPORTING PERSON

        9,000,000 (1)
--------------------------------------------------------------------------
12      CHECK BOX IF THE AGGREGATE AMOUNT IN ROW (11) EXCLUDES CERTAIN SHARES*
                                                                   [_]
--------------------------------------------------------------------------
13      PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (11)

        35.0%
--------------------------------------------------------------------------
14      TYPE OF REPORTING PERSON*

        OO
--------------------------------------------------------------------------
                    * SEE INSTRUCTIONS BEFORE FILLING OUT

------------------------
1   Assuming full conversion of the Series A Convertible Participating
    Preferred Stock and including Warrant to purchase an aggregate of 3,000,000
    shares of Common Stock. See Item 5 herein.
```

CUSIP NO. 98241108                                              PAGE 11 OF 23

                                SCHEDULE 13D
--------------------------------------------------------------------------
1       NAME OF REPORTING PERSON

        Perseuspur, LLC
--------------------------------------------------------------------------
2       CHECK THE APPROPRIATE BOX IF A MEMBER OF A GROUP*
        (a)    [_]
        (b)    [X]
--------------------------------------------------------------------------
3       SEC USE ONLY


--------------------------------------------------------------------------
4       SOURCE OF FUNDS*

        Not Applicable
--------------------------------------------------------------------------
5       CHECK BOX IF DISCLOSURE OF LEGAL PROCEEDINGS IS REQUIRED PURSUANT TO
        ITEMS 2(D) OR 2(E)
                                                                   [_]
--------------------------------------------------------------------------
6       CITIZENSHIP OR PLACE OR ORGANIZATION

        Delaware
--------------------------------------------------------------------------
                        7       SOLE VOTING POWER
                                0
          NUMBER OF
           SHARES       8       SHARED VOTING POWER
        BENEFICIALLY            9,000,000 (1)
          OWNED BY
           EACH         9       SOLE DISPOSITIVE POWER
         REPORTING             0
           PERSON
            WITH        10      SHARED DISPOSITIVE POWER
                               9,000,000 (1)
--------------------------------------------------------------------------
11      AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH REPORTING PERSON

        9,000,000 (1)
--------------------------------------------------------------------------
12      CHECK BOX IF THE AGGREGATE AMOUNT IN ROW (11) EXCLUDES CERTAIN SHARES*

                                                                   [_]
--------------------------------------------------------------------------
13      PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (11)

        35.0%
--------------------------------------------------------------------------
14      TYPE OF REPORTING PERSON*

        OO
--------------------------------------------------------------------------
                   * SEE INSTRUCTIONS BEFORE FILLING OUT

------------------------
1    Assuming full conversion of the Series A Convertible Participating
     Preferred Stock and including Warrant to purchase an aggregate of 3,000,000
     shares of Common Stock. See Item 5 herein.

ITEM 1.  SECURITY AND ISSUER.

       This Statement on Schedule 13D relates to the common stock, par value $.001 per share (the "Common Stock"), issued by Bioenvision, Inc., a Delaware corporation (the "Company"), whose principal executive office is located at One Rockefeller Plaza, Suite 1600, New York, New York 10020.

ITEM 2.  IDENTITY AND BACKGROUND.

       (a), (b), (c) and (f). This Statement on Schedule 13D is being filed on behalf of each of the following persons (each a "Reporting Person" and collectively, the "Reporting Persons"): (i) Perseus-Soros BioPharmaceutical Fund, LP, a Delaware limited partnership (the "Purchaser"); (ii) Perseus-Soros Partners, LLC, a Delaware limited liability company ("Perseus-Soros Partners"); (iii) Perseus BioTech Fund Partners, LLC, a Delaware limited liability company ("Perseus Partners"); (iv) SFM Participation, L.P., a Delaware limited partnership ("SFM Participation"); (v) SFM AH, Inc., a Delaware corporation ("SFM AH"); (vi) Perseus EC, LLC, a Delaware limited liability company ("Perseus EC"); (vii) Perseuspur, LLC, a Delaware limited liability company ("Perseuspur"); (viii) Mr. Frank H. Pearl ("Mr. Pearl"); (ix) Mr. George Soros ("Mr. Soros"); and (x) Soros Fund Management LLC, a Delaware limited liability company ("SFM LLC").

       The Purchaser was formed in order to engage in the acquiring, holding and disposing of investments in various companies. Perseus-Soros Partners is the general partner of the Purchaser and was formed to act as the general partner of the Purchaser. Perseus Partners and SFM Participation are the managing members of Perseus-Soros Partners.

       Perseus Partners was formed in order to engage in the acquiring, holding and disposing of investments in various companies. Perseus EC is the managing member of Perseus Partners. Perseus EC was formed in order to manage Perseus Partners and to make investments through Perseus Partners and to fulfill such other purposes as may be determined by Perseus Partners from time to time. Set forth on Annex A hereto and incorporated by reference in response to this Item 2 and elsewhere in this Schedule 13D as applicable is a list of executive officers of Perseus EC. Perseuspur is a member of Perseus EC. Perseuspur was formed in order to engage in the acquiring, holding and disposing of investments in various companies for investment purposes. Set forth on Annex B hereto and incorporated by reference in response to this Item 2 and elsewhere in this Schedule 13D as applicable is a list of executive officers of

Perseuspur. Mr. Pearl is the sole member of Perseuspur and in such capacity, he may be deemed a beneficial owner of the Common Stock held for the account of the Purchaser.

Accordingly, pursuant to the regulations promulgated under Section 13(d) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), Perseus-Soros Partners, Perseus Partners, Perseus EC, Perseuspur and Mr. Pearl each may be deemed to be a beneficial owner of the Common Stock held for the account of the Purchaser.

SFM Participation was formed in order to engage in the acquiring, holding and disposing of investments in various companies. SFM AH is the general partner of SFM Participation. Mr. Soros is the sole shareholder of SFM AH. Mr. Soros has entered into an agreement dated as of January 1, 1997 with SFM LLC pursuant to which Mr. Soros has, among other things, agreed to use his best efforts to cause SFM AH, as the general partner of SFM Participation, to act at the direction of SFM LLC, which agreement to so act shall terminate upon the earlier of (a) the assignment to SFM LLC of the legal and beneficial ownership in SFM AH and (b) the assignment to SFM LLC of the general partnership interest in SFM Participation (the "SFM AH Contract"). Set forth on Annex C hereto and incorporated by reference in response to this Item 2 and elsewhere in this Schedule 13D as applicable is a list of the executive officers of SFM AH.

Accordingly, pursuant to the regulations promulgated under Section 13(d) of the Securities Exchange Act of 1934, SFM Participation and SFM AH each may be deemed a beneficial owner of the Common Stock held for the account of the Purchaser.

Pursuant to regulations promulgated under Section 13(d) of the Exchange Act, SFM LLC, pursuant to the provisions of the SFM AH Contract, Mr. Soros, in his capacity as Chairman and President of SFM LLC, may be deemed a beneficial owner of the Common Stock held for the account of the Purchaser.

The address of the principal business and principal office of the Purchaser is 888 Seventh Avenue, 29th Floor, New York, NY 10106. The address of the principal business and principal office of (i) Perseus-Soros Partners, (ii) Perseus Partners, (iii) Perseus EC, (iv) Perseuspur and (v) Mr. Pearl is 2099 Pennsylvania Avenue, Suite 9001, Washington, D.C. 20006-1813. The present principal occupation or employment of Mr. Pearl is as executive officer of Perseus, LLC and its related entities. Mr. Pearl is a United States citizen.

The address of the principal business and principal offices of (i) SFM Participation, (ii) Mr. Soros, (iii) SFM AH and (iv) SFM LLC is 888 Seventh Avenue, 33rd Floor, New York, New York 10106. The principal occupation of Mr. Soros, a United States citizen, is his direction of the activities of SFM LLC, which is carried out in his capacity as Chairman of SFM LLC at SFM LLC's principal office.

(d) and (e). During the past five years, neither any Reporting Person nor, to the best knowledge of each Reporting Person, any individual otherwise identified in response to Item 2, has been convicted in a criminal proceeding (excluding traffic violations or similar misdemeanors) or was a party to a civil proceeding of a judicial or administrative body of competent jurisdiction and as a result of which any such person was or is subject to a judgment, decree or final order enjoining future violations of, or prohibiting or mandating activities subject to, federal or state securities laws or finding any violation with respect to such laws.

