# EXHIBIT C

# BIOENVISION INC

345 PARK AVENUE
41ST FLOOR
NEW YORK, NY 10154
212-750-6700

# SC 13D/A

**AMENDMENT NO. 5**
**Filed on 05/30/2007**
File Number 005-78274



**LIVEDGAR**® Information Provided by Global Securities Information, Inc.
800.669.1154
www.gsionline.com

```
================================================================================
```

SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549

SCHEDULE 13D/A
(Rule 13d-102)

INFORMATION TO BE INCLUDED IN STATEMENTS FILED PURSUANT TO RULE 13d-1(a) AND
AMENDMENTS THEREFO FILED PURSUANT TO RULE 13d-2(a)

(AMENDMENT NO. 5)

BIOENVISION, INC.
(Name of Issuer)

COMMON STOCK, PAR VALUE $0.001 PER SHARE
(Title of Class of Securities)

09059N100
(CUSIP Number)

ANDREW NICHOLSON
PERSEUS-SOROS BIOPHARMACEUTICAL FUND, LP
888 SEVENTH AVENUE, 30TH FLOOR
NEW YORK, NY 10106
TEL. NO.: (212) 651-6383
(Name, Address and Telephone Number of
Person Authorized
to Receive Notices and Communications)

with a copy to

JOHN C. KENNEDY, ESQ.
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064

MAY 29, 2007
(Date of Event which Requires Filing of this Statement)

If the filing person has previously filed a statement on Schedule 13G to report
the acquisition that is the subject of this Schedule 13D, and is filing this
schedule because of Sections 240.13d-1(e), 240.13d-1(f) or 240.13d-1(g), check
the following box [_].

*The remainder of this cover page shall be filled out for a reporting person's
initial filing on this form with respect to the subject class of securities,
and for any subsequent amendment containing information which would alter
disclosures provided in a prior cover page.

The information required on the remainder of this cover page shall not be
deemed to be "filed" for the purposes of Section 18 of the Securities Exchange
Act of 1934 ("Act") or otherwise subject to the liabilities of that section of
the Act but shall be subject to all other provisions of the Act (however, see
the Notes).

```
================================================================================
```

SCHEDULE 13D

---

```
1    NAME OF REPORTING PERSON
     I.R.S. IDENTIFICATION NO. OF ABOVE PERSON (ENTITIES ONLY)
     Perseus-Soros BioPharmaceutical Fund, LP
```
---
```
2    CHECK THE APPROPRIATE BOX IF A MEMBER OF A GROUP
     (a)   [_]

     (b)   [X]
```
---
```
3    SEC USE ONLY
```
---
```
4    SOURCE OF FUNDS
     Not Applicable
```
---
```
5    CHECK BOX IF DISCLOSURE OF LEGAL PROCEEDINGS IS REQUIRED PURSUANT TO
     ITEMS 2(d) OR 2(e)
          [_]
```
---
```
6    CITIZENSHIP OR PLACE OF ORGANIZATION
     Delaware
```
---

| | | |
|---|---|---|
| | 7 | SOLE VOTING POWER<br>0 |
| NUMBER OF<br>SHARES | 8 | SHARED VOTING POWER<br>7,950,053 (1) |
| BENEFICIALLY<br>OWNED BY<br>EACH | 9 | SOLE DISPOSITIVE POWER<br>0 |
| REPORTING<br>PERSON<br>WITH | 10 | SHARED DISPOSITIVE POWER<br>7,950,053 (1) |

---
```
11   AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH REPORTING PERSON
     7,950,053 (1)
```
---
```
12   CHECK BOX IF THE AGGREGATE AMOUNT IN ROW (11) EXCLUDES CERTAIN SHARES
          [_]
```
---
```
13   PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (11)
     13.3%
```
---
```
14   TYPE OF REPORTING PERSON
     PN
```
---

(1) Assumes (i) full conversion of 2,250,000 shares of Series A Convertible
Preferred Stock which are convertible into 4,500,000 shares of Common Stock and
(ii) exercise of a Warrant to purchase 75,009 shares of Common Stock.

```
CUSIP NO. 09059N100                                        Page 3 of 17
```

SCHEDULE 13D

```
------------------------------------------------------------------------
1       NAME OF REPORTING PERSON
        I.R.S. IDENTIFICATION NO. OF ABOVE PERSON (ENTITIES ONLY)
        Perseus-Soros Partners, LLC
------------------------------------------------------------------------
2       CHECK THE APPROPRIATE BOX IF A MEMBER OF A GROUP
        (a)    [_]

        (b)    [X]
------------------------------------------------------------------------
3       SEC USE ONLY
------------------------------------------------------------------------
4       SOURCE OF FUNDS
        Not Applicable
------------------------------------------------------------------------
5       CHECK BOX IF DISCLOSURE OF LEGAL PROCEEDINGS IS REQUIRED PURSUANT TO
        ITEMS 2(d) OR 2(e)
               [_]
------------------------------------------------------------------------
6       CITIZENSHIP OR PLACE OF ORGANIZATION
        Delaware
------------------------------------------------------------------------
                            7       SOLE VOTING POWER
                                    0
            NUMBER OF       ----------------------------------------------
             SHARES         8       SHARED VOTING POWER
          BENEFICIALLY              7,950,053 (1)(2)
           OWNED BY         ----------------------------------------------
             EACH           9       SOLE DISPOSITIVE POWER
           REPORTING                0
            PERSON          ----------------------------------------------
             WITH           10      SHARED DISPOSITIVE POWER
                                    7,950,053 (1)(2)
------------------------------------------------------------------------
11      AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH REPORTING PERSON
        7,950,053 (1)(2)
------------------------------------------------------------------------
12      CHECK BOX IF THE AGGREGATE AMOUNT IN ROW (11) EXCLUDES CERTAIN SHARES
               [_]
------------------------------------------------------------------------
13      PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (11)
        13.3%
------------------------------------------------------------------------
14      TYPE OF REPORTING PERSON
        OO
------------------------------------------------------------------------
```

```
------------
(1) Consists of 7,950,053 shares of Common Stock beneficially owned by
Perseus-Soros Partners, LLC ("Perseus-Soros Partners") solely in its capacity
as sole general partner of Perseus-Soros.
(2) Assumes (i) full conversion of 2,250,000 shares of Series A Convertible
Preferred Stock which are convertible into 4,500,000 shares of Common Stock and
(ii) exercise of a Warrant to purchase 75,009 shares of Common Stock.
```

CUSIP NO. 09059N100                                          Page 4 of 17

SCHEDULE 13D

--------------------------------------------------------------------
1       NAME OF REPORTING PERSON
        I.R.S. IDENTIFICATION NO. OF ABOVE PERSON (ENTITIES ONLY)
        Perseus BioTech Fund Partners, LLC
--------------------------------------------------------------------
2       CHECK THE APPROPRIATE BOX IF A MEMBER OF A GROUP
        (a)    [_]

        (b)    [X]
--------------------------------------------------------------------
3       SEC USE ONLY
--------------------------------------------------------------------
4       SOURCE OF FUNDS
        Not Applicable
--------------------------------------------------------------------
5       CHECK BOX IF DISCLOSURE OF LEGAL PROCEEDINGS IS REQUIRED PURSUANT TO
        ITEMS 2(d) OR 2(e)
               [_]
--------------------------------------------------------------------
6       CITIZENSHIP OR PLACE OF ORGANIZATION
        Delaware
--------------------------------------------------------------------
                                  7    SOLE VOTING POWER
                                       0
            NUMBER OF            ---------------------------------------
             SHARES              8     SHARED VOTING POWER
          BENEFICIALLY                 7,950,053 (1)(2)
           OWNED BY             ---------------------------------------
             EACH               9     SOLE DISPOSITIVE POWER
           REPORTING                  0
            PERSON             ---------------------------------------
             WITH               10    SHARED DISPOSITIVE POWER
                                      7,950,053 (1)(2)
--------------------------------------------------------------------
11      AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH REPORTING PERSON
        7,950,053 (1)(2)
--------------------------------------------------------------------
12      CHECK BOX IF THE AGGREGATE AMOUNT IN ROW (11) EXCLUDES CERTAIN SHARES
               [_]
--------------------------------------------------------------------
13      PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (11)
        13.3%
--------------------------------------------------------------------
14      TYPE OF REPORTING PERSON
        OO
--------------------------------------------------------------------
------------
(1) Consists of 7,950,053 shares of Common Stock  beneficially owned by Perseus
BioTech Fund  Partners, LLC ("Perseus  Partners")  solely in its capacity as a
managing  member of Perseus-Soros Partners, which is the sole general partner of
Perseus-Soros.
(2) Assumes (i) full  conversion  of 2,250,000  shares of Series A  Convertible
Preferred Stock which are convertible into 4,500,000 shares of Common Stock and
(ii) exercise of a Warrant to purchase 75,009 shares of Common Stock.

