UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

|  |  |  |
|---|---|---|
| BERT VLADIMIR, individually and on behalf of all others similarly situated, | : | Civil Action No.: 07-CIV-6416 (SHS) |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| -against- | : |  |
|  | : |  |
| BIOENVISION, INC., CHRISTOPHER B. WOOD, JOSEPH P. COOPER, STEVEN A. ELMS, MICHAEL G. KAUFFMAN, ANDREW SCHIFF, JAMES S. SCIBETTA and PERSEUS-SOROS BIOPHARMACEUTICAL FUND, LP, | : |  |
|  | : |  |
| Defendants. | : |  |

-------------------------------------------------------------X

## PLAINTIFFS' CORRECTED* MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE AMENDED COMPLAINT

Date:   March 3, 2008

SQUITIERI & FEARON, LLP
Lee Squitieri (LS-1684)
Maria J. Ciccia (MC-2801)
32 East 57th Street
12th Floor
New York, New York 10022
Tel:  (212) 421-6492

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. iii

I.   PRELIMINARY STATEMENT ..................................................................................1

II.  THE FACTUAL ALLEGATIONS OF THE AMENDED COMPLAINT ...............................5

   A. Pre-Class Period Merger Activities And Public Statements ..................................5

   B. The Class Period Begins:  April 11, 2007 Genzyme Makes
      A Firm All Cash Offer For Bioenvision Stock
      In Response To Bioenvision's March 15, 2007
      Request For A Bid; Events Move Quickly Towards A Completed
      Deal But Defendants Continue To Make False Statements..................................8

ARGUMENT ...............................................................................................................11

POINT I .....................................................................................................................11

STANDARDS ON A MOTION TO DISMISS
AFTER BELL ATLANTIC V. TWOMBLY ......................................................................11

POINT II ....................................................................................................................12

THE COMPLAINT PLEADS THE DUTY ELEMENT OF THE
CLAIM WITH THE SPECIFICITY REQUIRED OF THE PSLRA ...........................................12

   A. Duty, Generally ...............................................................................................13

   B. According To The Well Pleaded Allegation Of The
      Complaint Perseus-Soros Had A
      Duty To File An Amendment To Their Schedule 13D At
      Least By The Start of the Class Period On April 11, 2007.................................14

   C. According To The Well Pleaded Allegations Of The Complaint,
      The Bioenvision's Defendants' Had A Duty To Disclose The
      Fact That It Has Solicited Bid Per Acquisition Of The Company,
      Had Received A Bid And Was In Negotiations For A Merger ...........................17

POINT III ..................................................................................................................22

THE AMENDED COMPLAINT PROVIDES SUFFICIENT FACTUAL
ALLEGATIONS OF THE MATERIALLY FALSE AND MISLEADING
STATEMENTS AND OMISSIONS AND STATES THE REASONS WHY
SUCH STATEMENTS AND OMISSIONS ARE MATERIALLY MISLEADING ...................22

POINT IV ..................................................................................................................24

THE AMENDED COMPLAINT'S FACTUAL
ALLEGATIONS RAISE A STRONG INFERENCE OF SCIENTER .........................................24

   A. The Scienter Standard In PSLRA Actions After Tellabs ....................................24

   B. Perseus-Soros' Scienter Is Adequately Alleged .................................................25

   C. The Bioenvision Defendants Scienter Is Adequately Alleged ...........................28

   D. Defendants Have Not Provided Any Non-Culpable
      Explanation That Is More Plausible Than Plaintiff's
      Plausible Theory And Factual Allegations Of Scienter .....................................30

POINT V ....................................................................................................................31

THE ALLEGATIONS OF CONTROL PERSON
LIABILITY ADEQUATELY PLEAD CULPABLE PARTICIPATION ......................................31

CONCLUSION ............................................................................................................35

## TABLE OF AUTHORITIES

Page

ATSI Communications, Inc. v. Shaar Fund, Ltd.,
    493 F.3d 87 (2d Cir. 2007).................................................................................31, 32

Ackerman v. Schwartz,
    947 F.2d 841 (7th Cir. 1991) ................................................................................22

In re Adelphia Commc'n Corp. Sec. & Deriv. Litigation,
    398 F. Supp. 2d 244 (S.D.N.Y. 2005).....................................................................22

In re Alcatel Sec. Litig.,
    382 F. Supp. 2d 512 (S.D.N.Y. 2005).....................................................................23

In re America Italian Pasta Co. Sec. Litigation,
    No. 05-0725-CV-W-ODS, 2006 WL. 1715168
    (W.D. Mo. June 19, 2006) .....................................................................................30

In re Atlas Air Worldwide Holdings, Inc. Sec. Litigation,
    324 F. Supp. 2d 474 (S.D.N.Y. 2004)................................................................25, 29

Azurite Corp. Ltd. v. Amster & Co.,
    52 F.3d 15 (2d Cir. 1995).......................................................................................16

Basic, Inc. v. Levinson,
    485 U.S. 224 (1988)..........................................................................................18, 20

Boguslavsky v. Kaplan,
    159 F.3d 715 (2d Cir. 1998)...................................................................................31

Borden, Inc. v. Spoor Behrins Campbell & Young,
    735 F. Supp. 587 (S.D.N.Y. 1990) .........................................................................35

Blanchard v. Edgemark Finance Corp.,
    No. 94 C 1890, 1999 U.S. Dist. LEXIS 1096
    (N.D. Ill. Feb. 3. 1999)..........................................................................................21

Buxbaum v. Deutsche Bank, A.G.,
    No. 98-CV-8460, 2000 Westlaw 33912712, at *
    (S.D.N.Y. Mar. 7, 200) ..........................................................................................20

In re Canandaigua Sec. Litigation,
    944 F. Supp. 1202 (S.D.N.Y. 1996).......................................................................27

Caremark, Inc. v. Coram Healthcare Corp.,
    113 F.3d 645 (7th Cir. 1995) ........................................................................18

In re Carter-Wallace, Inc., Sec. Litigation,
    220 F.3d 36 (2d Cir. 2000)...........................................................................27

Castellano v. Young & Rubicam, Inc.,
    257 F.3d 171 (2d Cir. 2001)..........................................................................21

Castillo v Dean Witter Discover & Co.,
    No. 97 Civ. 1272 (RPP), 1998 WL. 342050
    (S.D.N.Y. June 25, 1998)........................................................................27, 28

In re Columbia Sec. Litigation,
    747 F. Supp. 237 (S.D.N.Y. 1990) ...............................................................19

Communs. Workers of America Plan for Employees Pensions &
Death Benefits v. CSK Automobile Corp.,
    525 F. Supp. 2d 1116 (D. Ariz. 2007) ..........................................................25

In re Converium Holding AG Sec. Litigation,
    No. 04 Civ. 7897, 2007 WL. 2684069
    (S.D.N.Y. Sept. 14, 2007)......................................................................25, 30

In re Deutsche Telekom AG Securities Litigation,
    No. 00-9475, 2002 WL. 244597
    (S.D.N.Y. Feb. 20, 2002).......................................................................31, 34

Drobbin v. Nicolet Instrument Corp.,
    631 F. Supp. 860 (S.D.N.Y. 1986) ...............................................................32

Duncan v. Pencer,
    No. 94 Civ. 0321 (LAP), 1996 WL. 19043
    (S.D.N.Y. Jan. 18, 1996)..............................................................................28

Endovasc Ltd. v. J.P. Turner,
    No. 02-7313, 2004 WL. 634171 (S.D.N.Y. June 25, 1998) .........................23

In E. ON AG v. Acciona, S. A.,
    2007 WL. 316874 (S.D.N.Y. Feb. 5, 2007).............................................15, 16

Fisher v. SpecTran Corp., No. 99-12359, 2001 WL. 34644311 (D. Mass. May 31,
    2001) .............................................................................................................21

Ganino v. Citizens Utilities Co.,
    228 F.3d 154 (2d Cir. 2000)..........................................................................20

Gavish v. Revlon, Inc.,
    No. 00 Civ. 7291, 2004 U.S. Dist. LEXIS 19771
    (S.D.N.Y. Sept. 29, 2004) ................................................................................20

Geiger v. Solomon-Page Group, Ltd.,
    933 F. Supp. 1180 (S.D.N.Y. 1996) .............................................................27, 28

Glazer v. Formica,
    964 F.2d 149 (2d Cir. 1992) .........................................................................17, 18

Glickman v. Alexander & Alexander Servs., Inc.,
    No. 93 Civ. 7594 (LAP), 1996 U.S. Dist. LEXIS 2325
    (S.D.N.Y. Feb. 29, 1996) ................................................................................28

In re Global Crossing, Ltd. Sec. Litig.,
    No. 02 Civ. 910 (GEL), 2005 WL. 2990646
    (S.D.N.Y. Nov. 7, 2005) ................................................................................31

In re Globalstar Sec. Litigation,
    No. 01 Civ. 1748, 2003 U.S. Dist. LEXIS 22496
    (S.D.N.Y. Dec. 15, 2003) ................................................................................20

Goldman v. Belden,
    754 F.2d 1059 (2d Cir. 1985) ..........................................................................20

Howard v. Everex System,
    228 F.3d 1057 (9th Cir. 2000) ........................................................................29

In re Initial Public Offering Sec. Litigation,
    241 F. Supp. 2d at 395 ....................................................................................34

In re JP Morgan Chase Sec. Litigation,
    363 F. Supp. 2d 595 (S.D.N.Y. 2005) ............................................................29

Kalnit v. Eichler,
    264 F.3d 131 (2d Cir. 2001) ...........................................................................27

Kamerman v. Steinberg,
    123 F.R.D. 66 (S.D.N.Y. 1988) ...................................................................13, 17

In re Lattice Semiconductor Corp. Sec. Litigation,
    No. CV04-1255-AA, 2006 U.S. LEXIS 262
    (D.Or. Jan. 3, 2006) ........................................................................................30

In re Luxottica Group S.p.A. Sec. Litigation,
    293 F. Supp. 2d 224 (S.D.N.Y. 2003)................................................................13

In re MCI WorldCom, Inc. Sec. Litigation,
    93 F. Supp. 2d 276 (E.D.N.Y. 2000) ....................................................19, 22

Manavazian v. ATEC Group, Inc.,
    160 F. Supp. 2d 468 (E.D.N.Y. 2001) .........................................................21

Martin v. Durus Capital Management, LLC., et al.,
    Case No. 04 C 555, 2005 U.S. Dist. LEXIS 23324
    (N. D. Ill., March 31, 2005) .......................................................................26

McCormick v. Fund America Cos.,
    26 F.3d 869 (9th Cir. 1994) .......................................................................20

In re Morgan Stanley & Van Kampen Mutual Fund Sec. Litigation,
    No. 03 Civ. 8208, (RO), 2006 WL. 1008138
    (S.D.N.Y. Apr. 18, 2006)............................................................................27

Novak v. Kassaks,
    216 F.3d 300 (2d Cir. 2000)...............................................................25, 29

In re OCA, Inc. Sec. and Deriv. Litigation,
    No. 05-2175, 2006 WL. 3747560
    (E.D. La. Dec. 14, 2006) ............................................................................30

