UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BERT VLADIMIR, Individually and On Behalf of All Others Similarly Situated,

Plaintiff,

v.

BIOENVISION INC., CHRISTOPHER B. WOOD, JOSEPH P. COOPER, STEVEN A. ELMS, MICHAEL G. KAUFFMAN, ANDREW SCHIFF, JAMES S. SCIBETTA, and PERSEUS-SOROS BIOPHARMACEUTICAL FUND, LP,

Defendants.

Index No. 07-CIV-6416

Judge Sidney H. Stein

**REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF MOTION TO DISMISS**

Dated: March 24, 2008

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Richard A. Rosen
1285 Avenue of the Americas
New York, NY 10019-6064

*Counsel for Defendant Perseus-Soros Biopharmaceutical Fund, LP*

# TABLE OF CONTENTS

Page

Preliminary Statement ..... 1

Argument ..... 2

I. Perseus-Soros Had No Duty To Amend Its Schedule 13D Filing Earlier Than It Did ..... 2

A. Plaintiffs' Allegation of a "Secret Agreement" Does Not Pass Muster ..... 2

B. The Case Law Cited by Plaintiffs Does Not Support a Duty to Disclose in the Circumstances Present Here ..... 4

C. Perseus-Soros Did Not Engage in Insider Trading, So Its Exercise of Warrants Did Not Create a Post-Hoc Disclosure Duty ..... 6

II. Plaintiffs Have Not Adequately Alleged Scienter ..... 7

III. Plaintiffs' Control Allegations Are Deficient ..... 8

IV. Granting Leave To Amend Would Be Futile ..... 9

Conclusion ..... 9

## TABLE OF AUTHORITIES

Page(s)

CASES

*E.ON AG* v. *Acciona, S.A.*,
No. 06 Civ. 8720 (DLC), 2007 WL 316874 (Feb. 5, 2007) ....................4

*Elfenbein* v. *Gulf & Western Indus., Inc.*,
590 F.2d 445 (2d Cir. 1978) ....................9

*In re Healthco Intern., Inc.*,
203 B.R. 515 (Bkrtcy. D. Mass. 1996) ....................8

*In re IAC/InterActiveCorp Sec. Litig.*,
478 F. Supp. 2d 574 (S.D.N.Y. 2007) ....................8

*Loveman* v. *Lauder*,
484 F. Supp. 2d 259 (S.D.N.Y. 2007) ....................8

*Magma Power Co.* v. *Dow Chemical Co.*,
136 F.3d 316 (2d Cir. 1998) ....................6

*Rondeau* v. *Mosinee Paper Corp.*,
422 U.S. 49 (1975)....................5

*Rosen* v. *Brookhaven Capital Mgt. Co.*,
113 F. Supp. 2d 615 (S.D.N.Y. 2000) ....................5

*Roth* v. *Perseus, L.L.C.*,
No. 05 Civ. 10466(RPP), 2006 WL 2129331 (S.D.N.Y. July 31, 2006) ....................6, 7

*Schaffer ex rel. Lasersight Inc.* v. *CC Investments, LDC*,
280 F. Supp. 2d 128 (S.D.N.Y. 2003) ....................6

*SEC* v. *First City Fin. Corp., Ltd.*,
688 F. Supp. 705 (D.D.C. 1988)....................5

*Weisman* v. *Spector*,
158 F. Supp. 789 (S.D.N.Y. 1958) ....................8

*Wexner* v. *First Manhattan Co.*,
902 F.2d 169 (2d Cir. 1990) ....................7

**OTHER AUTHORITIES**

17 C.F.R. § 210.3-05 (b)(4)(ii) .......... 3

17 C.F.R. § 240.16b-3 (2006) .......... 6, 7

Fed R. Civ. P. 9(b) .......... 1, 3

Fed. R. Civ. P. 12(b)(6) .......... 1

Manual of Publicly Available Telephone Interpretations, § O .......... 4

SEC Release No. 34-52202,
70 Fed.Reg. 46080 .......... 7

Defendant Perseus-Soros Biopharmaceutical Fund, LP ("Perseus-Soros") respectfully submits this reply memorandum of law in further support of its motion to dismiss plaintiffs' complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

**Preliminary Statement**

Plaintiffs contend that, by virtue of an alleged secret January 2007 agreement with Genzyme Corporation ("Genzyme"), Perseus-Soros (1) had a duty to amend its Schedule 13D and (2) acted with scienter. But, our opening brief demonstrated that plaintiffs' allegation of such an "secret agreement" is fatally insufficient. That allegation rests entirely on an anonymous unidentified source mentioned in the wrongful termination complaint of a discharged former Bioenvision, Inc. ("Bioenvision") employee. Plaintiffs' brief entirely fails to address their failure to specify the source of their allegation or any of the terms of the purported agreement (including, most obviously, the *price* proposed for any transaction). The factual allegations do not satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b) and the Private Securities Litigation Reform Act ("PSLRA") applicable to fraud claims like this one. Nor may a disclosure duty be premised on purported insider trading, because Perseus-Soros merely exercised fixed-price warrants acquired from Bioenvision, which necessarily had full knowledge of the potential Genzyme transaction.

