UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BERT VLADIMIR, Individually and On Behalf Of All Other Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BIOENVISION, INC., CHRISTOPHER B. WOOD, JOSEPH P. COOPER, STEVEN A. ELMS, MICHAEL G. KAUFFMAN, ANDREW SCHIFF, JAMES S. SCIBETTA, and PERSEUS-SOROS BIOPHARMACEUTICAL FUND, LP,<br><br>Defendants. | Civil Action No. 07-CIV-6416(SHS) |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF THE
BIOENVISION DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
SUPPLEMENTAL AMENDED CLASS ACTION COMPLAINT**

John D. Donovan, Jr.
Christopher G. Green
Amy D. Roy
ROPES & GRAY LLP
One International Place
Boston, Massachusetts 02110-2624
(617) 951-7000

Lee S. Gayer
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, New York 10036-8784
(212) 596-9000

*Attorneys for Defendants Bioenvision, Inc.
Christopher B. Wood, Joseph P. Cooper,
Steven A. Elms, Michael G. Kauffman,
Andrew Schiff, and James S. Scibetta*

10993042_1.DOC

**PRELIMINARY STATEMENT**

The plaintiffs pin their entire case against the Bioenvision Defendants on the contention that the Company's boilerplate statements – "our primary focus" is the "acquisition, development and marketing" of cancer treatments – misled investors into believing that the Company guaranteed corporate independence. They interpret the statement of "primary" business "focus" on "cancer treatments" as an assurance that "discussions" about possible acquisitions did not exist, were not occurring, and would not take place without further disclosure. The plaintiffs' legal argument that disclosure of ongoing merger discussions was required as a matter of law turns on the assertion that Bioenvision's business description about its "primary focus" *mis*led investors into concluding that an acquisition was out of the question.

But that is a logical non-sequitur.

Bioenvision's routine description of its business did not lead investors in any direction about its inclination, intention, receptivity or interest in a fundamental corporate transaction. And that description therefore did not – and could not – *mis*lead investors into an inference that an organic corporate event was possible or likely, much less impossible or unlikely. Since the disclosures the plaintiffs challenge as misleading could not as a matter of law have the meaning they ask this Court to infer, *see* Pl. Opp. at 2,[1] the plaintiffs' case is empty.

What is more, nothing in the plaintiffs' papers raises a "cogent" inference that the Bioenvision Defendants' determination to maintain the confidentiality of Bioenvision's discussions with Genzyme was predicated upon a "motive to commit fraud." It cannot have been "reckless" to refrain from disclosure when no duty to disclose existed. And the plaintiffs do not

---

[1] "Pl. Opp." refers to the Plaintiffs' Corrected* Memorandum Of Law In Opposition To Defendants' Motions To Dismiss The Amended Complaint. "Def. Br." refers to the Memorandum Of Law In Support Of The Bioenvision Defendants' Motion To Dismiss The Plaintiffs' Supplemental Amended Class Action Complaint.

say why the Bioenvision Defendants logically had a motive to deceive shareholders into prematurely selling their shares. The plaintiffs accordingly do not raise an inference of *scienter* that is either "cogent" or "as compelling" as the logical inference that a confidential path was chosen to enhance the chances for a deal. The pleadings do not come close to meeting the heightened standard for establishing the "strong inference" of *scienter* established in *Tellabs*.

I. **BIOENVISION HAD NO AFFIRMATIVE DUTY TO DISCLOSE ONGOING MERGER DISCUSSIONS**

   A. **Basic Descriptions Of Bioenvision's Business Did Not Trigger An Affirmative Duty To Disclose Merger Discussions**

The parties' briefs are in accord upon the legal sources igniting disclosure obligations under the federal securities laws, *see* Def. Br. at 9; Pl. Opp. at 13.[2] As to the Bioenvision Defendants,[3] the Opposition contends that only one affirmative duty of disclosure was triggered – that the Bioenvision Defendants were required to disclose "ongoing" merger discussions with Genzyme because other statements by Bioenvision were somehow rendered "inaccurate, incomplete, or misleading" by the omission. Pl. Opp. at 13–14.

The plaintiffs do not identify any statement by Bioenvision *denying* the existence, contemplation, or pursuit of a merger or other fundamental transaction. Nor do the plaintiffs point to any statement in which Bioenvision indicated an intent to remain "independent."[4]

Instead, the plaintiffs rely exclusively on two statements for their claim of "misleading" disclosure. They focus, first, on the boilerplate footer – "About Bioenvision" – that concluded

---

[2] The Defendants' Opening Brief explained that there are three sources of duty, while the plaintiffs add a fourth "duty to update." The plaintiffs do not argue that the so-called "duty to update" triggered any duty of disclosure as to the Bioenvision Defendants, and the difference in formulations is thus of no consequence.