Information contained herein concerning SFM Participation, SFM AH, SFM LLC and Mr. Soros has been provided by SFM LLC and the other Reporting Persons assume no responsibility for such information. Information contained herein concerning Perseus Partners, Perseus EC, Perseuspur and Mr. Pearl has been provided by each such Reporting Person and the other Reporting Persons assume no responsibility for such information.

ITEM 3.   SOURCE AND AMOUNT OF FUNDS OR OTHER CONSIDERATION.

Pursuant to a Securities Purchase Agreement, dated as of May 7, 2002 (the "Securities Purchase Agreement"), among the Purchaser and the Company, the Company issued and the Purchaser acquired 3,000,000 shares of the Company's Series A Convertible Participating Preferred Stock, par value $.001 per share (the "Series A Preferred Stock"), and a warrant (the "Warrant" and, together with the Series A Preferred Stock, the "Securities") to purchase 3,000,000 shares of Common Stock for an aggregate purchase price of $9,000,000 (the "Purchase Price"). The source of the Purchase Price was capital contributions from the partners of the Purchaser.

ITEM 4.   PURPOSE OF TRANSACTION.

Except as disclosed herein, the Reporting Persons have acquired the shares of Series A Preferred Stock and the Warrant for investment purposes.

A copy of the Securities Purchase Agreement is attached hereto as Exhibit 2 and incorporated by reference herein, a copy of the Certificate of Designation for the Series A Preferred Stock

(the "Series A Certificate") is attached hereto as Exhibit 3 and incorporated herein by reference, a copy of the Warrant is attached hereto as Exhibit 4 and incorporated herein by reference and a copy of the Registration Rights Agreement (the "Registration Rights Agreement") is attached hereto as Exhibit 5 and incorporated herein by reference. Set forth below is a summary of the material terms of the Securities Purchase Agreement, Series A Certificate, the Warrant and the Registration Rights Agreement.

The following summary is qualified in its entirety by reference to the Securities Purchase Agreement, the Series A Certificate, the Warrant and the Registration Rights Agreement.

TERMS OF THE SECURITIES PURCHASE AGREEMENT

BOARD REPRESENTATION. Pursuant to the Securities Purchase Agreement, the Board of Directors of the Company (the "Board") appointed two Purchaser representatives to the Board, Steve Elms and Andrew Schiff, M.D. In addition, pursuant to the Securities Purchase Agreement, at any time that the Purchaser and its affiliates (as such term is defined in Rule 405 of the Securities Act of 1933, as amended) are not represented on the Board and hold at least: (i) 25% of the shares of Series A Preferred Stock or (ii) 10.0% of the outstanding Common Stock on an "as-converted basis," the Purchaser shall have certain consultation rights, including but not limited to (a) appointing a non-voting representative to attend meetings of the Board and (b) to make proposals, recommendations and suggestions to the Company's officers and directors relating to the business and affairs of the Company at such reasonable times as may be requested by the Purchaser (the Company will not be required to accept such proposals, recommendations or suggestions).

TERMS OF THE SERIES A PREFERRED STOCK

DIVIDENDS. The holders of the outstanding shares of Series A Preferred Stock shall be entitled to receive cumulative dividends in cash (except as set forth below), quarterly in arrears on the 30th day of January, April, July and October of each year (each a "Dividend Payment Date") equal to the 5% of the initial Liquidation Preference (as defined in the Series A Certificate) per share of Series A Preferred Stock, whether or not declared by the Board. Dividends shall begin to accrue on the Series A Preferred Stock as of May 7, 2002. Dividends on each share of Series A Preferred Stock shall be cumulative; therefore, if a full or partial dividend on the shares of Series A Preferred Stock with respect to any quarter is not declared by the Board, the Company shall remain obligated to pay a full dividend with respect to that quarter, provided, however, that any unpaid dividends shall not bear interest. At the election of the Company, any

accrued but unpaid dividends may be paid in cash at any time. At the election of the Company, each dividend on the Series A Preferred Stock may be paid in shares of Common Stock. Dividends paid in shares of Common Stock shall be paid in full shares only, with cash payment equal to the value of any fractional shares. The issuance of such shares of Common Stock shall be valued at the average of the per share Market Price (as defined in the Series A Certificate) for the ten Trading Day (as defined in the Series A Certificate) period immediately preceding the date on which the dividend becomes due.

CONVERSION. Each share of Series A Preferred Stock shall be convertible into a number of shares of Common Stock equal to the applicable Liquidation Amount (as discussed below) divided by the then applicable Conversion Price (as discussed below) upon the earlier to occur of (i) the election of the holder to convert, at any time after the issue date, or (ii) if, at any time after May 8, 2003, the first anniversary of the issue date, upon which both (x) the average of the Market Price per share of Common Stock for 30 consecutive Trading Days exceeds $10.00 (with appropriate adjustment made for any stock dividend, split-up or subdivision or any combination or reclassification made or effected subsequent to the issue date) and (y) the average trading volume for the Common Stock during such period exceeds 150,000 shares (subject to adjustment in the event of stock split, reverse stock splits, stock dividends, recapitalizations or similar events) per Trading Day. On May 8, 2002, the issue date, "Liquidation Amount" is equal to $3.00 per share of Common Stock, the "Conversion Price" is equal to $1.50 per share of Common Stock and the Common Stock conversion rate is two for one. The Conversion Price and the number of shares issuable upon conversion of the Series A Preferred Stock will be subject to adjustment upon the occurrence of certain events as set forth in the Series A Certificate.

LIQUIDATION PREFERENCES. Upon a voluntary or involuntary liquidation, under applicable bankruptcy or reorganization legislation, or dissolution or winding up of the Company (each, a "Liquidation"), before any distribution of assets shall be made to the holders of junior securities, the holder of each share of Series A Preferred Stock then outstanding shall be paid out of the assets of the Company legally available for distribution to its stockholders an amount per share equal to the original issue price per share of the Series A Preferred Stock ($3.00, as adjusted for stock splits, dividends, combinations or other recapitalization of the Series A Preferred Stock) plus all dividends accrued but unpaid on such share (whether or not declared) up to the date of the liquidation. Upon the completion of the distribution described in the foregoing sentence, and any other distribution to any other class or series of senior securities, if

assets remain in the Company, the remaining assets of the Company available for distribution to stockholders shall be distributed among the holders of shares of Series A Preferred Stock, the holders of shares of any series of preferred stock entitled to a participating payment and the holders of Common Stock pro rata based on the number of shares of the Common Stock held by each (as if their shares had been converted into Common Stock immediately prior to the record date for determining the stockholders of the Company eligible to receive such dividends). At the election of a holders of the Series A Preferred Stock, certain change of control events will be deemed a Liquidation.

VOTING RIGHTS. Each share of Series A Preferred Stock shall entitle the holder thereof to vote, in person or by proxy, at a special or annual meeting of stockholders, on all matters entitled to be voted on by holders of Common Stock voting together as a single class with other shares entitled to vote thereon. With respect to any such vote, each share of Series A Preferred Stock shall entitle the holder thereof to cast that number of votes per share as is equal to the number of votes that such holder would be entitled to cast had such holder converted its shares of Series A Preferred Stock into shares of Common Stock on the record date for determining the stockholders of the Company eligible to vote on any such matters. So long as the shares of Series A Preferred Stock are outstanding, the Company shall not, take, approve or otherwise ratify any of the following actions without the consent of at least a majority of the then outstanding shares of Series A Preferred Stock: (a) authorize or issue any new class or series of parity securities or senior securities; (b) purchase, repurchase or redeem any securities of the Company; (c) increase or decrease the number of members constituting the size of the Board; (d) increase the authorized number of shares of Common Stock or Series A Preferred Stock; (e) effect any merger, combination, reorganization, or sale of all or substantially all of the Company's assets; (f) declare or pay dividends or any other distribution on shares of Common Stock or any other capital stock of the Company (other than a contemplated by the Series A Certificate); (g) amend its charter documents; or (h) increase the number of shares of Common Stock reserved for the employee option pool by more than 5% per year.