SCHEDULE 13D

```
-----------------------------------------------------------------------
1        NAME OF REPORTING PERSON
         I.R.S. IDENTIFICATION NO. OF ABOVE PERSON (ENTITIES ONLY)
         SFM Participation, L.P.
-----------------------------------------------------------------------
2        CHECK THE APPROPRIATE BOX IF A MEMBER OF A GROUP
         (a)   [_]

         (b)   [X]
-----------------------------------------------------------------------
3        SEC USE ONLY
-----------------------------------------------------------------------
4        SOURCE OF FUNDS
         Not Applicable
-----------------------------------------------------------------------
5        CHECK BOX IF DISCLOSURE OF LEGAL PROCEEDINGS IS REQUIRED PURSUANT TO
         ITEMS 2(d) OR 2(e)
               [_]
-----------------------------------------------------------------------
6        CITIZENSHIP OR PLACE OF ORGANIZATION
         Delaware
-----------------------------------------------------------------------
                              7    SOLE VOTING POWER
                                   0
            NUMBER OF          -----------------------------------------
             SHARES            8    SHARED VOTING POWER
          BENEFICIALLY              7,950,053 (1)(2)
           OWNED BY            -----------------------------------------
             EACH             9    SOLE DISPOSITIVE POWER
           REPORTING               0
            PERSON            -----------------------------------------
             WITH            10    SHARED DISPOSITIVE POWER
                                   7,950,053 (1)(2)
-----------------------------------------------------------------------
11       AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH REPORTING PERSON
         7,950,053 (1)(2)
-----------------------------------------------------------------------
12       CHECK BOX IF THE AGGREGATE AMOUNT IN ROW (11) EXCLUDES CERTAIN SHARES
               [_]
-----------------------------------------------------------------------
13       PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (11)
         13.3%
-----------------------------------------------------------------------
14       TYPE OF REPORTING PERSON
         PN
-----------------------------------------------------------------------
```

------------
(1) Consists of 7,950,053 shares of Common Stock beneficially owned by SFM
Participation, L.P. ("SFM Participation") solely in its capacity as a managing
member of Perseus-Soros Partners, which is the sole general partner of
Perseus-Soros.
(2) Assumes (i) full conversion of 2,250,000 shares of Series A Convertible
Preferred Stock which are convertible into 4,500,000 shares of Common Stock and
(ii) exercise of a Warrant to purchase 75,009 shares of Common Stock.

SCHEDULE 13D

```
-------------------------------------------------------------------------
1       NAME OF REPORTING PERSON
        I.R.S. IDENTIFICATION NO. OF ABOVE PERSON (ENTITIES ONLY)
        SFM AH LLC
-------------------------------------------------------------------------
2       CHECK THE APPROPRIATE BOX IF A MEMBER OF A GROUP
        (a)   [_]

        (b)   [X]
-------------------------------------------------------------------------
3       SEC USE ONLY
-------------------------------------------------------------------------
4       SOURCE OF FUNDS
        Not Applicable
-------------------------------------------------------------------------
5       CHECK BOX IF DISCLOSURE OF LEGAL PROCEEDINGS IS REQUIRED PURSUANT TO
        ITEMS 2(d) OR 2(e)
              [_]
-------------------------------------------------------------------------
6       CITIZENSHIP OR PLACE OF ORGANIZATION
        Delaware
-------------------------------------------------------------------------
                               7   SOLE VOTING POWER
                                   0
              NUMBER OF      ------------------------------------------
               SHARES          8   SHARED VOTING POWER
            BENEFICIALLY           7,950,053 (1)(2)
             OWNED BY        ------------------------------------------
               EACH            9   SOLE DISPOSITIVE POWER
            REPORTING              0
              PERSON         ------------------------------------------
               WITH           10  SHARED DISPOSITIVE POWER
                                   7,950,053 (1)(2)
-------------------------------------------------------------------------
11      AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH REPORTING PERSON
        7,950,053 (1)(2)
-------------------------------------------------------------------------
12      CHECK BOX IF THE AGGREGATE AMOUNT IN ROW (11) EXCLUDES CERTAIN SHARES
              [_]
-------------------------------------------------------------------------
13      PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (11)
        13.3%
-------------------------------------------------------------------------
14      TYPE OF REPORTING PERSON
        OO
-------------------------------------------------------------------------
```

------------

(1) Consists of 7,950,053 shares of Common Stock  beneficially  owned by SFM AH
LLC  ("SFM AH")  solely  in  its  capacity  as  the  general  partner  of  SFM
Participation,  which is a managing member Perseus-Soros Partners, which is the
sole general partner of Perseus-Soros.
(2) Assumes (i) full  conversion  of 2,250,000  shares of Series A  Convertible
Preferred Stock which are convertible into 4,500,000 shares of Common Stock and
(ii) exercise of a Warrant to purchase 75,009 shares of Common Stock.

CUSIP NO. 09059N100                                         Page 7 of 17

SCHEDULE 13D

```
--------------------------------------------------------------------
1       NAME OF REPORTING PERSON
        I.R.S. IDENTIFICATION NO. OF ABOVE PERSON (ENTITIES ONLY)
        Perseuspur, LLC

--------------------------------------------------------------------
2       CHECK THE APPROPRIATE BOX IF A MEMBER OF A GROUP
        (a)   [_]

        (b)   [X]

--------------------------------------------------------------------
3       SEC USE ONLY

--------------------------------------------------------------------
4       SOURCE OF FUNDS
        Not Applicable

--------------------------------------------------------------------
5       CHECK BOX IF DISCLOSURE OF LEGAL PROCEEDINGS IS REQUIRED PURSUANT TO
        ITEMS 2(d) OR 2(e)
             [_]

--------------------------------------------------------------------
6       CITIZENSHIP OR PLACE OF ORGANIZATION
        Delaware

--------------------------------------------------------------------
                                  7     SOLE VOTING POWER
                                        0
                 NUMBER OF       ---------------------------------------
                  SHARES          8     SHARED VOTING POWER
               BENEFICIALLY             7,950,053 (1)(2)
                OWNED BY         ---------------------------------------
                  EACH            9     SOLE DISPOSITIVE POWER
               REPORTING                0
                 PERSON          ---------------------------------------
                  WITH           10     SHARED DISPOSITIVE POWER
                                        7,950,053 (1)(2)

--------------------------------------------------------------------
11      AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH REPORTING PERSON
        7,950,053 (1)(2)

--------------------------------------------------------------------
12      CHECK BOX IF THE AGGREGATE AMOUNT IN ROW (11) EXCLUDES CERTAIN SHARES
             [_]

--------------------------------------------------------------------
13      PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (11)
        13.3%

--------------------------------------------------------------------
14      TYPE OF REPORTING PERSON
        OO

--------------------------------------------------------------------
------------
```

(1) Consists of 7,950,053 shares of Common Stock beneficially owned by Perseuspur, LLC ("Perseuspur"), solely in its capacity as the managing member of Perseus Partners, which is a managing member of Perseus-Soros Partners, which is the sole general partner of Perseus-Soros.
(2) Assumes (i) full conversion of 2,250,000 shares of Series A Convertible Preferred Stock which are convertible into 4,500,000 shares of Common Stock and (ii) exercise of a Warrant to purchase 75,009 shares of Common Stock.