In re Par Pharmaceutical, Inc. Sec. Litigation,
    733 F. Supp. 668 (S.D.N.Y. 1990) .............................................................32

In re Polaroid Corp. Sec. Litigation,
    465 F. Supp. 2d 232 (S.D.N.Y. 2006)........................................................28

Reiss v. Pan American World Airways, Inc.,
    711 F.2d 11 (2d Cir. 1983).........................................................................19

Roeder v. Alpha Industrial, Inc.,
    814 F.2d 22 (1st Cir. 1987)..................................................................13, 19

Rombach v. Chang,
    355 F.3d 164 (2d Cir. 2004)......................................................................31

Rondeau v. Mosinee Paper Corp.,
    422 U.S. 49 (1975).....................................................................................14

Rosen v. Brookhaven Cap. Management Co., Ltd.,
    113 F. Supp. 2d 615 (S.D.N.Y. 2000)...........................................................15

Ross v. A.H. Robins Co., Inc.,
    465 F. Supp. 904 (S.D.N.Y.), rev'd, on other grounds,
    607 F.2d 545 (2d Cir.), cert. denied, 446 U.S. 946 and
    reh'g denied, 448 U.S. 991 (1980) ...............................................................13

S.E.C. v. First Jersey Securities, Inc.,
    101 F.3d 1450 (2d Cir. 1996),
    cert. denied, 522 U.S. 812 (1997) ...........................................................31, 32

S.E.C. v. Geon Industrial, Inc.,
    531 F.2d 39 (2d Cir. 1976).............................................................................19

S.E.C. v. Gorsek,
    222 F. Supp. 2d 1099 (C.D. Ill. 2001) ..........................................................19

S.E.C. v. Texas Gulf Sulphur Co.,
    401 F.2d 848 (2d Cir. 1968), aff'd, in relevant part,
    and rev'd, in part, on other grounds,
    446 F.2d 1301 (2d Cir. 1971) and
    cert. denied, 404 U.S. 1005 (1971) .........................................................19, 24

S.E.C. v. Treadway,
    430 F. Supp. 2d 293 (S.D.N.Y. 2006)...........................................................13

Schlanger v. Four-Phase Sys's, Inc.,
    582 F. Supp. 128 (S.D.N.Y. 1984) ................................................................21

Schnall v. Annuity and Life Re (Holdings) Ltd.,
    No. 3:02 CV 2133(GLG), 2004 WL. 231439
    (D. Conn. Feb. 4, 2004) ................................................................................33

Semerenko v. Cendant Corp.,
    223 F.3d 165 (3d Cir. 2000),
    cert. denied, 531 U.S. 1149 (2001) ...............................................................19

Shields v. Citytrust Bancorp, Inc.,
    25 F.3d 1124 (2d Cir. 1994)...........................................................................31

Sloman v. Presstek, Inc.,
    No. 06cv3777, 2007 U.S. Dist. LEXIS 69475
    (D.N.H. Sept. 18, 2007) ................................................................................25

Staffin v. Greenberg,
    672 F.2d 1196 (3d Cir. 1982)........................................................19

Suez Equity Investors, L.P. v. Toronto Dominion Bank,
    250 F.3d 87 (2d Cir. 2001)...........................................................31

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
    127 S. Ct. 2499 (2007)...........................................................23, 24

Tellabs, Transit Rail v. Marsala,
    No. 05-cv-0564, 2007 U.S. Dist. LEXIS 52822
    (W.D.N.Y. July 20, 2007)..........................................................30

In re Time Warner Inc., Sec. Litigation,
    9 F.3d 259 (2d Cir. 1993),
    cert. denied, 511 U.S. 1017 (1994) .......................................13, 18

In re Tommy Hilfiger, Sec. Litigation,
    No. 04-Civ-7678, 2007 U.S. Dist. LEXIS 55088
    (S.D.N.Y. July 20, 2007) ...........................................................12

In re Top Tankers, Inc. Sec. Litigation,
    No. 06 Civ. 13761 (CM), 2007 WL 4563930
    (S.D.N.Y. Dec. 18. 2007),..........................................................25

Transcom Lines v. A.G. Becker, Inc.,
    470 F. Supp. 356 (S.D.N.Y. 1979) ............................................16

In re Van der Moolen Holding N.V. Sec. Litigation,
    405 F. Supp. 2d 388 (S.D.N.Y. 2005).....................................33, 34

In re Veeco Instruments, Inc. Sec. Litigation,
    235 F.R.D. 220 (S.D.N.Y. 2006) ............................................32, 33

Weiner v. Quaker Oats Co.,
    129 F.3d 310 (3d Cir. 1997),
    later transferred, No. 98 C 3123, 2000 U.S. Dist. LEXIS 16765
    (N.D. Ill. Nov. 9, 2000)..............................................................22

In re WorldCom, Inc. Sec. Litigation,
    294 F. Supp. 2d 392 (S.D.N.Y. 2003).........................................34

Plaintiffs submit this corrected[*] memorandum of law in opposition to defendant Perseus-Soros Biopharmaceutical Fund, L.P.'s ("Perseus-Soros") Motion to Dismiss and in opposition to defendants Bioenvision, Inc. ("Bioenvision" or the "Company") Christopher B. Wood, Joseph P. Cooper, Steven A. Elms, Michael G, Kauffman, Andrew Schiff and James S. Scibetta's (collectively the "Bioenvision Defendants") Motion to Dismiss the Plaintiffs' Supplemental Amended Class Action Complaint (the "Complaint"). See Declaration of Lee Squitieri dated February 29, 2007 ("Squitieri Decl."), Ex. A.

## I.

## PRELIMINARY STATEMENT

Plaintiffs have asserted claims arising under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder on behalf of a class of sellers of Bioenvision, Inc.'s ("Bioenvision") common stock from April 11, 2007 (the date on which Genzyme responded to Bioenvision's request for a price certain for Bioenvision common stock) through May 29, 2007 (the date on which the merger was publicly announced) (the "Class Period"). Plaintiffs are former shareholders of Bioenvision who sold their shares of Bioenvision stock during the Class Period, at a very low price which reflected the Company's own public statements of its uncertain prospects and continuous need for financing in its stock price, while defendants were negotiating the takeover of Bioenvision by Genzyme, Inc. ("Genzyme") for a huge premium to the market price of Bioenvision common stock. Complaint ¶¶4, 5 & 7. At the end of the Class Period, the Genzyme takeover of Bioenvision was announced and the price of

---

[*]    This memorandum of law is being corrected to include the Table of Contents and Table of Authorities and to fully cite the following cases: Transcom Lines v. A.G. Becker, Inc., 470 F. Supp. 356 (S.D.N.Y. 1979); Basic, Inc. v. Levinson, 485 U.S. 224 (1988); ATSI Communications, Inc. v. Shaar Fund, Ltd., 493 F.3d 87 (2d Cir. 2007); Boguslavsky v. Kaplan, 159 F.3d 715 (2d Cir. 1998); Borden Inc. v. Spoor Behrins Campbell & Young, 735 F. Supp. 587 (S.D.N.Y. 1990).

Bioenvision common stock jumped to $5.88 from $4.22, four trading days earlier. Complaint ¶¶ 62, 65, 66, 67.

During the Class Period, the Defendants Bioenvision, Christopher B. Wood ("Wood") and James Scibetta ("Scibetta") made or caused to be made numerous public statements concerning Bioenvision ongoing business operations, plans and strategies in which Bioenvision, Wood and Scibetta stated and implied that it was Bioenvision's business plan and strategy to continue as an independent company and pursue its drug development strategy. That strategy unfortunately had not been very successful as reflected by Bioenvision's stock price. None of those statements (which included statements of "Recent Events" in SEC filings Complaint ¶¶ 37, 49, 52, 55, 59) disclosed, in any way, that Bioenvision was negotiating to sell itself to Genzyme, for a premium to the market price of Bioenvision stock and as such were materially false and misleading.

Defendant Perseus-Soros was, at all times during the Class Period, owner of 20% of Bioenvision stock and defendants Joseph P. Cooper ("Cooper"), Steven A. Elms ("Elms"), Michael G. Kauffman ("Kauffman"), Andrew Schiff ("Schiff") were Perseus-Soros' representatives on the Bioenvision Board of Directors. As 20% owners of Bioenvision stock, Perseus-Soros was under an ongoing statutory duty (under Section13(d) of the Securities Exchange Act to 1934) to file with the Securities Exchange Commission ("SEC") a Schedule 13D to disclose any plans or intention to effect, or influence, a change in control of Bioenvision. During the Class period, Perseus-Soros failed to disclose the plans and/or intentions and actions to influence a change in control of Bioenvision despite their clear statutory obligation to amend its Schedule 13D and a file an amended Schedule 13D and disclose its participation in a plan for

a takeover of Genzyme.[1]  On May 2, 2007, while under a duty to disclose material inside

information in its possession or to abstain from trading, defendant Perseus-Soros exercised its

warrants to purchase an aggregate of 3 million shares of Company common stock at a purchase

price of $2.00 per share.  Complaint ¶ 51.  Perseus-Soros' failure to make those disclosures

rendered the December 2004 Schedule 13D/A (Squitieri Decl. Ex. B), in which Perseus-Soros

disclaimed any intent to influence the control of Bioenvision and remained "alive" during the

Class Period, materially false and misleading.

Perseus-Soros' failure to amend the Schedule 13D during the Class Period and disclose

the takeover plans constitutes actionable omissions.  Likewise, Bioenvision's and Scibetta and

Woods' statements in press releases were materially false and misleading.  Bioenvision directors,

defendants Cooper, Elms, Kauffman and Schiff were responsible for the false registration

statement that remained alive during the Class Period.  Ciccia Decl. Ex. B.  Inasmuch as Perseus-

Soros was involved in the takeover discussions at every step in the process, as were all individual

defendants, their knowledge (scienter) is indisputable.  Perseus-Soros' financial motive to

conceal the negotiations were to facilitate Genzyme's purchase of all Bioenvision equity which

would provide Perseus-Soros with a buyer for Perseus-Soros large illiquid equity position in

Bioenvision at a premium.   Complaint ¶ 81.

Deprived of material information (which defendants were under a legal duty to disclose)

concerning the ongoing discussions of Genzyme's planned takeover of Bioenvision at a huge

premium for Bioenvision stockholders, plaintiffs could obtain only the artificially suppressed

market price for their stock when they sold their shares.  Complaint ¶¶ 62, 71, 76, 85, 92.

---

[1]        Perseus-Soros was an indispensable participant in the take-over as reflected by the fact that Perseus-Soros
signed a complex voting agreement as part of the takeover.  Complaint ¶ 68.

The arguments of the Defendants[2] cannot earn them dismissal of this action. The Complaint alleges in full factual details the discussions throughout the Class Period between defendants and Genzyme as the takeover progressed. The complaint's allegations amply demonstrate the fact that all defendants had full knowledge of the takeover negotiations because their participation in the discussions. The discussions, dates of discussions and subject matter are identified in the Complaint. The complaint's allegations set forth in detail all of the statements made by defendants alleged to be materially false and misleading and explain logically and coherently, why such statements were materially false and misleading. One of Defendants' main arguments, that they were under no duty to disclose the merger negotiation because of the lack of materiality of the merger discussions during the Class Period, has been repeatedly held to be a question of fact not susceptible to resolution on a motion to dismiss. Moreover, here the discussions were in an advanced stage by the beginning of the Class Period: Bioenvision has solicited a takeover bid from Genzyme and Genzyme responded with a firm, cash offer at a large premium to the market.