Plaintiffs' selection of April 11, 2007 as the starting date of the purported class period is not only wholly inconsistent with the theory that there was already an agreement in January 2007 for Genzyme to acquire Bioenvision, but underscores that plaintiffs fail to articulate any standard for determining *when* a disclosure duty arose. As

a matter of law, no duty arose until Genzyme and Bioenvision actually reached an agreement, and Perseus-Soros entered into an agreement with Genzyme to support the merger.

## Argument

## I.

## PERSEUS-SOROS HAD NO DUTY TO AMEND ITS SCHEDULE 13D FILING EARLIER THAN IT DID

Plaintiffs identify three sources of a duty to disclose applicable to Perseus-Soros that purportedly required it to amend its Schedule 13D filing: the statutory disclosure requirements of § 13(d) of the Exchange Act, the requirement to update prior statements that have become incorrect, and the prohibition on insider trading without disclosing material non-public information. (Mem. Opp. at 13-14.) But the allegations in the complaint do not establish that Perseus-Soros had any duty to amend its Schedule 13D.

### A. Plaintiffs' Allegation of a "Secret Agreement" Does Not Pass Muster

The linchpin of plaintiffs' contention that Perseus-Soros was required to amend its Schedule 13D filing is the allegation that Perseus-Soros entered into a "secret agreement" with Genzyme in January 2007. (Cmplt. ¶ 28.) In our opening brief, we demonstrated that plaintiffs' failure to plead facts supporting that allegation is fatal to their Rule 10b-5 claim. (Mem. at 6-10.) Not only did plaintiffs exclusively rely on an unattributed statement by an anonymous source mentioned in the wrongful termination complaint of a discharged former Bioenvision employee (who himself claims no personal knowledge of the facts), but they made no attempt to identify the terms of the purported

agreement.[1] The vague "agreement" described in the complaint, which does not even include a price term, is insufficient to trigger a duty to amend the 13D. Plaintiffs' lengthy brief studiously ignores these points.

Nor do plaintiffs address the fact that, according to their own allegations, after Genzyme contacted Dennis Purcell to express Genzyme's possible interest in acquiring Bioenvision, Mr. Purcell advised that Genzyme should take its interest up "directly with the Company." (Cmplt. ¶ 28.) Thus, plaintiffs' allegations themselves belie the existence of a "secret agreement" to which Perseus-Soros was a party. Whether to pursue a plan to change the control of Bioenvision through an acquisition was, according to the complaint, entirely in the hands of Genzyme, over which no influence or control by Perseus-Soros is alleged.

As a matter of law and as the briefs of the Bioenvision defendants establish, Bioenvision and Genzyme had no duty to disclose until they had entered into a definitive agreement. 17 C.F.R. § 210.3-05 (b)(4)(ii) (Form 8-K required to be filed within 75 days of the *consummation* of the deal). Until all those contingent events occurred, there was nothing for any party to disclose.[2] For its part, Perseus-Soros had no duty to amend its Schedule 13D until it had actually agreed to vote for that concrete deal, as the relevant Securities and Exchange Commission ("SEC") regulations make clear.

---

1 The fact, as plaintiffs repeatedly note, that the former Bioenvision employee's complaint is verified does *not* remedy the Fed. R. Civ. P. 9(b) and PSLRA pleading deficiencies at issue here.

2 Indeed, as plaintiffs allege, negotiations for Genzyme to acquire Bioenvision had occurred "on and off" during 2005 and 2006. (Mem. Opp. at 6; *see* Cmplt. ¶¶ 26, 27.) This history establishes that Genzyme's continued interest in 2007 did not mean that a deal would take place.

*See* SEC, Division of Corporate Finance, Manual of Publicly Available Telephone Interpretations, at § O, ¶ 15, available at http://www.sec.gov/interps/telephone/cftelinterps_reg13d-13g.pdf (last accessed Mar. 19, 2008) ("the third party purchaser has no Schedule 13D filing obligation until the contingencies over which it has no control are waived or satisfied. If all material contingencies are within the third party's control either to waiver or satisfy, a Schedule 13D filing obligation arises immediately upon purchase.").