[3] Defendant Perseus-Soros addresses in its Reply the alleged triggers of disclosure applicable to it.

[4] The plaintiffs assert that Bioenvision stated that "it was Bioenvision's business plan and strategy to continue as an independent company[.]" Pl. Opp. at 2. The statement is conspicuously unadorned by any citation. There was no such disclosure. Invention of "plans" or "strategies" *not* disclosed in actual statements by Bioenvision is not a basis for liability. And contrivance is not responsible argument.

every one of Bioenvision's press releases:

> Bioenvision's primary focus is the acquisition, development and marketing of compounds and technologies for the treatment of cancer.

Pl. Opp. at 8–10. That "corporate tagline" generally describing Bioenvision's business was pasted at the bottom of every single press release issued by Bioenvision since February, 2002 – by defendants' count in some 126 Bioenvision press releases over that five-year period. The footer never changed.

The plaintiffs point, second, to the functionally equivalent "narrative description of the business" – the "descri[ption of] the business done and intended to be done" (*See* Item 101 of Regulation S-K, 17 C.F.R. § 229.101 (2008)) – that Bioenvision included in its periodic SEC filings:

> We are a product-oriented pharmaceutical company primarily focused upon the acquisition, development and marketing of compounds and technologies for the treatment of cancer.

Pl. Opp. at 10. Bioenvision reiterated this same basic narrative description – virtually verbatim – in its quarterly and annual reports on Forms 10-Q and 10-K for years before and after the ostensible "Class Period."

But aside from identifying these two statements, and referencing cases that hold that statements that omit information *can* mislead, the Plaintiffs' Opposition studiously avoids analysis articulating *why* these statements either *did* – or even *could* – mislead anyone.

Self-evidently, they could not. The two statements – each asserting Bioenvision's "primary focus" on "compounds and technologies for the treatment of cancer" – are the most general description of Bioenvision's business mission. They state what Bioenvision does, why it exists, the products it seeks to develop, and the market it targets. But that is all the statements do. The statements do not say how Bioenvision will accomplish its purpose. They do not

articulate a strategic imperative. They say nothing about the means for achieving Bioenvision's desired ends. And they are utterly silent on any "corporate" issue. They disclose Bioenvision's business "focus"; not the devices for financing its work, or realizing upon its investment in time, treasure or technology. The statements about Bioenvision's business "focus" simply say nothing to anyone about the Company's corporate structure, its financing alternatives, its "independent" status, or its relative interest or attractiveness as either an acquisition target or acquiror. An investor reading the words would understand what Bioenvision does and what products it hoped to develop. But no reasonable shareholder reading that Bioenvision's "primary focus" is "cancer" treatments could conceivably conclude that the statement meant anything about Bioenvision's receptivity to, or involvement in, discussions about an acquisition.

Because the statements about Bioenvision's "primary focus" on cancer treatments as a business objective are so general, and so merely descriptive, they are directionless on the issues the plaintiffs claim they mislead. A "primary *focus*" on cancer treatment could not be understood by a reasonable reader as "primary *intent*" to remain "independent." Whether Bioenvision's "focus" on certain cancer treatments is "primary" or not says nothing about Bioenvison's ownership, corporate structure, or anything else organic. If Bioenvision were owned by someone else, presumably its "primary focus" on cancer treatments would not change. The statement neither includes nor excludes the possibility of a corporate transaction. But precisely because the statements of "focus" *are* directionless on that issue, and lead in *no* direction about mergers, sales, acquisitions or anything else, they do not *mis*lead in the *wrong* direction about those prospects. The plaintiffs' failure to even address this point is dispositive.

*In re Time Warner Securities Litigation*, 9 F.3d 259 (2d Cir. 1993), illustrates the defect in the plaintiffs' claim. In *Time Warner*, the Second Circuit made clear that "when a corporation

10993042_1.DOC                                -4-

is pursuing a *specific business goal* and *announces* that goal as well as an *intended approach* for reaching it, it may come under an obligation to disclose other approaches . . . [that are] under active and serious consideration." *Id*. at 268 (emphasis added); Pl. Opp. at 18. In *Time Warner*, the company "hyped" Time Warner's "specific business goal" to seek strategic partners for a cash infusion to alleviate debt problems. *Time Warner*, 9 F.2d at 262. The Second Circuit found that the alternative strategy of making a stock offering, which was under active consideration, and would have the opposite effect on the share price as the strategy disclosed to the public, should also have been disclosed. *Id*. at 268.