TERMS OF THE WARRANT

EXERCISE RIGHTS. The Common Stock underlying the Warrant may be purchased at a price per share equal to $2.00 (the "Exercise Price"). The Exercise Price may be paid in cash. The Exercise Price

and the number of shares issuable upon exercise of the Warrant will be subject to adjustment upon the occurrence of certain events as set forth in the Warrant.

   EXERCISE PERIOD. The Warrant is exercisable at any time, or from time to time, from the date of issuance, May 8, 2002 until May 7, 2007.

TERMS OF THE REGISTRATION RIGHTS AGREEMENT

   REGISTRATION RIGHTS. Pursuant to the Securities Purchase Agreement, the Company granted the Purchaser certain demand registration rights, "piggy-back" registration rights and Form S-3 registration rights as described more fully in the Registration Rights Agreement in connection with shares of Common Stock issued or issuable upon conversion of the Series A Preferred Stock or exercise of the Warrant ("Registrable Securities"). The Company has an obligation under the Registration Rights Agreement to prepare and file with the Securities and Exchange Commission (the "Commission") within sixty days following May 8, 2002 a registration statement on Form SB-1 or successor form registering the Registrable Securities. The purpose of such registration rights is to facilitate the Purchaser's ability to dispose of its Registrable Securities in a public sale.

ADDITIONAL DISCLOSURE

   The Reporting Persons may from time to time acquire additional shares of Common Stock in the open market or in privately negotiated transactions, subject to availability of Common Stock at prices deemed favorable, the Company's business or financial condition and other factors and conditions the Reporting Persons deem appropriate. Alternatively, the Reporting Persons may sell all or a portion of the Series A Preferred Stock, Warrant, or Common Stock issued upon exercise of the Warrant or conversion of the Series A Preferred Stock in privately negotiated transactions or in the open market pursuant to the exercise of certain registration rights granted pursuant to the Securities Purchase Agreement as described above, in each case subject to the factors and conditions referred to above and to the terms of the Securities Purchase Agreement, the Series A Preferred Stock, the Warrant and the Registration Rights Agreement, as the case may be. In addition, the Reporting Persons may formulate other purposes, plans or proposals regarding the Company or any of its securities to the extent deemed advisable in light of general investment and trading policies, market conditions or other factors.

   Except as described in the Securities Purchase Agreement, the Warrant, the Series A Certificate or the Registration Rights Agreement, and as otherwise set forth in this Schedule 13D, no

Reporting Person or any individual otherwise identified in Item 2 has any present plans or proposals which relate to or would result in: (a) the acquisition by any person of additional securities of the Company, or the disposition of securities of the Company; (b) an extraordinary corporate transaction, such as a merger, reorganization or liquidation, involving the Company or any of its subsidiaries; (c) a sale or transfer or a material amount of assets of the Company or of any of its subsidiaries; (d) any change in the present board of directors or management of the Company, including any plans or proposals to change the number or term of directors or to fill any existing vacancies on the board; (e) any material change in the present capitalization or dividend policy of the Company; (f) any other material change in the Company's business or corporate structure; (g) changes in the Company's charter, bylaws or instruments corresponding thereto or other actions which may impede the acquisition of control of the Company by any person; (h) causing a class of securities of the Company to be delisted from a national securities exchange or to cease to be authorized to be quoted in an inter-dealer quotation system of a registered national securities association; (i) a class of equity securities of the Company becoming eligible for termination of registration pursuant to Section 12(g)(4) of the Securities Exchange Act of 1934; or (j) any action similar to any of those enumerated above.

ITEM 5.  INTEREST IN SECURITIES OF THE ISSUER.

(a)     As set forth above, on May 8, 2002, the Company issued to the Purchaser, and the Purchaser acquired, (i) 3,000,000 shares of the Series A Preferred Stock and (ii) a Warrant to purchase 3,000,000 shares of Common Stock, subject to adjustment under certain circumstances. Shares of the Preferred Stock are convertible into shares of Common Stock at any time. The Warrant is exercisable at any time until May 7, 2007. Accordingly, as of the date hereof and giving effect to the conversion of the Series A Preferred Stock and Warrants, each of the Reporting Persons may be deemed to beneficially own an aggregate of 9,000,000 shares of Common Stock which, based on calculations made in accordance with Rule 13d-3(d) and there being 16,687,786 shares of Common Stock outstanding as of March 12, 2002 as disclosed by the Company in its Proxy Statement filed with the Commission on April 10, 2002, represents approximately 35.0% of the outstanding shares of Common Stock on a diluted basis in accordance with Rule 13d-3(d).

(b)         (i)         Each of the Purchaser and Perseus-Soros Partners may be deemed to have sole power to direct the voting and disposition of the 9,000,000 shares of Common Stock beneficially owned by the Purchaser.

(ii)         By virtue of the relationships between and among the Reporting Persons described in Item 2 of this Statement on Schedule 13D, each of the Reporting Persons, other than the Purchaser and Perseus-Soros Partners may be deemed to share the power to direct the voting and disposition of the 9,000,000 shares of Common Stock beneficially owned by the Purchaser.

(c)         Except as set forth above, no Reporting Person nor, to the best knowledge of each Reporting Person, any person identified in Item 2 hereof, beneficially owns any shares of Common Stock or has effected any transaction in shares of Common Stock during the preceding 60 days.

(d)         Each of the Reporting Persons affirms that no person other than the Reporting Persons has the right to receive or the power to direct the receipt of dividends from, or the proceeds from the sale of, the shares of Common Stock owned by the Reporting Persons. The partners of the Purchaser have the right to participate in the receipt of dividends from, or proceeds from the sale of, the Securities held for the account of the Purchaser in accordance with their ownership interests in the Purchaser.

(e)         Not applicable.

ITEM 6.   CONTRACTS, ARRANGEMENTS, UNDERSTANDINGS OR RELATIONSHIPS WITH RESPECT
          TO SECURITIES OF THE ISSUER.

As described in Items 3 and 4 above, on May 8, 2002, the Purchaser and the Company entered into to the Securities Purchase Agreement pursuant to which the Purchaser agreed to purchase an aggregate of 3,000,000 shares of Series A Preferred Stock, having the rights, privileges and preferences set forth in the Series A Certificate, and Warrants exercisable for an aggregate of 3,000,000 shares of Common Stock. The Purchaser and the Company also entered into the Registration Rights Agreement pursuant to which the Purchaser has certain demand registration rights, "piggy-back" registration rights and Form S-3 registration rights as described more fully in the Registration Rights Agreement. The Company has an obligation under the Registration Rights Agreement to prepare and file with the Commission within sixty days following May 8, 2002 a registration statement on Form SB-1 or successor form registering the Registrable Securities. The foregoing summaries of the Securities Purchaser Agreement, the Warrant and the Registration Rights Agreement are qualified in their entirety by reference to Exhibits 2, 3, 4 and 5.

CUSIP NO. 98241108

ITEM 7.  MATERIAL TO BE FILED AS EXHIBITS.

Exhibit 1:    Joint Filing Agreement, dated May 20, 2002, among (i) Perseus-Soros BioPharmaceutical Fund, L.P., (ii) Perseus-Soros Partners, LLC, (iii) Perseus BioTech Fund Partners, LLC, (iv) SFM Participation L.P., (v) SFM AH, Inc., (vi) Frank H. Pearl, (vii) George Soros, (viii) Soros Fund Management LLC, (ix) Perseus EC, LLC and (x) Perseuspur, LLC.

Exhibit 2:    Securities Purchase Agreement, dated as of May 7, 2002, between Bioenvision, Inc. and Perseus-Soros BioPharmaceutical Fund, L.P.