SCHEDULE 13D

--------------------------------------------------------------------------
1       NAME OF REPORTING PERSON
        I.R.S. IDENTIFICATION NO. OF ABOVE PERSON (ENTITIES ONLY)
        Frank H. Pearl (in the capacity described herein)
--------------------------------------------------------------------------
2       CHECK THE APPROPRIATE BOX IF A MEMBER OF A GROUP
        (a)   [_]

        (b)   [X]
--------------------------------------------------------------------------
3       SEC USE ONLY
--------------------------------------------------------------------------
4       SOURCE OF FUNDS
        Not Applicable
--------------------------------------------------------------------------
5       CHECK BOX IF DISCLOSURE OF LEGAL PROCEEDINGS IS REQUIRED PURSUANT TO
        ITEMS 2(d) OR 2(e)
              [_]
--------------------------------------------------------------------------
6       CITIZENSHIP OR PLACE OF ORGANIZATION
        United States
--------------------------------------------------------------------------
                                    7       SOLE VOTING POWER
                                            0
                  NUMBER OF         --------------------------------------
                    SHARES          8       SHARED VOTING POWER
                 BENEFICIALLY               7,950,053 (1)(2)
                  OWNED BY          --------------------------------------
                    EACH            9       SOLE DISPOSITIVE POWER
                 REPORTING                  0
                   PERSON           --------------------------------------
                    WITH            10      SHARED DISPOSITIVE POWER
                                            7,950,053 (1)(2)
--------------------------------------------------------------------------
11      AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH REPORTING PERSON
        7,950,053 (1)(2)
--------------------------------------------------------------------------
12      CHECK BOX IF THE AGGREGATE AMOUNT IN ROW (11) EXCLUDES CERTAIN SHARES
              [_]
--------------------------------------------------------------------------
13      PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (11)
        13.3%
--------------------------------------------------------------------------
14      TYPE OF REPORTING PERSON
        IN
--------------------------------------------------------------------------
------------
(1) Consists of 7,950,053 shares of Common Stock beneficially owned by Mr.
Pearl, solely in his capacity as the sole member of Perseuspur, which is the
managing member of Perseus Partners, which is a managing member of
Perseus-Soros Partners, which is the sole general partner of Perseus-Soros.
(2) Assumes (i) full conversion of 2,250,000 shares of Series A Convertible
Preferred Stock which are convertible into 4,500,000 shares of Common Stock and
(ii) exercise of a Warrant to purchase 75,009 shares of Common Stock.

CUSIP NO. 09059N100

SCHEDULE 13D

---

| 1 | NAME OF REPORTING PERSON<br>I.R.S. IDENTIFICATION NO. OF ABOVE PERSON (ENTITIES ONLY)<br>Soros Fund Management LLC |
|---|---|

---

| 2 | CHECK THE APPROPRIATE BOX IF A MEMBER OF A GROUP<br>(a)   [_]<br><br>(b)   [X] |
|---|---|

---

| 3 | SEC USE ONLY |
|---|---|

---

| 4 | SOURCE OF FUNDS<br>Not Applicable |
|---|---|

---

| 5 | CHECK BOX IF DISCLOSURE OF LEGAL PROCEEDINGS IS REQUIRED PURSUANT TO<br>ITEMS 2(d) OR 2(e)<br>       [_] |
|---|---|

---

| 6 | CITIZENSHIP OR PLACE OF ORGANIZATION<br>Delaware |
|---|---|

---

| NUMBER OF<br>SHARES<br>BENEFICIALLY<br>OWNED BY<br>EACH<br>REPORTING<br>PERSON<br>WITH | 7 | SOLE VOTING POWER<br>0 |
|---|---|---|
| | 8 | SHARED VOTING POWER<br>7,950,053 (1)(2) |
| | 9 | SOLE DISPOSITIVE POWER<br>0 |
| | 10 | SHARED DISPOSITIVE POWER<br>7,950,053 (1)(2) |

---

| 11 | AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH REPORTING PERSON<br>7,950,053 (1)(2) |
|---|---|

---

| 12 | CHECK BOX IF THE AGGREGATE AMOUNT IN ROW (11) EXCLUDES CERTAIN SHARES<br>       [_] |
|---|---|

---

| 13 | PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (11)<br>13.3% |
|---|---|

---

| 14 | TYPE OF REPORTING PERSON<br>OO; IA |
|---|---|

---

(1) Consists of 7,950,053 shares of Common Stock beneficially owned by Soros Fund Management LLC ("SFM LLC"), solely in its capacity as the sole managing member of SFM AH, which is the general partner of SFM Participation, which is a managing member of Perseus-Soros Partners, which is the sole general partner of Perseus-Soros.
(2) Assumes (i) full conversion of 2,250,000 shares of Series A Convertible Preferred Stock which are convertible into 4,500,000 shares of Common Stock and (ii) exercise of a Warrant to purchase 75,009 shares of Common Stock.

SCHEDULE 13D

```
--------------------------------------------------------------------------
1     NAME OF REPORTING PERSON
      I.R.S. IDENTIFICATION NO. OF ABOVE PERSON (ENTITIES ONLY)
      George Soros (in the capacity described herein)
--------------------------------------------------------------------------
2     CHECK THE APPROPRIATE BOX IF A MEMBER OF A GROUP
      (a)   [_]

      (b)   [X]
--------------------------------------------------------------------------
3     SEC USE ONLY
--------------------------------------------------------------------------
4     SOURCE OF FUNDS
      Not Applicable
--------------------------------------------------------------------------
5     CHECK BOX IF DISCLOSURE OF LEGAL PROCEEDINGS IS REQUIRED PURSUANT TO
      ITEMS 2(d) OR 2(e)
            [_]
--------------------------------------------------------------------------
6     CITIZENSHIP OR PLACE OF ORGANIZATION
      United States
--------------------------------------------------------------------------
                            7     SOLE VOTING POWER
                                  0
          NUMBER OF         ---------------------------------------------
           SHARES           8     SHARED VOTING POWER
         BENEFICIALLY             7,950,053 (1)(2)
          OWNED BY          ---------------------------------------------
            EACH            9     SOLE DISPOSITIVE POWER
         REPORTING                0
           PERSON          ---------------------------------------------
            WITH           10     SHARED DISPOSITIVE POWER
                                  7,950,053 (1)(2)
--------------------------------------------------------------------------
11    AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH REPORTING PERSON
      7,950,053 (1)(2)
--------------------------------------------------------------------------
12    CHECK BOX IF THE AGGREGATE AMOUNT IN ROW (11) EXCLUDES CERTAIN SHARES
            [_]
--------------------------------------------------------------------------
13    PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (11)
      13.3%
--------------------------------------------------------------------------
14    TYPE OF REPORTING PERSON
      IA
--------------------------------------------------------------------------
```

(1) Consists of 7,950,053 shares of Common Stock beneficially owned by Mr. George Soros ("Mr. Soros"), Chairman of SFM LLC, which is the sole managing member of SFM AH of which is the general partner of SFM Participation, which is a managing member of Perseus-Soros Partners, which is the sole general partner of Perseus-Soros.
(2) Assumes (i) full conversion of 2,250,000 shares of Series A Convertible Preferred Stock which are convertible into 4,500,000 shares of Common Stock and (ii) exercise of a Warrant to purchase 75,009 shares of Common Stock.

SCHEDULE 13D

Item 1.   SECURITY AND ISSUER.

This Amendment No. 5 to Schedule 13D relates to the common stock, par value $0.001 per share (the "Common Stock") of Bioenvision, Inc., a Delaware corporation (the "Company"). This Amendment No. 5 supplementally amends the initial statement on Schedule 13D, filed with the Securities and Exchange Commission on May 20, 2002, as amended by Amendment No. 1 filed on January 8, 2003, Amendment No. 2 filed on May 17, 2004, Amendment No. 3 filed on December 17, 2004, and Amendment No. 4 filed on December 21, 2004 (collectively, the "Initial Statement"), filed by the Reporting Persons, and is being filed pursuant to Rule 13d-1 under the Securities Exchange Act of 1934, as amended (the "Exchange Act"). The address of the principal executive offices of the Company is 345 Park Avenue, 41st Floor, New York, New York 10154. Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Initial Statement. The Initial Statement is supplementally amended as follows.

Item 2.   IDENTITY AND BACKGROUND.

On December 27, 2002, George Soros appealed a decision of the 11e Chambre du Tribunal Correctionnel in Paris, France that fined him 2.2 million euros on December 20, 2002 based on a finding of insider trading with respect to trading in securities of Societe Generale in 1988. On March 24, 2005, the Paris Court of Appeal affirmed the decision of the 11e Chambre du Tribunal Correctionnel and on June 14, 2006 the Cour de Cassation upheld such decision, but ordered the Court of Appeal to determine whether the fine should be reduced. On December 13, 2006, George Soros appealed the decision to the European Court of Human Rights. On March 20, 2007, the Paris Court of Appeal reduced the fine imposed against George Soros from 2.2 million euros to 940,000 euros.