Nor have the Defendants identified any fatal lack of particularization in the pleading that runs afoul of either Rule 9(b) of the Fed. R. Civ. P. or the requirements of the Private Securities

---

[2]    The Bioenvision Defendants' (collectively Bioenvision, Wood, Cooper, Elms, Kauffman, Schiff and Scibetta) argue in support of dismissal: (1) their misrepresentations and omissions are not actionable because they were under no duty to disclose the discussions because Bioenvision "remained silent" about the discussions; (2) statements about general business operations and results do not trigger an obligation to reveal pending merger discussions; (3) there is no cogent and compelling theory of scienter because the counter inference is that "confidentiality was essential to bargaining"; (4) plaintiff's allegations that defendants "knew and/or recklessly disregarded" the false and misleading nature of their statements is insufficient to plead conscious misbehaviors; (5) plaintiff's recitation of defendants' false and misleading statements are not particularized enough; and the control person claims fail to plead "culpable participation" of each defendant.

The Perseus-Soros Biopharmaceutical Fund, LLP (the "Fund") argues that the complaint must be dismissed because: (1) the allegations of the "secret agreement" are not sufficiently particular to meet applicable standards; (2) Perseus-Soros had no duty to amend its Schedule 13d because the January 2007 discussion with Genzyme was not significant enough to trigger a duty to disclose; (3) Even if there was duty to disclose the January discussions with Genzyme, the law was not clear enough that the fund's failure disclose could be deemed fraudulent under 10 b-5; and (4) The control person claims fail to plead "culpable participation."

Litigation Reform Act ("PSLRA"). The Complaint provides the requisite "who", "what", "when", "where" and "how" of the statements (Complaint ¶¶ 30, 35, 36, 37, 49, 52, 54, 55, 57, 58) laws and also contains detailed factual allegations explaining how the statements and omissions are false and misleading. Complaint ¶¶ 32, 39, 42, 50, 53, 56, 60). Moreover, plaintiffs' pleading of the Defendants' scienter is not subject to any serious attack in light of the factual allegations that the Defendants were making personally involved in the merger activities and personally made or caused to be made the misleading statements at the same time that they were all involved in deep discussions regarding the Genzyme takeover. Complaint ¶¶ 9-15, 29, 30,34(a), (b),(c), 35, 41, 44, 45-48, 49, 52, 54, 61-64). Such allegations, it has been held, constitute "classic" fact patterns of scienter and constitute adequate allegations of scienter.

Finally, the control person allegations adequately describe each control defendants' "control" and "culpable participation." Complaint ¶¶ 107-108. Defendants' motions to dismiss should be denied.

## II.

## THE FACTUAL ALLEGATIONS[3] OF THE AMENDED COMPLAINT

### A.    Pre-Class Period Merger Activities And Public Statements

Defendant Bioenvision, a biopharmaceutical company, was developing a flagship product prior to and during the Class Period that had the potential to become a blockbuster. Complaint ¶ 25. During the Class Period, Defendant Perseus-Soros was the single largest common stockholder of Bioenvision (owning approximately 20% of Bioenvision common stock) and the

---

[3]    The sources for the facts alleged in the complaint are (1) the sworn verified complaint of Luci, Bioenvision's General Counsel during the Class Period (Squitieri Decl. Ex. C; Complaint ¶¶ 9,28,29,34,84); (2) Bioenvision's SEC filings disclosing the "Background of the Merger (Complaint ¶¶ 44,48); (3) Perseus-Soros SEC filings; (4) Bioenvision's Registration Statement and Prospectus filed with the SEC (Squitieri Decl. Ex. I; Complaint ¶¶ 35,36,37,38,39); and (5) Bioenvision's press releases (Complaint ¶¶ 30,31,49,52,55; Squitieri Decl. Exs. E, F, G, H.

sole holder of all of the preferred stock[4] issued by Bioenvision.[5]  As such holder, Perseus-Soros

was in a position to and did exercise control over Bioenvision's Board of Directors (the "Board")

and the Company itself.  Bioenvision's former General Counsel and CFO had attested to the fact

that Perseus-Soros "exercised control over Bioenvision and its board."  Defendants Cooper,

Elms, Schiff and Kauffman all were directly employed by Perseus-Soros or had significant

financial dependencies on Perseus-Soros.[6]  The other two individual defendants, Wood,

Bioenvision's Chairman and CEO and Scibetta, Bioenvision's CFO, personally made and/or

signed some of the materially false and misleading statements identified in the Complaint.

However, it was struggling for financing and prior to the Class Period had to raise capital by

selling stock cheaply.  Complaint ¶ 35.  As a consequence, its stock price was weak and getting

weaker before and during the Class Period.  Complaint ¶ 40.

      According to the sworn statement of Bioenvision's former General Counsel and CFO,

defendants Perseus-Soros, Elms, Schiff, Cooper and Kauffman (constituting four of

Bioenvision's seven directors at the time) "determined to accept an offer from Genzyme to

acquire Bioenvision" in January 2007.  Complaint ¶¶ 28, 29.  Discussions between the two

companies, which had been happening on and off in 2005 and 2006 (Complaint ¶¶ 26, 27),

---

[4]     Bioenvision preferred stock confers certain special rights and benefits including, without limitation, the right: (a) to receive an annual 5% dividend, cumulative in arrears; (b) to increase or decrease the size of the Board; and (c) to vote separately (from the common stockholders) as a class, on any material financing, acquisition or disposition of, or by, Bioenvision.

[5]     In the face of a declining Bioenvision stock price, Perseus-Soros needed some avenue to sell its large, illiquid equity stake in Bioenvision.  Complaint ¶ 81.

[6]     Defendant Cooper serves as the executive vice president of Medicis Pharmaceutical Corp. ("Medicis"), which has had extensive business dealings with Perseus-Soros and/or its senior management.  Upon information and belief, Cooper was recommended to become a member of the Board in 2006 by Perseus-Soros.  Defendant also serves as a managing director of Perseus-Soros Management, LLC ("Perseus-Soros Management"), an affiliate of Perseus-Soros.  Defendant Schiff, like Defendant Elms, also serves as a managing director of Perseus-Soros Management.  Defendant Kauffman is the president and chief executive officer of Predix Pharmaceuticals ("Predix"), in which Perseus-Soros has had a significant investment.  Upon information and belief, defendant Kauffman was recommended to become a member of the Board in 2004 by Perseus-Soros.

resumed in January 2007.  Complaint ¶ 28.  Information was exchanged between the companies (Complaint ¶ 41), investment bankers and lawyers were hired (Complaint ¶ 44) and on March 15, 2007 Bioenvision directors (the defendants herein) asked Genzyme to submit a bid for the Complaint (Complaint ¶ 34).  All of that happened before the Class Period.

Notwithstanding the foregoing negotiations and activities, the Company Defendants made public statements on February 8, 2007 (Ciccia Decl. Ex. D), April 2, 2007 (Ciccia Decl. Ex. E) and issued a prospectus on March 30, 2007 all of which affirmatively stated or reinforced the message that the Company "remains focused on continuing to execute on our global development and commercialization strategy for Evoltra in the months ahead."  Complaint ¶¶ 30, 31, 35, 36.  Bioenvision's prospectus contained a section entitled "Recent Development" which disclosed that Genzyme had not been paying contractual development costs to Bioenvision (Complaint ¶ 37, pages 11 and 13) despite Bioenvision's efforts to collect same and other breaches and failure to perform by Genzyme (Complaint ¶ 37, page 14) and that Bioenvision may not have the financial resources to complete the development of Evoltra (Complaint ¶ 37, page 14).

Not surprisingly given its dour public statements of its future prospects, the price of Genzyme common stock, which had been over $8 per share in 2006 (Complaint ¶ 37, page 14) had by March 30, 2007 declined to $3.81, after the Company's offering of stock at $3.85 per share in a public offering.  Complaint ¶ 40.

**B.    The Class Period Begins:  April 11, 2007 Genzyme Makes
A Firm All Cash Offer For Bioenvision Stock
In Response To Bioenvision's March 15, 2007 Request For
A Bid; Events Move Quickly Towards A Completed
Deal But Defendants Continue To Make False Statements**

On April 11, 2007, in response to a request by the Bioenvision Board on March 15, 2007

for a bid from Genzyme to acquire Bioenvision, Genzyme indicated to the Board a potential

acquisition price $5.25 per share of Bioenvision common stock.  Complaint ¶ 41.  At that time,

Genzyme also requested access to additional information from Bioenvision for "confirmatory

due diligence" according to Bioenvision's SEC filings.  Id. at 41.  Thereafter, the merger

progressed quickly over the next 45 days.

Bioenvision Board held a series of special telephonic meetings on April 12, 13, and 19,

2007, "to further discuss the Genzyme Offer, in which [Bioenvision] management and

representatives of UBS and Goodwin Procter LLP ("Goodwin Procter"), legal counsel to

[Bioenvision], participated."  Complaint ¶ 44.  According to the Company's SEC filings, on

April 20, 2007, representatives of Bioenvision told BOA that the Company would provide

Genzyme with a limited set of additional confidential information "to help Genzyme verify that

is $5.25 per share bid was appropriate."  On April 30, 2007, the Company made additional due

diligence materials available to Genzyme including confidential information from regulators

concerning approval for clorafarabine for additional indications.

Defendants failed to correct the materially false pre-class statements (Complaint ¶¶ 52)

and in fact continued to issue materially false and misleading statements about the Company's

strategic activities.  On the May 1, 2007, before the opening of trading, defendants falsely

reported in a press release:

> Bioenvision's primary focus is the acquisition, development and marketing of compounds and technologies for the treatment of cancer.

Complaint ¶ 57.

On May 2, 2007, while under a duty to disclose material inside information in its possession or to abstain from trading, defendant Perseus-Soros exercised its warrants to purchase an aggregate of 3 million shares of Company common stock at a purchase price of $2.00 per share. Complaint ¶ 51. Bioenvision announced the exercise in a May 7, 2007 press release and falsely stated: <u>inter alia</u> "The $7.4 million in proceeds from this transaction strengthens Bioenvision's balance sheet and provides additional liquidity that will <u>support our strategy to build shareholder value through, among other things, our ongoing clinical development programs for Evoltra® (clofarabine)</u>," said Christopher B. Wood, M.D., Bioenvision's chairman and chief executive officer. Complaint ¶ 52 (emphasis supplied); Ciccia Decl. Ex. F.