**B. The Case Law Cited by Plaintiffs Does Not Support a Duty to Disclose in the Circumstances Present Here**

Plaintiffs argue that, despite the highly contingent nature of Genzyme's interest in Bioenvision, Perseus-Soros nevertheless was required to amend its Schedule 13D. Ignoring the clear standards set forth by the SEC, plaintiffs fail to articulate *any* standard that guides when the purported duty to disclose arose, merely claiming that it did so, on the one hand, "as early as January 2007" and, on the other hand, at some unspecified point "during the Class Period." (Mem. Opp. at 15.) Plaintiffs' inability to articulate an operative disclosure rule for their theory demonstrates its deficiency. Plaintiffs have also failed to respond to our demonstration (Mem. at 13-14) that their selection of April 11, 2007 as the starting date of the purported class period in effect concedes that they have no good faith basis to allege a January 2007 agreement for Genzyme to acquire Bioenvision.

For this reason, all of the decisions cited by plaintiffs are inapposite. No case cited provides support for a claim that a disclosure duty may be imposed in the absence of sufficient allegations of actual agreement. *See E.ON AG* v. *Acciona, S.A.*, No. 06 Civ. 8720 (DLC), 2007 WL 316874, at *9 (Feb. 5, 2007) (disclosure required where

allegations and SEC filings showed that defendant had amassed more than 20% of shares to interfere with company's t ender offer with another buyer); *Rosen* v. *Brookhaven Capital Mgt. Co.*, 113 F. Supp. 2d 615, 631-32 (S.D.N.Y. 2000) (examining sufficiency of allegations of filers' own subjective intent to control corporation); *SEC* v. *First City Fin. Corp., Ltd.*, 688 F. Supp. 705 (D.D.C. 1988) (purchase of greater than 5% ownership in company for purposes of obtaining greenmail).[3] None involves a situation where a disclosure obligation is imposed on a party that was not *itself* participating in the change of control of the issuer.

The operative disclosure standard is set forth in our opening brief and the SEC guidance cited above: where, as here, the possibility of a deal is entirely speculative and contingent on the actions of others, no duty to disclose arises under of § 13(d) of the Exchange Act. (*See* Mem. at 11-13.) Perseus-Soros's extant Schedule 13D remained entirely accurate until a deal was struck in May 2007, at which point it was amended.[4] Accordingly, neither applicable statutory disclosure requirements nor the requirement to update prior statements mandated that Perseus-Soros amend its Schedule 13D any earlier than it did so.

---

3 *Rondeau* v. *Mosinee Paper Corp.*, 422 U.S. 49 (1975), similarly provides no support for plaintiffs. That decision expressly states that "the principal object of the Williams Act is to . . . respond to a cash tender offer, and it is not at all clear that the type of 'harm' identified by respondent is redressable under its provisions." *Id.* at 60.

4 Notably, plaintiffs allege that the Bioenvision board did not even create a committee to facilitate a possible merger with Genzyme until May 1, 2007. (Cmplt. ¶ 48.)

**C. Perseus-Soros Did Not Engage in Insider Trading, so its Exercise of Warrants Did Not Create a Post-Hoc Disclosure Duty**

Although plaintiffs also contend Perseus-Soros's disclosure duty arose because it engaged in insider trading, as a matter of law, its transactions do not constitute insider trading.

Here, Perseus-Soros exercised previously acquired, fixed-price warrants. This cannot form the basis of insider trading and hence no disclosure duty arose. *Compare Magma Power Co.* v. *Dow Chemical Co.*, 136 F.3d 316, 322 (2d Cir. 1998) ("because the insider by then is already bound by the terms of the option, the potential for abuse of inside information is minimal," and "the exercise of a fixed-price option [is] nothing more than a change from an indirect form of beneficial ownership of the underlying securities to a more direct one") *with Schaffer ex rel. Lasersight Inc.* v. *CC Investments, LDC*, 280 F. Supp. 2d 128, 134 (S.D.N.Y. 2003) (exercise of warrants *without* a fixed price may generate liability). The $2.00 exercise price for Perseus-Soros's warrants was fixed when it acquired them in 2001. (Schedule 13D, filed May 20, 2002, at pp. 17-18, Ex. A to the Decl. of Richard Rosen accompanying Defendant Perseus-Soros' Opening Mem.; Cmplt. ¶ 51.)

Moreover, Perseus-Soros was not buying or selling shares on the open market from parties who did not have the same information that it had. 17 C.F.R. § 240.16b-3 (2006) (exempting from disclosure requirements transactions between issuers and officers and directors); *Roth* v. *Perseus, L.L.C.*, No. 05 Civ. 10466(RPP), 2006 WL 2129331, at *10 (S.D.N.Y. July 31, 2006) (large shareholder's right to appoint board members created status as director-by-deputization for purposes of Rule 16b-3).