But here, in sharp contrast, the statements relied upon by the plaintiffs did not "announce" any "specific business goal," much less any "intended approach" for achieving an objective. The statements the plaintiffs cite only reiterated – just as they had consistently and routinely for five years – Bioenvision's "primary focus" on the "acquisition, development and marketing" of "cancer treatments." The two statements neither "announced" any "specific goal" beyond the basic corporate mission, nor an "intended approach" to achieve one. *See* Pl. Opp. at 8–10; Amended Compl. at ¶¶ 9, 11–17, 20–26.

The Plaintiffs' Opposition ignores the text of the statements the Amended Complaint labels misleading. Other than reciting them in the brief's recitation of the "Factual Allegations of the Amended Complaint," *see* Pl. Opp at 9–10, the Opposition never mentions the ostensibly misleading statements by their terms again. The brief does not parse the words, suggest their meaning, or articulate how or why a statement of "primary focus" contains any hint about fundamental transactions such that it could mislead. Instead, the plaintiffs make only the bald assertion that Bioenvision's "repeated statements" about its "business and plans" gave rise to a duty to "disclose all material facts *on those subjects.*" Pl. Opp. at 18 (emphasis added). But how

"merger discussions" are on the same "subject" as a "focus . . . to develop . . . technologies for the treatment of cancer" the plaintiffs do not say. Instead, the document's entire claim that it "explains how each statement was materially false and misleading," is a string cite to eight (8) paragraphs of the Amended Complaint.[5] That substitutes assertion for analysis.

Again, without analysis, the plaintiffs resort to the contention that "disclosure on one subject triggers a disclosure duty for more complete information *even if not directly related to the subject of the original disclosure*." Pl. Opp. at 21–22 (emphasis added), citing *Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171 (2d Cir. 2001); *Weiner v. Quaker Oats Co.*, 129 F.3d 310 (3d Cir. 1997); *In re MCI WorldCom, Inc. Sec. Litig.*, 93 F. Supp. 2d 276 (E.D.N.Y. 2000). That badly mischaracterizes the facts and holdings of those cases.[6] None of the cases stand for the proposition that public companies must disclose merger discussions merely because they separately describe their core business or strategy. Indeed, because public companies must *always* "describe" their core business, the rule tacitly advanced by the plaintiffs would *always* require the disclosure of merger discussions, no matter what was said. But no such rule has ever

---

[5] The Opposition simply refers to paragraphs 32, 38, 39, 42, 50, 53, 56 and 60 of the Amended Complaint without elaboration. Those paragraphs, however, do not begin to describe "how" the statements are misleading. They say only that the statements were misleading "because" merger discussions were taking place and the defendants "had a duty to include all material information regarding Bioenvision's business activities."

[6] The *Castellano* and *Quaker Oats* decisions turned on materiality, an element not even reached here, as discussed in Section I.B. below. In *Castellano*, the defendant conceded it had a "special obligation" to disclose all material information to the plaintiff since defendant was a closely-held corporation involved in the purchase of its own stock. *Castellano*, 257 F.3d at 179. Moreover, and also unlike the situation here, the defendant was negotiating strategic alternatives while at the same time assuring the plaintiff falsely that "nothing was going to change in the [company's] near future." *Id*. at 175. As amply demonstrated above, this case does not involve any such affirmative statements, and plaintiffs do not argue otherwise.

Plaintiffs' reliance on *Quaker Oats* is likewise misplaced, as that case involved a situation where the company had repeatedly issued public statements that it had, and would in the future, maintain a certain debt-to-equity ratio. *Quaker Oats*, 129 F.3d at 318–19. The Third Circuit held that the defendants' negotiation of a merger that would significantly alter the very specific debt-to-equity ratio that the company had repeatedly promised to maintain, was material information. *Id*. As demonstrated above, the plaintiffs in this case point to no such specific disclosure concerning a specific business objective. Moreover, contrary to plaintiffs' contention, the information at issue in *Quaker Oats* – the taking on of more debt via an LBO – was *directly* related to the debt-to-equity ratio that was the subject of the original disclosures.

been adopted. To the contrary, that absolute disclosure rule has been expressly rejected by the Supreme Court, the Second Circuit, and by courts in this District.[7]

### B. The Element of Materiality is Not Reached

The Plaintiffs' Opposition lapses into an argument that the mere "materiality" of merger discussions must compel their disclosure. Their brief contends that the defendants "argue that there was nothing material to disclose before the agreement was signed." Pl. Opp. at 19. This is wrong. The defendants argued only that materiality is beside the point when no duty to disclose is triggered. *See* Def. Br. at 12, citing *Basic v. Levinson*, 485 U.S. 224, 239 n.17 (1988). The three pages the plaintiffs devote to the contention that the merger discussions were material, Pl. Opp. at 19–21, miss the point entirely. Whether or not the existence of discussions with Genzyme were material, the Amended Complaint does not state a cognizable claim because it does not implicate an obligation for Bioenvision to speak.