Exhibit 3:    Certificate of Designations, Preferences and Rights, dated as of May 7, 2002, governing the Series A Convertible Participating Preferred Stock of Bioenvision, Inc.

Exhibit 4:    Warrant, dated as of May 7, 2002, for 3,000,000 shares of Common Stock, par value $.001 per share, of Bioenvision, Inc. issued to Perseus-Soros BioPharmaceutical Fund, L.P.

Exhibit 5:    Registration Rights Agreement, dated as of May 7, 2002, between Bioenvision, Inc. and Perseus-Soros BioPharmaceutical Fund, L.P.

Exhibit 6:    Power of Attorney dated January 15, 2002 appointing each of Armando T. Belly, Jodye Anzalotta, Maryann Canfield, Sean Cullinan, Richard D. Holahan, Jr. and Robert Soros as Attorney-In-Fact for George Soros.

CUSIP NO. 98241108                                    PAGE 22 OF 23

SIGNATURE

           After reasonable inquiry and to the best of its knowledge and
belief, each of the undersigned certifies that the information set forth in this
statement is true, complete and correct.

Dated:  May 20, 2002

                            PERSEUS-SOROS BIOPHARMACEUTICAL FUND, LP

                            By:    Perseus-Soros Partners, LLC,
                                   General Partner

                            By:    SFM Participation, L.P.,
                                   Managing Member

                            By:    SFM AH, Inc.
                                   General Partner

                            By:    /s/ Richard D. Holahan, Jr.
                                   ----------------------------------------
                                   Name:  Richard D. Holahan, Jr.
                                   Title:  Secretary


                            PERSEUS-SOROS PARTNERS, LLC

                            By:    SFM Participation, L.P.
                                   Managing Member

                            By:    SFM AH, Inc.
                                   General Partner

                            By:    /s/ Richard D. Holahan, Jr.
                                   ----------------------------------------
                                   Name:  Richard D. Holahan, Jr.
                                   Title:  Secretary


                            PERSEUS BIOTECH FUND PARTNERS, LLC

                            By:    Perseuspur EC, L.L.C.
                                   Managing Member

                            By:    Perseuspur, LLC
                                   Member

                            By:    /s/ Rodd Macklin
                                   ----------------------------------------
                                   Name:  Rodd Macklin
                                   Title:  Secretary and Treasurer


                            PERSEUS EC, L.L.C.

                            By:    Perseuspur, LLC
                                   Member

                            By:    /s/ Rodd Macklin
                                   ----------------------------------------
                                   Name:  Rodd Macklin
                                   Title:  Secretary and Treasurer

PERSEUSPUR, LLC

By:     /s/ Rodd Macklin
        -----------------------------------------
        Name:   Rodd Macklin
        Title:  Secretary and Treasurer


MR. FRANK H. PEARL

By:     /s/ Frank H. Pearl
        -----------------------------------------
        Name:   Frank H. Pearl


SFM PARTICIPATION, L.P.

By:     SFM AH, Inc.
        General Partner

By:     /s/ Richard D. Holahan, Jr.
        -----------------------------------------
        Name:   Richard D. Holahan, Jr.
        Title:  Secretary


SFM AH, INC.

By:     /s/ Richard D. Holahan, Jr.
        -----------------------------------------
        Name:   Richard D. Holahan, Jr.
        Title:  Secretary


MR. GEORGE SOROS

By:     /s/ Richard D. Holahan, Jr.
        -----------------------------------------
        Name:   Richard D. Holahan, Jr.
        Title:  Attorney-in-Fact


SOROS FUND MANAGEMENT LLC

By:     /s/ Richard D. Holahan, Jr.
        -----------------------------------------
        Name:   Richard D. Holahan, Jr.
        Title:  Assistant General Counsel

ANNEX A

EXECUTIVE OFFICERS OF PERSEUS EC, L.L.C.

| NAME/TITLE/CITIZENSHIP | PRINCIPAL OCCUPATION | BUSINESS ADDRESS |
|---|---|---|
| Frank H. Pearl<br>Chairman, President and Chief<br>Executive Officer<br>United States | Executive officer of Perseus,<br>LLC and its related entities | 2099 Pennsylvania Avenue<br>Suite 900<br>Washington, D.C. 20006-1813 |
| Kenneth M. Socha<br>Executive Vice President<br>United States | Executive officer of Perseus,<br>LLC and its related entities | 2099 Pennsylvania Avenue<br>Suite 900<br>Washington, D.C. 20006-1813 |
| Rodd Macklin<br>Secretary and Treasurer<br>United States | Executive officer of Perseus,<br>LLC and its related entities | 2099 Pennsylvania Avenue<br>Suite 900<br>Washington, D.C. 20006-1813 |

Except as otherwise disclosed elsewhere in this Schedule 13D, to the best of the Reporting Persons' knowledge:

(a)     None of the above persons hold any Common Stock or securities derivative thereof.

(b)     None of the above persons has any contracts, arrangements, understandings or relationships with respect to the Common Stock or securities derivative thereof.

ANNEX B

EXECUTIVE OFFICERS OF PERSEUSPUR, LLC

| NAME/TITLE/CITIZENSHIP | PRINCIPAL OCCUPATION | BUSINESS ADDRESS |
| --- | --- | --- |
| Frank H. Pearl<br>Chairman, President and Chief<br>Executive Officer<br>United States | Executive officer of Perseus,<br>LLC and its related entities | 2099 Pennsylvania Avenue<br>Suite 900<br>Washington, D.C. 20006-1813 |
| Kenneth M. Socha<br>Executive Vice President<br>United States | Executive officer of Perseus,<br>LLC and its related entities | 2099 Pennsylvania Avenue<br>Suite 900<br>Washington, D.C. 20006-1813 |
| Rodd Macklin<br>Secretary and Treasurer<br>United States | Executive officer of Perseus,<br>LLC and its related entities | 2099 Pennsylvania Avenue<br>Suite 900<br>Washington, D.C. 20006-1813 |

Except as otherwise disclosed elsewhere in this Schedule 13D, to the best of the Reporting Persons' knowledge:

(a)    None of the above persons hold any Common Stock or securities derivative thereof.

(b)    None of the above persons has any contracts, arrangements, understandings or relationships with respect to the Common Stock or securities derivative thereof.

ANNEX C

EXECUTIVE OFFICERS OF SFM AH, INC.

| NAME/TITLE/CITIZENSHIP | PRINCIPAL OCCUPATION | BUSINESS ADDRESS |
| --- | --- | --- |
| Dan Eule<br>President<br>United States | Director of Tax of SFM LLC | 888 Seventh Avenue<br>33rd Floor<br>New York, NY 10106 |
| Sean Cullinan<br>Vice President<br>United States | Chief Financial Officer of SFM<br>LLC | 888 Seventh Avenue<br>33rd Floor<br>New York, NY 10106 |
| Eve Mongiardo<br>Treasurer<br>United States | Chief Financial Officer of Soros<br>Private Funds Management, LLC | 888 Seventh Avenue<br>33rd Floor<br>New York, NY 10106 |
| Richard D. Holahan<br>Secretary<br>United States | Assistant General Counsel of SFM<br>LLC | 888 Seventh Avenue<br>33rd Floor<br>New York, NY 10106 |

To the best of the Reporting Persons' knowledge:

(a)     None of the above persons hold any Common Stock or securities derivative thereof.

(b)     None of the above persons has any contracts, arrangements, understandings or relationships with respect to the Common Stock or securities derivative thereof.

# BIOENVISION INC

345 PARK AVENUE
41ST FLOOR
NEW YORK, NY 10154
212−750−6700

# EX−99

**EXHIBIT 1**
**SC 13D Filed on 05/20/2002**
File Number 005−78274



EXHIBIT 1
to SCHEDULE 13D


JOINT FILING AGREEMENT

          Each of the undersigned hereby acknowledges and agrees, in
compliance with the provisions of Rule 13d-1(k)(1) promulgated under the
Securities Exchange Act of 1934, as amended, that the Schedule 13D to which this
Agreement is attached as an Exhibit (the "Schedule 13D"), and any amendments
thereto, will be filed with the Securities and Exchange Commission jointly on
behalf of the undersigned. This Agreement may be executed in one or more
counterparts.

Dated:  May 20, 2002


                    PERSEUS-SOROS BIOPHARMACEUTICAL FUND, LP

                    By:     Perseus-Soros Partners, LLC,
                            General Partner

                    By:     SFM Participation, L.P.,
                            Managing Member

                    By:     SFM AH, Inc.,
                            General Partner

                    By:     /s/ Richard D. Holahan, Jr.
                            ---------------------------------------
                            Name:  Richard D. Holahan, Jr.
                            Title: Secretary


                    PERSEUS-SOROS PARTNERS, LLC

                    By:     SFM Participation, L.P.
                            Managing Member

                    By:     SFM AH, Inc.
                            General Partner

                    By:     /s/ Richard D. Holahan, Jr.
                            ---------------------------------------
                            Name:  Richard D. Holahan, Jr.
                            Title: Secretary