Item 3.   SOURCE AND AMOUNT OF FUNDS OR OTHER CONSIDERATION.

No material change.

Item 4.   PURPOSE OF TRANSACTION.

ITEM 4 IS HEREBY AMENDED BY ADDING THE FOLLOWING AT THE END THEREOF:

The Company entered into an Agreement and Plan of Merger, dated as of May 29, 2007 (the "Merger Agreement"), by and among Genzyme Corporation, a Massachusetts corporation ("Parent"), Wichita Bio Corporation, a Delaware corporation and direct or indirect wholly owned subsidiary of Parent ("Merger Sub") and the Company. Pursuant to the Merger Agreement, Merger Sub has agreed to make a cash tender offer to acquire (1) all shares of the issued and outstanding Common Stock of the Company and (2) all shares of the issued

and outstanding Series A Convertible Preferred Stock of the Company (the "Offer") and thereafter merge with and into the Company (the "Merger") with the result that the Company becomes a wholly owned subsidiary of Parent. This Amendment No. 5 is being filed as a result of Perseus-Soros entering into a Tender and Voting Agreement, dated as of May 29, 2007 (the "Voting Agreement"), with Parent and Merger Sub in connection with their efforts to consummate the acquisition of the Company. The description of the Voting Agreement contained herein is qualified in its entirety by the provisions of the Voting Agreement referenced as Exhibit 2 hereto.

### GRANT OF PROXY; VOTING AGREEMENT

Pursuant to the Voting Agreement, Perseus-Soros irrevocably appointed Parent as its proxy to vote any shares of Common Stock of the Company or securities exchangeable, exercisable or convertible into Common Stock (collectively, the "Securities") for the adoption and aproval of the Merger Agreement and Merger at any annual, special or other meeting or action of the shareholders of the Company, as applicable, or at any adjournment thereof or pursuant to any consent of the shareholders of the Company, in lieu of a meeting or otherwise, whether before or after the closing of the Offer.

Additionally, if Parent elects not to exercise its rights to vote the Securities held by Perseus-Soros, Perseus-Soros agreed with Parent and Merger Sub to vote the Common Stock and the Securities in favor of or give its consent to, as applicable, a proposal to adopt and approve the Merger Agreement and the Merger at any annual, special or other meeting or action of the shareholders of the Company, in lieu of a meeting or otherwise.

### TENDER

Pursuant to the Voting Agreement, Perseus-Soros agreed with Parent and Merger Sub, in exchange for the consideration described in the Merger Agreement, to tender the Common Stock and Securities it holds to Merger Sub in the Offer as soon as practicable following the commencement of the Offer but no later than five (5) business days following the commencement of the Offer, and also agreed to not withdraw any Common Stock or Securities tendered unless the Offer is terminated.

### LOCK-UP

Pursuant to the Voting Agreement, Perseus-Soros agreed with Parent and Merger Sub that from May 29, 2007 through December 31, 2007 it would not, subject to certain limited exceptions, (a) directly or indirectly, sell, transfer, assign, pledge, hypothecate, tender, encumber or otherwise dispose of or limit

its right to vote in any manner any Common Stock or Securities, or agree to do any of the foregoing, or (b) take any action which would have the effect of preventing or disabling Perseus-Soros from performing its obligations under the Voting Agreement.

### NON-SOLICITATION

Pursuant to the Voting Agreement, Perseus-Soros agreed with Parent and Merger Sub that from May 29, 2007 through December 31, 2007 it would not, and would not permit its representatives to, subject to certain limited exceptions, directly or indirectly, (a) solicit, initiate or encourage the submission of any acquisition proposal or of any other sale, transfer, pledge or other disposition or conversion of any of the Common Stock or Securities or of any of the other debt or equity securities of the Company, or (b) participate in or knowingly encourage any discussions or negotiations regarding, or furnish to any person any non-public information with respect to, enter into any agreement with respect to, or take any other action to facilitate any inquiries or the making of any proposal that constitutes, or may reasonably be expected to lead to, any acquisition proposal or any other sale, transfer, pledge or other disposition or conversion of any of the Common Stock or Securities or of any of the other debt or equity securities of the Company, in any case, from, to or with any person other than Parent or Merger Sub.

### MATTERS RELATED TO THE COMPANY'S SERIES A CONVERTIBLE PREFERRED STOCK

Pursuant to the Voting Agreement, Perseus-Soros, among other things, (i) agreed with Parent and Merger Sub to elect to receive the amounts payable with respect to its shares of the Company's Series A Convertible Preferred Stock under the Merger Agreement and not the amounts that it otherwise would have been entitled under the terms of the Series A Convertible Preferred Stock as set forth in the Certificate of Designation for the Series A Convertible Preferred Stock and (ii) consented to the Offer, the Merger and the other transactions contemplated by the Merger Agreement for all purposes as required under the terms of the Series A Convertible Preferred Stock as set forth in the Certificate of Designation for the Series A Convertible Preferred Stock.

Item 5.   INTEREST IN SECURITIES OF THE ISSUER.

Item 5 is hereby amended and restated in its entirety as follows:

In accordance with the Company's Quarterly Report on Form 10-Q for the quarter ended March 31, 2007, as of May 3, 2007, there were 55,035,739 shares of Common Stock outstanding.

      (a)  Pursuant  to Rule  13d-3 of  the  Exchange  Act,  each of  the Reporting  Persons may be deemed the  beneficial  owner of 7,950,053  shares of Common  Stock,  which  constitutes  approximately  13.3% of the total number of shares of Common Stock  outstanding.  The  7,950,053  shares of Common Stock of which  Perseus-Soros  may  be  deemed  the  beneficial  owner  consists  of  the following: A)  3,375,044  shares  of  Common  Stock held for the  account  of Perseus-Soros, B) 4,500,000 shares of Common Stock issuable upon the conversion of  2,250,000  shares of the  Company's  Series A Preferred  Stock held for the account of Perseus-Soros and C) 75,009 shares of Common Stock issuable upon the exercise of the May Warrants held for the account of Perseus-Soros.

      (b)  By  virtue  of  the  relationships  between  and  among  the Reporting  Persons described in Item 2 of this Statement on Schedule 13D and as a result of the  provisions  of the  Voting  Agreement,  each of the  Reporting Persons may be deemed to have shared power to direct the voting and disposition of the 7,950,053  shares of Common Stock  beneficially  owned by  Perseus-Soros assuming  the  exercise and  conversion  of all of the  securities  held for the account of Perseus-Soros.

      (c)  On May 2, 2007,  Perseus-Soros  exercised  a warrant  for the purchase of 3,000,000 shares of Common Stock (the  "Warrant").  The Warrant had an  exercise  price of $2.00 per share,  was  immediately  exercisable  and was originally acquired by Perseus-Soros on May 7, 2002.

      (d) The partners of  Perseus-Soros  have the right to participate in the  receipt  of dividends  from, or proceeds from the sales of, the shares of Common  Stock or other  securities  held for the  account  of  Perseus-Soros  in accordance with their ownership interests in Perseus-Soros.

      (e) Not applicable.

Item 6.  CONTRACTS, ARRANGEMENTS, UNDERSTANDINGS OR RELATIONSHIPS WITH RESPECT
      TO SECURITIES OF THE ISSUER.

      The  information in Item 4 is  incorporated  herein by reference; otherwise,  the  information  set forth in Item 6 of the Original  Schedule 13D remains unchanged.

Item 7.  MATERIAL TO BE FILED AS EXHIBITS.

      Exhibit 1:    Joint  Filing  Agreement,  dated  December 22, 2004, among (i) Perseus-Soros BioPharmaceutical Fund, LP, (ii)  Perseus-Soros  Partners,  LLC,  (iii) Perseus BioTech Fund Partners, LLC, (iv) SFM Participation, L.P.,  (v) SFM AH LLC,  (vi) Frank H. Pearl,  (vii) George Soros, (viii) Soros Fund Management LLC, and (ix) Perseuspur, LLC (previously filed)

CUSIP NO. 09059N100

Exhibit 2:    Tender and Voting Agreement, dated May 29, 2007, by and among Genzyme Corporation, a Massachusetts corporation, Wichita Bio Corporation, a Delaware corporation and direct or indirect wholly owned subsidiary of Genzyme Corporation, and Perseus-Soros BioPharmaceutical Fund, LP.