On May 8, 2007, just weeks before the announcement of the Merger, defendants falsely stated in a press release:

> New York, NY, May 8, 2007 – Bioenvision, Inc. (NASDAQ: BIVN) "The Company's number one priority is to expand the indications for use of Evoltra® (clofarabine) and to realize the full potential for this very active agent" said Christopher B. Wood, M.D., Bioenvision's chairman and chief executive officer.
>
> James S. Scibetta, Bioenvision's chief financial officer, added, "In addition to the regulatory activities, we are also enhancing our corporate structure and strengthening our balance sheet. Our recent success raising capital with an over-subscribed book has yielded a solid balance sheet giving us the flexibility to continue building a commercial organization and positioning us well to continue to pursue clinical development and commercialization of clofarabine globally."
>
> ….

> Dr. Wood concluded," We look forward to continuing our progress around several key initiatives. . .
>
> ....
>
> Bioenvision's primary focus is the acquisition, development and marketing of compounds and technologies for the treatment of cancer.

Complaint ¶ 55; Ciccia Decl. Ex. G.

On May 9, 2007, the Company participated in the UBS Global Generic and Specialty Pharmaceuticals Conference in New York City and addressed investors and analysts but failed to make any disclosures about its progress toward an acquisition of the Company by Genzyme. Complaint ¶ 57.

On May 9, 2007 defendants falsely represented in Bioenvision's Quarterly Report on Form 10-Q for the quarterly period ended March 30, 2007, signed by defendants Scibetta and Wood, the Company's "Subsequent Events" without disclosing its progress towards a deal with Genzyme for the acquisition of all the equity of the Company. Ciccia Decl. Ex. H. Additionally, in "Item 2" of the same report titled "Management's Discussion and Analysis of Financial Condition and Results of Operations," ("MD&A") falsely reported:

> (a)    We are a product –oriented pharmaceutical company primarily focused upon the acquisition, development and marketing of compounds and technologies for the treatment of cancer.
>
> ....
> Our primary business strategy has included taking cloraforabine to market in the E.U. and using the proceeds from our resulting marketing efforts, in part, to expand the indications for cloraforabine and to progress the other products and technologies in our pipeline.
>
> (Emphasis supplied).

(b)    Risks Factors

We are developing cloraforabine in conjunction with Genzyme,
our U.S. co-development partner since its acquisition of ILEX
Oncology, which occurred on December 21, 2004. <u>No assurance
can be given that the operational and managerial relations with
Genzyme will proceed favorably . . .</u>

(emphasis supplied).

On May 10, 2007 Genzyme through BOA reiterated its $5.25 per share for all of the

outstanding equity of Bioenvision. Complaint ¶ 61. Sometime before the merger agreement was

signed, Perseus-Soros had negotiated, prepared and signed a complex Tender and Voting

Agreement in support of the Merger. Complaint ¶ 68.

On May 25, 2007, the parties agreed to proceed with an acquisition at $5.60 per share of

Bioenvision common stock. The revised price was approved by a special committee of

Company directors on May 25, 2007 and on May 28, 2007 a final merger agreement was

approved. The agreement was signed on May 29, 2007.

Upon disclosure of the merger agreement the price of Bioenvision stock jumped $.28 to

$5.88 from $4.20 that it was trading several days earlier. Complaint ¶ 67.

## ARGUMENT

## POINT I

## STANDARDS ON A MOTION TO DISMISS AFTER BELL ATLANTIC V. TWOMBLY

Defendants argue that the new standard of review of a complaint under a 12(b)(6) motion

to dismiss is now a "more rigorous review that requires a plaintiff to plead "truly 'plausible'"

claims under <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955 (2007); Bioenvision Memo at 7.

There is no "truly plausible" standard. The Supreme Court in <u>Twombly</u>, specifically held that it

does "not require heightened fact pleading of specifics, but only enough facts to state a claim to

relief that is plausible on its face. Because the plaintiffs here have not nudged their claims across

the line from conceivable to plausible, their complaint must be dismissed." Id. at 1974.  On June 4, 2007, the Supreme Court issued a per curiam summary reversal in Erickson v. Pardus, 127 S. Ct. 2197 (2007), that makes clear what Justice Souter reiterated in Twombly:  **the Court in that case was not imposing a heightened pleading standard,** but instead requiring "only enough facts to state a claim to relief that is plausible on its face." Twombly, 127 S. Ct. at 1960. Erickson makes clear that Twombly did not change the long-standing proposition that when ruling on a motion to dismiss "a judge must accept as true all of the factual allegations contained in the complaint." Erickson, 127 S. Ct. at 2200 (citing Twombly, 127 S. Ct. 1955).

Post-Twombly, in this Circuit, the standard as applied requires, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." In re Tommy Hilfiger, Sec. Litig., No. 04-Civ-7678, 2007 U.S. Dist. LEXIS 55088, at *5 (S.D.N.Y. July 20, 2007).

## POINT II

### THE COMPLAINT PLEADS THE DUTY ELEMENT OF THE CLAIMS WITH THE SPECIFICITY REQUIRED OF THE PSLRA

Both sets of defendants challenge the sufficiency of plaintiffs' allegations of the duty element of the Rule 10b-5 claims.  Specifically, Bioenvision Defendants contend that none of them had a duty to disclose anything, ever about the Genzyme acquisition of Bioenvision until the merger agreement was signed on May 29, 2007.  Bioenvision Mem. at pgs. 9-14.  For different reasons, Perseus-Soros contends that it had no duty to amend its 13D Schedule. Perseus-Soros argues that it had no duty "to disclose its December 2006 discussion with Genzyme "(Perseus-Soros Mem. at 11) and that its January 2007 13D disclosure did not need to be amended until "May 2007, when a specific agreement was reached." Perseus-Soros Mem. at 13.

## A.    **Duty, Generally**

There are four sources of a duty to disclose under Section 10 b and Rule 10b-5.  Roeder

v. Alpha Indus., Inc., 814 F. 2d 22, 27 (1st Cir. 1987) (holding that three situations give rise to a

duty to disclose material facts:  (1) when an insider trades on the basis of non-public information;

(2) when a statute or regulation requires disclosure; and (3) when a company has previously

made a false, inaccurate, incomplete or misleading statement); see also In re Time Warner Inc.,

Sec. Litig., 9 F.3d 259, 267 (2d Cir. 1993), cert. denied, 511 U.S. 1017 (1994).  Further,

defendants have a duty to correct or revise a prior statement even if true when made, which have

become misleading.  In re Time Warner, supra at 267 (noting issuer's "duty to update"

statements "which have become misleading as the result of intervening events"); S.E.C. v.

Treadway, 430 F. Supp. 2d 293 (S.D.N.Y. 2006) ("One circumstance creating a duty to disclose

arises when disclosure is necessary to make prior statements not misleading");Kamerman v.

Steinberg, 123 F.R.D. 66, 72 (S.D.N.Y. 1988) ("The law in this and other Circuits establish a

general duty to correct under Section 10(b) and Rule 10b-5").  Under Rule 10b-5, a failure to

timely amend a 13D schedule can be actionable under 10b-5.  In re Luxottica Group S.p.A. Sec.

Litig., 293 F. Supp. 2d 224, 234 (S.D.N.Y. 2003).  Moreover, the duty to correct or revise

continues "as long as traders in the market could reasonably rely on the statements."  Ross v.

A.H. Robins Co., Inc., 465 F. Supp. 904, 908 (S.D.N.Y.), rev'd, on other grounds, 607 F.2d 545

(2d Cir.), cert. denied, 446 U.S. 946 and reh'g denied, 448 U.S. 991 (1980).

The Complaint alleges facts supporting a duty to disclose under all four sources of that

duty.  There is insider trading by Perseus-Soros (Complaint ¶ 9, 51); Perseus-Soros statutory

disclosure requirements (Complaint ¶ 9, 43); the duty arising from the issuance, inaccurate,

incomplete and misleading statements addressing Bioenvision's business strategies (Complaint

¶¶ 30, 31, 32, 36 37, 38, 39); and the duty to update prior statements by defendants (see Complaint ¶¶ 30, 31, 32, 36 37, 38, 39) made misleading by subsequent events (Complaint ¶ 42).

**B.    According To The Well Pleaded Allegations Of
The Complaint Perseus-Soros Had A Duty To File
An Amendment To Their Schedule 13D At Least
By The Start of the Class Period On April 11, 2007**

Perseus-Soros contends that it had no duty to amend its December 30, 2006 Schedule 13D because "in January 2007, Perseus-Soros had nothing concrete to disclose." (Perseus-Soros Mem. at 12) and therefore it did not violate Section 13d. (Perseus-Soros Mem. at 11-13). In addition, Perseus-Soros contends that it had no duty for the entire Class Period under Section 13 in the circumstances here (and therefore there can be no violation of Section 10b-5) because the Bioenvision-Genzyme merger plans were "speculative." (Perseus-Soros Mem. at 11-12). Perseus-Soros argues that its earlier 13D "did not need to be amended or updated until May 2007 when a specific agreement was reached." Id. at 13.

Perseus-Soros disclosure obligation was triggered upon formulation of a plan or intent or proposal. Section 13(d) of the Exchange Act and Rule 13d-1, et. seq., promulgated thereunder, requires defendant Perseus-Soros to file a Schedule 13D and to make a sworn certification therein as to its plans or purpose to influence a change of control in the "issuer", i.e., 17 C.F.R. § 240.13d-101 and 17 C.F.R. Section 240.13d-2(a) (requiring amendment to Schedule 13 if there are any material changes in facts stated in prior Schedule 13d). Section 13d was "designed as a broad disclosure provision to give shareholders and the market notice of potential changes in corporate control. SEC v. First City Fin. Corp. Ltd., 688 F. Supp. 705, 742 (D.D.C. 1988), aff'd, 890 F. 2d 1215 (D.C. Cir. 1989). These rules, it has been expressly held by the Supreme Court, ensure individuals "who allegedly sold at an unfairly depressed price have an adequate remedy by way of an action for damages. Rondeau v. Mosinee Paper Corp., 422 U.S. 49, 60 (1975).

In its Schedule 13D/A filed on December 2004 (Ciccia Decl. Ex. B), Perseus-Soros certified as follows:

> …the securities referred to above were not acquired and are not held for the purpose of or with the effect of changing or influencing the control of the issuer of the securities and were not acquired and are not held in connection with or as a participant in any transaction having that purpose or effect.

The Complaint alleges that the 13 D/A should have been amended because it became materially false and misleading during the Class Period (Complaint ¶ 43) because (1) as early as January 2007, Perseus-Soros had "determined" to accept an offer from Genzyme (Complaint ¶ 29) and "agreed" with Genzyme on "a course of action" for Genzyme to make a tender offer for Perseus-Soros's Bioenvision and public shareholders stock. (Complaint ¶ 28); (2) during the Class Period, Bioenvision and Genzyme negotiated a merger with the participation of Perseus-Soros representatives on Bioenvision's board. Complaint ¶ 41, 44, 48, 68. Whether there is a sufficient intention if a course of action to require disclosure by a Schedule 13 filer was addressed by Judge Marreiro in Rosen v. Brookhaven Cap. Management Co., Ltd., 113 F. Supp. 2d 615 (S.D.N.Y. 2000). In Brookhaven Judge Marreiro refused to grant a motion to dismiss because "Brookhaven's purpose and intent may not be derived without some investigation and discovery." Id. at 113 F. Supp 2d at 632. In E. ON AG v. Acciona, S. A., 2007 WL 316874, at * (S.D.N.Y. Feb. 5, 2007), Judge Denise Cote held that a "Schedule 13d must disclose a purpose to acquire control, even though this intention has not taken shape as a fixed plan." Id. at * 8 (quotations and citation omitted). Judge Cote further held "the fact that [the 13d filer] does not know 'if, when, or how such [influence or control] might be achieved' did not relieve it of its duty… Moreover, having denied in its Schedule 13D that it had any proposals for any extraordinary corporate transaction for [the Company], it had a duty" to correct that statement.