Rather, Perseus-Soros was exercising warrants to acquire shares from Bioenvision, which—on plaintiffs' own theory—knew all the relevant facts. SEC Release No. 34-52202, 70 Fed.Reg. 46080 at 46083, n.52 (Aug. 11, 2005) ("Insider trading is rooted in inequality of information between persons who are aware of it and the persons they transact with"); *Roth*, 2006 WL 2129331, at *10 ("[T]ransactions in which the issuer is aware of the deputization . . . guard against the risk that 'any profit obtained is not at the expense of uniformed [sic] shareholders and other market participants of the type contemplated by [Section 16(b) ].'") (quoting Ownership Reports and Trading by Officers, Directors and Principal Security Holders, Exchange Act Release No. 37,260, 61 Fed.Reg. 30,376, 30,377 at n.16 (May 31, 1996)). Thus, Perseus-Soros's fixed-price warrants exercise cannot be insider trading and did not trigger any disclosure obligation prior to exercise.[5]

## II.

## PLAINTIFFS HAVE NOT ADEQUATELY ALLEGED SCIENTER

Plaintiffs contend that Perseus-Soros's scienter is established simply by its knowledge of the potential Genzyme-Bioenvision transaction and its failure to amend its Schedule 13D. But this argument is entirely circular. Plaintiffs have simply failed to plead conscious misbehavior or motive and opportunity sufficient to establish scienter. (Mem. at 14-16.) *See Wexner* v. *First Manhattan Co.*, 902 F.2d 169, 173 (2d Cir. 1990) rejecting inference of scienter based on conclusory allegations of wrongdoing).

---

5 Notably, plaintiffs allege that Perseus-Soros's warrant exercise occurred on May 2, 2007, long *after* its alleged duty to amend its Schedule 13D purportedly arose.

**III.**

**PLAINTIFFS' CONTROL ALLEGATIONS ARE DEFICIENT**

Plaintiffs erroneously claim that Perseus-Soros had ties to defendants Joseph P. Cooper and Michael G. Kauffman sufficient to make them its representatives on the Bioenvision board. Even accepting as true the allegation that Perseus-Soros recommended Messrs. Cooper and Kauffman for the Bioenvision board, the insubstantial relationships that plaintiffs allege between Messrs. Cooper and Kauffman and Perseus-Soros (Cmplt. ¶¶ 11, 13) fall well below the level necessary to raise questions about their independence as directors. *Loveman* v. *Lauder*, 484 F. Supp. 2d 259, 268 (S.D.N.Y. 2007) (director independence was not compromised by the fact that directors who approved inside transaction were, respectively, a partner in a law firm that provided services to the insider and executive of a hotel chain that did business with the insider); *In re IAC/InterActiveCorp Sec. Litig.*, 478 F. Supp. 2d 574, 600-601 (S.D.N.Y. 2007) ("involvement in 'a number of joint corporate ventures'" with allegedly dominant board member did not compromise the independence of board members). Neither Mr. Cooper nor Mr. Kauffman can be considered controlled by Perseus-Soros.

With respect to Messrs. Elms and Schiff, "[t]he mere fact that persons are nominees of a large stockholder does not necessarily mean that they subordinate their independent judgment to the man who nominates them." *Weisman* v. *Spector*, 158 F. Supp. 789, 791 (S.D.N.Y. 1958). Moreover, to the extent that Perseus-Soros exercised any influence over Messrs. Elms and Schiff, they composed a minority of the Bioenvision board, insufficient to impute any domination of Bioenvision's board to Perseus-Soros. *See In re Healthco Intern., Inc.*, 203 B.R. 515, 518 (Bkrtcy. D. Mass.

1996) (designation of three of seven board members did not establish controlling relationship for minority shareholder); *cf. Elfenbein* v. *Gulf & Western Indus., Inc.*, 590 F.2d 445, 451 (2d Cir. 1978) ("where the stock owner has only two nominees on the corporation's eleven-member board of directors," board is not sufficiently controlled by significant shareholder that members will fail to "take action that they have a fiduciary duty to take"). Plaintiffs, therefore, cannot claim that any involvement by Messrs. Elms and Schiff in the Genzyme negotiations was sufficient to make Perseus-Soros itself a control person.

**IV.**

**GRANTING LEAVE TO AMEND WOULD BE FUTILE**

Plaintiffs' claims against Perseus-Soros should be dismissed with prejudice because plaintiffs admit that they cannot improve their complaint: "The complaint's allegations set forth in detail *all* of the statements made by defendants alleged to be materially false and misleading." (Mem. Opp. at 4 (emphasis supplied).) Given that the complaint, which already includes *all* of defendants' alleged false and misleading statements, is deficient, it would be futile to grant plaintiffs leave to amend.

**Conclusion**

For the foregoing reasons, as well as for those set forth in its opening brief, Perseus-Soros respectfully requests that the Court dismiss Plaintiffs' claims against it with prejudice.

Dated: March 24, 2008

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By: /s/ Richard A. Rosen

Richard A. Rosen
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000
rrosen@paulweiss.com

*Counsel for Defendant Perseus-Soros Biopharmaceutical Fund, LP*