It is hornbook law that "[i]n acquisitions as in other matters, disclosure is not required unless there is a duty to disclose . . . . But the materiality of the acquisition negotiations does not by itself create a duty to disclose." 3 ALAN R. BROMBERG & LEWIS D. LOWENFELS ON SECURITIES FRAUD AND COMMODITIES FRAUD § 6:181 (2d ed. Dec. 2007) (citing *Glazer v. Formica Corp.*, 964 F.2d 149, 155–57 (2d Cir. 1992)). As explained in the defendants' Opening Brief, the Supreme Court expressly noted that a determination of the materiality of merger discussions is separate from whether a threshold duty to disclose the discussions exists. That

---

[7] The holding in *MCI Worldcom* (cited by plaintiffs at Pl. Opp. at 22) demonstrates the point. There, the defendant Worldcom was in active merger discussions with SkyTel, a wireless communications provider. *MCI Worldcom*, 93 F. Supp. 2d at 279. Amid speculation about the possibility of a merger, *MCI Worldcom*, issued public statements which Judge Glasser found to constitute false denials that such discussions were taking place, and which were having a direct effect on the stock price. *Id*. Significantly, Judge Glasser held that, "had MCI replied 'no comment' to questions about the merger, and said nothing more, the Complaint would not state a cause of action for securities fraud." *Id*. at 280. That is precisely the situation in this case – indeed, here, defendants said nothing at all with regard to mergers.

two-step analysis – duty followed by materiality – is the approach to be followed under Rule 10b-5. *See Kronfeld v. Trans World Airlines, Inc.*, 832 F.2d 726, 730 n.8 (2d Cir. 1987) (citing *Chiarella v. U.S.*, 445 U.S. 222, 229 (1980)). Here, none of the predicate sources giving rise to a duty to disclose is triggered, and the element of materiality is therefore not reached.

**II.  THE PLAINTIFFS' THEORY OF *SCIENTER* DOES NOT MEET THE *TELLABS* STANDARD**

The Amended Complaint must also be dismissed for failure to meet the heightened pleading requirements for *scienter* under *Tellabs*. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499 (2007). The plaintiffs strain to marginalize the impact of the Supreme Court's *Tellabs* ruling. But this Court has repeatedly held that *Tellabs* set a "heightened" standard for pleading *scienter*.[8] The *Tellabs* test for pleading the "strong inference" of *scienter* that the PSLRA requires is clear: the factual allegations must give rise to an inference of fraud that is "cogent" and "at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 127 S. Ct. at 2510.

The inference that the defendants had a non-culpable state of mind while maintaining the confidentiality of Bioenvision's discussions with Genzyme is inescapable. Confidentiality maximized the likelihood of reaching an agreement that would benefit all of Bioenvision's shareholders. Especially where prior discussions with Genzyme had failed, *see* Amended Compl. at ¶ 26, premature disclosure could prompt a rise in the market price above what Genzyme was willing to pay, and induce another withdrawal.

This was the inference that the defendants posited in their Opening Brief. *See* Def. Br. at 15. The Plaintiffs' Opposition, however, declares without elaboration that the "[d]efendants

---

[8]  *See, e.g., In re BISYS Sec. Litig.*, 496 F. Supp. 2d 384, 387 n.1 (S.D.N.Y. 2007) ("the law [post-*Tellabs*] is now more favorable" to the defendant); *In re Bayou Hedge Fund Litig.*, No. 06-MDL-1755 (CM) 2007 WL 2319127, at *16 n.4 (S.D.N.Y. July 31, 2007) (applying the "heightened pleading requirement announced in *Tellabs*").

have failed to offer any non-culpable explanation for their conduct that can withstand scrutiny." Pl. Opp. at 30. But why is the defendants' motive to maintain confidentiality in order to effect a transaction *not* a "non-culpable explanation"? The plaintiffs do not say. And why does that non-culpable explanation fail to "withstand scrutiny"? Again, the Plaintiffs' Opposition is silent. The omission to supplement the assertion with analysis betrays the plaintiffs' claim as all percussion cap and no powder.