```
PERSEUS BIOTECH FUND PARTNERS, LLC

By:     Perseuspur EC, L.L.C.
        Managing Member

By:     Perseuspur, LLC
        Member

By:     /s/ Rodd Macklin
        -----------------------------------------
        Name:   Rodd Macklin
        Title:  Secretary and Treasurer


PERSEUS EC, L.L.C.

By:     Perseuspur, LLC
        Member

By:     /s/ Rodd Macklin
        -----------------------------------------
        Name:   Rodd Macklin
        Title:  Secretary and Treasurer


PERSEUSPUR, LLC

By:     /s/ Rodd Macklin
        -----------------------------------------
        Name:   Rodd Macklin
        Title:  Secretary and Treasurer


MR. FRANK H. PEARL

By:     /s/ Frank H. Pearl
        -----------------------------------------
        Name:   Frank H. Pearl
```

```
SFM PARTICIPATION, L.P.

By:    SFM AH, Inc.
       General Partner

By:    /s/ Richard D. Holahan, Jr.
       ---------------------------------------
       Name:   Richard D. Holahan, Jr.
       Title:  Secretary


SFM AH, INC.

By:    /s/ Richard D. Holahan, Jr.
       ---------------------------------------
       Name:   Richard D. Holahan, Jr.
       Title:  Secretary


MR. GEORGE SOROS

By:    /s/ Richard D. Holahan, Jr.
       ---------------------------------------
       Name:   Richard D. Holahan, Jr.
       Title:  Attorney-in-Fact