Exhibit 3:    Power of Attorney, dated May 9, 2007, appointing Kenneth M. Socha and Rona Kennedy as Attorney-in-Fact for Frank H. Pearl.

Exhibit 4:    Power of Attorney, dated June 16, 2005, appointing Armando T. Belly, Jodye Anzalotta, Maryann Canfield, Jay Schoenfarber and Robert Soros as Attorney-in-Fact for George Soros.

CUSIP NO. 09059N100                                    Page 16 of 17

SIGNATURE

        After reasonable inquiry and to the best of its knowledge and
belief, each of the undersigned certifies that the information set forth in
this statement is true, complete and correct.

Dated: May 30, 2007

                              PERSEUS-SOROS BIOPHARMACEUTICAL FUND, LP

                              By:    Perseus-Soros Partners, LLC
                                     General Partner

                              By:    SFM Participation, L.P.
                                     Managing Member

                              By:    SFM AH LLC
                                     General Partner

                              By:    Soros Fund Management LLC
                                     Managing Member

                              By:    /s/ Jodye Anzalotta
                                     ----------------------------------------
                                     Name:  Jodye Anzalotta
                                     Title: Assistant General Counsel

                              PERSEUS-SOROS PARTNERS, LLC

                              By:    SFM Participation, L.P.
                                     Managing Member

                              By:    SFM AH LLC
                                     General Partner

                              By:    Soros Fund Management LLC
                                     Managing Member

                              By:    /s/ Jodye Anzalotta
                                     ----------------------------------------
                                     Name:  Jodye Anzalotta
                                     Title: Assistant General Counsel

                              PERSEUS BIOTECH FUND PARTNERS, LLC

                              By:    Perseuspur, LLC
                                     Managing Member

                              By:    /s/ Kenneth M. Socha
                                     ----------------------------------------
                                     Name:  Kenneth M. Socha
                                     Title: Senior Managing Director

                              PERSEUSPUR, LLC

                              By:    /s/ Kenneth M. Socha
                                     ----------------------------------------
                                     Name:  Kenneth M. Socha
                                     Title: Senior Managing Director

MR. FRANK H. PEARL

By:     /s/ Kenneth M. Socha
        ---------------------------------------
        Name:   Kenneth M. Socha
        Title:  Attorney-in-Fact


SFM PARTICIPATION, L.P.

By:     SFM AH LLC
        General Partner

By:     Soros Fund Management LLC
        Managing Member

By:     /s/  Jodye Anzalotta
        ---------------------------------------
        Name:   Jodye Anzalotta
        Title:  Assistant General Counsel


SFM AH LLC

By:     Soros Fund Management LLC
        Managing Member

By:     /s/  Jodye Anzalotta
        ---------------------------------------
        Name:   Jodye Anzalotta
        Title:  Assistant General Counsel


MR. GEORGE SOROS

By:     /s/  Jodye Anzalotta
        ---------------------------------------
        Name:   Jodye Anzalotta
        Title:  Attorney-in-Fact


SOROS FUND MANAGEMENT LLC

By:     /s/  Jodye Anzalotta
        ---------------------------------------
        Name:   Jodye Anzalotta
        Title:  Assistant General Counsel

# BIOENVISION INC

345 PARK AVENUE
41ST FLOOR
NEW YORK, NY 10154
212-750-6700

# EX-99

**EXHIBIT 2**
**SC 13D/A Filed on 05/30/2007**
File Number 005-78274



EXHIBIT 2
to Schedule 13D

TENDER AND VOTING AGREEMENT

THIS TENDER AND VOTING AGREEMENT (this "Agreement") dated May 29, 2007, is entered into between Genzyme Corporation, a Massachusetts corporation ("Parent"), Wichita Bio Corporation, a Delaware corporation and direct or indirect wholly owned subsidiary of Parent ("Sub"), and Perseus-Soros BioPharmaceutical Fund, LP ("Shareholder"), with respect to (i) the shares of common stock, par value $0.001 per share (the "Company Common Stock"), of Bioenvision, Inc. a Delaware corporation (the "Company"), (ii) the shares of the Company's Series A Convertible Participating Preferred Stock, $0.001 par value per share (the "Company Convertible Preferred Stock"), (iii) all securities exchangeable, exercisable or convertible into Company Common Stock or Company Convertible Preferred Stock, and (iv) any securities issued or exchanged with respect to such shares of Company Common Stock or Company Convertible Preferred Stock, and upon any recapitalization, reclassification, merger, consolidation, spin-off, partial or complete liquidation, stock dividend, split-up or combination of the securities of the Company or upon any other change in the Company's capital structure, in each case whether now owned or hereafter acquired by the Shareholder (collectively, the "Securities").

W I T N E S S E T H :

WHEREAS, Parent, Sub and the Company have entered into an Agreement and Plan of Merger dated as of the date hereof (as the same may be amended or supplemented, other than to lower the price to be paid in the Offer or Merger, the "Merger Agreement") pursuant to which Sub has agreed to make a cash tender offer described therein and thereafter merge with and into the Company (the "Merger") with the result that the Company becomes a wholly owned subsidiary of Parent;

WHEREAS, as of the date hereof, Shareholder beneficially owns and has the power to dispose of the Securities set forth on Schedule I hereto and has the power to vote the shares of Company Common Stock or Company Convertible Preferred Stock set forth thereon;

WHEREAS, Parent and Sub desire to enter into this Agreement in connection with their efforts to consummate the acquisition of the Company; and

WHEREAS, capitalized terms used in this Agreement and not defined have the meaning given to such terms in the Merger Agreement.

NOW, THEREFORE, in contemplation of the foregoing and in consideration of the mutual agreements, covenants, representations and warranties contained herein and intending to be legally bound hereby, the parties hereto agree as follows:

III-1

1.    CERTAIN COVENANTS.

1.1    LOCK-UP.  Subject to Section 1.5,  except as  contemplated by the Merger Agreement,  Shareholder hereby covenants and agrees that between the date hereof and the  Termination Date,  Shareholder will not (a)  directly or indirectly,  sell, transfer, assign, pledge,  hypothecate,  tender, encumber or otherwise dispose  of or  limit  its  right to vote in any  manner  any of the Securities,  or agree to do any of the foregoing,  or (b) take any action which would have the effect of preventing or disabling Shareholder  from performing its  obligations  under  this  Agreement.  Notwithstanding  the  foregoing,  in connection  with any  transfer  not  involving  or relating to any  Acquisition Proposal (as defined in the Merger Agreement),  Shareholder may transfer any or all of the Securities as follows:  (i) in the case of a Shareholder  that is an entity,  to any subsidiary,  partner or member of Shareholder,  and (ii) in the case  of  an  individual Shareholder,  to  Shareholder's  spouse,  ancestors, descendants  or any trust for any of their  benefits or to a charitable  trust; PROVIDED,  HOWEVER,  that in any such case,  prior to and as a condition to the effectiveness of such transfer,  (x) each person to which any of such Securities or any interest in any of such  Securities is or may be  transferred  (a) shall have executed and delivered to Parent and Sub a counterpart  to this  Agreement pursuant to which such person shall be bound by all of the terms and provisions of this Agreement,  and (b) shall have agreed in writing with Parent and Sub to hold such Securities or interest in such Securities subject to all of the terms and provisions of this  Agreement,  and (y) this Agreement  shall be the legal, valid and binding agreement of such person,  enforceable against such person in accordance with its terms.

1.2    NO SOLICITATION.  Between the date hereof and the Termination Date,  except as otherwise  permitted  by Section 5.2 of the Merger  Agreement, neither the  Shareholder nor any director,  officer,  agent,  representative, employee,  affiliate  or  associate  (collectively,  "Representatives")  of Shareholder shall, directly or indirectly,  (a) solicit,  initiate or encourage the  submission  of any  Acquisition  Proposal or of any other sale,  transfer, pledge or other disposition or conversion of any of the Securities or of any of the other debt or equity  securities of the Company,  or (b)  participate in or knowingly  encourage any discussions or negotiations  regarding,  or furnish to any person any non-public information with respect to,  enter into any agreement with respect to, or take any other action to  facilitate  any  inquiries or the making of any proposal that constitutes,  or may reasonably be expected to lead to, any  Acquisition  Proposal  or any other  sale,  transfer,  pledge or other disposition  or conversion of any of the Securities or of any of the other debt or equity  securities of the Company,  in any case, from, to or with any person other than Parent or Sub.  Shareholder will  immediately  cease and cause to be terminated any existing  activities,  discussions or negotiations with any such other  parties  conducted  heretofore  with respect  to any of the foregoing. Shareholder  will  notify  Parent  immediately  if  any  party  contacts  the Shareholder  following the date hereof  (other than Parent and Sub)  concerning any  Acquisition  Proposal  or any  other  sale,  transfer,  pledge  or  other disposition  or conversion of any of the Securities or of any of the other debt or equity securities of the Company.