15

Id. at *11. Even in a case heavily relied upon by Perseus-Soros such as Todd Shipyards Corp., supra, Judge Pollack held matters "not fully determined" must nonetheless be "identified" in the Schedule 13D. Id. at 547 F. Supp. at 1387 ("It is sufficient to merely identify these matters not fully determined"). See also E. OA AG, supra, at *8 (same); Rosen v. Brookhaven, supra at 632 (same); Transcom Lines v. A.G. Beller, Inc., 470 F. Supp. at 356 (S.D.N.Y. 1979).

The Complaint alleges that Perseus-Soros had "determined" to accept an offer from Genzyme in January 2007 (Complaint ¶ 29); that it took action to effectuate its plan (Complaint ¶ 34); that it participated in the negotiations of the transaction (Complaint ¶¶ 41, 44, 48) and were important participants as evidenced by their involvement in the voting agreement (Complaint ¶ 68) but that it made no amendment of its Schedule 13D.  This pattern is in sharp contrast to the factual scenario in the cases cited by Perseus-Soros for support.  In support, Perseus-Soros cites to cases with materially dissimilar fact pattern or holdings: Azurite Corp. Ltd. v. Amster & Co., 52 F.3d 15, 18 (2d Cir. 1995) (involved summary judgment after discovery in the civil case and parallel SEC action).  Under Azurite, a course of action need not have been "decided upon" before it must be disclosed; it is enough if the course of action is "intended." Azurite, 52 F.3d at 18. "Intention," the Second Circuit in Azurite held "is a determination made with an element of resolve." Id. This is precisely what plaintiff has alleged: that Perseus-Soros "determined" to be involved in a merger between Bioenvision and Genzyme (Complaint ¶ 28, 29) based upon Luci Verified Complaint.  Obviously, there is no requirement that the person has irrevocably committed to the course of action or that other courses have been precluded or rejected with finality because of Azurite.  Finally, the Second Circuit observed that a "plan" is "something more definite that "vaguely formed thoughts for the future" but the Second Circuit in Azurite did not draw a bright line as Perseus-Soros seems to argue; Electronic

Specialty Co. v. Int'l Controls Corp., 409 F.2d 937, 948 (2d Cir. 1969) (appeal from summary judgment on a full record); S.E.C. v. Amster & Co., 762 F. Supp. 604, 614 (S.D.N.Y. 1991) (summary judgment on a full record); Susquehanna Corp. v. Pan Am. Sulphur Co., 423 F.2d 1075, 1085-86 (5th Cir. 1970) (unlike here, the 13D filer made extensive disclosures of its activities from which an investor could determine filers intention to influence control even though no express statement thereof); Todd Shipyards Corp v. Madison Fund, Inc., 547 F. Supp. 1383, 1388-89 (S.D.N.Y. 1982) (bench trial on full record); Transcon Lines v. A.G. Becker Inc., 470 F. Supp. 356, 376 (S.D.N.Y. 1979) (bench trial and defendant had made a partial disclosure of plans); Raybestos-Manhattan, Inc. v. Hi-Shear Indus., Inc., 503 F. Supp. 1122, 1130 (E.D.N.Y. 1980) (preliminary injunction hearing and involved partial disclosure of voting but no disclosure of voting decision); and Pantry Pride, Inc. v. Rooney, 598 F. Supp. 891, 901 (S.D.N.Y. 1984) (party disclosed possibilities of control and party complained that 13D filer failed to disclose degree of certainty of intent to influence control.)

**C.**    **According To The Well Pleaded Allegations Of The Complaint, The Bioenvision's Defendants' Had A Duty To Disclose The Fact That It Has Solicited Bid Per Acquisition Of The Company, Had Received A Bid And Was In Negotiations For A Merger**

The Company and the Company Defendants had disclosures duties based on their issuance[7] of statements that were materially false and misleading in light of Bioenvision's solicitation of an acquisition bid from Genzyme, Bioenvision's receipt of an offer from Genzyme and the negotiation process throughout the Class Period at the highest levels of Bioenvision. The Company Defendants had a duty to speak the whole truth (Glazer v. Formica, 964 F.2d 149, 157

---

[7]    Defendant Scibetta and Wood made false and misleading press releases on May 8, 2007 (Ciccia Decl. Ex. G) and April 2, 2007 (Ciccia Decl. Ex. E and signed a 1Q-Q on May 8, 2007 and provide a certification thereof on behalf of the Company and therefore had a duty to speak truthfully and accurately. See Glazer, 964 F.2d at 157; Kamerman, 123 F.R.D. at 72-73 ("our analysis of the cases [Section 10b and Rule 10b-5] shows that these provisions impose a duty on defendants "to connect . . . prior statements when they became aware of subsequent events which rendered those events misleading").

(2d Cir. 1992) ("One situation in which there is a duty to disclose is . . . when a corporation does make a disclosure – whether it be voluntary or required – there is a duty to make it complete and accurate") and had a duty to update pre-class period statements which were now materially false and misleading. In re Time Warner, 9 F. 3d at 268.

The Company Defendants' repeated statements about Bioenvision's business and plans and "Recent Developments" at the Company gave rise to a duty to disclose all material facts on those subjects. In re Time Warner Inc. Sec. Litig., the Second Circuit considered whether disclosure of one business plan required disclosure of other alternatives considered by Time Warner. See 9 F.3d at 268. The Second Circuit held that having "publicly hyped strategic alliances, Time Warner may have come under a duty to describe facts that would place the statements concerning strategic alliances in a materially different light." 9 F.3d at 268. The Second Circuit continued:

> [w]e hold that when a corporation is pursuing a specific business goal and announces that goal as well as an intended approach for reaching it, it may come under an obligation to disclose other approaches are under active and serious consideration. Whether consideration of the alternate approach constitutes material information, and whether non disclosure of the alternate approach renders the original disclosure misleading, remain questions for the trier of fact. . . .

Time Warner, 9 F. 3d at 269. Similarly, the 7th Circuit in Caremark, Inc. v. Coram Healthcare Corp., 113 F.3d 645, 650 n. 7 (7th Cir. 1995), reversed a dismissal of a complaint which alleged that defendants falsely represented that its business strategy was to focus on "core businesses" while at the same time it was negotiating to acquire a "non-core" business.

The cases cited in support by Bioenvision do not provide a blanket immunity from 10b-5 liability for a failure to disclose merger negotiations. See, e.g., Basic, Inc. v. Levinson, 485 U.S. 224, 239 n.17 (1988) (rejected bright line approach urged by defendants here); Glazer v. Formica

Corp., 964 F.2d at 156-57 (weighing facts of situation of non-disclosure); S.E.C. v. Texas Gulf

Sulphur Co., 401 F.2d 848 (2d Cir. 1968); Roeder v. Alpha Indus., Inc., 814 F.2d 22, 27 (1st Cir.

1987); In re MCI WorldCom, Inc. Sec. Litig., 93 F. Supp. 2d 276, 280 (E.D.N.Y. 2000) (motion

to dismiss denied); Staffin v. Greenberg, 672 F.2d 1196, 1206 (3d Cir. 1982) (pre-Basic applying

bright line test); Reiss v. Pan American World Airways, Inc., 711 F.2d 11, 14 (2d Cir. 1983)

(pre-Basic and holding that failure to disclose its history of negotiations not misleading where

offer was disclosed); In re Columbia Sec. Litig., 747 F. Supp. 237, 243 (S.D.N.Y. 1990)(motion

to dismiss denied, court rejected merger – must be more probable than not disclosure standard).

     Defendants further argue that there was nothing material to disclose before the agreement

was signed.  Both defendants deny that any of the discussions, negotiations and activities

surrounding the merger was material until the merger agreement was signed on May 29, 2007.

See Bioenvision Mem. at 9; Perseus-Soros Mem. at 11.  The Third Circuit's holding in

Semerenko disposes of that argument as well:  "If it may be reasonable for an investor to find

information concerning a tentative tender offer or a merger important when making an

investment decision, we see no reason why the conditional nature of those transactions should

necessarily prevent the investor from reasonably relying on that information as well."

Semerenko v. Cendant Corp., 223 F.3d 165, 180 (3d Cir. 2000), cert. denied, 531 U.S. 1149

(2001) ("It is well established that information concerning a tender offer or a proposed merger

may be material to persons who trade in the securities of the target company, despite the highly

contingent nature of both types of transactions"); S.E.C. v. Gorsek, 222 F. Supp. 2d 1099, 1109

(C.D. Ill. 2001).  S.E.C. v. Geon Indus., Inc., 531 F.2d 39, 47 (2d Cir. 1976) ("since a merger

which it is brought out is the most important event that can occur in a small corporation's life, to

wit, its death, we think that inside information, as regards a merger of this sort, can become

material at an earlier stage"). Similarly, in <u>McCormick v. Fund Am. Cos.</u>, 26 F.3d 869, 876 (9th Cir. 1994) the court found that at the very least there was a question of materiality because the principals had begun to negotiate and investment banker had been authorized to discuss the sale even where there had been no board resolutions relating to the sale of the company. <u>Basic</u> expressly states that discussions between "principals" are well recognized indica of materiality of merger discussions. <u>See Basic, Inc. v. Levinson</u>, 485 U.S. at 231-32; <u>see also</u> <u>Buxbaum v. Deutsche Bank, A.G.</u>, No. 98-CV-8460, 2000 Westlaw 33912712, at * (S.D.N.Y. Mar. 7, 2000). ("Given the magnitude of a merger in which a corporation bought out; information can become material at an earlier stage than would be the case for lesser transactions. When evaluating whether particular merger discussions are material, a Court must "look to indicia of interest in the transaction at the highest corporate levels"), <u>citing Basic, Inc.</u>, 485 U.S. at 239.

Whether a statement is material is "a mixed question of law and fact" and when deciding a motion to dismiss this Circuit has unequivocally held that "a complaint may not properly be dismissed ... on the ground that the alleged misstatements or omissions are not material unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." <u>Ganino v. Citizens Utils. Co.</u>, 228 F.3d 154, 161-62 (2d Cir. 2000), <u>citing</u> <u>TSC Indus., Inc. v. Northway, Inc.</u>, 426 U.S. 438, 450 (1976) and quoting <u>Goldman v. Belden</u>, 754 F.2d 1059, 1067 (2d Cir. 1985); <u>see also</u> <u>Gavish v. Revlon, Inc.</u>, No. 00 Civ. 7291, 2004 U.S. Dist. LEXIS 19771, at *61 (S.D.N.Y. Sept. 29, 2004); <u>In re Globalstar Sec. Litig.</u>, No. 01 Civ. 1748, 2003 U.S. Dist. LEXIS 22496, at *22 (S.D.N.Y. Dec. 15, 2003). In the merger context, the Supreme Court has ruled that materiality is a "highly fact dependent analysis." <u>Basic, Inc. v. Levinson</u>, 485 U.S. at 231-32.