If, as the plaintiffs say, the defendants *do not* advance a non-culpable explanation of their state of mind, what inference of "culpable" conduct *do* the plaintiffs posit instead? Nothing "cogent." The Opposition says that the Bioenvision Defendants "knew or should have known" that they were "misrepresenting material facts related to Bioenvision" because they were "intimately involved in events which contradicted or undermined their public statements" and had a "financial motive to ensure that the merger was successful." Pl. Opp. at 28–29. That is tenuous logic. The first element of the claim – that the defendants "knew" they were lying because they were "involved" with "contradictions" of their "public statements" – logically depends upon a "public statement" that "contradicts" their involvement in "merger discussions." But as we have already shown, the plaintiffs have not pointed to any "public statement" that is inconsistent with the existence of "merger discussions."[9] The defendants' "public statements" describing Bioenvision's "primary focus" on developing cancer treatments are not "contradicted" by their "involvement" in merger discussions; the subjects are distinct and different. Stated another way, the plaintiffs' posited inference of *scienter* is that the defendants *must* have known

---

[9] The Opposition also argues that the execution of Sarbanes-Oxley ("SOX") certificates provides an additional basis for establishing *scienter*. *See* Pl. Opp. at 30. Again, the plaintiffs do not say why. They say only that the SOX certifications – which attested to the accuracy of financial statements and the sufficiency of internal controls – "lend further support" to the plaintiffs' *scienter* allegations. *Id.* How so? The plaintiffs do not allege that financial statements were false; or that they were rendered "misleading" by the failure to disclose merger discussions. If "involvement" in "statements" that "contradict" the existence of merger discussions is – in the plaintiffs' own formulation – the *sine qua non* to infer *scienter*, their own allegations fail the test.

they were lying because the plaintiffs *claim* they were lying. But that illogical assertion does not raise a *Tellabs*-sufficient inference of *scienter*. Tautology is not compatible with "cogency."

The plaintiffs' other assertion – that the Bioenvision Defendants had a "financial motive to ensure that the merger was successful" – is surely true. But it is not an inference of a "culpable" state of mind; to the contrary, the allegation emphasizes the "non-culpable explanation" the plaintiffs falsely state the defendants failed to advance. A "financial motive" to maintain the confidentiality of merger discussions in order to ensure a successful transaction aligned the defendants with all Bioenvision shareholders, who presumably were interested in securing a value-maximizing opportunity. The "financial motive" the plaintiffs posit may therefore have been a reason for silence. But that "motive" does not supply a reason to infer deliberate or reckless *deception* designed to dupe the putative plaintiff class. The plaintiffs' assumption that the Bioenvision Defendants had a base motive to hoodwink holders into selling prematurely lacks any logical or rational underpinning, and this is neither "cogent," nor as "compelling" as the non-culpable alternative.[10]

## CONCLUSION

For the reasons provided above, as well as those set forth in the Bioenvision Defendants' Opening Brief, the Amended Complaint should be dismissed with prejudice.

---

[10] The plaintiffs mischaracterize the holdings of the line of cases that stand for the proposition that defendants cannot be deemed reckless where there is no clear duty to disclose. But the cases referenced in the Defendants' Opening Brief stand precisely for that proposition. *See In re Morgan Stanley and Van Kampen Mut. Fund Sec. Litig.*, No. 08-8208, 2006 WL 1008138, at *11 (S.D.N.Y. Apr. 18, 2006) (reasoning that since defendants complied with the SEC's disclosure requirements, and "could [have] reasonably believe[d] that the law did not require disclosure of the allocation of differential broker compensation or sales contests," plaintiff failed to demonstrate the required intent or recklessness to establish *scienter*); *Castillo v. Dean Witter Discover & Co.*, No. 97-1272, 1998 WL 342050, at *11 (S.D.N.Y. June 25, 1998) (holding defendants could not have acted with *scienter* in failing to disclose certain information where the duty to disclose such information was not well-established); *In re Canandaigua Sec. Litig.*, 944 F. Supp. 1202, 1213 (S.D.N.Y. 1996) (rejecting plaintiffs' *scienter* allegations where the complaint failed to show that defendants knew they had a duty to disclose).

Dated: New York, New York
March 24, 2008

ROPES & GRAY LLP


By:   /s/ John D. Donovan, Jr.
John D. Donovan, Jr.
Christopher G. Green
Amy D. Roy
One International Place
Boston, MA 02210-2624
john.donovan@ropesgray.com
Telephone: (617) 951-7000
Facsimile: (617) 235-0023

Lee S. Gayer
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone (212) 596-9000

*Attorneys for Defendants Bioenvision, Inc., Christopher B. Wood, Joseph P. Cooper, Steven A. Elms, Michael G. Kauffman, Andrew Schiff, and James S. Scibetta*