SOROS FUND MANAGEMENT LLC

By:    /s/ Richard D. Holahan, Jr.
       ---------------------------------------
       Name:   Richard D. Holahan, Jr.
       Title:  Assistant General Counsel
```

# BIOENVISION INC

345 PARK AVENUE
41ST FLOOR
NEW YORK, NY 10154
212-750-6700

# EX-10

**EXHIBIT 2**
**SC 13D Filed on 05/20/2002**
File Number 005-78274



EXHIBIT 2
to SCHEDULE 13D


SECURITIES PURCHASE AGREEMENT

Securities Purchase Agreement (together with the schedules and exhibits hereto, this "AGREEMENT"), dated as of May 7, 2002, by and between Bioenvision, Inc., a Delaware corporation (the "COMPANY"), and each of the Persons (as defined below) who has executed a signature page to this Agreement (each a "PURCHASER," and together, the "PURCHASERS").


W I T N E S S E T H :

WHEREAS, the Company desires to issue and sell to the Purchasers, and the Purchasers desire to purchase from the Company, the Securities (as such term is defined below) as set forth below.

NOW, THEREFORE, in consideration of the foregoing premises and the mutual covenants and agreements hereinafter contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, intending to be legally bound, the parties hereto hereby agree as follows:

1.    AUTHORIZATION AND SALE OF PURCHASED SHARES.

1.1    AUTHORIZATION. The Company has duly authorized the issuance and sale of up to 5,920,000 shares of its Series A Preferred Stock, par value $0.001 per share (the "SERIES A PREFERRED STOCK"), with the powers, designations, preferences, rights, qualifications, limitations and restrictions contained in the Certificate of Designations of the Series A Preferred Stock, in the form of EXHIBIT A hereto (the "CERTIFICATE OF Designations"), to be acquired by the Purchasers in accordance with the terms of this Agreement. With the purchase of each share of Series A Preferred Stock, the Purchasers will also receive one (1) warrant (the "Warrant") to purchase one (1) share of Common Stock, par value $0.001 per share (the "COMMON STOCK"), in the form of EXHIBIT B hereto. The Series A Preferred Stock and the Warrants are collectively referred to herein as the "SECURITIES". The Purchasers of the Series A Preferred Stock shall have the benefit of certain registration rights in respect of the shares of Common Stock underlying the Securities on the terms and conditions of a Registration Rights Agreement, in the form of EXHIBIT C hereto (the "REGISTRATION RIGHTS AGREEMENT"). The Company is making the offering of the Securities (the "OFFERING") for sale only to individuals, entities or groups, including, without limitation, corporations, limited liability companies, limited or general partnerships, joint ventures, associations, joint stock companies, trusts, unincorporated organizations, or governments or any agencies or political subdivisions thereof (each, a "PERSON") who are "accredited investors" (as defined herein). All subscription proceeds received will be deposited directly into an Escrow Account (as defined below) as described in Section 2.1 herein. SCO Securities LLC ("SCO SECURITIES" or the "PLACEMENT Agent") is the Company's placement agent for the Offering, but other registered broker-dealers ("OTHER PARTICIPATING AGENTS") may also place Securities with the consent of SCO Securities.

1.2    SUBSCRIPTION.

Subject to the terms and conditions hereinafter set forth in this Agreement, each Purchaser hereby offers to purchase, at a price of $3.00 per share, the number of shares of Series A Preferred Stock set forth beneath each such Purchaser's name on the signature pages of this Agreement, for an aggregate purchase price (the "Purchase Price") to be paid by such Purchaser in the amount set forth on the signature page beneath such Purchaser's name. The Purchasers understand that the Purchasers will receive one (1) Warrant to purchase one (1) share of Common Stock for every share of Series A Preferred Stock for which this subscription is accepted. The Company may accept or reject subscriptions, in whole or in part, or accept subscriptions for less than the $60,000 minimum subscription, in its sole discretion.

1.3     SUBSCRIPTION PROCEDURES. To submit this Subscription, each Purchaser must deliver (i) this Agreement, including, without limitation, the annexed Purchaser Questionnaire, both duly completed and executed, (ii) an executed Registration Rights Agreement, and (iii) the purchase price, in full, for the Securities, in the amount of $3.00 for each share of Series A Preferred Stock for which such Purchaser is subscribing. The payment must be made in U.S. dollars, in immediately available funds, and must be delivered by certified check or wire transfer of immediately available funds. Certified checks must be made payable to Piper Rudnick LLP. The wire instructions are as follows:

|  |  |
|---|---|
| BANK NAME: | CITIBANK, N.A. |
| ADDRESS: | 153 EAST 53RD STREET, 20TH FLOOR |
|  | NEW YORK, NY   10019 |
| ATTN.: | TRINA SCHAEFER |
| BANK PHONE #: | 212-559-3809 |
| ACCOUNT NAME: | PIPER RUDNICK LLP ESCROW ACCOUNT |
| ACCOUNT #: | 37311689 |
| ABA TRANSIT #: | 021000089 |
|  |  |
| REFERENCE: | BIOENVISION, INC.----301140-1 |
|  | ANDREW J. COSENTINO---212-835-6000 |

Payment, and the other documents required for subscription must be delivered to the following address:

PIPER RUDNICK LLP
1251 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK   10020-1104

ATTENTION:  ANDREW J. COSENTINO, ESQ.
REFERENCE: BIOENVISION, INC.---301140-1

2.     CLOSING.

Upon acceptance of subscriptions totaling $12,000,000 (the "INITIAL MINIMUM OFFERING"), the Company shall hold a closing of the purchase and sale of such Securities (the "INITIAL CLOSING"); provided that the Company satisfies the Purchasers with reasonable assurance that at least $3,000,000 of additional Securities will be invested in the Company on similar terms as soon as practicable (but no more than 30 days) after the Initial Closing. Upon acceptance of subscriptions totaling $17,750,000, the Company shall hold a final closing (the "FINAL CLOSING," and together with the Initial Closing, the "CLOSINGS"). The Initial Closing and the Final Closing will take place at such location as may be agreed upon by the Company and the Placement Agent; however, the Final Closing will take place within thirty (30) days after the Initial Closing. The date of the Initial Closing will be referred to as the "Initial Closing Date" and the date of the Final Closing is referred to as the "FINAL CLOSING DATE." At the Closing with respect to the subscription by each Purchaser, to the extent the same is accepted by the Company, the Company will register in the name of each such Purchaser that number of Securities being purchased by such Purchaser in accordance with the information on the applicable signature page of this Agreement.

2.1     ESCROW. Pending the Closings, all funds paid in respect of this Agreement shall be deposited in an attorney escrow account (the "ESCROW ACCOUNT") maintained by Piper Rudnick LLP (the "ESCROW AGENT") pursuant to an Escrow Agreement, dated as of the date hereof, by and among the

-2-

Company, each Purchaser and the Escrow Agent (the "ESCROW AGREEMENT"). The Escrow Account shall not be interest bearing. If the Company accepts subscriptions for the Securities at or prior to the Initial Closing Date or the Final Closing Date, as the case may be, then all subscription proceeds received for subscriptions accepted by the Company prior to such Closing Date shall be paid over to the Company at each Closing, net of the placement fee and offering expenses, which shall be paid to the appropriate parties at each such Closing. If the Company shall not have received and accepted each Purchaser's subscription, then that subscription shall be void and all funds paid hereunder by such Purchaser, without deduction therefrom or interest thereon, shall be promptly returned to such Purchaser.

2.2.     RETURN OF FUNDS. If the Company does not receive subscriptions for the Initial Minimum Offering, then the Escrow Agent shall return each Purchaser's subscription amount within ten (10) business days of the date hereof. Each Purchaser hereby authorizes and directs the Escrow Agent to return or direct the return of any funds from the Escrow Account, without deduction therefrom or interest thereon, to the same account from which the funds were originally drawn, to the extent that such Purchaser's subscription is not accepted prior to the termination of the Offering.

3.     CONDITIONS TO THE OBLIGATIONS OF EACH PURCHASER AT CLOSING.

The obligation of each Purchaser to purchase and pay for the Securities subscribed for by such Purchaser at the applicable Closing is subject to the satisfaction on or prior to the Initial Closing Date or the Final Closing Date, as the case may be, of the following conditions, each of which may be waived by the applicable Purchaser:

3.1     OPINION OF COUNSEL TO THE COMPANY. Each Purchaser or its Representative (as defined in the Escrow Agreement) shall have received from Piper Rudnick LLP, counsel for the Company, its opinion dated as of the Initial Closing Date or Final Closing Date, as the case may be, and addressed to the Purchasers (to the extent purchasing securities on such Closing Date), covering the matters attached hereto as EXHIBIT D.

3.2     REPRESENTATIONS AND WARRANTIES. The representations and warranties of the Company contained in this Agreement which are qualified as to materiality must be true and correct in all respects and the representations and warranties of the Company contained in this Agreement which are not qualified as to materiality must be true and correct in all material respects as of the Closing Date except to the extent that the representations and warranties relate to an earlier date in which case the representations and warranties must be true and correct as written or true and correct in all material respects, as the case may be, as of the earlier date.

3.3     PERFORMANCE OF COVENANTS. The Company will have performed or complied with in all material respects all covenants and agreements required to be performed by it on or prior to the Closing pursuant to this Agreement, including, without limitation, the delivery of certificates evidencing the shares of Series A Preferred Stock for which the Subscription made hereby is accepted and one Warrant for each such share of Series A Preferred Stock.

3.4     NO INJUNCTIONS; ETC. No court or governmental injunction, order or decree prohibiting the purchase and sale of the Securities will be in effect. There will not be in effect any law, rule or regulation prohibiting or restricting the sale or requiring any consent or approval of any Person that has not been obtained to issue and sell the Securities to the Purchasers.

-3-

3.5     CLOSING DOCUMENTS. The Company will have delivered to each Purchaser or its Representative the following:

(a)     a certificate of the President of the Company certifying that the conditions in Sections 3.2 and 3.3 have been satisfied;

(b)     Prior to the Initial Closing, a certificate of the Secretary of the Company, dated as of that Closing Date, certifying (i) the attached copies of the Certificate of Incorporation and By-laws of the Company, (ii) the resolutions of the Board of Directors of the Company (the "BOARD") authorizing the execution, delivery and performance of this Agreement and the issuance of the Securities (including, but not limited to, for purposes of Section 203 of the Delaware General Corporation Law) and (iii) the incumbency of the officers duly authorized to execute this Agreement and the other documents contemplated by this Agreement; and for every other Closing, a certificate certifying that the foregoing certificate continues to be true, correct and complete;

(c)     a certificate of the Secretary of State of the State of Delaware, dated as a recent date (but no more than five business days) prior to the Closing Date, to the effect that the Company is in good standing in the State of Delaware and that all annual reports, if any, have been filed as required and that all taxes and fees have been paid in connection therewith;

(d)     a copy of the Certificate of Designations certified by the Secretary of State of the State of Delaware;

(e)     a certificate evidencing the shares of Series A Preferred Stock as to which the Company has accepted such Purchaser's subscription;

(f)     a certificate evidencing a Warrant to purchase one share of Common Stock for each share of Series A Preferred Stock for which the Company has accepted such Purchaser's subscription pursuant to this Agreement;

(g)     the Registration Rights Agreement duly executed by the Company; and

(h)     the Escrow Agreement duly executed by the Company.