1.3    CERTAIN EVENTS. This Agreement and the obligations  hereunder will  attach to the  Securities  and will be  binding  upon any person to which legal or beneficial  ownership of any or all of the Securities passes,  whether by  operation  of  Law  or  otherwise,  including  without  limitation,  the Stockholder's  successors  or  assigns.  This  Agreement  and  the  obligations hereunder will also attach to any additional  shares of Company Common Stock or

other Securities of the Company issued to or acquired by the Stockholder.

    1.4    GRANT OF PROXY; VOTING AGREEMENT.

    (a)    The Shareholder has revoked or terminated any proxies, voting agreements or similar arrangements previously given or entered into with respect to the Securities and hereby irrevocably appoints Parent as proxy for Shareholder to vote the Securities for Shareholder and in Shareholder's name, place and stead, at any annual, special or other meeting or action of the shareholders of the Company, as applicable, or at any adjournment thereof or pursuant to any consent of the shareholders of the Company, in lieu of a meeting or otherwise, whether before or after the closing of the Offer (as defined in the Merger Agreement), for the adoption and approval of the Merger Agreement and the Merger. The parties acknowledge and agree that neither Parent, nor Parent's successors, assigns, subsidiaries, divisions, employees, officers, directors, shareholders, agents and affiliates shall owe any duty to, whether in law or otherwise, or incur any liability of any kind whatsoever, including without limitation, with respect to any and all claims, losses, demands, causes of action, costs, expenses (including reasonable attorney's fees) and compensation of any kind or nature whatsoever to the Shareholder in connection with or as a result of any voting by Parent of the Securities subject to the irrevocable proxy hereby granted to Parent at any annual, special or other meeting or action or the execution of any consent of the shareholders of the Company. The parties acknowledge that, pursuant to the authority hereby granted under the irrevocable proxy, Parent may vote the Securities in furtherance of its own interests, and Parent is not acting as a fiduciary for the Shareholder.

    (b)    Notwithstanding the foregoing grant to Parent of the irrevocable proxy, if Parent elects not to exercise its rights to vote the Securities pursuant to the irrevocable proxy, Shareholder agrees to vote the Securities during the term of this Agreement in favor of or give its consent to, as applicable, a proposal to adopt and approve the Merger Agreement and the Merger as described in Section 1.4(a) at any annual, special or other meeting or action of the shareholders of the Company, in lieu of a meeting or otherwise.

    (c)    This irrevocable proxy shall not be terminated by any act of the Shareholder or by operation of law, whether by the death or incapacity of the Shareholder or by the occurrence of any other event or events (including, without limiting the foregoing, the termination of any trust or estate for which Shareholder is acting as a fiduciary or fiduciaries or the dissolution or liquidation of any corporation or partnership). If between the execution hereof and the Termination Date, Shareholder should die or become incapacitated, or if any trust or estate holding the Securities should be terminated, or if any corporation or partnership holding the Securities should be dissolved or liquidated, or if any other such similar event or events shall occur before the Termination Date, certificates representing the Securities shall be delivered by or on behalf of Shareholder in accordance with the terms and conditions of the Merger Agreement and this Agreement, and actions taken by the Parent hereunder shall be as valid as if such death, incapacity, termination, dissolution, liquidation or other similar event or events had

III-3

not occurred, regardless of whether or not the Parent has received notice of such death, incapacity, termination, dissolution, liquidation or other event.

1.5   TENDER OF SECURITIES. Shareholder agrees, in exchange for the consideration described in the Merger Agreement, to tender the Securities to Sub in the Offer as soon as practicable following the commencement of the Offer, and in any event not later than five (5) business days following the commencement of the Offer, and Shareholder shall not withdraw any Securities so tendered unless the Offer is terminated.

1.6   PUBLIC ANNOUNCEMENT. Shareholder shall consult with Parent before issuing any press releases or otherwise making any public statements with respect to the transactions contemplated herein and shall not issue any such press release or make any such public statement without the approval of Parent, except as may be required by Law, including any filings with the Securities and Exchange Commission (the "SEC") pursuant to the Securities Exchange Act of 1934, as amended (the "Exchange Act"). This Section 1.6 shall terminate and be null and void upon the earlier of (i) the Termination Date and (ii) consummation of the Merger.

1.7   DISCLOSURE. Shareholder hereby authorizes Parent and Sub to publish and disclose in any announcement or disclosure required by the SEC, Nasdaq or the American Stock Exchange or any other national securities exchange and in the Offer Documents and, if necessary, the Proxy Statement (each as defined in the Merger Agreement), (including all documents and schedules filed with the SEC in connection with either of the foregoing), its identity and ownership of the Securities and the nature of its commitments, arrangements and understandings under this Agreement. Parent and Sub hereby authorize Shareholder to make such disclosure or filings as may be required by the SEC or the NASDAQ or any other national securities exchange. Notwithstanding the foregoing, Parent and Sub will not publish or disclose in any press release the identity of Shareholder without the prior consent of Shareholder, such consent not to be unreasonably withheld.

1.8   MATTERS PERTAINING TO COMPANY CONVERTIBLE PREFERRED STOCK. Reference is hereby made to that certain Certificate of Designations, Preferences and Rights of the Series A Convertible Preferred Stock to the Company's certificate of incorporation filed with the Secretary of State of the State of Delaware on or about May 7, 2002 (as originally adopted and as the same may have been or may be amended, modified, supplemented or restated from time to time in accordance with its terms, the "Certificate of Designations"). With respect to any shares of Company Convertible Preferred Stock held (beneficially or of record) by the Shareholder, the Shareholder hereby irrevocably acknowledges and agrees with the following solely in connection with the Offer, the Merger and the other transactions contemplated by the Merger Agreement: (i) the Offering constitutes a Deemed Liquidation (as defined in Section 5(c) of the Certificate of Designations) and such Shareholder irrevocably waives the right to receive any amounts under Section 5(a) of the Certificate of Designations; (ii) such Shareholder waives such Shareholder's "opt out" right set forth in the second sentence of Section 5(c) of the Certificate of Designations; (iii) such Shareholder elects to receive the amounts payable with respect to such Shareholder's shares of Company Convertible Preferred Stock under the Merger Agreement (and not the amounts described in clause (i) of the third sentence of Section 5(c) of the Certificate of Designations); (iv) such Shareholder waives the right to any notice under Section 5(d) of the Certificate of Designations; (v) such

III-4

Shareholder waives the rights provided to such Shareholder under Section 6 of the Certificate of Designations; and (vi) such Shareholder consents to the Offer, the Merger and the other transactions contemplated by the Merger Agreement for all purposes under Section 9 of the Certificate of Designations. The foregoing consents and waivers shall be irrevocable at all times prior to the Termination Date.

2.   REPRESENTATIONS AND WARRANTIES OF SHAREHOLDER.  Shareholder hereby represents and warrants to Parent and Sub, as of the date hereof and as of the date Sub purchases shares of Company Capital Stock pursuant to the Offer, that:

2.1   OWNERSHIP.  Shareholder has good and marketable title to, and is the sole legal and beneficial owner of the Securities, in each case free and clear of all liabilities, claims, liens, options, proxies, charges, participations and encumbrances of any kind or character whatsoever, other than those arising under the securities laws or under the Company's governance documents or under any Registration Rights Agreement between the Company and Shareholder (collectively, "Liens").  At the time Sub purchases shares of Company Capital Stock pursuant to the Offer, Shareholder will transfer and convey to Parent or its designee good and marketable title to the shares of Company Capital Stock included in the Securities, free and clear of all Liens created by or arising through Shareholder.