Here, the materiality of the information is beyond dispute given the dramatic reaction in price and the trading volume of the Bioenvision stock when the merger was announced. "A dramatic change in the value of a company's stock following a company announcement regarding the prospects of a merger supports the materiality of the announcement." Manavazian v. ATEC Group, Inc., 160 F. Supp. 2d 468, 484 (E.D.N.Y. 2001); see also Blanchard v. Edgemark Fin. Corp., No. 94 C 1890, 1999 U.S. Dist. LEXIS 1096, at *34-35 (N.D. Ill. Feb. 3. 1999) (rejecting defendants' argument that "speculative" merger discussion were immaterial where "it is clear that the merger had a dramatic impact on the value of the stock ...").

Bioenvision also argues that none of their earlier statements about their business could possibly give rise to any duty to disclose merger discussions because Bioenvision never said it would not be acquired. Bioenvision Mem. at 12-14. On this point Bioenvision relies solely upon Schlanger v. Four-Phase Sys's, Inc., 582 F. Supp. 128, 133 (S.D.N.Y. 1984); and Fisher v. SpecTran Corp., No. 99-12359, 2001 WL 34644311, at *3-4 (D. Mass. May 31, 2001). Id. at 13. Conspicuously absent from the analysis are the Second Circuit's seminal analysis of the issue in Time Warner. Schlanger predates Time Warner and Fisher is a district court decision from Massachusetts.

In any event, there is sufficient precedent that holds that disclosure on one subject triggers a disclosure duty for more complete information even if not directly related to the subject of the original disclosure. In Castellano v. Young & Rubicam, Inc., 257 F.3d 171, 180-82 (2d Cir. 2001), the primary event was an employee shareholder's decision to resign and accept certain benefits; the omission found to be actionable involved failed merger negotiations and an infusion of outside capital through corporate restructuring. The Castellano court weighed the "magnitude and probability" of failed merger negotiations based on "the particular

circumstances" of the case and held that the failed merger negotiations were material because a jury could find that knowledge of these negotiations have a substantial likelihood of "significantly altering the total mix of information available." Id. at 182. In Weiner v. Quaker Oats Co., 129 F.3d 310, 315-18 (3d Cir. 1997), later transferred, No. 98 C 3123, 2000 U.S. Dist. LEXIS 16765, at *1 (N.D. Ill. Nov. 9, 2000), the primary event was a merger; the omission found to be actionable involved the indirect but related question of the company's ratio of total debt-to-total capitalization. Similarly, in In re MCI WorldCom, Inc. Sec. Litig., 93 F. Supp. 2d 276, 278-83 (E.D.N.Y. 2000), the primary event was a merger; the omission found to be actionable involved the indirect but related question of the registration of an internet domain name. As emphasized by the United States Court of Appeals for the Seventh Circuit, "[u]nder Rule 10b-5, . . . the lack of an independent duty [to reveal merger negotiations] does not excuse a material lie. A subject of a tender offer or merger bid has no duty to issue a press release, but if it chooses to speak it must tell the truth about material issues." Ackerman v. Schwartz, 947 F.2d 841, 848 (7th Cir. 1991).

### POINT III

### THE AMENDED COMPLAINT PROVIDES SUFFICIENT FACTUAL ALLEGATIONS OF THE MATERIALLY FALSE AND MISLEADING STATEMENTS AND OMISSIONS AND STATES THE REASONS WHY SUCH STATEMENTS AND OMISSIONS ARE MATERIALLY MISLEADING

Defendants have attacked the Complaint for its purported failure to specifically identify the misleading statements and the manner in which such statements were false and misleading. As demonstrated below the allegations of the Complaint meet all applicable standards.[8]

---

[8]    Allegations of securities fraud in violation of § 10b and Rule 10b-5 are subject to the pleading requirements of Fed.R.Civ.P. 9(b) and the PSLRA. In re Adelphia Commc'n Corp. Sec. & Deriv. Litig., 398 F. Supp. 2d 244, 249 (S.D.N.Y. 2005). Rule 9(b) requires that a complaint alleging fraud: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent" (i.e. who, what, where, when and why). (Id.), and the reason why the

With respect to the specificity of the allegations of misrepresentation, Perseus-Soros argues that plaintiffs have failed to provide evidentiary detail of the alleged secret agreement (Perseus-Soros Mem. at 6-10) despite the fact that the Complaint alleges that the agreement was described by Bioenvision's former CFO in a verified Complaint filed in New York State Supreme Court.  Complaint at ¶¶ 28, 29, 34, 44-47.

Plaintiffs identify, with great detail, the precise statements made by defendants that are false and/or misleading throughout the complaint.  See Complaint ¶¶ 41-49, 52, 54, 55, 58, 59.

Plaintiff explains how each statement was materially false and misleading.  Complaint ¶¶ 32, 38, 39, 42, 50, 53, 56, 60.

Plaintiffs' detailed explanation of the manner in which each separate statement is materially false and misleading provides sufficient detail for the defendants to understand which statement among those quoted in the complaint were false and misleading.  See  Complaint ¶¶ 32, 39, 50, 53, 56, 58, 60.  That is what distinguishes this Complaint from those in Endovasc Ltd. v. J.P. Turner, No. 02-7313, 2004 WL 634171 (S.D.N.Y. June 25, 1998) and In re Alcatel Sec. Litig., 382 F. Supp. 2d 512 (S.D.N.Y. 2005) cited by the Bioenvision defendants (Bioenvision Mem. at 21-22), the only two cases cited for support.  Moreover, the Supreme Court has instructed district courts to view complaints "holistically," as a whole.  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499, 2511 (2007).

---

statement or omission is misleading. 15 U.S.C. § 78 u-4(b)(1)(B). However, to satisfy the pleading requirements of Rule 9(b) and the PSLRA, it is not necessary that Plaintiffs "plead with particularity every single fact upon which their beliefs concerning false or misleading statements are based. Rather, "[p]laintiffs need only plead with particularity sufficient facts to support those beliefs." Novak v. Kasaks, 216 F.3d 300, 313-14 (2d Cir. 2000), citing, 15 U.S.C. § 78u-4(b)(1). "Even with the heightened pleading standard under Rule 9(b) and the [PSLRA] {the Second Circuit] does not require the pleading of detailed evidentiary matter in securities litigation." In re Scholastic Corp. Sec. Litig., 252 F.3d 63, 72 (2d Cir. 2001); Liberty Ridge LLC v. RealTech Sys. Corp., 173 F. Supp. 2d 129, 137 (S.D.N.Y. 2001) ("While a complaint must give adequate notice of the charges against a defendant, "it need not marshal all the evidence.") (internal citation omitted).

There need not be an exact match of misleading statements and reasons for each statement. A statement is misleading if a reasonable investor, in the exercise of due care, would have received a <u>false impression</u> from the statement. <u>See</u> S.E.C. v. Tex. Gulf Sulphur Co., 401 F.2d 833, 862 (2d Cir. 1968), <u>aff'd</u>, <u>in relevant part</u>, and <u>rev'd</u>, <u>in part</u>, <u>on other grounds</u>, 446 F.2d 1301 (2d Cir. 1971) and <u>cert. denied</u>, 404 U.S. 1005 (1971).

## POINT IV

### THE AMENDED COMPLAINT'S FACTUAL ALLEGATIONS RAISE A STRONG INFERENCE OF SCIENTER

### A.    The Scienter Standard In PSLRA Actions After Tellabs

In the recent <u>Tellabs</u> case, the Supreme Court provided further guidance on the contours of evaluating the scienter pleading requirement at the pleading stage. <u>See</u> Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499, 2509 (2007). <u>Tellabs</u> requires courts to take the complaint's allegations as true, to view them "holistically", and to deny a motion to dismiss where the inference of fraud is <u>at least as likely</u> as any opposing inference of innocent behavior that may be drawn from the facts alleged. <u>Id.</u> at 2511. The Supreme Court held that the proper inquiry for determining whether scienter is adequately pled is "whether <u>all</u> of the facts alleged, taken collectively, give rise to a strong inference of scienter." <u>Id.</u> at 2502 (emphasis in original). The Supreme Court further held that, as part of the scienter inquiry, courts must engage in an inherently comparative inquiry to determine whether the plaintiff has alleged facts that give rise to the requisite strong inference of scienter. <u>Id.</u> In this regard, the Supreme Court stated that "the inference that the defendant acted with scienter need not be irrefutable," nor even "the most plausible of competing inferences." <u>Id.</u> at 2510.

Accordingly, where a plaintiff demonstrates that an inference of scienter is at least as compelling as any "nonculpable explanations for the defendant's conduct," "a tie now goes to

the plaintiffs." <u>Sloman v. Presstek, Inc.</u>, No. 06cv3777, 2007 U.S. Dist. LEXIS 69475, at *24-25

(D.N.H. Sept. 18, 2007); <u>see also</u> <u>Communs. Workers of Am. Plan for Employees Pensions &</u>

<u>Death Benefits v. CSK Auto Corp.</u>, 525 F. Supp. 2d 1116, (D. Ariz. 2007) ("The Supreme Court

has now made clear, however, that a tie goes to the Plaintiff").   In the Second Circuit (post

<u>Tellabs</u>), a plaintiff may satisfy this standard by alleging facts that:   (1) "constitute strong

circumstantial evidence of conscious misbehavior or recklessness" or (2) "show the defendants

had both motive and opportunity to commit the fraud."   <u>In re Top Tankers, Inc. Sec. Litig.</u>, No.

06 Civ. 13761 (CM), 2007 WL 4563930, at *6 (S.D.N.Y. Dec. 18. 2007), <u>citing</u> <u>Shields v.</u>

<u>Cititrust Bancorp., Inc.</u>, 25 F.3d 1124, 1128 (2d Cir. 1994).   Accordingly, post-<u>Tellabs</u>, plaintiffs

sufficiently plead the recklessness of defendants when they specifically allege "that a defendant

knew facts or had access to information suggesting [the company's] public statements were not

accurate."   <u>In re Converium Holding AG Sec. Litig.</u>, No. 04 Civ. 7897, 2007 WL 2684069, at *2

(S.D.N.Y. Sept. 14, 2007), quoting, <u>Novak v. Kassaks</u>, 216 F.3d 300, 308 (2d Cir. 2000)

(internal citations omitted).

     The complaint alleges that defendants Scibetta and Woods each prepared, etc. registration

statement.   Accordingly, these defendants are liable for the false and misleading statements in

these documents.   A director or corporate officer who signs an SEC filing containing false or

misleading statements is deemed to have made those statements, and thus may be held liable as a

primary violator under §10(B).   <u>In re Atlas Air Worldwide, Inc. Sec. Litig.</u>, 324 F. Supp. 2d 474,

491 (S.D.N.Y. 2004).