3.6     WAIVERS AND CONSENTS. The Company will have obtained all consents and waivers necessary to execute and deliver this Agreement and all related documents and agreements and to issue and deliver the Securities, and all consents and waivers will be in full force and effect.

3.7     BOARD OF DIRECTORS. At Closing, the Board shall adopt a resolution pursuant to which the Board shall consist of the following five (5) persons:

Christopher B. Wood, M.D.
Jeffrey B. Davis
Thomas S. Nelson, C.A.
Steven A. Elms
Andrew Schiff, M.D.

3.8     CONFIDENTIALITY AGREEMENTS. The Company shall have received signed confidentiality agreements and assignment of invention agreements substantially in the form of EXHIBIT E attached hereto (a "CONFIDENTIALITY AGREEMENT") with all employees of the Company.

-4-

4.    CONDITIONS TO THE OBLIGATIONS OF THE COMPANY AT CLOSING.

The obligation of the Company to issue and sell the Securities to any Purchaser at the applicable Closing with respect to the Securities for which the Company has accepted the Subscription made by the such Purchaser by means of this Agreement is subject to the satisfaction on or prior to each Closing Date of the following conditions, each of which may be waived by the Company:

4.1    RECEIPT OF PURCHASE PRICE. The Company shall have received payment in full in immediately available funds in U.S. dollars of the Purchase Price with respect to the Securities for which the Company has accepted the Subscription made by such Purchaser by means of this Agreement; PROVIDED THAT the Company may only have an Initial Closing upon the receipt of subscriptions in the amount of the Initial Minimum Offering.

4.2    REPRESENTATIONS AND WARRANTIES. The representations and warranties of such Purchaser contained in this Agreement which are qualified as to materiality must be true and correct in all respects and the representations and warranties of such Purchaser contained in this Agreement which are not qualified as to materiality must be true and correct in all material respects as of the applicable Closing Date.

4.3    PERFORMANCE OF COVENANTS. Such Purchaser will have performed or complied with in all material respects all covenants and agreements required to be performed by such Purchaser on or prior to the Closing pursuant to this Agreement.

4.4    PURCHASER QUESTIONNAIRE. All of the information furnished by such Purchaser in the confidential purchaser questionnaire accompanying this Agreement (the "PURCHASER QUESTIONNAIRE") shall have been accurate and complete in all material respects.

4.5    NO INJUNCTIONS. No court or governmental injunction, order or decree prohibiting the purchase or sale of the Securities will be in effect.

4.6    CLOSING DOCUMENTS. Each Purchaser will have delivered to the Company the Registration Rights Agreement and the Escrow Agreement duly executed by such Purchaser.

5.    REPRESENTATIONS AND WARRANTIES OF EACH PURCHASER.

Each Purchaser, in order to induce the Company to accept this offer, hereby represents and warrants, severally and not jointly, as follows:

5.1    DUE AUTHORIZATION. Each Purchaser represents for such Purchaser to the Company that such Purchaser has full power and authority and has taken all action necessary to authorize such Purchaser to execute, deliver and perform such Purchaser's obligations under this Agreement. This Agreement is the legal, valid and binding obligation of such Purchaser in accordance with its terms.

5.2    ACCREDITED INVESTOR. Each Purchaser represents that such Purchaser is an Accredited Investor as that term is defined in Regulation D promulgated under the Securities Act of 1933, as amended (the "SECURITIES ACT").

-5-

5.3     NO INVESTMENT ADVICE. The Company has not made any other representations or warranties to such Purchaser other than as set forth herein or incorporated herein by reference with respect to the Company or rendered any investment advice.

5.4     INVESTMENT EXPERIENCE. Each Purchaser represents that such Purchaser has not authorized any Person to act as such Purchaser's Purchaser Representative (as that term is defined in Regulation D of the General Rules and Regulations under the Securities Act) in connection with this transaction. Such Purchaser has such knowledge and experience in financial, investment and business matters that such Purchaser is capable of evaluating the merits and risks of the prospective investment in the securities of the Company. Such Purchaser has consulted with such independent legal counsel or other advisers as such Purchaser has deemed appropriate to assist such Purchaser in evaluating the proposed investment in the Company.

5.5     ADEQUATE MEANS. Each Purchaser represents as to such Purchaser that such Purchaser (i) in the case of an individual only, has adequate means of providing for such Purchaser's current financial needs and possible contingencies; and (ii) can afford (a) to hold unregistered securities for an indefinite period of time as required; and (b) sustain a complete loss of the entire amount of the subscription.

5.6     ACCESS TO INFORMATION. Each Purchaser represents that such Purchaser has been afforded the opportunity to ask questions of, and receive answers from the officers and/or directors of the Company acting on its behalf concerning the terms and conditions of this transaction and to obtain any additional information, to the extent that the Company possesses such information or can acquire it without unreasonable effort or expense, necessary to verify the accuracy of the information furnished; and has had such opportunity to the extent such Purchaser considers appropriate in order to permit such Purchaser to evaluate the merits and risks of an investment in the Company. It is understood that all documents, records and books pertaining to this investment have been made available for inspection, and that the books and records of the Company will be available upon reasonable notice for inspection by investors during reasonable business hours at its principal place of business. The foregoing shall in no way be deemed to limit the ability of each Purchaser to rely on the representations and warranties set forth herein or incorporated herein by reference.

5.7     NO ENDORSEMENT. Each Purchaser further acknowledges that this Offering has not been passed upon or the merits thereof endorsed or approved by any state or federal authorities.

5.8     NON-REGISTERED SECURITIES. Each Purchaser acknowledges that the offer and sale of the Securities have not been registered under the Securities Act or any state securities laws and the Securities and the underlying shares of Common Stock may be resold only if registered pursuant to the provisions thereunder or if an exemption from registration is available. Each Purchaser understands that the Offering of the Securities is intended to be exempt from registration under the Securities Act, based, in part, upon the representations, warranties and agreements of such Purchaser contained in this Agreement.

5.9     NO RESALE. Each Purchaser represents that the Securities being subscribed for, and the securities underlying the subscription, are being acquired solely for the account of such Purchaser for such Purchaser's investment and not with a view to, or for resale in connection with, any distribution in any jurisdiction where such sale or distribution would be precluded. By such representation, such Purchaser means that no other Person has a beneficial interest in the Securities or the securities underlying the subscription, and that no other Person has furnished or will furnish directly or indirectly, any part of or guarantee the payment of any part of the consideration to be paid by such Purchaser to the Company in connection therewith. Such Purchaser does not intend to dispose of all or any part of the Securities or the securities underlying the subscription except in compliance with the provisions of the Securities Act and

-6-

applicable state securities laws, and understands that the Securities and the securities underlying the subscription are being offered pursuant to a specific exemption under the provisions of the Securities Act, which exemption(s) depends, among other things, upon the compliance with the provisions of the Securities Act.

5.10    LEGEND. Each Purchaser hereby acknowledges and agrees that the Company may insert the following or similar legend on the face of the certificates evidencing the Securities purchased by such Purchaser and the shares of Common Stock issued upon the conversion or exercise thereof, as the case may be, if required in compliance with the Securities Act or state securities laws:

"These securities have not been registered under the Securities Act of 1933, as amended (the "Securities Act"), or any state securities laws and may not be sold or otherwise transferred or disposed of except pursuant to an effective registration statement under the Securities Act and any applicable state securities laws, or an exemption from registration under the Securities Act and any applicable state securities laws; provided that, if requested by the Company, an opinion of counsel reasonably satisfactory in form and substance is furnished to the Company that an exemption from the registration requirements of the Securities Act is available."

5.11    BROKER'S OR FINDER'S COMMISSIONS. No finder, broker, agent, financial person or other intermediary has acted on behalf of any Purchaser in connection with the sale of the Securities by the Company or the consummation of this Agreement or any of the transactions contemplated hereby. No Purchaser has had any direct or indirect contact with any other investment banking firm (or similar firm) with respect to the offer of the Securities by the Company to the Purchasers or the Purchasers' subscriptions for the Securities.

Each Purchaser certifies that each of the foregoing representations and warranties by such Purchaser sets forth in this Section 5 are true as of the date hereof and shall survive such date.

6.    REPRESENTATIONS AND WARRANTIES OF THE COMPANY.

For purposes of this Section 6 only, references to the Company shall mean the Company and Pathagon, Inc., a Delaware corporation and wholly-owned subsidiary of the Company ("Pathagon"), taken as a whole, except where reference to Pathagon would be inappropriate in the context of a representation or warranty. The Company represents and warrants to the Purchasers that:

6.1    ORGANIZATION, GOOD STANDING AND QUALIFICATION. The Company is a corporation duly organized, validly existing and in good standing under the laws of the State of Delaware. The Company has full corporate power and authority to own and hold its properties and to conduct its business. The Company is duly licensed or qualified to do business, and in good standing, in each jurisdiction in which the nature of its business requires licensing, qualification or good standing, except for any failure to be so licensed or qualified or in good standing that would not have a material adverse effect on the Company or its results of operations, assets or financial condition or on its ability to perform its obligations under this Agreement or to issue the Securities (a "MATERIAL ADVERSE EFFECT").

6.2    CAPITALIZATION. As of the date hereof, the authorized capital stock of the Company consists of 50,000,000 shares of Common Stock and 10,000,000 shares of Preferred Stock, par value $0.001 per share (the "PREFERRED STOCK"). As of the date hereof, (i) 16,887,786 shares of Common Stock were issued and outstanding, (ii) 2,200,000 shares of Common Stock were reserved for issuance upon exercise of outstanding options issued to certain officers of the Company, (iii) 2,904,544 shares of

-7-