2.2   AUTHORIZATION.  Shareholder has all requisite power and authority to execute and deliver this Agreement and to consummate the transactions contemplated hereby and has sole voting power and sole power of disposition, with respect to the Securities with no restrictions on its voting rights or rights of disposition pertaining thereto. Shareholder has duly executed and delivered this Agreement and this Agreement is a legal, valid and binding agreement of Shareholder, enforceable against Shareholder in accordance with its terms. If the Shareholder is married and the Securities constitute community property, this Agreement has been duly authorized, executed and delivered by the Shareholder's spouse, and this Agreement is a legal, valid and binding agreement of the Shareholder's spouse, enforceable against the Shareholder's spouse in accordance with its terms.

2.3   NO VIOLATION.  Neither the execution and delivery of this Agreement nor the consummation of the transactions contemplated hereby will (a) require the Shareholder to file or register with, or obtain any permit, authorization, consent or approval of, any governmental agency, authority, administrative or regulatory body, court or other tribunal, foreign or domestic, or any other entity other than filings with the SEC pursuant to the Exchange Act, or (b) violate, or cause a breach of or default under, or conflict with any contract, agreement or understanding, any Law binding upon the Shareholder, except for such violations, breaches, defaults or conflicts which are not, individually or in the aggregate, reasonably likely to have an adverse effect on the Shareholder's ability to satisfy its obligations under this Agreement. No proceedings are pending which, if adversely determined, will have an adverse effect on any ability to vote or dispose of any of the Securities. The Shareholder has not previously assigned or sold any of the Securities to any third party.

2.4   SHAREHOLDER HAS ADEQUATE INFORMATION.  Shareholder is a sophisticated seller with respect to the Securities and has adequate information concerning the business and financial condition of the Company to make an informed decision regarding the sale of the Securities and has

III-5

independently and without reliance upon either Sub or Parent and based on such information as Shareholder has deemed appropriate, made its own analysis and decision to enter into this Agreement. Shareholder acknowledges that neither Sub nor Parent has made and neither makes any representation or warranty, whether express or implied, of any kind or character except as expressly set forth in this Agreement. Shareholder acknowledges that the agreements contained herein with respect to the Securities by Shareholder are irrevocable (prior to the Termination Date), and that Shareholder shall have no recourse to the Securities, Parent or Sub, except with respect to breaches of representations, warranties, covenants and agreements expressly set forth in this Agreement.

2.5     NO SETOFF. The Shareholder has no liability or obligation related to or in connection with the Securities other than the obligations to Parent and Sub as set forth in this Agreement. There are no legal or equitable defenses or counterclaims that have been or may be asserted by or on behalf of the Company or the Shareholder to reduce the amount of the Securities or affect the validity or enforceability of the Securities.

2.6     NO AMOUNTS PAYABLE TO SHAREHOLDER. Except as disclosed in the Merger Agreement, there are no amounts due or payable by the Company or any Company Subsidiary to the Shareholder or any of its affiliates or associates in connection with the transactions contemplated by the Merger Agreement or this Agreement or otherwise (other than any payments required under the Merger Agreement solely in exchange for equity securities of the Company).

3.     REPRESENTATIONS AND WARRANTIES OF PARENT AND SUB. Parent and Sub hereby represent and warrant to Shareholder, as of the date hereof that:

3.1     AUTHORIZATION. Parent and Sub have all requisite corporate power and authority to execute and deliver this Agreement and to consummate the transactions contemplated hereby. Parent and Sub have duly executed and delivered this Agreement and this Agreement is a legal, valid and binding agreement of each of Parent and Sub, enforceable against each of Parent and Sub in accordance with its terms.

3.2     NO VIOLATION. Neither the execution and delivery of this Agreement nor the consummation of the transactions contemplated hereby will violate, or cause a breach of or default under, any contract or agreement, any statute or law, or any judgment, decree, order, regulation or rule of any governmental agency, authority, administrative or regulatory body, court or other tribunal, foreign or domestic, or any other entity or any arbitration award binding upon Parent or Sub, except for such violations, breaches or defaults which are not reasonably likely to have a material adverse effect on either Parent's or Sub's ability to satisfy its obligations under this Agreement.

4.     SURVIVAL OF REPRESENTATIONS AND WARRANTIES. The respective representations and warranties of Shareholder, Parent and Sub contained herein shall not be deemed waived or otherwise affected by any investigation made by the other party hereto. The representations and warranties contained herein shall survive the closing of the transactions contemplated hereby until the expiration of the applicable statute of limitations, including extensions thereof.

III-6

5.    SPECIFIC PERFORMANCE. Shareholder acknowledges that Sub and Parent will be irreparably harmed and that there will be no adequate remedy at law for a violation of any of the covenants or agreements of Shareholder which are contained in this Agreement. It is accordingly agreed that, in addition to any other remedies which may be available to Sub and Parent upon the breach by Shareholder of such covenants and agreements, Sub and Parent shall have the right to obtain injunctive relief to restrain any breach or threatened breach of such covenants or agreements or otherwise to obtain specific performance of any of such covenants or agreements.

6.    MISCELLANEOUS.

6.1    TERM. This Agreement and all obligations hereunder shall terminate upon the earlier of (i) the day after the Merger is consummated, (ii) December 31, 2007, (iii) the date of any modification, waiver or amendment to the Merger Agreement in a manner that reduces the amount and form of consideration payable thereunder to the Shareholder, and (iv) the termination of the Merger Agreement pursuant to Section 8.1 thereof (the earliest of (i), (ii), (iii) and (iv), the "Termination Date").

6.2    FIDUCIARY DUTIES. Notwithstanding anything in this Agreement to the contrary: (a) the Shareholder makes no agreement or understanding herein in any capacity other than in the Shareholder's capacity as a record holder and beneficial owner of Securities, and (b) nothing herein will be construed to limit or affect any action or inaction by the Shareholder or any Representative of the Shareholder, as applicable, serving on the Company Board of Directors or on the board of directors of any Company Subsidiary or as an officer or fiduciary of the Company or any of Company Subsidiary, acting in such person's capacity as a director, officer or fiduciary of the Company or any Company Subsidiary.

6.3    EXPENSES. Each of the parties hereto shall pay its own expenses incurred in connection with this Agreement. Each of the parties hereto warrants and covenants to the others that it will bear all claims for brokerage fees attributable to action taken by it.

6.4    BINDING EFFECT. This Agreement shall be binding upon and inure to the benefit of and be enforceable by the parties hereto and their respective representatives and permitted successors and assigns.

6.5    ENTIRE AGREEMENT. This Agreement contains the entire understanding of the parties and supersedes all prior agreements and understandings between the parties with respect to its subject matter. This Agreement may be amended only by a written instrument duly executed by the parties hereto.

6.6    HEADINGS. The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

6.7    ASSIGNMENT. Without limitation to Section 1.1, this Agreement shall be binding upon and inure to the benefit of the parties named herein and their respective successors and permitted assigns. No party may assign either this Agreement or any of its rights, interests, or obligations hereunder without the prior written approval of the other parties; PROVIDED, HOWEVER, that each of Parent and Sub may freely assign its rights to another direct or

III-7

indirect wholly owned subsidiary of Parent or Sub without such prior written approval but no such assignment shall relieve Parent or Sub of any of its obligations hereunder. Any purported assignment requiring consent without such consent shall be void.

   6.8 COUNTERPARTS. This Agreement may be executed in one or more counterparts, each of which shall be an original, but each of which together shall constitute one and the same Agreement.

   6.9 NOTICES. Any notice or other communication required or permitted hereunder shall be in writing and shall be deemed given when delivered in person, by overnight courier, by facsimile transmission (with receipt confirmed by telephone or by automatic transmission report) or by electronic mail, or two business days after being sent by registered or certified mail (postage prepaid, return receipt requested), as follows:

   (a) If to Parent   Genzyme Corporation
      or Sub:     500 Kendall Street
              Cambridge, Massachusetts  02142
              Attention: Earl M. Collier, Jr.
              Facsimile: (617)-252-7600
              Email: duke.collier@genzyme.com

      with a copy to: Ropes & Gray LLP
              One International Place
              Boston, MA 02110
              Attention: Paul Kinsella
              Facsimile: (617) 951-7050
              Email:  paul.kinsella@ropesgray.com

  (b) If to Shareholder, to the addresses indicated on Schedule I hereto.

Any party may by notice given in accordance  with this Section 6.9 to the other parties to designate updated information for notices hereunder.

   6.10 GOVERNING LAW. This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Delaware, without regard to its principles of conflicts of laws.