### B.     **Perseus-Soros' Scienter Is Adequately Alleged**

     Perseus-Soros argues that the Complaint fails to adequately alleged scienter because

there are insufficient allegations of financial motive.   Perseus-Soros Mem. at 16-17.   Perseus-

Soros also argues that no inference of scienter can be drawn from Perseus-Soros conscious knowledge of (1) the merger negotiation; (2) their involvement therein; (3) the disclosure obligation under Section 13; and (4) their obligation under Section 13 to amend their Schedule 13D when they had a "plan" or "purpose" to "influence control" because there was no "clear well-established discretion duty." Perseus-Soros Mem. at 15-16. Notably, Perseus-Soros does not contest the sufficiency of the allegations of Perseus-Soros' knowledge about the proposed merger during the Class Period. In the complaint, plaintiffs have demonstrated a factual basis of scienter against defendant Perseus-Soros by describing with factual specificity the knowledge of its managers who were on the Bioenvision board.

Perseus-Soros' scienter is also adequately alleged where as here, the Complaint details numerous occasion when Perseus-Soros' reporting obligations required Perseus-Soros to update its certification but failed to do so. Complaint ¶ 43, 97-101.[9] In Martin v. Durus Capital Management, LLC, et al., Case No. 04 C 555, 2005 U.S. Dist. LEXIS 23324 (N. D. Ill., March 31, 2005), Judge Gottschall found that plaintiff had adequately alleged defendants scienter in the

---

[9]    Plaintiff has adequately demonstrated that Perseus-Soros had a financial motive to keep the secret pact with Genzyme secret. Prior to the merger, defendant Perseus-Soros was the "single largest common stockholder of Bioenvision (owning approximately 20% of Bioenvision equity as of January 2007) and the sole holder of all of the preferred stock issued by Bioenvision. Complaint ¶ 9. Plaintiff specifically alleged in the complaint that Defendant Perseus-Soros and its representations on Bioenvision's Board had a unique financial motive to conceal and misrepresent information regarding a merger between Bioenvision and Genzyme in that Genzyme was the only prospective buyer for Bioenvision because of its marketing co-venture with Bioenvision. Complaint ¶ 81. In order to facilitate a deal between the two companies that would allow Perseus-Soros to profitably monetize its large illiquid stake in Bioenvision, Perseus-Soros and its representations on Bioenvision's Board participated in the violations enumerated herein. Id. Had word of the merger negotiation leaked out prior to finalization of a deal with Genzyme, the price of Bioenvision stock would have surged and possibly would have broken down the negotiations with Genzyme thus frustrating the only feasible alternative for Perseus-Soros to monetize its large illiquid stake in Bioenvision. Complaint ¶ 81. Plaintiff alleged defendants Perseus-Soros had a unique financial motive to ensure completion of the merger and because Genzyme was the only perspective buyer of Bioenvision. Complaint ¶ 81. Plaintiff alleged that defendant Perseus-Soros was motivated to facilitate deal between the two companies that would allow Perseus-Soros to profitably monetize its large illiquid stake in Bioenvision. Complaint ¶ 81. The plaintiffs alleged that the Individual Defendants were representatives of defendant Perseus-Soros on the Bioenvision Board and were thus motivated to participate in the violations therein complaint. Id.

Section 13 violation of Rule 10b-5 context where the complaint: refused to dismiss plaintiff's

10b-5 claims based upon 13(d) violations and reasoned:

> .....

> Repeated disregard for reporting obligations coupled with misrepresentations in an agreement that defendants knew or should have known would eventually become pubic record presented an obviously danger that the market would be misled. . . . [Plaintiff's] complaint is sufficiently detailed to put defendants on notice of his fraud claim against them even under the heightened pleading standards of the PSLRA.

Id. at page 8-9.

Both the Bioenvision Defendants and Perseus-Soros argue that there can be no inference

of conscious behavior where, as here, the legal duty to disclose was not sufficiently "clear and

well established. " Bioenvision Mem. at 19-20;Perseus-Soros Mem. at 15-16. Perseus-Soros

cites Kalnit v. Eichler, 264 F.3d 131, 138 (2d Cir. 2001); In re Carter-Wallace, Inc., Sec. Litig.,

220 F. 3d 36, 39 (2d Cir. 2000); In re Morgan Stanley & Van Kampen Mut. Fund Sec. Litig., No.

03 Civ. 8208, (RO), 2006 WL 1008138, at *11 (S.D.N.Y. Apr. 18, 2006); In re Canandaigua

Sec. Litig., 944 F. Supp. 1202, 1213 (S.D.N.Y. 1996); Geiger v. Solomon-Page Group, Ltd., 933

F. Supp. 1180, 1191 (S.D.N.Y. 1996); and Castillo v Dean Witter Discover & Co., No. 97 Civ.

1272 (RPP), 1998 WL 342050, at *11 (S.D.N.Y. June 25, 1998). However in all those cases, the

court was able to hold as a matter of law based on the allegations of the respective complaints

that here was no legal duty to disclose and/or no materiality to the withheld statements or

misrepresentations and than after that ruling held that there could be no scienter where there was

no duty or materiality as a matter of law. In Morgan Stanley, the court had previously found

there was no SEC regulation requiring disclosure and no materiality. Id. at *11. In re

Canandaigua, the court ruled (on summary judgment) that there was no evidence of defendants'

knowledge or even sufficient allegations of a duty thereof. Id. at 1213. In Castillo, the Court found no established duty of disclosure. Id. at *11. In Geiger the court had already held that there was no SEC regulation imposing a duty of disclosure and therefore there cannot be conscious misbehavior if there was no duty. 933 F. supp. at 1191. Here, unlike in the cases cited by defendants, there is no lack of SEC regulation requiring disclosures.

As for Perseus-Soros' motive argument, Perseus-Soros also argues that there is not consent motive theory because it would be illogical of Perseus-Soros to do anything that would result in the suppression of Bioenvision stock prices as alleged by plaintiffs because of Perseus-Soros ownership stake. Perseus-Soros Mem. at 16-17. However the complaint alleges that the rationale for keeping the merger discussions secret was so that Genzyme could complete the acquisition and thereby provide Perseus-Soros with the liquidity it could not hope to obtain anywhere else at a premium given its large stake. Defendants cite the following cases in support of the argument that economic irrationality is not a scienter-motive: In re Polaroid Corp. Sec. Litig., 465 F. Supp. 2d 232, 246 (S.D.N.Y. 2006) (Stein, J.); Glickman v. Alexander & Alexander Servs., Inc., No. 93 Civ. 7594 (LAP), 1996 U.S. Dist. LEXIS 2325 (S.D.N.Y. Feb. 29, 1996); Duncan v. Pencer, No. 94 Civ. 0321 (LAP), 1996 WL 19043, at *10 (S.D.N.Y. Jan. 18, 1996). But in each of those cases, there were no allegations of any rational motive. Here, while defendants may quarrel with the motive, one cannot deny that the desire to sell an illiquid block of stock could support a motive theory.

## C.    The Bioenvision Defendants Scienter Is Adequately Alleged

In this case, plaintiffs have alleged that defendants knew or should have known of their obligation to speak truthfully about the business of Bioenvision, as required by the federal securities laws. See Complaint ¶¶ 88-96. Plaintiffs plead that defendants knew or should have

known they were misrepresenting material facts related to Bioenvision because defendants were intimately involved in events which contradicted or undermined their public statements (Complaint ¶¶ 29, 30, 34(a),(b),(c), 41, 43, 48, 52, 54, 58, 63) and had a financial motive to ensure that the merger was successful. Complaint ¶ 91. Thus, conscious misbehavior and recklessness were inadequately pled.

"[S]ecurities fraud claims typically have sufficed to state a claim based on recklessness when they have specifically alleged Defendants' knowledge of facts or access to information contradicting their public statements. Under such circumstances, defendants knew or, more importantly should have known that they were misrepresenting material facts related to the corporation." Novak v. Kasaks, 216 F.3d 300, 208 (2d Cir. 2000). Since the merger negotiations involved the continued corporate existence of the Company, one can ascribe knowledge of those negotiations for scienter purposes to high level officers and directors named as defendants herein. See In re Atlas Air Worldwide Holdings, Inc. Sec. Litig., 324 F. Supp 2d 474, 490 (S.D.N.Y. 2004); In re JP Morgan Chase Sec. Litig., 363 F. Supp 2d 595, 628 (S.D.N.Y. 2005) (both holding that knowledge of events "at the core of [company's] business " can be ascribed to high level officers for scienter purposes.)

An additional basis for scienter is Wood and Scibetta's signing of false statements such as Bioenvision's 10-Q. "When a corporate officer signs a document on behalf of the corporation, that signature will be rendered meaningless unless the office believes that the statements in the documents are true." Howard v. Everex Sys., 228 F. 3d 1057, 1061 (9th Cir. 2000). When defendants Wood and Scibetta signed the SOX certificates they attested that (i) the publicly released financial information did not contain any untrue statements or omissions, (ii) the financial reports fairly represent in all material respects the financial condition of the

company, and (iii) the Company's internal controls were adequate to discover any type of fraud. ¶¶ 78-79. However, here plaintiff alleges that the SOX certificates lend further support to the other well-pleaded scienter allegations. In re Lattice Semiconductor Corp. Sec. Litig., No. CV04-1255-AA, 2006 U.S. LEXIS 262, at *50-51 (D.Or. Jan. 3, 2006) (holding that a SOX certificate supported an inference of scienter, when combined with plaintiff's other allegations of regular finance meetings, extensive access to financial databases, period and special reports, and allegations that the individual defendants were micromanagers). In re OCA, Inc. Sec. and Deriv. Litig., No. 05-2175, 2006 WL 3747560, at *17 (E.D. La. Dec. 14, 2006) (finding that Sarbanes-Oxley certifications executed by top officers of Company, when combined with other allegations of scienter, support an inference of scienter). See also In re Am. Italian Pasta Co. Sec. Litig., No. 05-0725-CV-W-ODS, 2006 WL 1715168, at *5 (W.D. Mo. June 19, 2006).

### D.    Defendants Have Not Provided Any Non-Culpable Explanation That Is More Plausible Than Plaintiff's Plausible Theory And Factual Allegations Of Scienter

Defendants must put forth a plausible non-culpable explanation for their conduct to provide this Court with a basis to engage in the comparative inference inquiry outlined in Tellabs. Transit Rail v. Marsala, No. 05-cv-0564, 2007 U.S. Dist. LEXIS 52822, at *35 (W.D.N.Y. July 20, 2007). Defendants have failed to offer any non-culpable explanation for their conduct that can withstand scrutiny. See infra at 24-26; Converium, 2007 U.S. Dist. LEXIS 67660, at *7-9 (denying defendants' motion to dismiss and holding that a defendant's purported good faith reliance on an accountant is not a plausible non-culpable explanation for defendant's conduct that creates a "compelling" opposing inference that warrants dismissal of plaintiff's complaint); see also Transit Rail, 2007 U.S. Dist. LEXIS 52822, at *34-35 (where a defendant

makes no attempt to provide any non-culpable explanation for their conduct, the court must find

that plaintiffs have alleged a "cogent and compelling" inference of scienter).