Common Stock were reserved for issuance upon exercise of outstanding options issued to persons other than officers of the Company, (iv) 1,800,000 shares of Common Stock were reserved for issuance upon the exercise of outstanding warrants and (v) no shares of Preferred Stock were issued or outstanding. The Company has also agreed to issue options to purchase up to $3 million of shares of Common Stock to Ilex Oncology, Inc. ("ILEX") pursuant to that certain Co-Development Agreement, dated as of March 12, 2001, by and between the Company and Ilex in the event that certain milestones are achieved under such agreement, but no shares have been reserved in respect to those contingent options. In addition, there are 7,473,082 shares of Common Stock reserved for a stock option plan for the Company's employees; none of which such options are outstanding (the "AVAILABLE UNISSUED STOCK OPTION POOL"). All the outstanding shares of Common Stock have been duly authorized and validly issued and are fully paid and nonassessable and free of preemptive rights created by or through the Company, and have been issued in compliance with all federal and state securities laws, and were not issued in violation of any preemptive rights or similar rights to subscribe for or purchase securities. Except as set forth prior to the date hereof in the Commission Documents (as defined below) or in this Section 6.2 or on SCHEDULE 6.2 hereof, there are no other options, warrants or other rights, convertible debt, agreements, arrangements or commitments of any character obligating the Company to issue or sell any shares of capital stock of or other equity interests in the Company. The Company is not obligated to retire, redeem, repurchase or otherwise reacquire any of its capital stock or other securities. Except as disclosed in the Commission Documents or on SCHEDULE 6.2, there are no stockholders agreements, voting agreements or other similar agreements with respect to the Common Stock to which the Company is a party. Except as disclosed on Schedule 6.2, neither the Company nor any of its Subsidiaries directly or indirectly own or have any investment in any of the capital stock of, or any other proprietary interest in, any Person that is not a Subsidiary. Upon consummation of the transactions contemplated hereby, assuming all of the Securities offered hereunder have been issued and are outstanding, the Securities shall represent, on a fully diluted basis, approximately 42% of the Company's outstanding capital stock, which does not include the Available Unissued Stock Option Pool but does include the Warrants issuable to SCO Securities (the "SCO WARRANTS") in connection with this Offering. The Company has not adopted a stockholders rights plan, poison pill or similar arrangement. The consummation of the transactions contemplated by this Agreement will not accelerate the vesting schedule of any of the Company's outstanding options or warrants. For purposes of the foregoing, "FULLY DILUTED" means: (i) all shares of Company capital stock outstanding immediately following the Final Closing; (ii) all securities, including options and warrants, convertible into or exercisable for shares of Company capital stock, as if exercised and converted to the fullest extent of their terms; (iii) all securities issuable pursuant to contractual or other obligations of the Company existing at the Final Closing; and (iv) all shares of Company capital stock reserved for issuance to employees, consultants or directors of the Company or other Persons not including the securities described in clause (ii). "FULLY DILUTED" does not include the Available Unissued Stock Option Pool.

SCHEDULE 6.2 sets forth, as of the Closing Date, a true and complete list of each of the Subsidiaries of the Company. The Company owns all of the issued and outstanding capital stock of the Subsidiaries, free and clear of all Liens. All of such shares of capital stock are duly authorized, validly issued, fully paid and non-assessable, and were issued in compliance with the registration and qualification requirements of all applicable federal, state and foreign securities laws. Except as set forth on SCHEDULE 6.2, there are no options, warrants, conversion privileges, subscription or purchase rights or other rights presently outstanding to purchase or otherwise acquire any authorized but unissued, unauthorized or treasury shares of capital stock or other securities of, or any proprietary interest in, any of the Subsidiaries, and there is no outstanding security of any kind convertible into or exchangeable for such shares or proprietary interest. Other than Pathagon, none of the Subsidiaries conducts any material business or operations, owns any material assets or is liable for any material Liabilities.

-8-

"SUBSIDIARIES" means, as of the relevant date of determination, with respect to any Person, a corporation or other Person of which 50% or more of the voting power of the outstanding voting equity securities or 50% or more of the outstanding economic equity interest is held, directly or indirectly, by such Person. Unless otherwise qualified, or the context otherwise requires, all references to a "SUBSIDIARY" or to "SUBSIDIARIES" in this Agreement shall refer to a Subsidiary or Subsidiaries of the Company.

6.3     CORPORATE POWER, AUTHORIZATION; ENFORCEABILITY. The Company has full corporate power and authority to execute, deliver and enter into this Agreement, the Certificate of Designations, the Registration Rights Agreement and the Warrants (collectively, the "TRANSACTION DOCUMENTS") and to consummate the transactions contemplated hereby and thereby. All action on the part of the Company, its directors or stockholders necessary for the authorization, execution, delivery and performance of the Transaction Documents by the Company, the authorization, sale, issuance and delivery of the Securities contemplated hereby and the performance of the Company's obligations hereunder and thereunder has been taken. The Securities to be purchased on each Closing Date and the shares of Common Stock issuable upon the conversion of the Series A Preferred Stock and the exercise of the Warrants have been duly authorized and, when issued in accordance with this Agreement, the Certificate of Designations and the Warrants, as the case may be, will be validly issued, fully paid and nonassessable and will be free and clear of any mortgage, deed of trust, pledge, hypothecation, assignment, encumbrance, lien (statutory or other) or preference, priority, right or other security interest or preferential arrangement of any kind or nature whatsoever (excluding preferred stock and equity related preferences) (collectively, "LIENS") imposed by or through the Company other than restrictions imposed by this Agreement, the Certificate of Designations, the Warrants and the Registration Rights Agreement, as the case may be, and applicable securities laws. Except as set forth in SCHEDULE 6.2, no preemptive or other rights to subscribe for or purchase equity securities of the Company exists with respect to the issuance and sale of the Securities or the shares of Common Stock issuable upon conversion of the Series A Preferred Stock or exercise of the Warrants. The Transaction Documents have been duly executed and delivered by the Company, and constitute the legal, valid and binding obligations of the Company, enforceable against the Company in accordance with their terms, except as enforceability may be limited by applicable bankruptcy, insolvency, reorganization, fraudulent conveyance or transfer, moratorium or similar laws affecting the enforcement of creditors' rights generally and by general principles of equity relating to enforceability (regardless of whether considered in a proceeding at law or in equity).

6.4     FINANCIAL STATEMENTS AND COMMISSION FILINGS; UNDISCLOSED LIABILITIES. (a) Included in the Company's Form 10-KSB/A for the year ended June 30, 2001 (the "2001 10-KSB") are true and complete copies of the audited consolidated balance sheet (the "BALANCE SHEET") of the Company as of June 30, 2001, and the related audited consolidated statements of operations, and cash flows for the years ended June 30, 2001, June 30, 2000 and the period from August 16, 1996 through June 30, 2001; and the related audited consolidated statements of stockholders' equity (deficit) for the period from August 16, 1996 through June 30, 2001 (the "FINANCIAL STATEMENTS"), accompanied by the report of each of Grant Thornton LLP and Ernst & Young LLP. As of their respective dates, the Financial Statements complied as to form in all material respects with applicable accounting requirements and the published rules and regulations of the Securities and Exchange Commission (the "COMMISSION") with respect thereto. The Financial Statements have been prepared in accordance with U.S. generally accepted accounting principles ("GAAP"), consistently applied, during the periods involved (except in the case of unaudited interim statements, to the extent they may exclude footnotes or may be condensed or summary statements) and fairly present in all material respects the consolidated financial position of the Company as of the dates thereof and the results of its operations and cash flows for the periods then ended (subject, in the case of unaudited statements, to normal year-end audit adjustments). The Company keeps proper

-9-

accounting records in which all material assets and liabilities and all material transactions of the Company are recorded in conformity with GAAP.

(b)      Except as set forth on SCHEDULE 6.4(B), since June 30, 2001, the Company has filed all reports, schedules, forms, statements and other documents required to be filed by it with the Commission pursuant to the reporting requirements of the Securities Exchange Act of 1934, as amended (the "EXCHANGE ACT") (all of the foregoing, including, but not limited to, the 2001 10-KSB, filed prior to the date hereof and all exhibits included therein and financial statements and schedules thereto and documents incorporated by reference therein being hereinafter referred to as the "COMMISSION DOCUMENTS") and all such Commission Documents were filed within the time periods specified in the Exchange Act. As of their respective filing dates, each Commission Document complied in all material respects with the requirements of the Securities Act or the Exchange Act, as applicable, and the rules and regulations of the Commission thereunder applicable to the Commission Documents, and no Commission Document contained any untrue statement of a material fact or omitted to state any material fact required to be stated therein or necessary to make the statements therein, in light of the circumstances under which they were made, not misleading, subject to the planned restatement of certain quarterly reports in fiscal year 2001 as disclosed by the Company in the press release announcing its fiscal year 2001 results. As of their respective filing dates, the financial statements of the Company included in the Commission Documents complied as to form in all material respects with then applicable accounting requirements and with the published rules and regulations of the Commission with respect thereto, were prepared in accordance with GAAP and as of their respective dates, fairly presented in all material respects the consolidated financial position of the Company and the results of its operations as of the time and for the periods indicated therein (except as may be indicated in the notes thereto or, in the case of the unaudited statements, as permitted by Form 10-QSB, and Regulations S-B and S-X of the Commission), subject to the planned restatement of certain quarterly reports in fiscal year 2001 as disclosed by the Company in the press release announcing its fiscal year 2001 results.

(c)      Since June 30, 2001, the Company has not incurred any liabilities or obligations of any nature, whether or not accrued, absolute, contingent or otherwise ("LIABILITIES"), other than liabilities (i) disclosed in the Commission Documents filed prior to the date of this Agreement, (ii) adequately provided for in the Balance Sheet or disclosed in any related notes thereto, (iii) incurred in connection with this Agreement, or (iv) incurred in the ordinary course of business.

6.5      NO MATERIAL ADVERSE CHANGES. Since June 30, 2001, except as disclosed in the Commission Documents filed subsequent to that date, there has not been any material adverse change in the business, financial condition or operating results of the Company.

6.6      ABSENCE OF CERTAIN DEVELOPMENTS. Except as contemplated by this Agreement and the Commission Documents, since June 30, 2001, through the date immediately preceding each Closing Date, the Company has not (a) issued any stock, options, bonds or other corporate securities other than as reflected in Section 6.2 hereof, (b) borrowed any amount or incurred or became subject to any Liabilities (absolute, accrued or contingent), other than current Liabilities incurred in the ordinary course of business and Liabilities under contracts entered into in the ordinary course of business, (c) discharged or satisfied any material Lien or adverse claim or paid any obligation or Liability (absolute, accrued or contingent), other than current Liabilities shown on the Balance Sheet and current Liabilities incurred in the ordinary course of business, (d) declared or made any payment or distribution of cash or other property to the stockholders of the Company or purchased or redeemed any securities of the Company, (e) mortgaged, pledged or subjected to any material Lien or adverse claim any of its properties or assets, except for Liens for taxes not yet due and payable or otherwise in the ordinary course of business, (f) sold, assigned or transferred any of its assets, tangible or intangible, except in the ordinary course of business or in an

-10-