   6.11 ENFORCEABILITY. The invalidity or unenforceability of any provision or provisions of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement, which shall remain in full force and effect. Upon a determination that any term or other provision is invalid, illegal or incapable of being enforced, the parties hereto will negotiate in good faith to modify this Agreement so as to effect the original intent of the parties as closely as possible in an acceptable manner to the end that the transactions contemplated hereby are fulfilled to the fullest extent possible and, absent agreement among the parties, a court is authorized to so modify this Agreement.

III-8

6.12    FURTHER ASSURANCES. From time to time, at Parent's request and without further consideration, Shareholder shall execute and deliver to Parent such documents and take such action as Parent may reasonably request in order to consummate more effectively the transactions contemplated hereby and to vest in Parent good, valid and marketable title to the Securities, including, but not limited to, using its best efforts to cause the appropriate transfer agent or registrar to transfer of record the Securities.

6.13    REMEDIES NOT EXCLUSIVE. All rights, powers and remedies provided under this Agreement or otherwise available in respect hereof at law or in equity will be cumulative and not alternative, and the exercise of any thereof by either party will not preclude the simultaneous or later exercise of any other such right, power or remedy by such party.

6.14    DIVIDEND RIGHTS. For the avoidance of doubt, until the Acceptance Date, the Shareholder shall retain all rights to any dividends payable on the Company Convertible Preferred Stock.

6.15    WAIVER OF JURY TRIAL. EACH PARTY HERETO IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATED TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

[THE REST OF THIS PAGE HAS INTENTIONALLY BEEN LEFT BLANK]

III-9

IN WITNESS WHEREOF, Parent, Sub and Shareholder have caused this Agreement to be duly executed as of the day and year first above written.

GENZYME CORPORATION

By: /s/ Peter Wirth
    ----------------------------------
Name:  Peter Wirth
Title: Executive Vice President,
       Chief Legal Officer & Secretary


WICHITA BIO CORPORATION

By: /s/ Peter Wirth
    ----------------------------------
Name:  Peter Wirth
Title: Vice President & Secretary


SHAREHOLDER:
PERSEUS-SOROS BIOPHARMACEUTICAL FUND, LP

By: /s/ Jay A. Schoenfarber
    ----------------------------------
Name:  Jay A. Schoenfarber
Title: Attorney-in-Fact


III-10

SCHEDULE I TO
THE TENDER AND VOTING AGREEMENT

1.  Securities held by Shareholder:

| SHAREHOLDER | SHARES OF COMMON STOCK | OPTIONS TO PURCHASE STOCK | WARRANTS TO PURCHASE COMMON STOCK | SHARES OF SERIES A CONVERTIBLE PARTICIPATING PREFERRED STOCK |
|---|---|---|---|---|
| Perseus-Soros BioPharmaceutical Fund, L.P. | 3,375,044 | 0 | 75,009 | 2,250,000 |

2.  Address to which notices or other communications are to be sent in accordance with Section 6.9 of this Agreement:

        Shareholder:        Perseus-Soros BioPharmaceutical Fund, L.P.
                                          888 Seventh Avenue, 30th Fl.
                                          New York, New York 10106
                                          Attn:    Dennis Purcell
                                          Facsimile: (212) 651-6379
                                          Email: dpurcell@aislingcapital.com

        with a copy (which shall not constitute notice) to:

                                          McKee Nelson LLP
                                          One Battery Park Plaza
                                          New York, NY 10004
                                          Attn:    Todd A. Finger, Esq.
                                          Facsimile: (917) 777-4299
                                          Email:    TFinger@McKeeNelson.com

        and with a copy to:   Goodwin Procter LLP
                                        53 State Street
                                        Exchange Place
                                        Boston, MA  02109
                                      Attn:    Christopher J. Denn
                                      Telephone:  (617) 570-8717
                                      Facsimile:  (617) 523-1231
                                      Email: cdenn@goodwinprocter.com

                                      Attn:    James R. Kasinger
                                      Telephone:  (617) 570-1104
                                      Facsimile:  (617) 523-1231
                                      Email: jkasinger@goodwinprocter.com

III-11

# BIOENVISION INC

345 PARK AVENUE
41ST FLOOR
NEW YORK, NY 10154
212-750-6700

# EX-24

**EXHIBIT 3**
**SC 13D/A Filed on 05/30/2007**
File Number 005-78274



LIVEDGAR® Information Provided by Global Securities Information, Inc.
800.669.1154
www.gsionline.com

EXHIBIT 3
to Schedule 13D

### POWER OF ATTORNEY

KNOW ALL BY THESE PRESENTS, that I, FRANK H. PEARL, hereby make, constitute and appoint each of Kenneth M. Socha and Rona Kennedy, each of them acting singly, as my agent and attorney-in-fact for the purpose of executing in my name, (a) in my personal capacity or (b) in my capacity as Chairman of, member of or in other capacities with Perseus, L.L.C. ("PERSEUS") and each of its affiliates or entities advised by me or Perseus, all documents, certificates, instruments, statements, filings and agreements ("DOCUMENTS") to be filed with or delivered to any foreign or domestic governmental or regulatory body or required or requested by any other person or entity pursuant to any legal or regulatory requirement relating to the acquisition, ownership, management or disposition of securities, futures contracts, or other investments, and any other documents relating or ancillary thereto, including, but not limited to, all documents relating to filings with the Commodities Futures Trading Commission and National Futures Association, the United States Securities and Exchange Commission (the "SEC") pursuant to the Commodities Exchange Act and the Securities Act of 1933 or the Securities Exchange Act of 1934 (the "Act") and the rules and regulations promulgated thereunder, including all documents relating to the beneficial ownership of securities required to be filed with the SEC pursuant to Section 13(d) or Section 16(a) of the Act and information statements on Form 13F required to be filed with the SEC pursuant to Section 13(f) of the Act.

All past acts of either attorney-in-fact in furtherance of the foregoing are hereby ratified and confirmed.

This power of attorney shall be valid from the date hereof until revoked by me.

The Power of Attorney dated as of April 9, 2003 is hereby revoked by me effective as of the date hereof.

IN WITNESS WHEREOF, I have executed this instrument as of the 9th day of May, 2007.

                              /s/ Frank H. Pearl
                              --------------------------
                                  Frank H. Pearl

# BIOENVISION INC

345 PARK AVENUE
41ST FLOOR
NEW YORK, NY 10154
212−750−6700

## EX−24

**EXHIBIT 4**
**SC 13D/A Filed on 05/30/2007**
File Number 005−78274



**LIVEDGAR**® Information Provided by Global Securities Information, Inc.
800.669.1154
www.gsionline.com

EXHIBIT 4
to Schedule 13D

POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENT, that I, GEORGE SOROS, hereby make, constitute and appoint each of ARMANDO T. BELLY, JODYE ANZALOTTA, MARYANN CANFIELD, JAY SCHOENFARBER and ROBERT SOROS. acting individually, as my agent and attorney-in-fact for the purpose of executing in my name, (a) in my personal capacity or (b) in my capacity as Chairman of, member of or in other capacities with Soros Fund Management LLC ("SFM LLC") and each of its affiliates or entities advised by me or SFM LLC, all documents, certificates, instruments, statements, filings and agreements ("documents") to be filed with or delivered to any foreign or domestic governmental or regulatory body or required or requested by any other person or entity pursuant to any legal or regulatory requirement relating to the acquisition, ownership, management or disposition of securities, futures contracts or other investments, and any other documents relating or ancillary thereto, including without limitation all documents relating to filings with the Commodity Futures Trading Commission and National Futures Association, the United States Securities and Exchange Commission (the "SEC") pursuant to the Securities Act of 1933 or the Securities Exchange Act of 1934 (the "Act") and the rules and regulations promulgated thereunder, including all documents relating to the beneficial ownership of securities required to be filed with the SEC pursuant to Section 13(d) or Section 16(a) of the Act and any information statements on Form 13F required to be filed with the SEC pursuant to Section 13(f) of the Act.

All past acts of these attorneys-in-fact in furtherance of the foregoing are hereby ratified and confirmed.

Execution of this power of attorney revokes that certain Power of Attorney dated as of the 11th March 2005 with respect to the same matters addressed above.

This power of attorney shall be valid from the date hereof until revoked by me.

IN WITNESS WHEREOF, I have executed this instrument as of the 16th day of June 2005.

/s/ Daniel Eule
--------------------------
Daniel Eule
Attorney-in-fact
for George Soros