## POINT V

### THE ALLEGATIONS OF CONTROL PERSON
### LIABILITY ADEQUATELY PLEAD CULPABLE PARTICIPATION

Defendants argue that Plaintiff's Section 20(a) claims fail for two reasons: 1) a failure to

adequately allege a primary violation of Section 10(b) by any of Defendants and 2) a failure to

sufficiently allege "culpable participation" of the control persons. Perseus-Soros Mem. at 18-19;

Bioenvision Def. Mem at 23. Since plaintiffs have sufficiently pled a primary violation of

Section 10(b), see infra, their first argument fails.

Defendants cite to several cases in support of their argument that plaintiffs have failed to

sufficiently allege culpable participation.[10] In all of the cases, the balance was tipped for, an

agent, control person liability based on allegations of specific conduct by the controlling

defendant. Here, of course, there is no dearth of allegations of active conduct. See Complaint ¶

29, 30, 34(a),(b),(c), 41, 43, 48, 52, 54, 58, 63. Under Second Circuit precedent nothing more is

required.

To establish a prima facie case under Section 20(a) a plaintiff must plead: (a) a primary

violation by the controlled person, (b) control of the primary violator by the defendant, and (c)

that the defendant was, in some meaningful sense, a "culpable participant" in the controlled

---

[10]    ATSI Communications, Inc. v. Shaar Fund, Ltd., 493 F.3d at 108 (dismissed the 20(a) claim without analysis of culpable participation because the plaintiffs failed to allege a primary violation); Suez Equity Investors, L.P. v. Toronto Dominion Bank, 250 F3d 87, 101 (2d Cir. 2001) (court accepted "somewhat broad" allegations as sufficient to plead control person liability under Section 20(a)); Boguslavsky v. Kaplan, 159 F.3d at 715 (2d Cir. 1998) (held that "a determination of § 20(a) liability requires an individualized determination of a defendant's control of the primary violator as well as a defendants' particular culpability" but failed to apply this standard and remanded the claim for further determination by the district court) and In re Deutsche Telekom AG Secs. Litig., No. 00-9475, 2002 WL 244597, at * 6 (S.D.N.Y. Feb. 20, 2002) (Stein, J.); Rombach v. Chang, 355 F.3d 164, 177-78 (2d Cir. 2004); First Jersey Sec. Litig., 101 F.3d at 1472; Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1132 (2d Cir. 1994); In re Global Crossing, Ltd. Sec. Litig., No. 02 Civ. 910 (GEL), 2005 WL 2990646, at *9 (S.D.N.Y. Nov. 7, 2005).

person's fraud.  <u>ATSI Communications, Inc. v. Shaar Fund, Ltd.</u>, 493 F.3d 87 (2d Cir. 2007),

<u>citing</u>, <u>First Jersey</u>, 101 F.3d at 1472.

Control can be established by showing that a defendant possessed "the power to direct or

cause the direction of the management and policies of a [controlled] person, whether through the

ownership of voting securities, by contract, or otherwise." <u>S.E.C. v. First Jersey Securities, Inc.</u>,

101 F.3d 1450, 1473 (2d Cir. 1996), <u>cert. denied</u>, 522 U.S. 812 (1997) (quoting 17 C.F.R. §

240.12b-2).  Courts have long recognized that control may be inferred from "business

relationships, interlocking directors, family relationships, and a myriad of other factors."

<u>Drobbin v. Nicolet Instrument Corp.</u>, 631 F. Supp. 860, 884-85 (S.D.N.Y. 1986).  In a analyzing

the issue of control, the Court should consider all allegations in their totality.  <u>See</u> <u>In re Par</u>

<u>Pharmaceutical, Inc. Sec. Litig.</u>, 733 F. Supp. 668, 680 (S.D.N.Y. 1990) ("The complaint, <u>taken</u>

<u>as a whole</u>, sufficiently alleges control person liability against [directors and officers].")

Plaintiffs have adequately alleged culpable participation of all defendants through the

allegations of control in the complaint.  Plaintiffs have alleged that defendants Cooper, Elms,

Kauffman and Schiff controlled defendant Bioenvision as follows:  Cooper (recommended by

and had extensive business dealings with Perseus-Soros) (Complaint ¶11); Elms (managing

director of Perseus-Soros Management, an affiliate of Perseus-Soros) (Complaint ¶ 12);

Kauffman (president and chief executive officer of Predix Pharmaceuticals in which defendant

Perseus-Soros has a significant investment) (Complaint ¶13); and Schiff (managing director of

Perseus-Soros Management) (Complaint ¶14).  Further, defendants Cooper, Elms, Kauffman and

Schiff were "controlling persons" because of their positions on the Bioenvision Board.  <u>In re</u>

<u>Veeco Instruments, Inc. Sec. Litig.</u>, 235 F.R.D. 220, 237 (S.D.N.Y. 2006) ("by virtue of their

high-level positions with the Company, participation in and/or awareness of the Company's

operations and/or intimate knowledge of the Company's actual performance, defendants ... had

the power to influence and control and did influence and control, directly or indirectly, the

decision-making of the Company"). Plaintiff alleged that defendants Wood and Scibetta

controlled Bioenvision because defendant Wood was the Chairman of Bioenvision's Board and

Chief Executive Officer of the Company and Scibetta was the Chief Financial Officer and

because each of these defendants signed multiple SEC filings and issued press releases on behalf

of Bioenvision. Complaint ¶¶ 10, 16; see, e.g., In re Van Der Moolen, 405 F. Supp. 2d at 413

(CEO, CFO and other individuals properly named as defendants in Section 20(a) claim based in

allegations that they exercised direct day-to-day management and were responsible for

statements to public); In re Veeco Instruments, Inc. Sec. Litig., 235 F.R.D. at 237 (finding

culpability based on allegations of high-level positions and control); Schnall v. Annuity and Life

Re (Holdings) Ltd., No. 3:02 CV 2133(GLG), 2004 WL 231439, *9 (D. Conn. Feb. 4, 2004)

(allegations that the defendant director signed multiple disclosures filed with the SEC that are

alleged to have contained actionable misrepresentations was sufficient to establish culpability for

purposes of Section 20(a)). Defendants Wood and Scibetta also had a financial motive to

conceal the merger discussions from the public because if the merger was successful, Wood and

Scibetta were eligible for change of control bonuses. Complaint ¶ 84. Accordingly, plaintiffs

have adequately pled culpable participation of defendants Sooper, Elms, Kauffman, Schiff,

Wood and Scibetta.

Plaintiffs alleged control against defendant Perseus-Soros because Perseus-Soros was an

insider and 20% owner of Bioenvision and thus a controlling person. Complaint ¶¶ 9, 39.

Bioenvision's former General Counsel and Chief Financial Officer, David P. Luci, swore in a

verified complaint that defendant Perseus-Soros controlled the Company and its Board of

Directors.  Complaint ¶ 9.  Further, defendants Perseus-Soros had a unique financial motive to conceal and misrepresent information regarding a merger between Bioenvision and Genzyme because in order to facilitate a deal between the two companies that would allow Perseus-Soros (Bioenvision's largest shareholder (20%)) to liquidate its interest in Bioenvision since Genzyme was the only potential buyer.  Complaint ¶¶ 81, 82.  Accordingly, these allegations establish defendant Perseus-Soros' control of Bioenvision.

While defendants do not expressly argue that scienter is an element of control person liability (as neither ATSI, Equity Investors, or Boguslavsky identified scienter as an element of control person liability), defendants cite to In re Deutsche Telekom AG Secs. Litig., No. 00-9475, 2002 WL 244597, at *6 (S.D.N.Y. Feb. 20, 2002) (Stein, J.) wherein this court did not specifically impart a scienter element into a claim under § 20(a) but held that the pleading burden will be satisfied where "facts are pled with sufficient particularity that a strong inference is raised that the Section 20(a) control person knew or should have known that the controlled person was engaging in fraudulent conduct."  However, most courts in this circuit have refused to import a scienter requirement into control person liability.  In re Van der Moolen Holding N.V. Sec. Litig., 405 F. Supp. 2d 388, 413 (S.D.N.Y. 2005) ("In order to state a Section 20(a) claim, no such particularized allegations are required"), citing In re WorldCom, Inc. Sec. Litig., 294 F. Supp. 2d 392, 415 (S.D.N.Y. 2003) ("The concept of culpable participation describes that degree of control which is sufficient to render a person liable under Section 20(a).  At the pleading stage, the extent to which the control must be alleged will be governed by Rule 8's pleading standard"); In re Initial Public Offering Sec. Litig., 241 F.Supp.2d at 395 ("Thus, although the meaning of "culpable participation" is unclear, there is strong reason to believe that it *is not* the

Directors.  Complaint ¶ 9.  Further, defendants Perseus-Soros had a unique financial motive to

conceal and misrepresent information regarding a merger between Bioenvision and Genzyme

because in order to facilitate a deal between the two companies that would allow Perseus-Soros

(Bioenvision's largest shareholder (20%)) to liquidate its interest in Bioenvision since Genzyme

was the only potential buyer.  Complaint ¶¶ 81, 82.  Accordingly, these allegations establish

defendant Perseus-Soros' control of Bioenvision.

  While defendants do not expressly argue that scienter is an element of control person

liability (as neither ATSI, Equity Investors, or Boguslavsky identified scienter as an element of

control person liability), defendants cite to In re Deutsche Telekom AG Secs. Litig., No. 00-

9475, 2002 WL 244597, at *6 (S.D.N.Y. Feb. 20, 2002) (Stein, J.) wherein this court did not

specifically impart a scienter element into a claim under § 20(a) but held that the pleading burden

will be satisfied where "facts are pled with sufficient particularity that a strong inference is raised

that the Section 20(a) control person knew or should have known that the controlled person was

engaging in fraudulent conduct."  However, most courts in this circuit have refused to import a

scienter requirement into control person liability.  In re Van der Moolen Holding N.V. Sec.

Litig., 405 F. Supp. 2d 388, 413 (S.D.N.Y. 2005) ("In order to state a Section 20(a) claim, no

such particularized allegations are required"), citing In re WorldCom, Inc. Sec. Litig., 294 F.

Supp. 2d 392, 415 (S.D.N.Y. 2003) ("The concept of culpable participation describes that degree

of control which is sufficient to render a person liable under Section 20(a).  At the pleading

stage, the extent to which the control must be alleged will be governed by Rule 8's pleading

standard"); In re Initial Public Offering Sec. Litig., 241 F.Supp.2d at 395 ("Thus, although the

meaning of "culpable participation" is unclear, there is strong reason to believe that it *is not* the

same as scienter") (emphasis in original); Borden Inc. v. Spoor Behrins Campbell & Young, 735

F. Supp. at 587 (S.D.N.Y. 1990) (holding that scienter need not be pled to state a claim for control person liability).

## CONCLUSION

For all of the foregoing reasons, defendants' motions to dismiss the Amended Supplemental Class Action Complaint should be denied in its entirety.

Date:   March 3, 2008

Respectfully submitted,

SQUITIERI & FEARON, LLP

By:_____

Lee Squitieri (LS-1684)
Maria J. Ciccia (MC-2801)
32 East 57th Street
12th Floor
New York, New York 10022
Tel:  (212) 421-6492

Attorney for Plaintiff